# EXHIBIT A

FILED
CLERK, U.S. DISTRICT COURT

MAY 6, 2021

CENTRAL DISTRICT OF CALIFORNIA
BY: ___ch___ DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) CASE NO.  MJ 21-2068 |
| v. | ) |
| ROMAN STERLINGOV, | ) ORDER OF DETENTION |
| Defendant. | ) |

I.

A. ( )  On motion of the Government in a case allegedly involving:

    1. ( )  a crime of violence.

    2. ( )  an offense with maximum sentence of life imprisonment or death.

    3. ( )  a narcotics or controlled substance offense with maximum sentence of ten or more years.

    4. ( )  any felony - where the defendant has been convicted of two or more prior offenses described above.

    5. ( )  any felony that is not otherwise a crime of violence that involves a minor victim, or possession or use of a firearm or destructive device or any other dangerous weapon, or a failure to register under 18 U.S.C § 2250.

B. ( x )  On motion by the Government / ( ) on Court's own motion, in a case

1   allegedly involving:

2   ( x )   On the further allegation by the Government of:

3   1. ( x )   a serious risk that the defendant will flee.

4   2. (  )   a serious risk that the defendant will:

5   a. (  ) obstruct or attempt to obstruct justice.

6   b. (  ) threaten, injure, or intimidate a prospective witness or juror or

7   attempt to do so.

8   C. The Government (  ) is/ (x) is not entitled to a rebuttable presumption that no

9   condition or combination of conditions will reasonably assure the defendant's

10   appearance as required and the safety of any person or the community.

11

12   II.

13   A. (X )   The Court finds that no condition or combination of conditions will

14   reasonably assure:

15   1. ( x )   the appearance of the defendant as required.

16   (  )   and/or

17   2. (  )   the safety of any person or the community.

18   B. (  )   The Court finds that the defendant has not rebutted by sufficient

19   evidence to the contrary the presumption provided by statute.

20

21   III.

22   The Court has considered:

23   A. the nature and circumstances of the offense(s) charged, including whether the

24   offense is a crime of violence, a Federal crime of terrorism, or involves a minor

25   victim or a controlled substance, firearm, explosive, or destructive device;

26   B. the weight of evidence against the defendant;

27   C. the history and characteristics of the defendant; and

28   D. the nature and seriousness of the danger to any person or to the community.

---

**ORDER OF DETENTION AFTER HEARING (18 U.S.C. §3142(i))**

### IV.

The Court also has considered all the evidence adduced at the hearing and the arguments and/or statements of counsel, and the Pretrial Services Report/recommendation.

### V.

The Court bases the foregoing finding(s) on the following:

A. ( x )   As to flight risk: <u>(1) defendant is not a US citizen; (2) insufficient ties to US to reasonably assure defendant's appearance; (3) inadequate bail resources proffered; and (4) alleged access to and use of false identification, including possession of multiple passports at time of arrest.</u>

B. ( )   As to danger: _____

_____

_____

_____

_____

_____

_____

_____

### VI.

A. ( )   The Court finds that a serious risk exists that the defendant will:

    1. ( ) obstruct or attempt to obstruct justice.

    2. ( ) attempt to/ ( ) threaten, injure or intimidate a witness or juror.

ORDER OF DETENTION AFTER HEARING (18 U.S.C. §3142(i))

1   B. The Court bases the foregoing finding(s) on the following: _____

2   _____

3   _____

4   _____

5   _____

6   _____

7   _____

8   _____

9                                    VII.

10

11   A. IT IS THEREFORE ORDERED that the defendant be detained prior to trial.

12   B. IT IS FURTHER ORDERED that the defendant be committed to the custody

13       of the Attorney General for confinement in a corrections facility separate, to

14       the extent practicable, from persons awaiting or serving sentences or being

15       held in custody pending appeal.

16   C. IT IS FURTHER ORDERED that the defendant be afforded reasonable

17       opportunity for private consultation with counsel.

18   D. IT IS FURTHER ORDERED that, on order of a Court of the United States

19       or on request of any attorney for the Government, the person in charge of the

20       corrections facility in which the defendant is confined deliver the defendant

21       to a United States marshal for the purpose of an appearance in connection

22       with a court proceeding.

23

24   DATED: May 6, 2021        _____

25                             Hon. Paul L. Abrams
                               UNITED STATES MAGISTRATE JUDGE
26

27

28

# EXHIBIT B

Dear Judge:

My name is Tatiana Sterlingova. I am a Swedish citizen and I work as assistant master at School of Health and Welfare (Jönköping University).

I would like to tell you some facts about my son, Roman Sterlingov.

Roman was born in 1988 in Leningrad, USSR. In 1995, after divorce with his father, we moved to the city of Voronezh and Roman began to study at school. He studied very well and showed great interest in mathematics, physics, and chemistry. He had no conflicts, and his class fellow and teachers always appreciated his good will, open mind and ability to help people in need.

In 2002, when Roman was 14 years old, we moved to Sweden. He learned Swedish very fast and had no problem to orient himself in a new reality. He studied at school and then at gymnasium with very high results. He had many friends. He always helped other students who had problems with different subjects to improve their knowledge. He began to work at his free time quite soon (he distributed the advertisement) to be able to send money to his grandmother in Russia.

After gymnasium Roman obtained a job as a web designer. He moved away from home and began his life as adult. He had never forgotten to help his grandparents in Russia. There were many poor old people in Russia. Every time we visited Russia, we could see people who beg for alms. Roman had always helped them.

We have never lost touch and have a very warm relationship.
Roman is a very calm, positive and kind person who never had legal trouble. He spends a lot of time at own personal development, which results in healthy lifestyle (no smoking, alcohol, drugs). He is a mindful and helpful son. He treats other people with respect and understanding. I would be willing to post my home in Sweden to secure any bail Your Honor orders.

Best regards,

*Tatiana Sterlingova*

Tatiana Sterlingova

# EXHIBIT C

Alexander Koziakov



August 27, 2021

To the Honorable Randolph D. Moss

I have known Roman Sterlingov for most of my life, he is my second cousin, and I am a citizen of the US who was born and lived here my entire life. Roman is a very talented bright individual who, was raised in difficult circumstances in Russia during the 80's and 90's by a single mother (my aunt). I cannot imagine how difficult it has been for him and his family and they were lucky to be able to emigrate to Sweden, where Roman spent most of his life being raised by his mother, studying in the public schools, and teaching himself various sciences at home.

Roman is an intelligent person with lots of knowledge about many things in the world, he can always discuss a topic with you and have valuable insight or suggestions. He is a person of the utmost integrity. I enjoy spending time with him and have never seen or heard anyone speak ill of him. Me and Roman have always stayed in contact electronically and spoke on the phone often about events of the world, politics, finance, etc. On certain occasions when Roman would come visit the US, we spent time together and explored the Boston area. When I flew to Sweden to visit him and my aunt, he would show us around his city of Jonkoping. He is a trustworthy, honest individual who has done good for others. While he doesn't have much connections to United States, he has always wanted to come and live in the United States and has expressed that to me frequently in the past. I cannot imagine Roman being a danger to anyone and the current charges he is facing are the antithesis of the person that I know. If Your Honor releases him on bail, myself and my family will gladly provide for and help Roman. I have no doubt regarding his ability to comply with any conditions of release the court imposes. He is a man of his word and he has the support of his United States family members. I have previously offered and continue to offer to put Roman up at my home, or a potential rental if needed while his case is pending. I am also willing to post a property that I own to secure his bail.

Just some information about myself, I was born in Boston and I have lived in the Boston area for 30 years. I own my own property management business and have been a Real Estate Agent as well in the area for 10 years. I've worked for Compass for 2 years, which is a national Real Estate Brokerage, and have worked with a couple of local brokerages prior to my time at Compass. I've owned and lived in my house in the Jamaica Plain neighborhood of Boston since 2017, this was my second property that I purchased, my first one was in the Roslindale neighborhood of Boston, but I sold that property in 2019. I went to Boston College and have lived in various neighborhoods of Boston. I also have a side business where I invest in Real Estate out in the Midwest with my business partner whom is an ER doctor. I am currently engaged and myself and my fiancé are planning on getting married next year.

My family all moved from the USSR in the 1980s, my mom's side of the family all still lives in the Boston area and has never left, my dad's side of the family has migrated down to Florida with the exception of my grandmother. My grandmother occasionally speaks with Roman as well and is happy to support him when he will be in Boston.

I can assure Your Honor that these events and charges have come to a shock to everyone in the family. We would never in a million years believe that Roman is the capable career criminal he is alleged to be. He is a hardworking, regular software engineer just like any other. When he got arrested I was the first person he called, our entire family is worried about him and we are a close family. Thank you for consider my letter and the letters of his other family member and friends who, like I do, love and support Roman. I am aware that the court will set conditions of release. I will make sure that I am fully cognizant of the conditions imposed by the court and will make sure that Roman complies with the conditions. Should Roman not comply with any condition; I will immediately notify Pretrial and the court and Ms. Shroff.


Alexander Koziakov

# EXHIBIT D

**Dear Judge.**

My name is Anders Karlsson and I live in Sweden.

I am stepfather to Roman Sterlingov and I want to write a little about how i experiencing him.

I know him sense he was 15 years old, and he have always been a good person. He was never out to party or doing bad things, he have never been in any fistfighting or other trubble.

He and his close friends was always home to play computorgame and eating pizza.

Roman likes to read books, and he likes to take long walks.

He is very interested to have good health, he eats most vegetarian or vegan food, when it is possible.

Roman has always been kind and very helpful, both to his mother and me.

I have very bad psoriasis sickness, and Roman always ask if he can help me with something to make me feel better, and that means very much to me, that he realy care about other peoples struggels.

Even that im not Romans biological father, i have always look at him as my own son.

I hope my words have give information about how i feel and experiencing Roman.


With greeting

*Anders Karlsson*

Anders Karlsson

# EXHIBIT E



2021-08-25                          1 (1)

To whom it may concern,

We are writing this letter in regards to Roman Sterlingov, who was a student at our
school from August 2003 until June 2006. He studied the IB program where I was a
teacher for him in both English and Psychology.

He was an ambitious student that did well in school. He was well-liked by his friends
and teachers. Even though many years have passed, I still remember him and I was
saddened to read the news of the upcoming court case.

I remember meeting him on the streets of Gothenburg, a town about 2 hours from
here. Several years had passed since he had graduation and he stopped me to say
hello. He also wanted to thank me and my colleagues for his time at Per
Brahegymnasiet since he really appreciated all of the time and effort we had put into
the students and he had also realized afterwards how much he had learned. He asked
me specifically to thank our TOK teacher, which stands for Theory of Knowledge. It
is a course in critical thinking that many high school students find especially
difficult. He said that he had not understood how important that course was when he
was younger but as the years passed, he was so grateful for having the opportunity to
take that course.

I remember him as a kind and thoughtful student.

Allyson Neuberg
IB Diploma Coordinator
Per Brahegymnasiet
Jönköping, Sweden



# EXHIBIT F

Frankfurt am Main. August 20th 2021.

Dear judge,

My name is Josefin Kirsch. I'm a 35 year old medical intern, married since 9 years and I am a mother of a five year old son. I live in Frankfurt, Germany since 12 years. I was devastated to hear the news of what Mr. Roman Sterlingov is accused of. However, this is not what I'm going to write about. I'm going to tell you about a pretty shy and intelligent boy who entered my life when I was 18 years old. He became a very dear friend of mine and I have ever since loved and respected many aspects of his personality. At the time I had my own apartment where high school friends spent a lot of time. Some of them would cause quite a mess but Roman was one of those who would hang around, discuss interesting topics and having a good time. At one point we decided that exactly one year after the last day of high school we would meet up with another friend on a paradise island in the red sea. Something that sadly did not happen. Our friendship took a new and deeper start as he and two of our other friends visited me as I lived in Spain 2008. After that our contact has sometimes been intense, sometimes sporadic although I have always known and experienced that he is always just a call away when I have found myself in situations where I have needed love, guiding and support. We have lived in different countries most of the time since high school and according to my experience it's difficult to keep a relationship alive during circumstances like that. That has not been the case with Roman. He has been one of my best (and smartest) friends when it comes to discussing philosophy, literature, love and life, the idea we both share about the importance of through meditation, and not through materialism, finding oneself and finding peace. We have discussed ideas of how to make the world a better place, just as an example the importance of wearing a face mask to protect oneself and others during this pandemic, how to achieve more peace in the world and he has cheered me on in my charity work with pediatric surgeries in Nepal. He is a person interested in living a physical and mental healthy and harmonic life. I have always experienced Roman as a very generous, modest person with a great sense of humour and who always took the time to, with true interest, listen to what his friends have to say. He has always shown respect to teachers, friends as well as strangers. I have tried but it's impossible for me to believe that Roman would do anything with the intention being greediness. All of our common friends from high school have reacted with great disbelief at the news of the accusations against him. The general opinion is that it doesn't fit his character and personality at all. The last thing I want to say is that I truly miss our conversations since he was arrested and that he is a very very important person to me.

Best Regards,

Josefin Kirsch

EXHIBIT G

Dear Judge

My name is Tobias Suomalainen, I am 33 years old and live in Gothenburg, Sweden. I am currently working as a social worker at an elementary school.

I meet Roman through mutal friends here in Gothenburg, when me and a friend were starting up a Men's group as I heard he was interested in this. The group is about personal development and to become mature men.

From the start Roman was friendly, warm and engaged in the group and its development. He participated in many meetings, events and hikes we arranged. During this occassions he and I developed a friendship because our mutal interests and same kind of personalities. Roman was particulary good at seeing positive aspects in other persons in the group and to communicate this.

At one period in our friendship I was trying to learn mathematics for an exam. When I talked about this he offered his help to me which was very appreciated.

Overall I think Roman is a good person and a loyal friend.


Sincerely


mail.com

# EXHIBIT H

Dear Judge,

My name is Alex Gustafsson. I am married and the father of a newborn baby. I work as a mid-level manager for a large global corporation. I met Roman Sterling about 20 years ago.

We met at a school for foreigners who came to Sweden, where we studied Swedish. He was an ambitious and a good student.

I remember Roman as a smart guy who was into computers and programming.

As a person, Roman is always calm, restrained, sensible, and I do not remember him ever being involved in conflicts, fights or aggressive disputes. Roman always found a common language with everyone and resolved any disagreements in a peaceful way.

Roman has always been engaged in intellectual and spiritual development, read many books, was interested in business, entrepreneurship, investment and travel. In other words, it is interesting to talk with Roman on many topics, including those that similarly interest me. We were also united by joint physical training, running, discussions about a healthy lifestyle and various other hobbies such as golf or going to the bathhouse.

He is always positive, respects different points of view and does not judge even when he does not agree. It is easy to establish contact with Roman and find a common language. In unfamiliar companies or on holidays, he easily made new acquaintances. For the entire time of our friendship, I do not remember a single case when Roman wished someone harm, did anything negative, or spoke badly about a person.

On the contrary, I recall the cases when Roman motivated and helped people choose the right path in life. I must say that I myself have been personally "infected" more than once by Roman's enthusiasm, which has led to a broad outlook on life and new undertakings.

I can't help but mention his love for animals. Roman not only had pets himself, but also more than once rescued animals from the street, helped them find a loving home. If he ever saw stray animals, he always helped them.

He is hardworking, disciplined, rational, and in no hurry to act, preferring to think carefully about the consequences of his actions.

Having high ambitions in life, he remains a down-to-earth, spiritually educated person who treats people with great respect, regardless of their origin, religion or social status.

Roman has shown more than once his good nature and calmness, that is, a stable attitude towards the events in life. No matter what happens in his life, he remains positive and philosophically tries to explain the events in his life.

Based on my personal experience, Roman is a trustworthy person who always keeps his word.


Sincerely,

Alex Gustafsson

# EXHIBIT I

Dear Judge,

My name is Elin Gustaffson. I work as a curator and psychotherapist at a habilitation center. I have known Roman Sterlingov since 2010. He is my husband's friend.

He can be characterized as a balanced, thoughtful person.

Humanist by conviction: Roman treats people, animals, nature with care. Suffice it to recall his respect for his mother, his respectfully attitude towards the older generation, and his reverent attitude towards friends. He is always concerned for those around him. More than once he helped and sympathized with people little known to him, not to mention the people who are dear to him. He is an empathetic and attentive person and friend, who is always ready to help. Responsive, polite, generous, friendly and caring. For example, he bought and brought from abroad medicines for an elderly person without taking any payment.

Roman is broad-minded, well-read, educated, comprehensively developed. A pleasant companion. It is interesting to talk with Roman on spiritual topics, in addition he will always support, listen and won't judge.

Roman's great need is self-development: he took part in several trainings to develop himself and improve himself as an individual.
He is actively engaged in a healthy lifestyle and reads a lot.
He is fascinated by travel in order to learn about the cultural and architectural values and traditions of different countries. I am happy to share the experience of a traveler.

I know him as a responsible person who, in a difficult situation, will do everything that depends on him, without shifting the difficulties onto others. Roman is a man of his word. If he promises, you can be sure that he will keep his promise.

He is a reliable friend. You can trust him and be sure that he will not betray or let you down. If you share your innermost with him, it will not go further - he respects the feelings of others.
In the company of friends, he always behaves modestly, despite his sociability, prefers to listen, not bragging about his achievements. He is restrained in expressing his feelings, prefers to keep his opinion to himself.

I can tell you that Roman certainly helps other. Roman lived modestly in a one-room rented apartment in Gothenburg. There was a situation when he allowed people who were homeless to live in his house, giving them his sleeping place, and he himself slept on the floor. That is, he is ready to sacrifice himself for the welfare of others.

Roman is known as a sociable person, easily comes into contact, has acquaintances in different countries. He is open to communication, friendly, interesting conversationalist. Roman is able to inspire others to do good.

He is an optimist: he believes in the best and even in the most difficult life situations he will not hear complaints from him. He has a positive outlook on life.

These are the qualities that unite us, which is why I liked to communicate with him.

Elin Gustaffson, Roman's friend

# EXHIBIT J

Good day to you sir,

My name is Albin Hofmeijer and I'm an old friend of Roman. We met about 6 years ago in Gothenburg when my friend Yves introduced us. Back then we were young and had a lot of vigor and curiosity about the world. We dreamt about becoming big rappers (or at least I did) and went out trying to interact with women but often failed because we were not that cool. We eventually bought a studio together and tried to make rap music, some for fun but most to try to deliver a message about believing in yourself and that nothing is stopping you from becoming what you really wanna be in this world.

We have been on a couple of trips together, including a trip to Hong Kong and Taiwan, and have been taking a couple of trips to cabins in the Swedish woods. Roman seems to favour the calm of the woodlands to of the active city. During these trips we often spoke about how to get better in any and all areas of life.

As one of my friends started a self help group for men Roman joined as one of its founding members. The purpose of this group was to share your own experiences and let other people comment on your actions and reactions towards those experiences. Roman more often than not was able to reply toward others with great insight into what their true problem was and give great feedback on how to proceed with the situation. This commonly amazed me because I felt like he truly understood some things that I didn't but that I realised when he gave his feedback. He did this with my sharing on multiple occasions.

I have had a troubled childhood, not in the sense of getting my basic needs met but in the sense that my parents weren't always there for me and even when they were they were almost always distant in mind. Roman helped me alot in this area and we used to have long talks late at night in the studio about how to heal the wounds inflicted in my childhood. He was always there for me when I needed someone to talk to and even though we don't always see eye to eye I would consider him one of if not the person that has had the greatest positive impact on my life.

I have always had trust in Roman and he never failed me.

Best regards

Albin Eddie Hofmeijer
Sweden 08-16-202

EXHIBIT K

Carl Lindström
Oskarsgatan 9-1608
Gothenburg, 41463
Sweden
20 August 2021

Dear judge:

I am writing to you as regards the Roman Sterlingov case, in an attempt to shine some light on Roman's character as a friend and confidant.

I have been a personal friend of Roman's for about two years. We met through common friends when I was invited to join a support group in Gothenburg, Sweden. Roman was a regular at these meetings and what immediately struck me was how enlightened he seemed to be. He seemed to have an aura of complete acceptance of his place in the world, the events he experienced and the people around him. I cannot remember him ever ascribing external factors as a source of agony or hindrance from him living his best life. His sharings were more of a spiritual kind, such as conundrums about metaphysics and how to optimally live an examined life. This is not to say that he could not relate to other people; Roman was a good listener and did his very best to help the other group members.

Last summer I had the pleasure of traveling in a camper van for a week in Poland with Roman and two other friends. Although Roman had not met one of the travelers before he fit right in, adjusting well to the group dynamic and the wants and needs of the others. In my experience Roman has a humble and harmonious attitude toward life, and an open and respectful attitude toward others; showing a lot of gratitude and a high moral standard.

Sincerely,

Carl Lindström

EXHIBIT L

Gothenburg, Sweden
August 29th 2021

Dear judge,

My name is Viktor Mårdström. I'm a 33 year old engineer living with my girlfriend in Gothenburg, Sweden.

I've known Mr. Roman Sterlingov since late 2001, a short time after he came to Sweden from Russia. We became close friends and his friendship was formative to me during our late junior high and high school years. We've kept in touch since then and I last chatted with him a few weeks prior to his arrest. As you can imagine, I was profoundly shocked to learn that he's being accused of such serious crimes.

Roman and I bonded quickly over our shared sense of highly idiosyncratic humor, interest in technology and affinity for long, rambling discussions on obscure topics of philosophy. Some of the best times I can remember I've shared with him. In many ways, he's helped me to become a better person by making me reflect on what I know and what I don't know, and on what's really important in life. This has in turn made me a bit more humble and more at peace with my existence.

Roman's defining characteristics are his wittiness, his exceptional intellect and his strong adherence to his principles. As far as I'm concerned, Roman is an altruistic individual at heart who's driven more by advancing what he considers to be right and just than by greed and the pursuit of material wealth.

Best Regards,
Viktor Mårdström

# EXHIBIT M

VERA KOZIAKOV


    I, Vera Koziakov, have been living in the USA since 1993. I am an American citizen and Roman Sterling's great-aunt. His grandfather is my brother, who is no longer with us. I have always known Roman to be a good person, who always studied well, was a capable and educated young man, and attentive to his loved ones. He always kept in touch with our family in the United States. We met with him in Sweden and he visits us when he comes to the USA, which we have always been immensely happy about. I have never known Roman to be involved in any criminal activities. From my experience with him, he has always been a sweet and loving person.


                  Sincerely,


                  Vera Koziakov

# EXHIBIT N

*Recorded in Buchanan County, Missouri*
**Recording Date/Time: 10/28/2020** at **01:40:42 PM**

**Book: 3754   Page: 978**

Instr #:   **2020010163**

Pages:   **2**
Fee:   **$27.00 S**

*Electronically Recorded*
Hook McKinley LLC



**Rebecca Dunlap**
**Recorder of Deeds**

## QUIT-CLAIM DEED

**THIS DEED WITNESSETH,** that Alexander Koziakov, a single person, for and in consideration of the sum of **One Dollar ($1.00) and Other Good and Valuable Consideration,** does by these presents, **REMISE, RELEASE and FOREVER QUIT-CLAIM** unto MassMo Real Estate, LLC, whose mailing address is: 98 Day St #2 Boston MA 02130 , Grantee, its successors and assigns, the following described land situate in Buchanan County, Missouri, to wit:

Parts of Lot Five (5) and Six (6), Block Twenty-five (25), in PATEE'S ADDITION, an addition to the City of St. Joseph, Buchanan County, Missouri, described as follows: Beginning at a point on the North line of said Lot Six (6) that is 37.38 feet East of the Northwest corner of said Lot Six (6), said point being on the South right-of-way line of Lafayette Street; thence South parallel to the West line of said Lots Five (5) and Six (6), 90.0 feet to the South line of said Lot Five (5); thence East along the South line of said Lot Five (5), 35.72 feet; thence North parallel to the West line of said Lots Five (5) and Six (6), 90.0 feet to the South line of Lafayette Street; thence West along the South line of Lafayette Street 35.72 feet ot the point of beginning.

Commonly known as 1118 Lafayette Street, St. Joseph, MO 64503.

**TO HAVE AND TO HOLD THE SAME,** with all the rights, immunities, privileges and appurtenances and thereto belonging, unto said Grantee and unto its successors and assigns forever, so that neither Grantor nor its heirs, nor any person or persons, for it or in its name or behalf, shall or will hereafter claim or demand any right to title to the aforesaid premises or any part thereof, but they and each of them shall, by these presents, be excluded and forever barred.

**WITNESS THE HAND(S)** of said Grantor this *16th* day of *October* , 2020.

_____
Alexander Koziakov

STATE OF MA        )
                   ) ss.
COUNTY OF Suffolk  )

On this _16_ day of _October_, 2020, before me, the undersigned, a Notary Public in and for said County and State, personally appeared Alexander Koziakov, a single man, to me known to be the person described in and who executed the foregoing instrument, and acknowledged that he executed the same as his free act and deed in his capacity as herein stated.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my notarial seal at my office the day and year last above written.

My term expires: _January 29, 2027_

MARGARET LUIZZO-KING
Notary Public
Commonwealth of Massachusetts
My Commission Expires
January 29, 2027

Notary Public

# STATE OF MISSOURI



**John R. Ashcroft**
**Secretary of State**

# CERTIFICATE OF ORGANIZATION

WHEREAS,

**MassMo Real Estate, LLC**

**LC1737493**

filed its Articles of Organization with this office on the 14th day of October, 2020, and that filing was found to conform to the Missouri Limited Liability Company Act.

NOW, THEREFORE, I, John R. Ashcroft, Secretary of State of the State of Missouri, do by virtue of the authority vested in me by law, do certify and declare that on 14th day of October, 2020, the above entity is a Limited Liability Company, organized in this state and entitled to any rights granted to Limited Liability Companies.

Effective Date: October 14, 2020

IN TESTIMONY WHEREOF, I hereunto set my hand and cause to be affixed the GREAT SEAL of the State of Missouri. Done at the City of Jefferson, the 14th day of October, 2020.



Secretary of State

LC1737493
Date Filed: 10/14/2020
John R. Ashcroft
Missouri Secretary of State



**State of Missouri**
**John R. Ashcroft Secretary of State**

Corporations Division
PO Box 778 / 600 W.Main St., Rm. 322
Jefferson City, MO 65102

# Articles of Organization

**Reference Number**    SR146694

**Receipt Number**    TR414846

**1. The name of the limited liability company is:** MassMo Real Estate, LLC

**2. The purpose(s) for which the limited liability company is organized:**

The company is formed for any purpose allowed by Missouri law.

**3.The name and address of the limited liability company's registered agent in Missouri is:**

**Name**    Diane K Hook

**Address**    3901 Oakland Avenue, St. Joseph, Missouri, 64506, United States

**4. The address of its principal place of business is:**

98 Day Street, Apartment 2, Boston, Massachusetts, 02130, United States

**5. The management of the limited liability company is vested in:**

Member

**6. The effective date of this document is the date it is filed by the Secretary of State of Missouri unless a future date is otherwise indicated:**

10/14/2020

**7. The events, if any, on which the limited liability company is to dissolve or the number of years the limited liability company is to continue, which may be any number or perpetual:**

Perpetual

**8. The name(s) and street address(es) of each organizer:**

**Name**    Diane K Hook

**Address**    3901 Oakland Avenue, St. Joseph, Missouri, 64506, United States

## In Affirmation thereof, the facts stated above are true and correct:

The undersigned believes the statements presented in this filing are true and correct to the best of their knowledge and belief, they are subject to the penalties provided under section 575.040 RSMo. for making a false declaration under Section 575.060 RSMo

The undersigned agrees and represents that he/she is authorized to execute this document

**Name**    Diane K Hook

**Title**    Organizer

**Date**    10/14/2020



**John R. Ashcroft**
**Secretary of State**
**State of Missouri**

**ORDER SUMMARY**
October 14, 2020

| | |
|---|---|
| **Transaction No.** | TR414846 |
| **Receive Date** | 10/14/2020 |
| **Primary Filer** | Diane Hook |
| | 3901 Oakland Avenue, St. Joseph, Missouri, 64506, United States |

**Details**

| Item Type | Business Name | Reference | Amount |
|---|---|---|---|
| Create LLC - Domestic - LLC 1 | MassMo Real Estate, LLC | SR146694 | $50.00 |
| **Total** | | | $50.00 |

**Payment Received - Thank You**

| Type | Reference | Amount |
|---|---|---|
| Credit/Debit Card | 20133999 | $50.00 |
| Convenience Fees Collected by Payment Processor | 20133999 | $1.25 |
| **Total** | | **$51.25** |

**Convenience Fees are not assessed, collected or retained by the state.**

# OPERATING AGREEMENT

# OF

# MassMo Real Estate, LLC

# TABLE OF CONTENTS

<u>Section</u>                                                                                              <u>Page</u>

1    Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1
2    Members . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2
3    Formation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2
4    Nature of Business . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3
5    Contributions and Capital Accounts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3
6    Warranties, Indemnification and Liabilities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    4
7    Allocation of Income and Losses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    5
8    Books, Records, Accounting and Reports . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    5
9    Bank Accounts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    6
10    Authority and Rights of Members . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    6
11    Meetings of Members . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    7
12    Other Business Ventures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    8
13    Transfer or Pledge of Company Interests-Restrictions . . . . . . . . . . . . . . . . . . . .    8
14    Withdrawal of Members . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    9
15    No Dissolution Upon Withdrawal or Transfer . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    9
16    Dissolution and Liquidation of the Company . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    9
17    Indemnity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    10
18    Notices . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    10
19    General Provisions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    11


<u>Exhibits</u>

A    Initial Contributions

# OPERATING AGREEMENT

## OF

## MassMo Real Estate, LLC

THIS OPERATING AGREEMENT (herein the "Agreement") of **MassMo Real Estate, LLC,** a limited liability company organized pursuant to the Missouri Limited Liability Company Act (hereinafter the "Company"), is entered into and shall be effective as of the Effective Date, by and among the Company and the entities executing this Agreement as Members.

## SECTION 1
## Definitions

For purposes of this Company Agreement (as defined below), unless the context clearly indicates otherwise, the following terms shall have the meanings set forth below:

1.1     *Act:*  The Missouri Limited Liability Company Act and all amendments to the Act.

1.2     *Articles:*  The Articles of Organization of the Company as properly adopted and amended from time to time by the Members and filed with the Secretary of State.

1.3     *Assignee:*  A transferee of a Percentage Interest who has not been admitted as a Substituted Member.

1.4     *Capital Accounts:*  The Capital Account of a Member shall mean the capital account of that Member determined from the inception of the Company strictly in accordance with the rules set forth in Section 1.704-1(b)(2)(iv) of the Regulations.

1.5     *Code:*  The Internal Revenue Code of 1986, as the same may be amended from time to time.

1.6     *Company:*     **MassMo Real Estate, LLC**, a limited liability company formed under the laws of Missouri, and any successor limited liability company.

1.7     *Company Agreement:*  This Operating Agreement, including all amendments adopted in accordance with this Operating Agreement and the Act.

1.8     *Company Business:*  The business or businesses conducted by the Company from time to time pursuant to the provisions of Section 4.

1.9     *Dissolution Event:*  An event, the occurrence of which will result in the dissolution of the Company under Section 16, unless the Members agree to the contrary.

1.10     *Majority Interest:*  Fifty-one percent (51%) of the total Percentage Interests of all Members of the Company.

1.11     *Member:*  The entities referenced in Section 2 of the Company Agreement and the Substitute Members.

1.12   **Net Losses:**  Net losses shall mean, for each Calendar Year, the losses and deductions of the Company determined in accordance with generally accepted accounting principles consistently applied from year to year under the cash method of accounting and as reported separately or in the aggregate, as appropriate, on the Company's information tax return filed for federal income tax purposes, plus any expenditures described in Section 705(a)(2)(B) of the Code.

1.13   **Net Profits:**  Net profit shall mean, for each Calendar Year, the income and gains of the Company determined in accordance with generally accepted accounting principles consistently applied from year to year under the cash method of accounting and as reported, separately or in the aggregate, as appropriate, on the Company's information tax return filed for federal income tax purposes, plus any income described in Section 705(a)(1)(B) of the Code.

1.14   **Percentage Interest:**  The Percentage Interest of each Member shall mean the percentage set forth opposite such Member's name in Section 2 below, as such percentage may hereafter be modified pursuant to the provisions of Section 5.2 below, or otherwise by agreement of the Members.  The Members acknowledge that the Percentage Interests may be different than the Capital Accounts.

1.15   **Regulations:**  The Treasury Regulations promulgated pursuant to the Code, as such Treasury Regulations may be amended from time to time.

1.16   **Substitute Member:**  A transferee of a Percentage Interest who has been admitted to all of the rights of membership pursuant to the Company Agreement.

## SECTION 2
## Members

2.1  The initial Members and their respective addresses, initial investments in monetary terms for purposes of calculating their Capital Accounts, and Percentage Interests in the Company are as set forth on Exhibit A attached hereto.

## SECTION 3
## Formation

3.1   **ORGANIZATION**.  The initial Members have hereby organized the Company as a Missouri Limited Liability Company pursuant to the provisions of the Act.

3.2   **AGREEMENT**.  For and in consideration of the mutual covenants herein contained and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Members executing the Company Agreement hereby agree to the terms and conditions of the Company Agreement, as it may from time to time be amended according to its terms.  It is the express intention of the Members that the Company Agreement shall be the sole source of agreement of the parties, and, except to the extent a provision of the Company Agreement expressly incorporates Federal income tax rules by reference to sections of the Code or Regulations, or as expressly prohibited or ineffective under the Act, the Company Agreement shall govern, even when inconsistent with, or different than, the provisions of the Act or any other law or rule.

3.3   **NAME**.  The name of the Company is **MassMo Real Estate, LLC**, and all business of the Company shall be conducted under that name or under any other name, but in any case, only to the extent permitted by applicable law.

3.4   **EFFECTIVE DATE.**   The Company Agreement shall become effective upon the filing and acceptance of the Company's Articles of Organization with the Missouri Secretary of State.

3.5   **TERM.**   The Company shall have perpetual existence, unless the Company shall be dissolved and its affairs wound up in accordance with the Act or the Company Agreement.

3.6   **REGISTERED AGENT AND OFFICE.**   The Registered Agent for the service of process and the Registered Office shall be as reflected in the Articles as filed in the Office of the Secretary of State.   The Members may, from time to time, change the Registered Agent or Office through appropriate filings with the Secretary of State.   In the event the Registered Agent ceases to act as such for any reason or the Registered Office shall change, the Members shall promptly designate a replacement Registered Agent or file a notice of change of address, as the case may be.   If the Members shall fail to designate a replacement Registered Agent or change of address of the Registered Office, any Member may designate a replacement Registered Agent or file a notice of change of address.

3.7   **PRINCIPAL OFFICE.**   The Company's mailing address is **98 Day Street, Apt. 2, Boston, Massachusetts  02130.**

## SECTION 4
## Nature of Business

4.1   The Company may engage in the business of buying, selling, owning, holding and managing real property and any other purpose authorized by Missouri Law.

## SECTION 5
## Contributions and Capital Accounts

5.1   **INITIAL CONTRIBUTIONS.**   Each Member shall make the capital contribution described for that Member on Exhibit A.   If no time for contribution is specified, the capital contribution shall be made upon the filing of the Articles of Organization with the Secretary of State. The value of the capital contribution shall be as set forth on Exhibit A.   No interest shall accrue on any capital contribution and no Member shall have the right to withdraw or be repaid any capital contribution except as provided in this Company Agreement.

5.2   **ADDITIONAL CONTRIBUTIONS.**   In addition to the initial capital contributions, the Members holding a Majority Interest together may determine from time to time that additional contributions are needed to enable the Company to conduct its business.   Upon making such a determination, the Members shall give notice to all Members in writing at least thirty (30) days prior to the date on which such contribution is due.   Such notice shall set forth the amount of additional contribution needed, the purpose for which the contribution is needed, and the date by which the Members shall contribute. Each Member shall be required to contribute a share of such additional contribution which is proportionate to that Member's Percentage Interest in the Company.   Each Member shall receive a credit to its Capital Account in the amount of any additional capital the Member contributes to the Company.

5.3   **FAILURE TO MAKE CONTRIBUTIONS.**   If a Member does not timely contribute capital when required, that Member shall be in default under this Agreement.   In such event, the remaining Members shall send the defaulting Member written notice of such default, giving the defaulting member fourteen (14) days from the date such notice is given to contribute the entire

amount of its required capital contribution. If the defaulting Member does not contribute its required capital to the Company within said fourteen (14)-day period, the non-defaulting Members who hold a majority of the Percentage Interests held by all non-defaulting Members may elect any one or more of the following remedies:

(a)     The non-defaulting Members may advance funds to the Company to cover those amounts which the defaulting Member fails to contribute.  Amounts which a non-defaulting Member so advances on behalf of a defaulting Member shall become a loan due and owing from the defaulting Member to such non-defaulting Member and shall bear interest at the rate of three percent (3%) over the prime rate being charged by the Commerce Bank of St. Joseph from time to time to its most credit-worthy creditors, but not in excess of the maximum rate permitted by law, per annum, payable monthly.  All income otherwise distributable to the defaulting Member under this Agreement shall instead be paid to the non-defaulting Members making such advances until such advances and interest thereon are paid in full.  In any event, any such advances shall be evidenced by a promissory note in standard form and be due and payable in full twelve (12) months from the date of the advance and shall be secured by the defaulting Member's interest in the Company with a security agreement in standard form and with such UCC-1 financing statements and other documents of transfer as such non-defaulting Members may reasonably request.

(b)     Dissolve the Company, in which event the Company shall be wound-up, liquidated and terminated pursuant to Section 16.

The election of the non-defaulting Members to pursue any remedy provided in this Section 5.3 shall not be a waiver or limitation of the right to pursue an additional or different remedy available hereunder or at law or equity with respect to any subsequent default.

5.4     **NATURE OF INTERESTS.**  The interests of the Members in the Company shall be personal property for all purposes.  All property owned by the Company, whether real or personal, tangible or intangible, shall be deemed to be owned by the Company as an entity, and no Member, individually, shall have any ownership of such property.

5.5     **STATUS OF CREDITORS.**  No creditor who makes a loan to the Company shall have or acquire at any time, as a result of making such loan, any direct or indirect interest in the profits, capital or property of the Company other than as a creditor.

### SECTION 6
### Warranties, Indemnification and Liabilities

6.1     No Member shall be liable as such for the liabilities of the Company.  Without limiting the foregoing, the failure of the Company to observe any formalities or requirements relating to the exercise of its powers or management of its business or affairs under this Company Agreement or the Act shall not be grounds for imposing personal liability on the Members or managers for liabilities of the Company.

### SECTION 7
### Allocation of Net Income and Losses

7.1     **NET INCOME AND LOSSES.** The Net Profits and Net Losses of the Company realized for each Calendar Year shall be allocated to the Members in accordance with their Percentage Interests in the Company.

7.2    **ALLOCATION.** In accordance with Section 704(c) of the Code and the Regulations thereunder, taxable income, gain, loss, and deduction with respect to any property contributed to the capital of the Company shall, solely for federal income tax purposes, be allocated among the Members so as to take into account any variation between the adjusted basis of such property for federal income tax purposes and its fair market value, as recorded on the books of the Company. As provided in Section 1.4 of this Agreement and Section 704-1(b)(2)(iv)(f) of the Regulations, in the event that the Capital Accounts of the Members are adjusted to reflect the revaluation of Company property on the Company's books, then subsequent allocations of taxable income, gain, loss, and deduction with respect to such property shall take into account any variation between the adjusted basis of such property for Federal income tax purposes and its adjusted fair market value, as recorded on the Company's books.   Allocations under this paragraph shall be made in accordance with Section 1.704-1(b)(4)(i) of the Regulations and, subsequently, shall not be reflected in the Members' Capital Accounts.

7.3    **TRANSFERS.** In the event there is a change in any Member's Percentage Interest in the Company during a Calendar Year (*e.g.*, as a result of a valid transfer of all or part of a Member's Percentage Interest pursuant to Section 13).   Net Profits and Net Losses shall be appropriately allocated among the Members to take into account the varying interests of the Members so as to comply with Section 706(d) of the Code.

## SECTION 8
### Books, Records, Accounting and Reports

8.1    **BOOKS AND RECORDS.**   The Company's books and records, together with all of the documents and papers pertaining to the business of the Company, shall be kept at the principal place of business of the Company, and at all reasonable times shall be open to the inspection of, and may be copied and excerpts taken therefrom by, any Member or its duly authorized representative.   Subject to the next sentence, the books and records of the Company shall be kept on a December 31, calendar year basis in accordance with generally accepted accounting principles, consistently applied and shall reflect all Company transactions and be appropriate and adequate for the Company Business.   For Federal and State income tax purposes, the Company's books and records shall be kept on a cash basis.

8.2    **ANNUAL STATEMENTS AND REPORTS.**   Within ninety (90) days after the end of each calendar year of the Company, the Members shall cause to be prepared and delivered to each Member, at the expense of the Company, (i) an annual report of the Company relating to the preceding calendar year, containing an annual balance sheet and profit and loss statement, reviewed by an independent certified public accounting firm selected by the Members, and (ii) annual statements indicating each Member's share of the Income or Losses of the Company and other relevant items of the Company for such calendar year for Federal income tax purposes.

8.3    **TAX RETURNS AND ELECTIONS.**   The Members shall cause the preparation and timely filing of all tax returns required to be filed by the Company pursuant to the Code and all other tax returns deemed necessary and required in each jurisdiction in which the Company does business.   Copies of such returns, or pertinent information therefrom, shall be furnished to the Members within a reasonable time after the end of the Company's Calendar Year.   All elections by the Company for federal income tax and other tax purposes shall be made by the Managing Member.   The Managing Member shall be the "tax matters partners," as that term is defined in Section 6231(a)(7) of the Code.   The tax matters partner shall be **Alexander Koziakov**.

### SECTION 9

**Bank Accounts**

9.1  All funds belonging to the Company shall be deposited in the name of the Company in such bank account or accounts as shall be determined by the Members.  All withdrawals therefrom shall be made upon checks signed on behalf of the Company by the Members or by any person or persons authorized in writing by the Members to sign checks on behalf of the Company.

**SECTION 10**
**Authority and Rights of Members**

10.1  **LIMITED LIABILITY**.  Except as required under the Act or as expressly set forth in this Agreement, no Member shall be personally liable for any debt, obligation or liability of the Company, whether that liability or obligation arises in contract, tort or otherwise.  Except as specifically required herein, no Member shall have any liability to restore all or any portion of a deficit balance in such Member's Capital Account.

10.2  **TRANSACTIONS WITH THE COMPANY**.  Subject to any limitations set forth in this Agreement and with the prior approval of the Members after full disclosure of the Member's involvement, a Member may transact other business with the Company.

10.3  **MANAGEMENT**.  The business, operations, and affairs of the Company shall be managed by the Managing Member, who shall have the powers, duties, and authority described in this Section 10 and under the Act.  Notwithstanding the above, **Alexander Koziakov**, who shall have the title of "Managing Member," shall oversee and direct the day-to-day operations of the Company in accordance with the policies and decisions adopted by the Members.  Except as otherwise expressly provided by the Act or herein, no Member shall be liable, responsible, or accountable in damages or otherwise to the Company, or to any Member for any acts or omissions performed or omitted in good faith and in a manner reasonably believed by the Member to be within the scope of the authority conferred upon him or it by this Company Agreement and the best interests of the Company. Specifically, and without limiting the scope of the foregoing, the Managing Member shall not be liable, responsible, or accountable in damages or otherwise to the Company or to any other Member for any action taken by the Managing Member, in good faith, including, but not limited to, any actions taken by the Managing Member as "tax matters partner" in connection with the examination by the Internal Revenue Service of the Company's federal income tax return, or the determination, protest, adjustments, or adjudication of any federal or state income tax liability of any Member resulting from the Company.

10.4  **VOTING RIGHTS**.  Members shall have the right to approve or disapprove matters as specifically stated in this Agreement, including the following:

(a)  ***Approval by Members Holding a Majority Interest.***  Except as specifically set forth otherwise in this Company Agreement, in all other matters in which a vote, approval or consent of the Members is required, a vote, consent or approval of Members holding a Majority Interest - fifty-one percent (51%) (or, in instances in which there are defaulting members, non-defaulting Members who hold a majority interest fifty-one percent (51%) of the Percentage Interests held by all non-defaulting Members) shall be sufficient to authorize or approve the following acts:

(i)  The transfer of a Member's Percentage Interest in the Company, except as set forth in Section 13.

(ii)  The admission of an Assignee as a Substitute Member, except as set forth in Section 13.

(iii)  Any amendment of the Articles or this Agreement.

(iv)  A decision to compromise the obligation of a Member to make a Capital Contribution or return money or property paid or distributed in violation of the Act.

(v)  A change in the nature of the Company Business.

(vi)  The merger of the Company with another limited liability company, partnership, or corporation.

(vii)  The withdrawal from the Company of a Member.

(viii)  A decision to borrow or lend money, execute any mortgage, security agreement, or bond.

(ix)  A decision to sell any real or personal property of the Company.

## SECTION 11
### Meetings of Members

11.1  **DATE, TIME AND PLACE OF MEETINGS.**  Meetings may be held at such date, time and place within or without the State of Missouri as the Members may fix from time to time.  No annual or regular meetings are required.  At all meetings, a person shall be appointed to preside at the meeting and a person shall be appointed to act as secretary of the meeting.  The secretary of the meeting shall prepare minutes of the meeting which shall be placed in the minute books of the Company.

11.2  **POWER TO CALL MEETINGS.**  Unless otherwise prescribed by the Act or by the Articles, meetings of the Members may be called by any Member.

11.3  **NOTICE OF MEETING.**  Written notice of a meeting of Members shall be sent or otherwise given to each Member, in accordance with Section 18  not less than ten (10) days nor more than sixty (60) days before the date of the meeting.  The notice shall specify the place, date and hour of the meeting and the general nature of the business to be transacted.

11.4  **QUORUM.**  The presence in person or by proxy of the holders of a Majority Interest fifty-one percent (51%) shall constitute a quorum at a meeting of Members.

11.5  **ADJOURNED MEETING; NOTICE.**  Any Members' meeting, whether or not a quorum is present, may be adjourned from time to time by the vote of the majority of the Percentage Interests represented at that meeting, either in person or by proxy, without further notice.

11.6  **WAIVER OF NOTICE OR CONSENT.**  The actions taken at any meeting however called and noticed, and wherever held, have the same validity as if taken at a meeting duly held after regular call and notice, if a quorum is present either in person or by proxy, and if, either before or after the meeting, each of the Members entitled to vote, who was not present in person or by proxy, signs a written waiver of notice or consent to the holding of the meeting or approves the minutes

of the meeting.  All such waivers, consents or approvals shall be filed with the Company records or made a part of the minutes of the meeting.

Attendance of a person at a meeting shall constitute a waiver of notice of that meeting, except when the person objects, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened, and except that attendance at a meeting is not a waiver of any right to object to the consideration of matters not included in the notice of the meeting if that objection is expressly made at the meeting.  Neither the business to be transacted nor the purpose of any meeting need be specified in any written waiver of notice.

11.7   **ACTION BY WRITTEN CONSENT WITHOUT A MEETING.**  Any action which may be taken at a meeting may be taken without a meeting, if a consent in writing setting forth the action so taken is signed by all Members.  Such written consent shall be effective when given by telegram, telex, telecopy or other means of electronic communication and delivered to the Members or the secretary, if any, of the Company.  All such consents shall be maintained in the Company records.

11.8   **TELEPHONIC PARTICIPATION AT MEETINGS.**  Members may participate in any Members' meeting through the use of any means of conference telephones or similar communications equipment as long as all participants can hear one another.  A Member so participating is deemed to be present in person at the meeting.

11.9   **PROXY.**  A Member may, by written notice given to the other Members, appoint a substitute to act on its behalf and in its place at any meeting of the Members.  Such substitutes shall have all power of the absent Member and references herein to "Member" shall be deemed to include such substitutes.

## SECTION 12
## Other Business Ventures

12.1   It is expressly understood that any Member may engage in any other businesses, investments or professions, and neither the Company nor any other Member shall have any rights in and to said other businesses, investments, or professions, or the income or profits derived therefrom by reason of this Agreement.  The fact that a Member, or a person or entity affiliated with such Member, is directly or indirectly interested in or connected with any person, firm or corporation with which the Company has business dealings or with any person who is employed by the Company to render services shall not prohibit the Company from dealing with such person or employing such person, and neither the Company nor the other Members thereof shall have any right to any income or profits derived by such a person therefrom.

## SECTION 13
## Transfer or Pledge of Company Interests

13.1   **RESTRICTIONS ON TRANSFER.**  No Member shall have the right to sell, transfer, encumber or otherwise dispose of all or any part of his interest in the Company, even though such proposed assignment, encumbrance or creation of beneficial interest would not involve a substitution of a new person or entity as a Member under this Company Agreement, without the written consent of fifty-one percent (51%) of <u>all</u> Members.  In addition, upon the written consent of fifty-one percent (51%) of all Members, a Member shall have the right to encumber or pledge his interest in the Company to secure financing, but said encumbrance or pledge is subject to all of the terms and

conditions of this Agreement and shall not be further encumbered or pledged without the written consent of fifty-one percent (51%) of all Members.

## SECTION 14
## Withdrawal of Members

14.1    No Member may withdraw from the Company, except upon the written consent of fifty-one percent (51%) of all Members.

## SECTION 15
## No Dissolution Upon Withdrawal or Transfer

15.1  Notwithstanding anything to the contrary in this Company Agreement, neither the withdrawal of a Member pursuant to Section 14.1, nor the sale or transfer of any Member's interest in the Company and the ensuing withdrawal from the Company of such Member pursuant thereto, shall cause the dissolution of the Company, provided that the following conditions are satisfied: (a) after such event, at least one (1) Member remains in the Company; and (b) after such event, all remaining Members, including any Substitute Member, elect to continue the Company Business.

## SECTION 16
## Dissolution and Liquidation of the Company

16.1    **DISSOLUTION EVENT.**  The Company shall be dissolved upon the first to occur of the following events:

      (a)      The expiration of the stated term of the Company;

      (b)      The written election of all of the Members;

      (c)      The sale of all or substantially all of the assets of the Company;

      (d)      As otherwise provided by operation of law;

      (e)      The withdrawal from the Company of any Member, except as provided in Section 15.1; or

      (f)      The election to dissolve made by a majority (fifty-one percent 51%) of the Percentage Interests held by all non-defaulting Members pursuant to Section 5.3(b).

The Members specifically agree that the death of one of the Members shall not be a dissolution event. The Members have entered into a separate agreement with governing provisions in the event of the death of a Member.

16.2    **DISSOLUTION.**  Upon the dissolution of the Company, the Company shall be terminated and the Members shall take full account of the Company's assets and liabilities.  The receivables of the Company shall be collected, and its assets shall be liquidated as promptly as is consistent with obtaining the fair value thereof.  Upon dissolution, the Company shall engage in no further business thereafter other than that necessary to operate the Company Business on an interim basis, collect its receivables and liquidate its assets.

16.3   **LIQUIDATION.**  Upon dissolution, the proceeds of the liquidation of the assets of the Company and the collection of its receivables together with assets distributed in kind shall be applied and distributed as follows, and in the following order of priority:

(a)   To the payment and discharge of all of the Company's debts and liabilities to persons other than Members;

(b)   To debts owing to the Members including debts arising from loans and advances made to or for the benefit of the Company, except that if the amount of such proceeds is insufficient to pay such debts in full, payment shall be made on a pro rata basis;

(c)   To each Member in the ratio that his Capital Account bears to the aggregate Capital Accounts of all Members.

16.4   **FURTHER ASSURANCES.**  The Members shall execute all such instruments for facilitating the collection of the Company receivables and the liquidation of Company assets and for the mutual indemnity and release of the Members as may be requisite or proper.

## SECTION 17
### Indemnity

17.1   Except with respect to an act or omission which constitutes gross negligence or willful misconduct, breach of fiduciary duty, or breach of any representation, warranty, or covenant contained in this Company Agreement, the doing of any act or the failure to do any act by any Member, which results in loss and damages to the Company, if done in good faith pursuant to advice of legal counsel employed by the Company or if done in good faith to promote the best interests of the Company, shall not subject such Member to any liability or accountability to the Company or the other Members, and the Company shall defend any litigation against the Member arising out of the doing of such act or the failure to do such act and shall indemnify and hold such Member harmless from and against any loss, damage, liability, and expenses, including costs and reasonable attorneys' fees, which he may incur as a result thereof.  Each Member shall indemnify and hold harmless the Company and the other Members, and each of them, from and against any and all loss, damage, liability, and expense, including costs and reasonable attorneys' fees, to which they, or any of them, may be put or which they may incur by reason of or in connection with the gross negligence or willful misconduct of the indemnifying Member or the indemnifying party's breach of fiduciary duty or breach of any representation, warranty, or covenant contained in this Company Agreement.

## SECTION 18
### Notices

18.1   All notices of meetings, demands and communications of any kind which any Member may be required or may desire to serve upon any other Member under the terms of this Company Agreement shall be in writing and shall be given either personally or by first-class mail or telegraphic or other written communication, charges prepaid, addressed to the Member at the address of that Member appearing on the books of the Company or as given by the Member to the Company for the purpose of notice.  If no such address appears on the Company's books or is given, notice shall be deemed to have been given if delivered personally or sent to that Member by first-class mail or telegraphic or other written communication to the Member's principal executive office or place of employment.  Notice shall be deemed to have been given at the time when delivered personally or deposited in the mail or sent by telegram or other means of written communication.

## SECTION 19
## General Provisions

19.1    **ENTIRE AGREEMENT.**  This Agreement is the entire agreement between the Members with respect to the subject matter hereof and supersedes all prior agreements between them with respect thereto.

19.2    **AMENDMENTS.**  The Agreement may not be altered or amended except by a written agreement duly executed by all of the Members of the Company.

19.3    **SUCCESSORS AND ASSIGNS.**  The provisions of this Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, executors, administrators, legal representatives, successors and assigns, subject, however, to the provisions regarding assignment hereinabove set forth.

19.4    **COUNTERPARTS.**  This Agreement may be executed in several counterparts, each of which shall be deemed an original, and said counterparts shall together constitute but one and the same agreement, binding upon all of the parties hereto, notwithstanding that all of the parties are not signatory to the original or the same counterpart.

19.5    **HEADINGS.**  The headings of the paragraphs of this Agreement are inserted solely for convenience of reference, and in no way define, describe, limit, extend or aid in the construction of the scope, extent or intent of this Agreement or of any term or provision hereof.

19.6    **CONTEXT.**  Where the context so requires, the use of the masculine gender shall include the feminine and/or neuter genders and the singular shall include the plural, and vice versa.

19.7    **WAIVER OF RIGHT TO PARTITION.**  Each of the parties hereto irrevocably waives during the term of the Company and during any period of winding up and dissolution of the Company any right that he may have to maintain any action for partition with respect to any asset of the Company or to compel any sale thereof under any statute, common law or other means not provided in this Agreement.

19.8    **SEVERABILITY.**  In the event any provision of this Agreement is deemed by any agency of the United States of America or the State of Missouri, or by any court of law, to be a violation of any law, regulation, or decision of the United States or the State of Missouri, such provision shall be deemed void and of no effect, and if the basis of the bargain of this Agreement is not thereby destroyed, such invalidity, illegality, or unenforceability shall not affect the remainder of this Agreement, which shall be and remain in full force and effect, enforceable in accordance with its terms.

19.9    **GOVERNING LAW.**  This Agreement is to be governed by and construed in accordance with the laws of the State of Missouri.

19.10   **NO WAIVERS.**  The failure of either party to enforce at any time or for any period of time the provisions of this Agreement shall not be construed as a waiver of such provision or of the right of such party thereafter to enforce each and every such provision of this Agreement.

19.11   **ARBITRATION.**  The parties desire to avoid and settle without litigation future disputes which may arise between them relative to this Agreement.  Accordingly, the parties agree to engage in good-faith negotiations to resolve any such dispute.  In the event they are unable to resolve any such dispute by negotiation, then such dispute concerning any matter whose arbitration

is not prohibited by law at the time such dispute arises shall be submitted to arbitration in accordance with the Arbitration Rules of the American Arbitration Association (hereinafter "Rules") then in effect, and the award rendered by the arbitrators shall be binding as between the parties and judgment on such award may be entered in any court having jurisdiction thereof.

Three (3) neutral arbitrators shall be appointed by the American Arbitration Association, and at least one (1) of such arbitrators shall be an attorney-at-law, and all decisions and awards shall be made by a majority of them, except for decisions relating to discovery and disclosures as set forth herein. Notice of a demand for arbitration of any disputes subject to arbitration by one party shall be filed in writing with the other party and with the American Arbitration Association. The parties agree that after any such notice has been filed, they shall, before the hearing thereof, make discovery and disclosure of all matters relevant to such dispute, to the extent and in the manner provided by the Federal Rules of Civil Procedure. All questions that may arise with respect to the obligation of discovery and disclosure and the protection of the disclosed and discovered material shall be referred to a single arbitrator who shall be an attorney-in-fact and one of the three neutral arbitrators appointed for determination, and his determination shall be final and conclusive. Discovery and disclosure shall be completed no later than ninety (90) days after filing of such notice of arbitration, unless extended by such single arbitrator upon a showing of good cause by either party to the arbitration. The arbitrators may consider any material which is relevant to the subject matter of such dispute, even if such material might also be relevant to an issue or issues not subject to arbitration hereunder. A stenographic record shall be made of any arbitration hearing. The parties shall share equally the cost of arbitration. This Agreement shall be construed, and the legal relations between the parties hereto shall be determined, in accordance with the substantive law of the State of Missouri.

THIS AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES.

IN WITNESS WHEREOF, the members hereto have executed this Agreement this ____day of _____, 2020.


Agreed to and accepted:



By_____
   **Alexander   Koziakov,   Managing   Member**

**EXHIBIT A**

**Initial Contributions**

| Member | Initial Capital Contribution and Value | Interests |
|---|---|---|
| Alexander Koziakov TOD Alina Zilberberg | | 100% |

**EXHIBIT A.1**

Itemization of Initial Contributions and Corresponding Values

1118 Lafayette Street, St. Joseph, Missouri  64507

EXHIBIT O

# Passport Ordinance (1979: 664)

# The Passport Ordinance

Latest amendment: until SFS 2020: 886, the constitutional text is changed when the amendment enters into force.

# Regular passport

## Passport application

§ 1

The passport application must be made in writing and signed by the applicant in the presence of the person receiving it. The requirement for the application to be signed does not apply to those who cannot write their name.

The following documents must be submitted together with the application.

1. Previously issued and still valid passport for the applicant, if it has not been destroyed or lost. If the passport has been destroyed or lost, the application must provide information on honor and conscience about how it happened and, in cases where the passport has been lost, about what measures have been taken to recover it. If, for special reasons, the applicant needs the previous passport during the processing time, it does not need to be submitted until the new passport is handed out.

2. For children under the age of eighteen, a document proving information about who is the guardian, if this information does not appear from the information available to the passport authority.

3. Consent of the custodian, if such is to be given in accordance with **section 7 ( 2 ) of the** Passport Act (1978: 302).

The applicant is obliged to prove in a reliable manner his identity in connection with the application.

Lag ( **2009: 386** )

§ 2

For children under the age of six and persons who for physical reasons are permanently prevented from leaving fingerprints, an exemption from the obligation in **section 6,** second

paragraph 1 of the Passport Act (1978: 302) to allow the passport authority to take the applicant's fingerprints applies.

Lag ( **2009: 386** )

## Passport obstacle examination etc.

§ 3

The passport authority shall examine whether there are obstacles in accordance with the Passport Act ( **1978: 302** ) against a passport being issued to the applicant. When the case is handled by a passport authority outside the country, the Police Authority shall, at the request of that authority, check whether there is any circumstance referred to in **§ 7** 3– 11, **7 a** , **7 b** or **§ 10 of the** Passport Act in respect of the applicant.

If a passport case concerns the issuance of a passport for a child under the age of eighteen without the guardian's consent, the passport authority shall obtain an opinion from such a municipal board that fulfills tasks within the social services. The opinion must be obtained from the municipality where the child is registered or, if the child is not registered, the municipality to which the child has the strongest connection. However, an opinion does not need to be obtained if it is obvious that the passport application must be approved.

A passport case concerning the issuance of a passport for children under the age of eighteen without the guardian's consent in accordance with **section 11,** second paragraph of the Passport Act, shall be handled promptly by the passport authority.

If the passport obstacle investigation reveals any circumstance that causes notification to be given in accordance with **section 8 of the** Passport Act, that notification must be made in accordance with **section 10,** second paragraph of the same law or that some other preparatory action must be taken, it must be done urgently. A passport authority outside the country can for such a purpose receive help from the Government Offices (Ministry of Foreign Affairs).

If there are reasons for rejecting the passport application in accordance with **section 7** of the Passport Act, the passport authority shall obtain an opinion from the relevant prosecuting authority before the case is decided.

Lag ( **2020: 488** )

3 a §

If there are passport obstacles pursuant to **section 7,** 8, 9 or 10 of the Passport Act (1978: 302) and the passport authority is considering issuing a passport pursuant to section 9, the authority shall obtain an opinion and the information that may be relevant to the assessment from the authority referred to in **21 § of the** Passport Act or, in the case of a

person undergoing forensic psychiatric care with a special discharge examination, from the chief physician concerned.

For those who undergo forensic psychiatric care with a special discharge examination, the passport authority must also obtain a decision regarding permission to stay outside the area of the health care institution for a certain part of the care period according to **section 10,** first paragraph of the Forensic Psychiatric Care Act (1991: 1129).

Lag ( **2015: 490** )

## Period of validity

§ 4

An ordinary passport shall in the following cases be given a shorter period of validity than that specified in **section 3,** second paragraph, first sentence of the Passport Act (1978: 302):

1.  When the passport is issued for applicants who can be assumed to lose their Swedish citizenship. Such a passport shall be valid only at the time when the applicant can be expected to lose his citizenship.

2.  When a passport permit has stipulated that passports for the applicant may only be issued with a limited period of validity. In such a case, the passport shall be given the period of validity prescribed in the permit.

Lag ( **2005: 659** )

§ 5

[Repealed by F (2005: 659).]

Lag ( **2005: 659** )

# Special pass

## Fit types

§ 6

In addition to what is stated in **section 3,** third paragraph, first sentence of the Passport Act (1978: 302), a special passport may be issued as a provisional travel document in accordance with the Regulation ( **1997: 698** ) on the European Union's provisional travel document.

Lag ( **2016: 136** )

§ 7

[Repealed by F (2005: 659).]

Lag ( **2005: 659** )

§ 8
[Repealed by F (2005: 659).]

Lag ( **2005: 659** )

§ 9
[Repealed by F (2005: 659).]

Lag ( **2005: 659** )

§ 10
[Repealed by F (2005: 659).]

Lag ( **2005: 659** )

## Temporary passport

§ 11
A temporary passport may, in addition to what is stated in **section 7 a,** second paragraph and section **7 b,** second paragraph, of the Passport Act (1978: 302), be issued

1.   by passport authority within Sweden, if the applicant needs an passport immediately for a trip,

2.   by passport authority outside Sweden

   a.   for applicants who cannot prove their Swedish citizenship or have lost it without acquiring citizenship in another state,

   b.   when there are other special reasons for issuing a temporary passport.

Passports issued for direct travel to Sweden on the basis of **section 11 of the** Passports Act shall be issued as provisional passports.

Lag ( **2020: 488** )

§ 12
A passport authority outside the country may, in the case of a temporary passport, allow the appointment to be made by a representative of the authority or, if there are special reasons, waive the requirement for a personal appointment.

What is prescribed in §§ 1 and 3 also applies in the case of a temporary passport with the following exceptions.

1.   Previously issued passports do not need to be submitted with the application.

2.  Passport authorities outside the country do not need to request control referred to in section 3, first paragraph.

The Government Offices (Ministry of Foreign Affairs) may, for passport authorities outside the country, issue regulations that the applicant must write his or her name in the passport form in connection with the issuance of the passport and in the presence of the person issuing the passport. The police authority may issue corresponding regulations regarding passports issued within the country. However, the regulations may not apply to those who cannot write their name.

Lag ( **2014: 1130** )

### 12 a §

For temporary passports, an exception applies from the obligation in **section 6,** second paragraph 1 of the Passport Act (1978: 302) to allow the passport authority to take the applicant's fingerprints.

For temporary passports issued by a passport authority outside the country, an exception to the obligation in the same section applies to allow the passport authority to take a picture in digital format of the applicant's face. When applying for a temporary passport with a passport authority outside the country, a good-looking photograph of the applicant must instead be submitted in duplicate.

Lag ( **2009: 386** )

### § 13

A temporary passport may be issued to be valid for the time the applicant needs such a passport. However, the period of validity may not exceed seven months. The validity of the passport must be limited to the applicant's need for a passport. If the reasons for issuing the passport have ceased, the passport must be taken care of by a passport authority.

Lag ( **2016: 136** )

### Extra pass

### § 14

Extra passports may be issued to those who hold a regular passport and who for their work or for other special reasons need more than one valid passport.

Lag ( **2005: 659** )

### § 15

In cases concerning the issuance of extra passports, **Sections 1–3** apply in applicable parts. When applying for a passport, a written statement must be submitted by the

applicant or his employer regarding the circumstances that give rise to the need for an extra passport.

## § 16

Extra passports may be issued to be valid for the period during which the need for this can be expected to exist, but not with a longer validity period than that which applies to the passport holder's ordinary passport.

Lag ( **2005: 659** )

## Service passports and diplomatic passports

The title has this wording according to **Lag 2005: 659**

## 17 §

Passports and diplomatic passports may only be issued by the head of the Ministry for Foreign Affairs or the person he or she authorizes to do so. What is prescribed in **sections 18−22** , **24** , **25** and **27** does not apply to such a passport.

In cases concerning service passports and diplomatic passports, a check may be made of whether there is any such obstacle as referred to in **§ 7 §** 3−11, **7 a** and **7 b §§ of the** Passport Act (1978: 302) against issuing passports for the applicant. The police authority shall carry out such a check at the request of the Government Offices (Ministry of Foreign Affairs).

Lag ( **2020: 488** )

# Common provisions

## Passport permit

## § 18

Myndighet, som enligt **21** eller **22 §** passlagen (1978:302) prövar frågan om passtillstånd, skall ta upp sådan fråga på ansökan av den som saken rör eller på anmälan från passmyndighet enligt **10 §** andra stycket passlagen.

Beslut i ärende om passtillstånd skall meddelas skyndsamt. Har beslutet föranletts av anmälan från passmyndighet, skall en avskrift av beslutet översändas till passmyndigheten. Går beslutet sökanden emot, skall avskriften dock översändas först sedan beslutet har vunnit laga kraft.

Vad som föreskrivs i andra stycket gäller i tillämpliga delar även i fråga om avgörande som meddelas med anledning av besvär över beslut i ärende om passtillstånd.

Lag (**1981:257**)

**19 §**

Anmälan av chefsöverläkare enligt **20 §** 1 passlagen (1978:302) ska göras till Polismyndigheten. Chefsöverläkaren ska återkalla anmälan om de omständigheter som har föranlett den inte längre finns.

Lag (**2014:1130**)

## Utfärdande och utlämnande av pass m.m.

Rubriken har denna lydelse enl. **Lag 2005:659**

**20 §**

Pass utfärdas enligt ett särskilt formulär.

Lag (**1997:1202**)

**21 §**

Ett pass skall så snart som möjligt efter utfärdandet lämnas ut till sökanden personligen. När pass skall lämnas ut av passmyndighet utom riket, kan myndigheten medge att det sker hos ombud för myndigheten.

Lag (**1997:1202**)

**22 §**

När en passmyndighet utom riket har tagit emot en ansökan om pass, ska ett exemplar av ansökningsblanketten tillsammans med ett fotografi snarast sändas till Polismyndigheten.

Lag (**2014:1130**)

**22 a §**

En passinnehavare har rätt att hos en passmyndighet kontrollera den information som har sparats i lagringsmediet i passet.

Lag (**2005:659**)

## Register m.m.

Rubriken har denna lydelse enl. **Lag 1979:921**

**23 §**

Polismyndigheten ska föra ett passregister och ett register över omständigheter som avses i **20 §** 1 och 3 passlagen (1978:302).

Polismyndigheten ska på begäran lämna ut ett fotografi av en enskild från passregistret till Säkerhetspolisen, Ekobrottsmyndigheten, en svensk ambassad, ett svenskt lönat konsulat, Försvarsmakten, Kustbevakningen, Tullverket, Skatteverket och Kronofogdemyndigheten.

Passregistret får innehålla sådana uppgifter i fråga om utreseförbud och tillfälligt utreseförbud som har lämnats till Polismyndigheten enligt 23 c §.

Lag (**2020:488**)

### 23 a §

När en domstol eller en åklagare meddelar beslut om reseförbud eller anmälningsskyldighet enligt **25 kap. 1 §** rättegångsbalken eller upphäver ett sådant beslut, ska en kopia av beslutet genast skickas till Polismyndigheten. Myndigheten ska också genast underrättas när reseförbudet eller anmälningsskyldigheten upphör med anledning av anhållande eller häktning.

Har en domstol i samband med dom meddelat beslut om reseförbud eller anmälningsskyldighet enligt **25 kap. 1 §** rättegångsbalken eller beslutat att en sådan åtgärd ska bestå, ska domstolen även lämna uppgift till Polismyndigheten när domen fått laga kraft.

I förordningen (**2015:488**) om erkännande och uppföljning av beslut om övervakningsåtgärder inom Europeiska unionen finns bestämmelser om underrättelse till Polismyndigheten om vissa beslut enligt lagen (**2015:485**) om erkännande och uppföljning av beslut om övervakningsåtgärder inom Europeiska unionen.

Lag (**2015:490**)

### 23 b §

När rätten enligt konkurslagen (**1987:672**) har meddelat beslut om skyldighet för gäldenären eller någon annan att lämna ifrån sig sitt pass eller om förbud att utfärda pass eller har upphävt ett sådant beslut, ska rätten genast skicka en kopia av beslutet till Polismyndigheten.

Om rätten enligt **6 kap. 8 §** konkurslagen beslutar att den berörde ska återfå passet, ska rätten underrätta Polismyndigheten om beslutet.

Lag (**2014:1130**)

### 23 c §

En sådan kommunal nämnd som fullgör uppgifter inom socialtjänsten eller en domstol ska till Polismyndigheten genast skicka en kopia av ett beslut som har meddelats om

1.   utreseförbud enligt **31 a §** lagen (1990:52) med särskilda bestämmelserom vård av unga,

2.   tillfälligt utreseförbud enligt **31 d §** samma lag,

3.   tillfälligt undantag från ett utreseförbud enligt **31 i §** samma lag, eller

4.　　att ett utreseförbud eller ett tillfälligt utreseförbud har upphört enligt **31 c** eller **31 g §** samma lag eller skicka information om att ett sådant beslut i annat fall har upphört.

Lag (**2020:488**)

## Återkallelse av pass m.m.

### 24 §

Om det finns omständigheter som enligt **24 §** första stycket passlagen (1978:302) bör medföra att framställning görs om att ett pass skall återkallas för den som avtjänar fängelsestraff eller står under övervakning efter dom på skyddstillsyn eller villkorlig frigivning från fängelse, skall Kriminalvården göra anmälan om det till övervakningsnämnden. På motsvarande sätt skall chefsöverläkare göra anmälan till Socialstyrelsen, om ett pass bör återkallas för en sådan patient som avses i **24 §** andra stycket passlagen.

Framställning om passåterkallelse som har beslutats av en övervakningsnämnd eller Socialstyrelsen skall, sedan beslutet har vunnit laga kraft, översändas till passmyndigheten. Om det finns risk för att passinnehavaren reser ut ur landet innan beslutet har vunnit laga kraft, skall passmyndigheten omedelbart underrättas om beslutet. Det gäller också i fråga om en sådan framställning som avses i **25 §** passlagen.

Lag (**2005:1000**)

### 25 §

Passmyndighet, som enligt **16 §** passlagen (1978:302) är behörig att besluta i ärende om återkallelse av pass eller begränsning av giltighet för pass, skall skyndsamt ta upp sådant ärende, om myndigheten får kännedom om omständighet som avses i **12 §** passlagen eller framställning hos myndigheten görs enligt **24** eller **25 §** samma lag. Är även annan passmyndighet behörig, skall den myndigheten underrättas om att ärendet har tagits upp.

### 26 §

[Upphävd g. F (2009:386).]

Lag (**2009:386**)

### 26 a §

Om det finns skäl att återkalla ett pass enligt **12 §** första stycket 5, 6 eller 7 passlagen (1978:302) och passmyndigheten överväger att i stället vidta någon åtgärd enligt **14 §** [1], skall myndigheten inhämta yttrande samt de upplysningar som kan vara av betydelse för frågans bedömning från den myndighet som avses i **21 §** passlagen eller, i fråga om den som genomgår rättspsykiatrisk vård med särskild utskrivningsprövning, från berörd chefsöverläkare.

1)

Torde vara *14 § samma lag*

För den som genomgår rättspsykiatrisk vård med särskild utskrivningsprövning skall passmyndigheten även inhämta beslut i fråga om tillstånd att under viss del av vårdtiden vistas utanför sjukvårdsinrättningens område enligt **10 §** första stycket lagen (1991:1129) om rättspsykiatrisk vård.

Lag (**2005:659**)

## Indragning av pass

### 27 §

En passmyndighet får dra in ett förslitet, trasigt eller obehörigen ändrat pass eller ett pass som innehåller uppenbar felskrivning. Innehavaren är i sådana fall berättigad att utan avgift få ett nytt pass av samma slag som det indragna med det indragna passets återstående giltighetstid, dock inte med längre giltighetstid än fem år.

Lag (**2014:1130**)

## Makulering av pass

### 28 §

En passmyndighet ska makulera ett gällande pass

1.   om passet har återkallats eller dragits in,

2.   när innehavaren ansöker om ett nytt pass av annan typ än provisoriskt pass eller extra pass eller, om han eller hon av särskilda skäl har behov av det tidigare passet under handläggningstiden, när det nya passet lämnas ut.

Lag (**2014:1130**)

### 28 a §

Regeringskansliet får besluta i vilken utsträckning beskickningar och karriärkonsulat ska fullgöra uppgifter som passmyndighet.

Regeringskansliet får också besluta att ett honorärkonsulat i begränsad utsträckning ska fullgöra uppgifter som passmyndighet.

Lag (**2008:383**)

# Bemyndiganden

### 29 §

Polismyndigheten får, efter att ha hört Regeringskansliet (Utrikesdepartementet), meddela ytterligare föreskrifter om verkställigheten av passlagen (**1978:302**) och denna förordning

när det gäller pass som utfärdas inom riket. Regeringskansliet får, efter att ha hört Polismyndigheten, meddela motsvarande föreskrifter för passmyndigheter utom riket.

Regeringskansliet får i enskilda fall besluta om avvikelse från denna förordning, när det på grund av särskilda förhållanden är nödvändigt.

Lag (**2014:1130**)

# Avgifter

Rubriken införd g. **Lag 1992:210**

30 §

För prövning av ansökan enligt denna förordning ska den sökande betala en ansökningsavgift enligt följande:

| *Ärendeslag* | *Ansökningsavgift* |
|---|---|
| Vanligt pass | 400 kronor |
| Provisoriskt pass | 980 kronor |
| Extra pass | 400 kronor |
| Tjänstepass eller diplomatpass för andra än anställda i Regeringskansliet och vid Styrelsen för internationellt utvecklingssamarbete (Sida) samt deras familjemedlemmar | 2 300 kronor |

För prövning av ansökan gäller i övrigt bestämmelserna i **11–14 §§** avgiftsförordningen (1992:191).

För pass som utfärdas vid passmyndighet utom riket tas avgift ut enligt förordningen (**1997:691**) om avgifter vid utlandsmyndigheterna.

För prövning av ansökan om provisoriskt pass med stöd av **7 a §** andra stycket passlagen (1978:302) ska ingen ansökningsavgift tas ut.

Lag (**2020:886**)

# Ikraftträdande- och övergångsbestämmelser

## SFS 1979:0664

Denna förordning träder i kraft d. 1 jan. 1980, då brevet d. 17 mars 1950 till statens kriminaltekniska anstalt angående utfärdande av dubbla pass för utrikes resa och

kungörelsen (1968:273) om upptagande av vissa flyktingar och statslösa personer i kollektivpass skall upphöra att gälla.

**SFS 1981:0257**
Denna förordning träder i kraft d. 1 juli 1981.

**SFS 1981:1309**
Denna förordning träder i kraft d. 1 jan. 1982.

**SFS 1987:0927**
Denna förordning träder i kraft d. 1 jan. 1988.

**SFS 1989:0769**
1. Denna förordning träder i kraft d. 1 okt. 1989.

2. Äldre föreskrifter tillämpas dock vid passmyndigheter inom riket i den mån dessa saknar möjlighet att tillföra det centrala passregistret uppgifter om utfärdande av pass från terminal.

**SFS 1991:0820**
Denna förordning träder i kraft d. 1 juli 1991.

**SFS 1991:1970**
Denna förordning träder i kraft d. 1 jan. 1992.

**SFS 1997:0699**
Denna förordning träder i kraft d. 1 nov. 1997.

**SFS 1997:1202**
Denna förordning träder i kraft d. 1 jan. 1998.

**SFS 1999:1158**
Denna förordning träder i kraft d. 1 jan. 2000.

**SFS 2001:0011**
Denna förordning träder i kraft d. 1 mars 2001.

**SFS 2003:0929**
Denna förordning träder i kraft d. 1 jan. 2004.

**SFS 2004:0510**
Denna förordning träder i kraft d. 1 juli 2004.

**SFS 2004:1255**
Denna förordning träder i kraft d. 1 febr. 2005.

**SFS 2005:0659**
1. Denna förordning träder i kraft d. 1 okt. 2005.

2. Provisoriskt pass, som har utfärdats enligt äldre bestämmelser och inte har återkallats, gäller fortfarande under den tid som anges i passet.

**SFS 2005:0682**

(Utkom d. 27 sept. 2005.)

**SFS 2005:1000**

Denna förordning träder i kraft d. 1 jan. 2006.

**SFS 2006:0435**

Denna förordning träder i kraft d. 1 juli 2006.

**SFS 2006:0763**

Denna förordning träder i kraft d. 1 juli 2006.

**SFS 2008:0383**

Denna förordning träder i kraft d. 1 juli 2008.

**SFS 2009:0386**

This Regulation shall enter into force on 28 June 2009.

**SFS 2011: 1121**

This regulation enters into force on 1 Jan. 2012.

**SFS 2014: 1130**

This regulation enters into force on 1 Jan. 2015.

**SFS 2015: 0490**

This regulation enters into force on 1 Aug. 2015.

**SFS 2016: 0136**

This Regulation shall enter into force on 15 April 2016.

**SFS 2020: 0488**

This Regulation shall enter into force on 1 July 2020.

**SFS 2020: 0886**

This regulation enters into force on 1 Jan. 2021

– – –

EXHIBIT P

**Query**    **Reports**    **Utilities**    **Help**    **Log Out**

CAT B,CLOSE

# U.S. District Court
## District of Columbia (Washington, DC)
## CRIMINAL DOCKET FOR CASE #: 1:19-cr-00373-TSC-1

Case title: USA v. NAIK                          Date Filed: 11/07/2019

Assigned to: Judge Tanya S. Chutkan

**Defendant (1)**

**LOKESH NAIK**                    represented by    **Celia Goetzl**
FEDERAL PUBLIC DEFENDER FOR
THE DISTRICT OF COLUMBIA
625 Indiana Avenue, NW
Suite 550
Washington, DC 20004
(202) 208-7500
Fax: (202) 208-7515
Email: celia_goetzl@fd.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or*
*Community Defender Appointment*

**Eugene Ohm**
FEDERAL PUBLIC DEFENDER FOR
THE DISTRICT OF COLUMBIA
625 Indiana Avenue, NW
Suite 550
Washington, DC 20004
(202) 208-7500
Fax: (202) 208-7515
Email: eugene_ohm@fd.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or*
*Community Defender Appointment*

**Michelle M. Peterson**
FEDERAL PUBLIC DEFENDER FOR
THE DISTRICT OF COLUMBIA
625 Indiana Avenue, NW
Suite 550
Washington, DC 20004
(202) 208-7500 ext 125
Fax: (202) 208-7515
Email: shelli_peterson@fd.org

*TERMINATED: 12/02/2019*
*Designation: Public Defender or*
*Community Defender Appointment*

| **Pending Counts** | **Disposition** |
|---|---|
| None | |

**Highest Offense Level (Opening)**

None

| **Terminated Counts** | **Disposition** |
|---|---|
| 18:2241; AGGRAVATED SEXUAL ABUSE; Aggravated Sexual Abuse. (1-2) | |
| 18:2244(a)(1); ABUSIVE SEXUAL CONTACT WITHOUT PERMISSION; Abusive Sexual Contact. (3) | |

**Highest Offense Level (Terminated)**

Felony

| **Complaints** | **Disposition** |
|---|---|
| None | |

| **Plaintiff** | | |
|---|---|---|
| **USA** | represented by | **Jay A. Bauer** |
| | | U.S. DEPARTMENT OF JUSTICE |
| | | Criminal Division, Human Rights and |
| | | Special Prosecutions |
| | | 1301 New York Ave., NW STE 200 |
| | | Washington, DC 20350 |
| | | (202) 353-0228 |
| | | Fax: (202) 305-4624 |
| | | Email: jay.bauer@usdoj.gov |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | *Designation: Assistant U.S. Attorney* |
| | | |
| | | **Peter V. Roman** |
| | | U.S. ATTORNEY'S OFFICE FOR THE |
| | | DISTRICT OF COLUMBIA |
| | | 555 Fourth Street, NW |
| | | Washington, DC 20530 |
| | | (202) 252-7115 |
| | | Email: peter.roman@usdoj.gov |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |

*Designation: Assistant U.S. Attorney*

**Amy Elizabeth Larson**
UNITED STATES ATTORNEY'S OFFICE
555 4th Street, NW
Washington, DC 20530
(202) 252-7863
Email: amy.larson2@usdoj.gov
*TERMINATED: 12/06/2019*
*Designation: Assistant U.S. Attorney*

**Andrea Lynn Hertzfeld**
U.S. ATTORNEY'S OFFICE FOR THE
DISTRICT OF COLUMBIA
555 Fourth Street, NW
Washington, DC 20530
(202) 252-7808
Fax: (202) 353-7634
Email: andrea.hertzfeld@usdoj.gov
*TERMINATED: 11/29/2019*
*Designation: Assistant U.S. Attorney*

| Date Filed | # | Docket Text |
|---|---|---|
| 11/07/2019 | 1 | SEALED INDICTMENT as to LOKESH NAIK (1) count(s) 1-2, 3. (zhsj) (Entered: 11/14/2019) |
| 11/08/2019 | | ORAL MOTION to Unseal Case by USA as to LOKESH NAIK. (zldc) (Entered: 11/15/2019) |
| 11/08/2019 | | ORAL MOTION for Speedy Trial Waiver, ORAL MOTION to Remand Defendant to Custody by USA as to LOKESH NAIK. (zldc) (Entered: 11/15/2019) |
| 11/08/2019 | | ORAL MOTION for Release from Custody by LOKESH NAIK. (zldc) (Entered: 11/15/2019) |
| 11/08/2019 | | ORAL MOTION for Temporary Detention by USA as to LOKESH NAIK. (zldc) (Entered: 11/15/2019) |
| 11/08/2019 | | Minute Entry for proceedings held before Magistrate Judge G. Michael Harvey: MEJA Pending Detention Hearing/Arraignment as to LOKESH NAIK (1) Count 1-2,3 held on 11/8/2019. This matter was held as a Video Telephone Conference. The Defendant is held in Afghanistan. Consulate Notification was given to the Defendant by the Court. Not Guilty Plea entered as to all counts. Oral Motion by the Government to Unseal this Entire Case was heard and granted by the Court. Oral Motion by the Government for Speedy Trial Waiver over the objection of the Defendant excluding time from 11/08/19-11/22/19 (14 days) as to LOKESH NAIK (1) heard and granted. Oral Motion by the Government to Remand Defendant for the Removal to the United States as to LOKESH NAIK (1) heard and granted. Oral Motion for Release from Custody by LOKESH NAIK (1) heard and denied. Detention Hearing set for 11/22/2019 at 01:45 PM in Courtroom 6 before Magistrate Judge G. Michael Harvey. Parties to call courtroom deputy to Judge Chutkan for Status Hearing date. Bond Status of Defendant: Defendant held without bond in Afghanistan; Court Reporter: Jeff Hooks; Defense Attorney: Michelle Peterson-Provisional Appointed (Standing in), Major Joshua Dimkoff (JAG Attorney) in Afghanistan- Court Appointed for this Hearing Only; US Attorney: Andrea Hertzfeld, Jay Bauer. (zldc) (Entered: 11/15/2019) |

| 11/08/2019 | 2 | ORDER FOR DETENTION PENDING REMOVAL as to LOKESH NAIK. Signed by Magistrate Judge G. Michael Harvey on 11/08/19. (zldc) (Entered: 11/15/2019) |
|---|---|---|
| 11/08/2019 | | Case unsealed by Magistrate Judge G. Michael Harvey as to LOKESH NAIK. (zhsj) (Entered: 11/15/2019) |
| 11/21/2019 | 3 | NOTICE OF ATTORNEY APPEARANCE: Eugene Ohm appearing for LOKESH NAIK *as Co-Counsel* (Ohm, Eugene) (Entered: 11/21/2019) |
| 11/21/2019 | 4 | MOTION for Temporary Detention *Pending Trial* by USA as to LOKESH NAIK. (Hertzfeld, Andrea) (Entered: 11/21/2019) |
| 11/21/2019 | 6 | MOTION for Issuance of Arrest Warrant and Removal of Defendant to the United by USA as to LOKESH NAIK. (See Docket Entry 4 to View Document). (hsj) (Entered: 11/22/2019) |
| 11/22/2019 | 5 | NOTICE OF ATTORNEY APPEARANCE Jay A. Bauer appearing for USA. (Bauer, Jay) (Entered: 11/22/2019) |
| 11/22/2019 | | ORAL MOTION to Appoint Counsel, JOINT ORAL MOTION to Continue Detention Hearing by LOKESH NAIK. (zldc) (Entered: 11/22/2019) |
| 11/22/2019 | | Minute Entry for proceedings held before Magistrate Judge G. Michael Harvey: Ascertainment of Counsel/Status Hearing as to LOKESH NAIK held on 11/22/2019. Case called for Detention Hearing but was not held. Oral Motion to Appoint Counsel as to LOKESH NAIK (1); Heard and Granted. Joint Oral Motion to Continue Detention Hearing as to LOKESH NAIK (1); Heard and Granted. Detention Hearing continued to 11/26/2019 at 01:45 PM in Courtroom 6 before Magistrate Judge G. Michael Harvey. Bond Status of Defendant: Defendant Committed/Commitment Issued; Court Reporter: FTR - Gold FTR Time Frame: Ctrm 6 [2:06:17-2:17:30]; Defense Attorney: Eugene Ohm; US Attorney: Jay Bauer, Andrea Hertzfeld; Pretrial Officer: Christine Schuck; (zldc) (Entered: 11/22/2019) |
| 11/22/2019 | | Arrest of LOKESH NAIK. (zldc) (Entered: 11/22/2019) |
| 11/22/2019 | 8 | Arrest Warrant Returned Executed on 11/18/19 as to LOKESH NAIK. (zldc) (Entered: 11/22/2019) |
| 11/26/2019 | 10 | Memorandum in Opposition by LOKESH NAIK re 4 MOTION for Temporary Detention *Pending Trial*, 6 MOTION for Arrest Warrant (Attachments: # 1 Exhibit)(Ohm, Eugene) (Entered: 11/26/2019) |
| 11/26/2019 | | Set/Reset Hearings as to LOKESH NAIK:Status Conference set for 12/6/2019 at 02:00 PM in Courtroom 9 before Judge Tanya S. Chutkan. (tb) (Entered: 11/26/2019) |
| 11/26/2019 | 11 | NOTICE *of Filing* by LOKESH NAIK (Ohm, Eugene) (Entered: 11/26/2019) |
| 11/26/2019 | | Minute Entry for proceedings held before Magistrate Judge G. Michael Harvey: Detention Hearing as to LOKESH NAIK held on 11/26/2019. Detention Hearing Continued by the Court. Detention Hearing continued to 11/27/2019 at 12:00 PM in Courtroom 6 before Magistrate Judge G. Michael Harvey. Bond Status of Defendant: Defendant Committed/Commitment Issued; Court Reporter: FTR-Gold; FTR Time Frame: Ctrm 6 [4:44:12-5:33:52]; Defense Attorney: Euguene Ohm; US Attorney: Jay Bauer, Amy Larson; Pretrial Officer: Christine Schuck; (zpt) (Entered: 11/27/2019) |
| 11/27/2019 | 12 | SUPPLEMENT 10 Memorandum in Opposition by LOKESH NAIK re 4 MOTION for Temporary Detention *Pending Trial. (Ohm, Eugene) Modified Text on 11/27/2019 (hsj). (Entered: 11/27/2019)* |

| 11/27/2019 | | Set/Reset Hearings as to LOKESH NAIK: A Bond Review Hearing is set for 11/27/2019 at 2:30 PM in Courtroom 9 before Judge Tanya S. Chutkan. (jth) (Entered: 11/27/2019) |
|---|---|---|
| 11/27/2019 | | ORAL MOTION to Commit Defendant to Custody of Attorney General by USA as to LOKESH NAIK. (zpt) (Entered: 11/27/2019) |
| 11/27/2019 | | ORAL MOTION for Release from Custody by LOKESH NAIK. (zpt) (Entered: 11/27/2019) |
| 11/27/2019 | | Minute Entry for proceedings held before Magistrate Judge G. Michael Harvey: Detention Hearing as to LOKESH NAIK held on 11/27/2019. Oral Motion by the Government to Commit Defendant to Custody of Attorney General as to LOKESH NAIK (1); Heard and Denied. Oral Motion for Release from Custody by LOKESH NAIK (1); Heard and Granted. Consulate Notification given to Defendant by the Government. Defendant was placed on Personal Recognizance/Third Party Custody but the Order was stayed per the Government's request. The parties went before Judge Tanya S. Chutkan on November 27th for the decision of Magistrate Judge G. Michael Harvey to be appealed. The Original paperwork "Order for Setting Conditions of Release" was given to Pretrial Services to be emailed to third party custodian, Mr. Thomas, for signature in Hinesville GA." Once received back from Pretrial, the documents will be filed. Bond Status of Defendant: Defendant Committed/Commitment Issued; Court Reporter: FTR-Gold FTR Time Frame: Ctrm 6 [12:14:40-12:32:13]; [12:35:47-1:45:11]; [2:13:57-2:15:57]; Defense Attorney: Euguene Ohm; US Attorney: Jay Bauer, Amy Larson; Prob Officer: Eugene Ohm; Pretrial Officer: John Copes; (zpt) Modified Text on 12/2/2019 (zpt). (Entered: 11/27/2019) |
| 11/27/2019 | | Minute Entry for proceedings held before Judge Tanya S. Chutkan: Bond Review Hearing as to LOKESH NAIK held on 11/27/2019. The Court Upholds the decision of the Magistrate Judge to allow Pretrial Release of the defendant under the conditions set by the Magistrate Judge with the following modified conditions: 1) the defendant may not leave Hinesville, GA without his 3rd Party Custodian (Mr. Thompson). He may only leave Hinesville, GA with the permission of the Court or to appear at a Court appearance. 2) the defendant may not apply for any international travel documents and he may not visit any consulate. 3) the defendant must immediately notify the Court and Pretrial Services of the address of the hotel where he will be living. 4) the defendant must call into and report to the Pretrial Services Agency every night. The Court ORDERS that any violations of defendant's conditions of release must be immediately reported to the Court and the parties. A Status Conference is set for 12/6/2019 at 2:00 PM in Courtroom 9 before Judge Tanya S. Chutkan. A representative from the Department of Homeland Security, Immigration and Customs Enforcement (DHS/ICE) must be present at the Hearing. The defendant will be allowed to participate by telephone for the Status Conference. Bond Status of Defendant: Defendant to be Released, Release Order to be Issued.; Court Reporter: Janice Dickman; Defense Attorney: Eugene Ohm; US Attorneys: Jay A. Bauer and Amy Larson; Pretrial Officer: John Copes. (jth) (Entered: 11/27/2019) |
| 11/29/2019 | 13 | NOTICE OF SUBSTITUTION OF COUNSEL as to USA. Attorney Larson, Amy Elizabeth added. Substituting for attorney Andrea L. Hertzfeld (Larson, Amy) (Entered: 11/29/2019) |
| 12/02/2019 | 14 | NOTICE OF SUBSTITUTION OF COUNSEL Attorney Goetzl, Celia added. Substituting for attorney Michelle Peterson (Goetzl, Celia) (Entered: 12/02/2019) |
| 12/03/2019 | 15 | ORDER Setting Conditions of Release with Global Positioning System Monitoring. Signed by Magistrate Judge G. Michael Harvey on 12/3/19. (Attachments: # 1 Appearance Bond) (zpt) (Entered: 12/03/2019) |
| 12/06/2019 | 17 | NOTICE OF SUBSTITUTION OF COUNSEL as to USA. Attorney Roman, Peter V. added. Substituting for attorney Amy E. Larson (Roman, Peter) (Entered: 12/06/2019) |

| | | |
|---|---|---|
| 12/06/2019 | | Minute Entry: Status Conference as to LOKESH NAIK held on 12/6/2019 before Judge Tanya S. Chutkan: Defendant's oral motion to waive the costs of electronic monitor; heard and GRANTED. All motions due by 1/3/2020; responses due seven (7) days after motions filed and replies are due seven (7) days thereafter. Jury Trial set for 2/3/2020 at 09:30 AM in Courtroom 9 before Judge Tanya S. Chutkan. Defendant appeared telephonically. Defendant continued in third-party custody. Court Reporter: Bryan Wayne; Defense Attorney: Eugene Ohm; US Attorney: Jay Bauer and Peter Roman. (tb) (Entered: 12/09/2019) |
| 12/19/2019 | | MINUTE ORDER as to LOKESH NAIK: Upon consideration of the request from the Pretrial Services Agency for the Southern District of Georgia regarding Defendants conditions of release, the court hereby clarifies his conditions of release consistent with the oral orders of this court at the Bond Review Hearing held on November 27, 2019, and Status Conference held on December 6, 2019: 1) The Defendant may not leave Hinesville, GA, without his third-party custodian (Mr. Thompson). He may only leave Hinesville, GA, with the permission of the Court or to appear at a Court appearance. 2) The Defendant may not apply for any international travel documents and he may not visit any consulate. 3) The Defendant must immediately notify the Court and Pretrial Services of the address of the hotel where he will be living. The Defendants third-party custodian is not required reside at the hotel with the Defendant. Pretrial Services is not permitted to provide third-party notice to the hotel regarding the Defendants temporary residence at the hotel. 4) The Defendant must call into and report to the Pretrial Services Agency every night. 5) The Defendant has no curfew or home detention order as part of his electronic monitoring. These conditions modify the release conditions initially set by Magistrate Judge Harvey on November 27, 2019. The Court ORDERS that any violations of defendant's conditions of release must be immediately reported to the Court and the parties. Additionally, as ordered on December 6, 2019, the Defendants costs of electronic monitoring are waived. SO ORDERED by Judge Tanya S. Chutkan on 12/19/2020. (tb) (Entered: 12/19/2019) |
| 12/19/2019 | 18 | MOTION to Travel by LOKESH NAIK. (Attachments: # 1 Text of Proposed Order)(Ohm, Eugene) (Entered: 12/19/2019) |
| 12/23/2019 | | MINUTE ORDER as to LOKESH NAIK: Granting in part and denying in part 18 Motion to Travel as to LOKESH NAIK (1). Defendant is permitted to travel with his third-party custodian to Augusta, Georgia, from December 28 through December 30, 2019; to travel with his third-party custodian to Savannah, Georgia, from December 23, 2019, to January 5, 2020, at his third-party custodian's discretion for the holidays; and to travel with his third-party custodian to Savannah, Georgia, for meetings with pretrial services and for shopping for necessities. Defendant is not permitted to travel with his third-party custodian for volunteer interviews or volunteering without further motion specifying the organization and nature of volunteering and order of this court. SO ORDERED by Judge Tanya S. Chutkan on 12/23/2019. (lcsd) (Entered: 12/23/2019) |
| 01/03/2020 | | MINUTE ORDER as to LOKESH NAIK. The Status Hearing in this case that was set for 1/3/2020 at 2:00 PM is reset for 1/6/2020 at 11:00 AM in Courtroom 9 before Judge Tanya S. Chutkan. Defendant will be allowed to participate by telephone. Defense Counsel is responsible for informing his Client of the new date and time of the Hearing. SO ORDERED. By Judge Tanya S. Chutkan on 1/3/2020. (jth) (Entered: 01/03/2020) |
| 01/03/2020 | 20 | MOTION in Limine *To Bar Evidence Under Rule 412* by USA as to LOKESH NAIK. (Bauer, Jay) (Entered: 01/03/2020) |
| 01/03/2020 | 21 | NOTICE *of DNA Expert Witness and Summary of Expert Testimony* by USA as to LOKESH NAIK (Attachments: # 1 DNA Report_Redacted, # 2 Keener CV_Redacted) (Bauer, Jay) (Entered: 01/03/2020) |
| 01/03/2020 | 22 | NOTICE *of Sexual Assault Expert Witness and Summary of Expert Testimony* by USA as |

District of Columbia live database

| | | |
|---|---|---|
| | | to LOKESH NAIK (Attachments: # 1 Dr. Valliere CV_Redacted)(Bauer, Jay) (Entered: 01/03/2020) |
| 01/06/2020 | 23 | MOTION to Suppress *Statements* by LOKESH NAIK. (Attachments: # 1 Text of Proposed Order)(Ohm, Eugene) (Entered: 01/06/2020) |
| 01/06/2020 | 24 | MOTION to Dismiss Case by LOKESH NAIK. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Text of Proposed Order)(Goetzl, Celia) (Entered: 01/06/2020) |
| 01/06/2020 | | Minute Entry: Status Conference as to LOKESH NAIK held on 1/6/2020 before Judge Tanya S. Chutkan: Oral motion by defendant for leave to file disposition today; heard and GRANTED. Defendant's disposition motion due by 1/6/2020. Status Conference set for 1/15/2020 at 03:00 PM in Courtroom 9 before Judge Tanya S. Chutkan. Defendant appeared telephonically and continued in third-party custody. Court Reporter: Bryan Wayne; Defense Attorney: Eugene Ohm and Celia Goetzl; US Attorney: Jay Bauer and Peter Roman; Pretrial Services: Deshanty Lewis and Christine Schuck. (tb) (Entered: 01/07/2020) |
| 01/07/2020 | 25 | NOTICE *of Filing* by LOKESH NAIK (Ohm, Eugene) (Entered: 01/07/2020) |
| 01/07/2020 | | MINUTE ORDER as to LOKESH NAIK: As ordered at the status conference on 1/6, the parties shall submit a Joint Pretrial Statement by January 14, 2020, by 5 p.m. The Joint Pretrial Statement shall include the following sections: 1) Proposed Voir Dire; 2) Proposed Preliminary Jury Instructions; 3) Proposed Anticipated Instructions During Trial; 4) Proposed Final Jury Instructions; 5) Government's Exhibit List; 6) Defendant's Exhibit List; 7) Proposed Stipulations; and 8) Proposed Verdict Form. Any disagreements and/or objections should be clearly indicated in a cover sheet (with supporting legal authority). SO ORDERED - by Judge Tanya S. Chutkan on 01/07/2020. (tb) (Entered: 01/08/2020) |
| 01/07/2020 | | MINUTE ORDER as to LOKESH NAIK: For the reasons stated on the record at the status conference on January 6, 2020, the court hereby denies without prejudice the governments Motion in Limine To Bar Evidence Under Rule 412 20 . The motion is premature, since the defense has not indicated that they will be offering evidence of the type prohibited under Rule 412. The government may refile its motion should the defense seek to use such evidence. SO ORDERED by Judge Tanya S. Chutkan on 01/07/2020. (tb) (Entered: 01/08/2020) |
| 01/10/2020 | 26 | Unopposed MOTION for Protective Order by USA as to LOKESH NAIK. (Bauer, Jay) (Entered: 01/10/2020) |
| 01/10/2020 | 27 | MOTION for Extension of Time to File , as to 24 MOTION to Dismiss Case by USA as to LOKESH NAIK. (Bauer, Jay) Modified event on 1/14/2020 (znmw). (Entered: 01/10/2020) |
| 01/10/2020 | 28 | MOTION to Exclude *Expert* by LOKESH NAIK. (Ohm, Eugene) (Entered: 01/10/2020) |
| 01/10/2020 | 29 | RESPONSE by USA as to LOKESH NAIK re 23 MOTION to Suppress *Statements* (Roman, Peter) (Entered: 01/10/2020) |
| 01/10/2020 | 30 | NOTICE *of Filing* by LOKESH NAIK (Ohm, Eugene) (Entered: 01/10/2020) |
| 01/13/2020 | 31 | PROTECTIVE ORDER setting forth procedures for handling confidential material; allowing designated material to be filed under seal as to LOKESH NAIK. Signed by Judge Tanya S. Chutkan on 01/13/2020. (tb) (Entered: 01/13/2020) |
| 01/13/2020 | | MINUTE ORDER as to LOKESH NAIK: granting 27 Governments Unopposed Motion for Extension of Time. The governments response to 24 is due by January 20, 2020. The |

| | | defendants reply, if any, is due by January 27, 2020. SO ORDERED by Judge Tanya S. Chutkan on 01/13/2020. (tb) (Entered: 01/13/2020) |
|---|---|---|
| 01/13/2020 | | Set/Reset Deadlines as to LOKESH NAIK: Response due by 1/20/2020. Reply due by 1/27/2020. (tb) (Entered: 01/13/2020) |
| 01/14/2020 | 33 | JOINT PRETRIAL STATEMENT by USA as to LOKESH NAIK (Roman, Peter) Modified Text on 1/15/2020 (hsj). (Entered: 01/14/2020) |
| 01/15/2020 | | Set/Reset Deadlines as to LOKESH NAIK: Response due by 1/20/2020. Reply due by 1/27/2020. (tb) (Entered: 01/15/2020) |
| 01/15/2020 | | Minute Entry: Status Conference as to LOKESH NAIK held on 1/15/2020 before Judge Tanya S. Chutkan: Government shall file a more detailed 16.3 report by 1/21/2020. Renewed motion to exclude expert testimony due by 1/24/2020, response due by 1/28/2020 Motions Hearing set for 1/31/2020 at 10:00 AM in Courtroom 9 before Judge Tanya S. Chutkan. Defendant continued on 3rd party custody. Court Reporter: Bryan Wayne; Defense Attorney: Celia Goetzl and Eugene Ohm; US Attorney: Jay Bauer and Peter Roman. (tb) Modified on 1/16/2020 (tb). (Entered: 01/16/2020) |
| 01/16/2020 | | Set/Reset Deadlines as to LOKESH NAIK: Renewed motion to exclude testimony due by 1/24/2020. Response due by 01/28/2020. (tb) (Entered: 01/16/2020) |
| 01/16/2020 | 36 | ORDER as to LOKESH NAIK re: Draft voir dire questions and jury instructions. Signed by Judge Tanya S. Chutkan on 01/16/2020. (tb) (Entered: 01/16/2020) |
| 01/20/2020 | 37 | MOTION for Leave to File Excess Pages *in Response to Defendant's Motion to Dismiss the Indictment* by USA as to LOKESH NAIK. (Bauer, Jay) (Entered: 01/20/2020) |
| 01/20/2020 | 38 | RESPONSE by USA as to LOKESH NAIK re 24 MOTION to Dismiss Case (Attachments: # 1 Exhibit Contract with GSS, # 2 Exhibit General Order 1, # 3 Exhibit 2014 bilateral agreement between Afg and US, # 4 Exhibit Agent Investigative Report, # 5 Exhibit Contract between USG and AC First, # 6 Exhibit Indian Penal Code, # 7 Exhibit Afghanistan Criminal Code translated, # 8 Exhibit Afghanistan Law on Elimination of Violence Against Women)(Bauer, Jay) (Entered: 01/20/2020) |
| 01/21/2020 | 42 | NOTICE *Withdraw Expert Witness Notice* by USA as to LOKESH NAIK re 22 Notice (Other) (Roman, Peter) (Entered: 01/21/2020) |
| 01/21/2020 | 43 | NOTICE *of Filing* by LOKESH NAIK (Ohm, Eugene) (Entered: 01/21/2020) |
| 01/21/2020 | 44 | MOTION to Modify Conditions of Release *and Motion for Travel* by LOKESH NAIK. (Attachments: # 1 Text of Proposed Order)(Ohm, Eugene) (Entered: 01/21/2020) |
| 01/22/2020 | 46 | MOTION for Permission to Travel by LOKESH NAIK. (See Docket Entry 44 to View Document). (hsj) (Entered: 01/22/2020) |
| 01/23/2020 | | MINUTE ORDER as to LOKESH NAIK: Granting in part Mr. Naiks motion to travel 46 and motion to modify conditions of release 44 . Mr. Naik is hereby permitted to travel with his third-party custodian to Baton Rouge, LA, from January 24, 2020, to January 27, 2020. As to travel to the District of Columbia and amendments to Mr. Naiks conditions of release during his time in the District of Columbia, defense counsel shall contact opposing counsel, pretrial services, and the Marshals Service and file a joint motion and proposed order to amend Mr. Naiks conditions of release by January 27, 2020. SO ORDERED by Judge Tanya S. Chutkan on 01/23/2020. (tb) (Entered: 01/23/2020) |
| 01/23/2020 | | Set/Reset Deadlines as to LOKESH NAIK: Motion to amend conditions of release due by 1/27/2020. (tb) (Entered: 01/23/2020) |
| 01/23/2020 | | MINUTE ORDER: Granting 37 Motion for Leave to File Excess Pages as to LOKESH |

|            |     |                                                                                                                                                                                                                                                                                                                                     |
|------------|-----|-------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|            |     | NAIK (1). SO ORDERED by Judge Tanya J. Chutkan on 01/23/2020. (tb) (Entered: 01/23/2020)                                                                                                                                                                                                                                             |
| 01/24/2020 | 60  | NOTICE *of Sexual Abuse Forensic Examination Expert* by USA as to LOKESH NAIK (Attachments: # 1 Curriculum Vitae)(Bauer, Jay) (Entered: 01/24/2020)                                                                                                                                                                                  |
| 01/25/2020 | 61  | REPLY TO OPPOSITION to Motion by LOKESH NAIK re 23 MOTION to Suppress *Statements* (Ohm, Eugene) (Entered: 01/25/2020)                                                                                                                                                                                                                |
| 01/25/2020 | 62  | MOTION for Leave to File *Reply to Opposition of Motion to Suppress Statements* by LOKESH NAIK. (Attachments: # 1 Text of Proposed Order)(Ohm, Eugene) (Entered: 01/25/2020)                                                                                                                                                          |
| 01/27/2020 |     | MINUTE ORDER: Granting 62 Motion for Leave to File Reply to Opposition of Motion to Suppress Statements as to LOKESH NAIK (1). SO ORDERED by Judge Tanya S. Chutkan on 01/27/2020. (tb) (Entered: 01/27/2020)                                                                                                                         |
| 01/27/2020 | 63  | Unopposed MOTION to Modify Conditions of Release by LOKESH NAIK. (Attachments: # 1 Text of Proposed Order)(Ohm, Eugene) (Entered: 01/27/2020)                                                                                                                                                                                        |
| 01/27/2020 | 64  | MOTION to Dismiss Case *for Failure to Preserve and Produce Brady Evidence* by LOKESH NAIK. (Attachments: # 1 Text of Proposed Order)(Goetzl, Celia) (Entered: 01/27/2020)                                                                                                                                                            |
| 01/27/2020 | 65  | MOTION to Exclude *Expert Testimony* by LOKESH NAIK. (Ohm, Eugene) (Entered: 01/27/2020)                                                                                                                                                                                                                                             |
| 01/28/2020 | 66  | NOTICE *of Filing* by LOKESH NAIK (Ohm, Eugene) (Entered: 01/28/2020)                                                                                                                                                                                                                                                                |
| 01/28/2020 | 67  | ORDER as to LOKESH NAIK: Granting 63 Defendant's Unopposed Second Motion for Modification of Conditions of Release. See order for details. Signed by Judge Tanya S. Chutkan on 01/28/2020. (tb) (Entered: 01/28/2020)                                                                                                                 |
| 01/28/2020 |     | MINUTE ORDER as to LOKESH NAIK: The government shall file responses to 64 Defendant's Motion to Dismiss for Failure to Preserve and Produce Brady Evidence and 65 Defendant's Motion to Exclude Expert Testimony by 5:00 p.m. on Thursday January 30, 2020. SO ORDERED by Judge Tanya S. Chutkan on 01/28/2020. (tb) (Entered: 01/28/2020) |
| 01/28/2020 |     | MINUTE ORDER as to LOKESH NAIK: The parties shall file a joint statement regarding the additional voir dire questions and final jury instructions the parties have negotiated (as referenced in footnotes 1 and 2 of 33 Joint Pretrial Statement) by 12:00 p.m. on Thursday January 30, 2020. SO ORDERED by Judge Tanya S. Chutkan on 01/28/2020. (tb) (Entered: 01/28/2020) |
| 01/29/2020 |     | MINUTE ORDER as to LOKESH NAIK: The parties shall be prepared to have an evidentiary hearing on 64 Defendant's Motion to Dismiss for Failure to Preserve and Produce Brady Evidence at the motions hearing scheduled for January 31, 2020. The parties shall coordinate with Judge's Courtroom Deputy Tim Bradley, Tim_Bradley@dcd.uscourts.gov, regarding any video evidence or video testimony from witnesses outside the jurisdiction. SO ORDERED by Judge Tanya S. Chutkan on 01/29/2020. (tb) (Entered: 01/29/2020) |
| 01/29/2020 | 68  | MOTION in Limine *to Admit Evidence of Consciousness of Innocence* by LOKESH NAIK. (Ohm, Eugene) (Entered: 01/29/2020)                                                                                                                                                                                                               |
| 01/29/2020 | 69  | MOTION in Limine *to Preclude Use of the Word "Victim"* by LOKESH NAIK. (Ohm, Eugene) (Entered: 01/29/2020)                                                                                                                                                                                                                          |
| 01/30/2020 | 71  | NOTICE *of Filing* by LOKESH NAIK (Ohm, Eugene) (Entered: 01/30/2020)                                                                                                                                                                                                                                                                |

| 01/30/2020 | | MINUTE ORDER as to LOKESH NAIK: The government shall file responses to 68 Defendant's Motion in Limine to Admit Evidence of Consciousness of Innocence and 69 Defendant's Motion in Limine to Preclude the Use of the Word Victim by 8:00 AM on January 31, 2020. The Defendant shall file a response to 70 Government's Motion for Order of HIV Testing of the Defendant by 8:00 AM on January 31, 2020. In the alternative, the parties may respond to these motions orally at the hearing on January 31, 2020. SO ORDERED by Judge Tanya S. Chutkan on 01/30/2020. (tb) (Entered: 01/30/2020) |
|---|---|---|
| 01/30/2020 | 73 | JOINT PROPOSED Additional Voir Dire and Jury Instructions by USA as to LOKESH NAIK (Roman, Peter) Modified Text on 1/30/2020 (zhsj). (Entered: 01/30/2020) |
| 01/30/2020 | 74 | RESPONSE by USA as to LOKESH NAIK re 65 MOTION to Exclude *Expert Testimony* (Roman, Peter) (Entered: 01/30/2020) |
| 01/30/2020 | 75 | RESPONSE by USA as to LOKESH NAIK re 64 MOTION to Dismiss Case *for Failure to Preserve and Produce Brady Evidence* (Attachments: # 1 Attachment A)(Bauer, Jay) (Entered: 01/30/2020) |
| 01/30/2020 | 76 | RESPONSE by USA as to LOKESH NAIK re 69 MOTION in Limine *to Preclude Use of the Word "Victim"* (Bauer, Jay) (Entered: 01/30/2020) |
| 01/30/2020 | 77 | Unopposed MOTION to Amend/Correct *Indictment* by USA as to LOKESH NAIK. (Bauer, Jay) (Entered: 01/30/2020) |
| 01/30/2020 | 78 | RESPONSE by USA as to LOKESH NAIK re 68 MOTION in Limine *to Admit Evidence of Consciousness of Innocence* (Bauer, Jay) (Entered: 01/30/2020) |
| 01/31/2020 | | MINUTE ORDER as to LOKESH NAIK granting 77 Motion to Amend/Correct. Signed by Judge Tanya S. Chutkan on 1/31/2020. (lcsd) (Entered: 01/31/2020) |
| 01/31/2020 | | Minute Entry: Motion Hearing as to LOKESH NAIK held on 1/31/2020 before Judge Tanya S. Chutkan: Oral motion by defendant to seal 70 Motion for HIV testing; heard and GRANTED. Motion 68 in Limine *to Admit Evidence of Consciousness of Innocence* filed by LOKESH NAIK, 69 Motion in Limine *to Preclude Use of the Word "Victim"* filed by LOKESH NAIK, 64 Motion to Dismiss Case *for Failure to Preserve and Produce Brady Evidence* filed by LOKESH NAIK; all heard and DENIED. 65 Motion to Exclude Expert Testimony by LOKESH NAIK; heard and GRANTED. Government witnesses: Andrew Wilson, Yring Richardson, Ansuman Baral and Kyle Zimmerman. Defendant continued on personal recognizance; Court Reporter: Bryan Wayne; Defense Attorney: Celia Goetzl and Eugene Ohm; US Attorney: Jay Bauer and Peter Roman. (tb) Modified on 2/3/2020 (tb). (Entered: 02/03/2020) |
| 01/31/2020 | 86 | EXHIBIT LIST by USA for the Motions Hearing held on 01/31/2020 as to LOKESH NAIK. (tb) (Entered: 02/03/2020) |
| 01/31/2020 | 87 | EXHIBIT LIST by LOKESH NAIK for the Motions Hearing held on 01/31/2020. (tb) (Entered: 02/03/2020) |
| 02/01/2020 | 79 | SURREPLY by USA as to LOKESH NAIK re 23 MOTION to Suppress Statements *Government's Sur-Reply in Opposition to Defendant's Motion to Suppress Statements* (Bauer, Jay) Modified event title and link on 2/3/2020 (znmw). (Entered: 02/01/2020) |
| 02/01/2020 | 80 | SUPPLEMENT by LOKESH NAIK re 23 MOTION to Suppress *Statements* (Ohm, Eugene) (Entered: 02/01/2020) |
| 02/02/2020 | 81 | STIPULATION *as to DNA Chain of Custody* by USA (Roman, Peter) (Entered: 02/02/2020) |

| 02/02/2020 | 82 | MEMORANDUM OPINION as to LOKESH NAIK re 24 Defendant's Motion to Dismiss the Indictment. Signed by Judge Tanya S. Chutkan on 2/2/2020. (lcsd) (Entered: 02/03/2020) |
|---|---|---|
| 02/03/2020 | 83 | ORDER as to LOKESH NAIK: Denying 24 Defendant's Motion to Dismiss Case. Signed by Judge Tanya S. Chutkan on 2/2/2020. (lcsd) (Entered: 02/03/2020) |
| 02/03/2020 | 84 | MEMORANDUM OPINION as to LOKESH NAIK re 19 and 23 Defendant's Motion to Suppress Statements. Signed by Judge Tanya S. Chutkan on 2/2/2020. (lcsd) (Entered: 02/03/2020) |
| 02/03/2020 | 85 | ORDER as to LOKESH NAIK: Granting in part and denying in part 23 Motion to Suppress. Signed by Judge Tanya S. Chutkan on 2/2/2020. (lcsd) (Entered: 02/03/2020) |
| 02/03/2020 | | MINUTE ORDER: The Court having impaneled the jury in this action, it is hereby ORDERED that during trial and deliberations all meals for said jury shall be paid by the Clerk of the Court for the U.S. District Court for the District of Columbia. Approved by Judge Tanya S. Chutkan on 02/03/2020. (tb) (Entered: 02/03/2020) |
| 02/03/2020 | | Minute Entry: Jury Trial begun as to LOKESH NAIK on 2/3/2020 before Judge Tanya S. Chutkan on Counts 1-2, and 3. Parties discussed discovery issues. Jury of 12 and 2 alternates selected and sworn. Jury Trial continued to for 2/4/2020 at 09:30 AM in Courtroom 9 before Judge Tanya S. Chutkan. Defendant continued on personal recognizance. Court Reporter: Bryan Wayne; Defense Attorney: Celia Goetzl and Eugene Ohm; US Attorney: Jay Bauer and Peter Roman. (tb) (Entered: 02/04/2020) |
| 02/04/2020 | | Minute Entry: Jury Trial resumed as to LOKESH NAIK on 2/4/2020 before Judge Tanya S. Chutkan on Counts 1, 2, and 3: Same jury of 12 and 2 alternates. Opening statements. Preliminary jury instructions. Government witnesses: Anne Wynne and Samantha Chaapl Jury Trial continued to 2/5/2020 at 09:30 AM in Courtroom 9 before Judge Tanya S. Chutkan. Defendant continued on personal recognizance. Court Reporter: Bryan Wayne; Defense Attorney: Celia Goetzl and Eugene Ohm; US Attorney: Jay Bauer and Peter Roman. (tb) (Entered: 02/05/2020) |
| 02/05/2020 | | Set/Reset Hearings as to LOKESH NAIK: Jury Trial set for 2/6/2020 at 09:00 AM in Courtroom 9 before Judge Tanya S. Chutkan. (tb) (Entered: 02/05/2020) |
| 02/05/2020 | | Minute Entry: Jury Trial resumed as to LOKESH NAIK on 2/5/2020 before Judge Tanya S. Chutkan on Counts 1, 2 and 3. Same jury of 12 and 2 alternates. Government witness: Samantha Chaaple. The Court appoint Jonathan Zucker to represent Ms. Chaaple for the purpose of her testimony. Jury Trial continued to 2/6/2020 at 09:00 AM in Courtroom 9 before Judge Tanya S. Chutkan. Defendant continued on personal recognizance. Court Reporter: Bryan Wayne; Defense Attorney: Eugene Ohm and Celia Goeztl; US Attorney: Jay Bauer and Peter Roman. (tb) (Entered: 02/06/2020) |
| 02/06/2020 | 88 | ORDER as to LOKESH NAIK: Defendant's conditions of release are amended. See order for details. Signed by Judge Tanya S. Chutkan on 2/6/2020. (lcsd) (Entered: 02/06/2020) |
| 02/06/2020 | | Minute Entry: Jury Trial resumed as to LOKESH NAIK on 2/6/2020 before Judge Tanya S. Chutkan on Counst 1, 2 and 3. Same jury 12 and 2 alternates. Case continued to allow the government to consider whether to go forward with trial or a disposition. Jury Trial continued to 2/7/2020 at 09:30 AM in Courtroom 9 before Judge Tanya S. Chutkan. Defendant continued on personal recognizance. Court Reporter: Bryan Wayne; Defense Attorney: Eugene Ohm and Celia Goeztl; US Attorney: Jay Bauer and Peter Roman. (tb) (Entered: 02/06/2020) |
| 02/07/2020 | 89 | MOTION for Judgment NOV by LOKESH NAIK. (Ohm, Eugene) (Entered: 02/07/2020) |
| 02/07/2020 | 90 | ORDER as to LOKESH NAIK: Defendant's conditions of release are amended. Further |

| | | |
|---|---|---|
| | | Evan Morris, from the Department of Homeland Security, is ordered to attend the hearing at 3:00 p.m. and SHOW CAUSE for why the agency should not be sanctioned. See order for details. Signed by Judge Tanya S. Chutkan on 2/7/2020. (lcsd) (Entered: 02/07/2020) |
| 02/07/2020 | 91 | MOTION *for Miscellaneous Relief* by LOKESH NAIK. (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order)(Goetzl, Celia) (Entered: 02/07/2020) |
| 02/07/2020 | 92 | MOTION *for Miscellaneous Relief* by LOKESH NAIK. (Attachments: # 1 Text of Proposed Order)(Ohm, Eugene) (Entered: 02/07/2020) |
| 02/07/2020 | | MINUTE ORDER as to LOKESH NAIK: The court hereby modifies Defendants conditions of release. Defendant is released on his own recognizance with all previous conditions of release lifted and the following conditions implemented: the Defendant cannot leave the jurisdiction except to return to India; the Defendants passport must remain in the custody of his attorney until he leaves the jurisdiction to return to India. SO ORDERED by Judge Tanya S. Chutkan on 02/07/2020. (tb) (Entered: 02/07/2020) |
| 02/07/2020 | 93 | MOTION to Dismiss Case by USA as to LOKESH NAIK. (Bauer, Jay) (Entered: 02/07/2020) |
| 02/07/2020 | | Minute Entry: Jury Trial as to LOKESH NAIK resumed on 2/7/2020 before Judge Tanya S. Chutkan on Counts 1, 2 and 3. Same jury 12 and 2 alternates. The Couts holds in abeyance the government's 93 motion to dismiss and the defendant's 89 motion for judgment of acquittal. JURY DISCHARGED. Responses to motions due by 02/10/2020. Ruling on motions set for 2/11/2020 at 03:00 PM in Courtroom 9 before Judge Tanya S. Chutkan. Defendant's conditions of release modified, see Minute Order filed on 02/07/2020. Defendant continued on personal recognizance. Court Reporter: Nancy Meyer; Defense Attorney: Eugene Ohm and Celia Goetzl; US Attorney: Jay Bauer and Peter Roman; Pretrial Services: Takeysha Robinson. (tb) (Entered: 02/10/2020) |
| 02/10/2020 | 94 | SUPPLEMENT by LOKESH NAIK re 89 MOTION for Judgment NOV (Ohm, Eugene) (Entered: 02/10/2020) |
| 02/11/2020 | 96 | ORDER granting 89 Motion for Judgment NOV as to LOKESH NAIK (1). Signed by Judge Tanya S. Chutkan on 2/11/2020. (lcsd) (Entered: 02/11/2020) |
| 02/11/2020 | | Minute Entry: Status Conference as to LOKESH NAIK held on 2/11/2020 before Judge Tanya S. Chutkan: Oral ruling on motion; the Court GRANTED defendant's motion 89 for judgment NOV by LOKESH NAIK and defense counsel may return passport to defendant. Defendant continued on personal recognizance until he leaves the jurisdiction to return to India. Court Reporter: Bryan Wayne; Defense Attorney: Michelle Peterson (stand-in) Eugene Ohm and Celia Goetzl; US Attorney: Jay Bauer and Peter Roman. (tb) (Entered: 02/12/2020) |
| 02/17/2020 | 97 | TRANSCRIPT OF MOTION HEARING WITNESS TESTIMONY in case as to LOKESH NAIK before Judge Tanya S. Chutkan held on January 31, 2020; Page Numbers: 1-30. Date of Issuance: 2/17/2020. Court Reporter: Bryan A. Wayne. Transcripts may be ordered by submitting the Transcript Order Form at www.dcd.uscourts.gov. For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov. Redaction Request due 3/9/2020. |

District of Columbia live database

| | | |
|---|---|---|
| | | Redacted Transcript Deadline set for 3/19/2020. Release of Transcript Restriction set for 5/17/2020.(Wayne, Bryan) (Entered: 02/17/2020) |
| 03/11/2020 | 98 | TRANSCRIPT OF MOTIONS HEARING in case as to LOKESH NAIK before Judge Tanya S. Chutkan held on January 31, 2020; Page Numbers: 1-219. Date of Issuance: 3/11/2020. Court Reporter: Bryan A. Wayne. Transcripts may be ordered by submitting the Transcript Order Form <br><br> For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 9 0 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter. <br><br> **NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov. <br><br> Redaction Request due 4/1/2020. Redacted Transcript Deadline set for 4/11/2020. Release of Transcript Restriction set for 6/9/2020.(Wayne, Bryan) (Entered: 03/11/2020) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 08/26/2021 21:25:39 | | |
| **PACER Login:** | zck519888 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:19-cr-00373-TSC |
| **Billable Pages:** | 11 | **Cost:** | 1.10 |