# EXHIBIT A

# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America,<br>     *Plaintiff*,<br>v.<br>Roman Sterlingov,<br>     *Defendant*. | 21-cr-399 (RDM) |

### SECOND DECLARATION OF ERIC GARLAND

I, Eric Arnold Garland, hereby declare under the penalty of perjury to 28 U.S.C. § 1746 that the following statements are true and correct to the best of my knowledge and belief:

1. My investigation is ongoing as to the methodology used by the Government to analyze the commercial dynamic between several private sector companies involved with the instant case. This analysis includes the Government's use of the phrase "Bitcoin Fog" as the firm allegedly operated by the Defendant as an unlicensed money transmission business in the District of Columbia ("Bitcoin Fog"). My analysis also examines multiple vendors to the U.S. Government which supposedly provided evidence for this prosecution. My investigation also extends to potential national security risks implicated by some of the relationships of the above private firms.

2. The methodology behind the Government's analysis of the business activities of Bitcoin Fog is not similar to any forensic financial analysis that would be produced for use in the field of competitive intelligence. Based on my experience, the affiants whose declarations have been submitted on behalf of the Government do not appear to have the education,

training, or credentials required to provide financial analysis admissible in federal court for a matter involving financial fraud and money laundering. The data set that has been submitted is unreliable. And there does not appear to be any methodology employed to describe the operations of an ongoing commercial concern, legal or illegal, much less a methodology that would be broadly accepted by competitive intelligence professionals, executives, regulators, or courts of law. To wit, the Government has presented no declarations by experts in forensic accounting, nor by anyone familiar with the practices of money laundering, or even anyone with a cursory knowledge of how a business operates. Based on information and belief, the Government has presented no evidence that describes the totality of Bitcoin Fog's operations as an ongoing business, one that would have been required by law to apply for licensure around the world; it has not presented data that outlines as much as a blurry sketch of a firm. As such, lacking any business information to process, there is no commonly accepted methodology employed by the Government in reaching its conclusions that Bitcoin Fog has operated as a money laundering operation.

## THE GOVERNMENT HAS NOT PRESENTED EVIDENCE ABOUT BITCOIN FOG'S BUSINESS OPERATIONS

3. The Government alleges that Roman Sterlingov is the sole operator of Bitcoin Fog, a financial services company that operates in the District of Columbia and other locations around the world. It further alleges that Mr. Sterlingov has knowingly conducted financial transactions involving property represented to be the proceeds of specified unlawful activity, or property used to conduct or facilitate specified unlawful activity, etc, in violation of 18 U.S. Code § 1956 (a)(3)(b). It further alleges that Mr. Sterlingov knowingly and unlawfully owned, directed, or conducted his money transmission

business in the District of Columbia without a license, as required by D.C. Code § 26-1001(a), and thus was in violation of 18 U.S. Code § 1960(a).

4. In my experience, the owners and operators of businesses of any size produce substantial documentary evidence in the conduct of their enterprise. They typically begin by organizing their firm under the laws of some political entity, be it on-shore or offshore, well-known or obscure. They register trademarks and patents to protect their investment of time, money, and labor. They open bank accounts—which now may include cryptocurrency wallets—and these accounts function to take in revenue as well as to expend money on capital, professional services, and labor. Profit is generated and distributed among investors, if any; these investors almost always wish for detailed accounting to assure fair play. Customers are acquired and cultivated, while marketing efforts are ongoing to assure the acquisition of more customers. Salaries are paid, even if to a single operator, even if this is more categorized as "profit distribution" or "bonus" rather than regular compensation. Taxes are filed with relevant agencies. All of the above features are as common to completely legitimate business entities as they are to firms engaged in complicated fraudulent schemes or companies acting primarily as fronts for organized crime.

5. In my analysis of the Government's allegations and its evidence, I have seen no documentation around the establishment of Bitcoin Fog as a business, even an illegitimate one. I have never seen an address where the business is located. Mr. Sterlingov isn't listed as an officer of any company according to the global business database search engine opencorporates.com. I have never seen articles of incorporation in any country for Bitcoin Fog. I have never seen anyone's legal name associated with its

creation. All I have seen is the allegation that Mr. Sterlingov may have registered a clearnet domain name, which any anyone can do, even under a pseudonym. The Government's details about this alleged enterprise lack the basics of even the most ephemeral Internet-based business.

6. I have seen no financial statements of any kind showing the operation of Bitcoin Fog by Mr. Sterlingov or any other individual. There is no statement of annual revenue for any year since operations supposedly began in 2011, either from the business itself or reconstructed by the Government after its seven-year investigation. There is no analysis of expenditures of web hosting, office space, printers, toner cartridges, coffee creamer, staplers, software, or a desk. No computers are listed as assets of any company, not even the electronics seized from Mr. Sterlingov's bags, thus there is no way to assess how much was spent on information technology at the company, much less how its cost was amortized over a period of time.

7. Tax returns in Sweden are public documents; a subpoena is not even required to obtain them. The Government has not, to my knowledge, even presented Mr. Sterlingov's taxes to this Court. Money laundering charges should usually trigger a tax investigation in an offender's home country, as false declarations were, by definition, made. It is not clear that the Government is cooperating with a parallel prosecution by Skatteverket for the additional criminal investigations that would be a natural consequence of this supposed ten-year financial crime spree. It bears emphasizing that, in my experience, the crime of money laundering is committed so that ill-gotten gains can be processed through a business such that the proceeds can be spent freely without arousing suspicions about

their origin. It thus shocks me to see a money laundering prosecution without as much as a mention of taxation in one or more countries.

8. The Government has not listed a single customer of Bitcoin Fog in its 11-year history, nor evidence of the amount of money transacted, nor the dates, nor the fees earned from the transactions. It submitted the following chart in its Statement of Facts. ECF 1 at 4.

Among these, IRS-CI cyber analysts identified direct deposits into BITCOIN FOG from at least 35 darknet markets. Below are the top five markets by U.S. dollar value of deposits:[4]

| Source Market | Total Received (BTC) | Total Received (USD) |
|---|---|---|
| Agora Market | 41,966.87 | $14,398,754.73 |
| Silk Road 2.0 Market | 22,863.74 | $12,518,636.97 |
| Silk Road Marketplace | 377,102.74 | $9,556,159.49 |
| Evolution Market | 11,100.79 | $3,199,542.15 |
| AlphaBay Market | 5,442.86 | $2,907,508.67 |

IRS-CI cyber analysts identified funds sent directly from BITCOIN FOG to at least 51 different darknet markets. Below are the top five markets by dollar value of sends:

| Destination Market | Total Sent (BTC) | Total Sent (USD) |
|---|---|---|
| Agora Market | 26,398.12 | $8,680,430.34 |
| Silk Road 2.0 Market | 11,274.21 | $5,871,831.33 |
| Silk Road Marketplace | 106,522.77 | $2,289,509.42 |
| Evolution Market | 6,473.24 | $1,860,053.75 |
| AlphaBay Market | 3,375.90 | $1,557,931.95 |

The Government has presented no evidence substantiating these amounts, via American Generally-Accepted Accounting Procedures (GAAP), Swedish standards established by Bokforingsnamnden, or any other standard. No evidence ties these amounts to Mr. Sterlingov or Bitcoin Fog.

9. I have seen no evidence provided by the Government that suggests any activities by Mr. Sterlingov or Bitcoin Fog within the District of Columbia. I have seen no evidence that the Government of the District of Columbia became aware of any money transmission activities by Mr. Sterlingov or Bitcoin Fog, nor that they exercised their discretion to institute an administrative cease and desist proceeding. There is no evidence that the

Government of the District of Columbia is aware of activities by Mr. Sterlingov or Bitcoin Fog, or that it has attempted to enforce its laws pursuant to D.C. Code § 26-1022.

10. Lacking any evidence of the existence of this company, or its connections to Mr. Sterlingov, and lacking any data common to the analysis of any business concern, legitimate or illicit, there is thus no analytical methodology by the Government on which to comment.

11. In my practice of competitive intelligence, I have been required to analyze risks to my clients' economic interests, be they common ones like the actions of traditional business competitors, or extraordinary ones such as the conduct of organized crime syndicates or hostile nation-state intelligence services. Money laundering is a common feature of both these extraordinary risks. "Money laundering" is defined by illegal activities—drug trafficking, securities fraud, public corruption, arms dealing, tax evasion, etc.—which produce cash flow that is then disguised as income at a legitimate-looking "front business." This metaphor dates back to the Chicago Outfit crime syndicate processing the cash from illegal activities through coin-operated laundromats and similar businesses. Modern money laundering may involve innovations such as cryptocurrency, but it is still identified when criminals who are engaged in felonious activities send their money through a business which takes a cut, such that the remaining cash can be spent without worry. The total cost of money laundering can be 40% or higher, which produces substantial illicit wealth, usually for a network of individuals involved in a racketeering enterprise. There is no evidence that Mr. Sterlingov is engaged in this activity. There is no evidence of money derived from a specific criminal act. There is no evidence of any specific transaction from a criminal or a criminal enterprise. There is no front business.

There are no tax returns. There are no offshore accounts, nor dollar, ruble, euro, or kroner amounts of transactions. There certainly isn't any evidence of this in the District of Columbia.

12. My investigation into this matter is ongoing.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 7th day of September 2022

Eric A. Garland

_____

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of September 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

/s/ Tor Ekeland