## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.**

**ROMAN STERLINGOV,**

**Defendant.**

**21-CR-399 (RDM)**

**Defendant's Motions in Limine**

# Table of Contents

*Introduction* ............................................................................................ *4*

*Argument*.............................................................................................. *5*

*I.    This Court Should Bar the Government's Blockchain Analysis and Digital*

*Forensics Because They Cannot be Authenticated* ............................................................ *6*

   A.    Federal Rule of Evidence 901 Bars Admission of the Government's Blockchain

   Analysis and Digital Forensics ...................................................................................... *7*

   B.    Witness Testimony is Insufficient to Authenticate the Software Used in this

   Investigation..................................................................................................................... *7*

*II.    The Court Should Block Testimonial Forensic Statements Not Subject to Cross*

*Examination* .......................................................................................................................... *8*

*III.    This Court Should Bar Testimony Under FRE 401, 403, and 404 Regarding*

*Unspecified Criminal Transactions the Government has no Evidence are Connected to*

*Defendant* ............................................................................................................................. *8*

*IV.    This Court Should Bar Lay Opinion Testimony as to the Results of Any*

*"Blockchain Analysis" or Digital Forensics Under FRE 702*................................................ *10*

*V.    In the Alternative the Court Should Order a Daubert/Frye Hearing to Determine*

*the Authenticity of the Government's Digital Forensics* .................................................... *12*

*VI.     Defendant Cannot Effectively Review Evidence and Prepare His Defense from the Northern Neck Regional Jail, Warsaw, VA, and this Court Should Hold a Hearing to Address his Inability to Review the Discovery* ................................................................... 12

*VII.     The Court Should Only Permit Translations by Certified Translators* ........... 13

*VIII.     The Court Should Order Early Disclosure of any Jencks Material* ................ 14

*IX.     Former FBI Agent and Current AUSA Catherine Pelker is a Material Fact Witness and the Court Should Hold a Hearing as to Her Role as Prosecutor in this Case* .... 14

*X.     Motion to Compel* ........................................................................................... 15

*Conclusion* ........................................................................................................... 15

# Table of Authorities

## Cases

*Asplundh Manufacturing Division v. Benton Harbor Engineering*, 57 F.3d 1190 (3rd Cir.1995) ................................................................................................................................11

*Bullcoming v. New Mexico*, 564 US 647 (2011) ..........................................................................8

*Burlington N. R. Co. v. State of Neb.*, 802 F.2d 994 (8th Cir. 1986) .......................................11

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) ....................................................10

*Hartzell Mfg., Inc. v. Am. Chem. Techs., Inc.*, 899 F. Supp. 405 (D. Minn. 1995) .................11

*Kumho Tire Co., Ltd, v. CurMichael*, etc., 526 US. 137 (1999) ..............................................10

*Melendez-Diaz v. Massachusetts*, 557 US 305 (2009) ..............................................................8

*Old Chief v. United States*, 519 U.S. 172 (1997) .......................................................................9

*United States v. Holmes*, 413 F.3d 770 (8th Cir. 2005) ............................................................9

*United States v. Lamons*, 532 F.3d 1251 (11th Cir. 2008) ........................................................6

*United States v. Moon*, 512 F.3d 359 (7th Cir. 2008) ...............................................................6

*United States v. Nelson*, 533 F. Supp. 3d 779 (N.D. Cal. 2021) ...............................................6

*United States v. Peoples*, 250 F.3d 630 (8th Cir. 2001) ..........................................................11

*United States v. Smith*, 591 F.3d 974 (8th Cir. 2010) ..............................................................11

*United States v. Washington*, 498 F.3d 225 (4th Cir. 2007) .....................................................6

*US Salt, Inc. v. Broken Arrow, Inc.*, 563 F.3d 687 (8th Cir. 2009) .........................................11

## Rules

ABA Model Rules of Professional Conduct 3.7 .........................................................................15

D.C. Bar Rules of Professional Conduct 3.7 .............................................................................15

Fed. R. Evid. 401 ...................................................................................................................9

Fed. R. Evid. 403 ...................................................................................................................9

Fed. R. Evid. 404 ...................................................................................................................9

Fed. R. Evid. 602 .................................................................................................................11

Fed. R. Evid. 702 .................................................................................................................10

Fed. R. Evid. 901(8) ..............................................................................................................7

Fed. R. Evid. 901(9) ..............................................................................................................7

Fed. R. Evid. 901(a) ..............................................................................................................7

Fed.R.Evid. 703 ...................................................................................................................11

## Introduction

The Government's entire case turns on an amorphous mass of unscientific, unverifiable, and speculative blockchain analysis and digital forensics. All layered with hearsay. None of the Government's conclusions in its pleadings and discovery produced to date are reproduceable. The Defense has not had access to the software, source codes, object codes, complete input and output datasets, relevant native computer logs, and original sources underlying the Government's conclusory accusations.

Despite the Defense's request, the Government has not produced anything in discovery that provides any valid scientific basis for its forensics. Under Federal Rule of Evidence 901 this Court should bar all statements - whether testimonial or raw data machine statements - based on the Government's use of forensic computer software like Chainalysis Reactor, or Elliptic LLC's, because it has not been produced to the Defense in its native computer code in the versions used by the Government in its multi-year investigation. Without this information, there is no effective way to cross examine any live expert witness whose testimony is based on the output of the digital forensic computer programs and methodologies at the heart of this case. This makes it impossible to mount an effective, complete defense.

Moreover, the Government's discovery is laden with hearsay statements based on the informational outputs of computer programs that appear to involve the input of speculative human hearsay. As such, this Court should bar it unless the Government can produce a live expert witness with direct knowledge (and not a surrogate witness with only superficial knowledge) subject to cross examination by a Defense that has had the opportunity to forensically examine the source of the witness's opinions and testimony, including the full

input and output datasets and relevant source codes.

This case turns entirely on the digital forensic analysis, there are no eyewitnesses, no corroborating evidence (unlike almost all blockchain cases) and based on the discovery there is no way to reproduce or verify any of the Government's methodologies or conclusions. This Court should bar the Government's blockchain analysis and digital forensics in its entirety. In the alternative, this Court should order a Daubert/Frye hearing to address the Government's digital forensic foundations and the extent they are laden with speculative hearsay from input through output.

Additionally, given the technical complexity and novelty of this case, this Court should require that all experts that are going to testify be subject to pretrial voir dire and Daubert scrutiny, outside the presence of the jury. Both to avoid surprise and delay at trial, and mistrial.

Furthermore, this Court should bar the Government under FRE 401, 403, and 404 from introducing evidence discussing Silk Road, Agora, or any other online criminal marketplace as irrelevant, prejudicial, and impermissible character evidence. Of which the Government has no evidence of any connection to Mr. Sterlingov.

The Defense also moves this Court to order a hearing as to AUSA Catherine Pelker's role as a prosecutor in this case. She is a material fact witness, who upon information and belief, initiates this investigation in 2014, actively participates in this investigation while she is an FBI agent, and is responsible for the transfer of this case from Philadelphia to Washington D.C. Her name appears on numerous investigative documents in the discovery.

## Argument

None of the Government's purported blockchain analysis or digital forensics in this

5

case are reproduceable or verifiable based on the discovery produced to date. The Government

has not - despite request from the Defense - produced the software, methodologies, or

scientific proof for its conclusory forensic opinions. There is no community consensus

regarding the Government's novel and untested forensics. And human testimony isn't

sufficient to establish the accuracy of statements generated through source codes; to say

nothing of the fact that the datasets and a host of variables related to the Government's ill

defined "blockchain analysis" are nowhere to be found in the discovery.

## I.   This Court Should Bar the Government's Blockchain Analysis and Digital Forensics Because They Cannot be Authenticated

The Defense does not have access to the same datasets, software, and original sources

with which to authenticate the Government's discovery. The Government has not produced

them, and the Defense has asked.[1] This makes it difficult to determine to what extent the

statements generated by the digital forensic software and methodologies in this case contain

human hearsay and speculation as an informational input. If so, they are subject to

confrontation clause and hearsay challenges. If they are the raw data output of a machine, then

the challenge is to the machine's output's accuracy - which requires analysis of the

functioning of the machine or code in question.[2] This Court should either bar the

---

[1] (*See* Ex. A. (Defense R. 16 Letter)).
[2] *See e.g, United States v. Washington*, 498 F.3d 225, 230-32 (4th Cir. 2007); *United States v. Moon*, 512 F.3d 359, 362 (7th Cir. 2008) (Easterbrook, C.J.); *United States v. Lamons*, 532 F.3d 1251, 1263-65 (11th Cir. 2008); *United States v. Nelson*, 533 F. Supp. 3d 779, 801 (N.D. Cal. 2021).

6

Government's blockchain analysis and digital forensics or compel production of the necessary information to authenticate its accuracy.

### A.      Federal Rule of Evidence 901 Bars Admission of the Government's Blockchain Analysis and Digital Forensics

Federal Rule of Evidence 901 requires that "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."[3] In relation to the digital forensics in this case, particularly the purported "blockchain analysis," this means "[e]vidence describing a process or system and showing that it produces an accurate result."[4] Moreover, Rule 901 requires an authenticity inquiry as to data compilations - like those in the Government's discovery.[5] This requires defense expert analysis of all computer code used to generate statements in this case whether testimonial or raw data.

### B.      Witness Testimony is Insufficient to Authenticate the Software Used in this Investigation

Without access to the software and its computer code for analysis, the Defense cannot effectively challenge the validity of the Government's digital forensics. Any effective cross examination of any Government expert testifying based on the digital software used in this investigation requires access by the Defense to the underlying computer code; both for evidentiary and impeachment purposes. Otherwise, there is no way to confront a witness's fabrications on the stand.

---

[3] Fed. R. Evid. 901(a).
[4] Fed. R. Evid. 901(9).
[5] Fed. R. Evid. 901(8)

## II.     The Court Should Block Testimonial Forensic Statements Not Subject to Cross Examination

To the extent that the blockchain analysis, digital forensics and methodologies in this case constitute testimonial statements, they should be barred under the Confrontation Clause, unless the Government can produce a witness for cross-examination justifying their use.[6] The problem with the discovery is that it doesn't provide the information necessary to determine the extent of the hearsay at play here. Both as informational input and output. This Court should bar the introduction of the Government's digital forensic evidence, or in the alternative order a comprehensive Daubert/Frye hearing to address these extensive issues.

The original digital source materials are lacking from the Government's production to date. Despite requests from the Defense, the Government has not produced any of the original software, source code, or the like, only some of the outputs, which are either produced as static PDFs or image files without significant metadata. There is no way to verify its validity. Precisely what dataset, or datasets, the Government uses to arrive at its conclusions cannot be gleaned with particularity from the discovery. The Government's forensic conclusions appear laden with hearsay based on unauthenticated methodologies.

## III.     This Court Should Bar Testimony Under FRE 401, 403, and 404 Regarding Unspecified Criminal Transactions the Government has no Evidence are Connected to Defendant

---

[6] *See Bullcoming v. New Mexico*, 564 US 647 (2011); *Melendez-Diaz v. Massachusetts*, 557 US 305 (2009).

8

To date, the Government has not identified a single particular criminal transaction tied to Mr. Sterlingov. The Court should only permit the Government to discuss specific allegations against Mr. Sterlingov it has evidence for, and not innuendo-laden character evidence in violation of Federal Rules of Evidence 401, 403 and 404.[7] Specifically, the Defense asks that this Court bar reference, among other things, to the online marketplaces mentioned in the Criminal Complaint such as Silk Road, Agora and the like; unless the Government can provide some evidentiary basis for its seemingly irrelevant and highly prejudicial use. The Government repeatedly makes untethered accusations of Defendant's criminal activity, but to date has failed to identify a single particular criminal transaction. This Court should bar as irrelevant, prejudicial, and improper all evidence and testimony related to illicit online marketplaces having no connection to Mr. Sterlingov.

There is no probative value to the Government's discussion in its Criminal Complaint of online onion markets like Silk Road, or Agora - there is no evidence of any connection to Mr. Sterlingov and it is highly prejudicial as it is intended to stain him with the criminality of sites he has nothing to do with. It constitutes unfair prejudice which misleads the jury into determining guilt on different grounds from specific factual proof of the offense charged.[8]

---

[7] *See* Fed. R. Evid. 401 ("Evidence is relevant is it has a tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action"); Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."); Fed. R. Evid. 404 ("Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character trait.")
[8] *Old Chief v. United States*, 519 U.S. 172, 180, (1997); *see also United States v. Holmes*, 413 F.3d 770, 776 (8th Cir. 2005).

9

## IV.    This Court Should Bar Lay Opinion Testimony as to the Results of Any "Blockchain Analysis" or Digital Forensics Under FRE 702

The Court should only allow qualified experts to testify as to any blockchain analysis or digital forensics, and the Defense must have the opportunity to examine all their sources, methodologies, and software relied upon, in order to mount a complete defense. The Government's experts should be able to independently verify the Government's work, if it is verifiable and reproduceable, and should do so and present their findings in open court pre-trial for adversarial challenge.

In deciding the admissibility of expert testimony, courts have a "gatekeeping obligation" to ensure expert testimony is reliable.[9] Federal Rule of Evidence 702 requires that such testimony satisfy three separate relevance and reliability standards: (1) expert testimony must be based upon sufficient facts or data, (2) expert testimony must be the product of reliable principles and methods, and (3) the expert witness must have applied the principles and methods reliably to the facts of the case.[10]

Federal Rule of Evidence 701 states that if a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is (1) rationally based on the witness's perception; (2) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (3) not based on scientific, technical, or other specialized

---

[9] *Kumho Tire Co., Ltd, v. CurMichael*, etc., 526 US. 137,141 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993).
[10] Fed. R. Evid. 702.

knowledge within the scope of Rule 702.[11] Fact witnesses must also have personal knowledge about the subject matter of their testimony,[12] and may testify to matters within the common knowledge of laypersons or from their experience.[13] There are no fact witnesses like this in this case besides Mr. Sterlingov. The entire investigation took place thousands of miles away, primarily at desks. The Government does not have a single eyewitness for any of its accusations.

An "essential difference" between expert and non-expert testimony is that only a qualified expert may answer hypothetical questions.[14] Expert witnesses may testify from "facts or data" "perceived by him," and also from what is "made known to him at or before the hearing."[15] A lay witness's testimony, however, should be excluded when that testimony is based on their perceptions alone and merely expresses the witness's belief without assisting

---

[11] "The prototypical example of the type of evidence contemplated by the adoption of Rule 701 relates to the appearance of persons or things, identity, the manner of conduct, competency of a person, degrees of light or darkness, sound, size, weight, distance and an endless number of items that cannot be described factually in words apart from inferences." *Hartzell Mfg., Inc. v. Am. Chem. Techs., Inc.*, 899 F. Supp. 405, 408 (D. Minn. 1995) (citing *Asplundh Manufacturing Division v. Benton Harbor Engineering*, 57 F.3d 1190, 1196 (3rd Cir.1995)).

[12] *See* Fed. R. Evid. 602; "Personal knowledge or perception acquired through review of records prepared in the ordinary course of business, or perceptions based on industry experience, is a sufficient foundation for lay opinion testimony." *Burlington N. R. Co. v. State of Neb*., 802 F.2d 994, 1005 (8th Cir. 1986). *See also United States v. Peoples*, 250 F.3d 630, 641 (8th Cir. 2001) (holding that district court erred in admitting testimony from agent who lacked first-hand knowledge about the matters about which she testified and that the agent's opinions were based on investigation after the fact, not her perception of the facts).

[13] "A witness may provide lay opinion testimony 'about facts within his or her range of generalized knowledge, experience, and perception.'… '[P]erceptions based on industry experience, is a sufficient foundation for lay opinion testimony.'" *US Salt, Inc. v. Broken Arrow, Inc*., 563 F.3d 687, 690 (8th Cir. 2009) (citations omitted). *See also Burlington N. R. Co. v. State of Neb*., 802 F.2d 994, 1005 (8th Cir. 1986) (allowing railroad executives to testify based on their industry knowledge and experience and review of employee reports prepared in the ordinary course of business); but "This inquiry requires a case-by-case analysis of both the witness and the witnesses's [sic] opinion." *United States v. Smith*, 591 F.3d 974, 983 (8th Cir. 2010) (citations omitted).

[14] *Hartzell Mfg., Inc. v. Am. Chem. Techs., Inc*., 899 F. Supp. 405, 408–09 (D. Minn. 1995).

[15] Fed.R.Evid. 703.

with the formation of an opinion that would be helpful to an understanding of the facts of the

case.[16] In other words, lay testimony that amounts to speculation and conjecture is improper.[17]

## V.      In the Alternative the Court Should Order a Daubert/Frye Hearing to Determine the Authenticity of the Government's Digital Forensics

The Government has no eyewitnesses nor corroborating evidence for its blockchain

conjectures. Nor does it have any scientific support for its methodologies, and nothing in the

discovery to date allows for the reproducibility of the Government's forensics. Despite request

from the Defense, the Government has not produced any of the software, software versions,

source code, or the like for analysis. Nor can any valid methodology be gleaned from the

discovery. Given the centrality of the digital evidence in this case the Court should, in the

alternative, order a comprehensive Daubert/Frye hearing to test the authenticity and

admissibility of the Government's digital forensics, particularly its alleged blockchain

analysis, outside the presence of the jury. It is the Defense's position that the Government's

blockchain analysis is junk science and their digital forensics are rife with hearsay based on

unscientific methodologies and basic errors of computer science.

## VI.      Defendant Cannot Effectively Review Evidence and Prepare His Defense from the Northern Neck Regional Jail, Warsaw, VA, and this Court Should Hold a Hearing to Address his Inability to Review the Discovery

---

[16] *Hartzell Mfg., Inc. v. Am. Chem. Techs., Inc*., 899 F. Supp. 405, 408–09 (D. Minn. 1995).
[17] *See US Salt, Inc. v. Broken Arrow, Inc*., 563 F.3d 687, 690 (8th Cir. 2009).

The Government is currently jailing Mr. Sterlingov in the Northern Neck Regional Jail in Warsaw, Virginia ("Jail"). Any review of evidence from Defense hard drives submitted to the jail can only be done on shared, limited capacity laptops in a noisy room of sixty people, for at best an hour or two. People compete for time on the laptops and look over your shoulder. Mr. Sterlingov cannot access the Defense's e-discovery platform from Jail to search, tag, annotate and communicate with his lawyers about the discovery. The Jail's laptops can only handle basic PDF and other limited filetypes, and have limited memory. They are insufficient to meet the needs of a complex, 21st century, crypto case. Jail hours, staffing, and technical capacity make unmonitored phone and video conferencing with his lawyers difficult. And it takes six hours driving one way for his lawyers to visit him in the remote, rural Jail.

The Defense requests the Court hold a hearing to discuss solutions to the issues posed by Mr. Sterlingov's inability to effectively review the Government's evidence in this case. In the interim, the Defense requests permission to provide Mr. Sterlingov with a laptop solely for his use and for the purposes of preparing his defense.

At any hearing the Defense would also like to address the question of Mr. Sterlingov's detention during trial. Currently, for court appearances, the Jail wakes him up at 2 am and the ensuing process of transporting him to court deprives him of sleep. The Defense is concerned that if Mr. Sterlingov is held at the Jail during trial the ensuing sleep deprivation will detrimentally affect his ability to mount a complete defense. The Defense requests that Mr. Sterlingov be detained near the Court during the pendency of his trial, and in such manner as to avoid sleep deprivation or other impediments to his defense.

## VII.   The Court Should Only Permit Translations by Certified Translators

The Defense objects to any use of machine translation tools like Google Translate to translate any of the non-English languages at issue in this case.

## VIII.   The Court Should Order Early Disclosure of any Jencks Material

To the extent the Government is withholding any evidentiary basis for its forensics or scientific evidence for its forensics because of *Jencks*, this Court should order its production immediately for review by the Defense. Its withholding violates *Brady*, Due Process, and the Sixth Amendment. Furthermore, the antiquated McCarthy-era *Jencks* statute is unconstitutional as applied when it comes to 21st century blockchain cases like this one. If the purported scientific evidence and supporting sources aren't turned over until after a witness's direct examination, the Defense will be forced to move for a lengthy continuance in order to subject such evidence to necessary scrutiny. Already, if the Government were to produce the original datasets, sources, source code, and methodologies it used for its investigation the Defense would be hard pressed to analyze the data in time for trial. There is no way it can be quickly done at trial while preserving Mr. Sterlingov's constitutional right to put on a complete adversarial defense.

## IX.   Former FBI Agent and Current AUSA Catherine Pelker is a Material Fact Witness and the Court Should Hold a Hearing as to Her Role as Prosecutor in this Case

Upon information and belief, in 2014, Ms. Pelker originated this investigation when she was an FBI intelligence analyst in the Philadelphia Office of the FBI. Initially using Chainalysis software licensed to the Treasury Department, she was instrumental in getting DOJ to purchase a Chainalysis software license. Ms. Pelker's name is present on investigative

14

documents in this case from its inception.

Ms. Pelker is the reason this case was transferred from Philadelphia to D.C. In 2016, after graduating from a D.C. law school, she becomes a prosecutor on this case. Ms. Pelker is heavily involved as an FBI Agent in investigating it. Her name is on numerous documents as an FBI agent. As such, she is one of Mr. Sterlingov's accusers whom, under the Sixth Amendment, he is entitled to confront. The Court should hold a hearing as to her role as a material fact witness and removal as a prosecutor in this case.[18] The Defense has requested that Ms. Pelker step down as a prosecutor because she is a material fact witness. The Government has refused. The Defense intends to subpoena her testimony under the Sixth Amendment's Confrontation Clause.

## X.     Motion to Compel

In the alternative to barring the Government's blockchain analysis and digital forensics, this Court should order the Government to produce its original source codes, software versions, methodologies, datasets, information and the like, relied upon in coming to its forensic conclusions. If the Government is incapable of producing verifiable, reproducible proof of its forensic conclusions then this Court should bar them in their entirety.

## Conclusion

None of the Government's forensic conclusions are reproducible based on its discovery. This renders it impossible to mount an effective, complete defense because there is

---

[18] *See* D.C. Bar Rules of Professional Conduct 3.7; ABA Model Rules of Professional Conduct 3.7.

no way the Defense can challenge the black-box of computer software and speculative digital forensic methodologies used in the Government's seven-year investigation. None of it has been produced.

It is impossible to impeach testimony based on the Government's forensic software without examining the computer code itself. There is no way to determine the accuracy of the Government's allegations without a review of source code and methodologies. Because the Government refuses to produce any foundational authenticating evidence for its conclusory allegations, this Court should bar its blockchain analysis and digital forensics in their entirety.

In the alternative, this Court should order a comprehensive pre-trial Daubert/Frye Hearing so that the Government's forensics can be tested outside the presence of a jury.

Additionally, this Court should permit Mr. Sterlingov use of a laptop and order a hearing to address his inability to effectively review discovery in this case from jail.

This Court should also order a hearing as to AUSA Catherine Pelker's role as a prosecutor on this case, because she is a material fact witness.

Finally, in the alternative to barring the Government's blockchain analysis and digital forensics evidence, this Court should compel the production of the Government's original sources, source codes, datasets, methodologies and the like, necessary to properly authenticate the Government's allegations – if they exist.

Dated: October 24th, 2022
New York, New York

Respectfully submitted,

/s/ Tor Ekeland
Tor Ekeland (NYS Bar No. 4493631)
*Pro Hac Vice*
Tor Ekeland Law, PLLC
30 Wall Street, 8th Floor
New York, NY
t:  (718) 737 - 7264
f:  (718) 504 - 5417
tor@torekeland.com

/s/ Michael Hassard
Michael Hassard (NYS Bar No. 5824768)
*Pro Hac Vice*
Tor Ekeland Law, PLLC
30 Wall Street, 8th Floor
New York, NY
t:  (718) 737 - 7264
f:  (718) 504 - 5417
michael@torekeland.com

/s/ Marina Medvin, Esq.
Counsel for Defendant
MEDVIN LAW PLC
916 Prince Street
Alexandria, Virginia 22314
Tel:  888.886.4127
Email: contact@medvinlaw.com

*Counsel for Defendant Roman Sterlingov*

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of October 2022, the forgoing document was filed with the Clerk of Court using the CM/ECF System. I also certify that a true and correct copy of the foregoing was sent to the following individuals via e-mail and mail delivery via first class mail:

s/ Tor Ekeland

U.S. Department of Justice
District of Columbia
555 Fourth St. N.W.
Washington, D.C. 20530

Catherine Pelker
Catherine.Pelker@usdoj.gov

Christopher Brown
Christopher.Brown6@usdoj.gov