UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. 21-cr-399 (RDM) |
| | : | |
| ROMAN STERLINGOV, | : | |
| | : | |
| Defendant. | : | |

## GOVERNMENT'S NOTICE OF INTENT TO PRESENT EXPERT TESTIMONY

The United States of America, by and through its counsel, the United States Attorney for the District of Columbia, hereby provides notice of its intent to introduce expert testimony pursuant to Fed. R. Evid. 702, 703, and 705, and Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure. Many of the witnesses below will testify primarily as fact witnesses, but they possess special skills or knowledge that will assist the jury in understanding some of the evidence in the case. To the extent that aspects of these witnesses' testimony could be considered expert testimony under Rule 902, the government is providing this notice of their anticipated testimony. The curriculum vitae (or other relevant statement of qualifications) for the witnesses are being provided to defense counsel under separate cover.

## INTRODUCTION

The defendant, Roman Sterlingov ("Sterlingov" or the "defendant"), is charged with Conspiracy To Launder Monetary Instruments, in violation of 18 U.S.C. § 1956(h); Money Laundering, in violation of 18 U.S.C. § 1956(a)(3)(A), (B); Operating an Unlicensed Money Transmitting Business and Aiding and Abetting, in violation of 18 U.S.C. § 1960(a) and 18 U.S.C. § 2; and Money Transmission Without a License, in violation of D.C. Code § 26-1023(c). As summarized in the Indictment and in pretrial briefing, the Indictment arises from Sterlingov's

operation of a darknet cryptocurrency money laundering and money transmission service known as Bitcoin Fog from 2011 through 2021.

The evidence in this case centers around cryptocurrency and the darknet—technical and specialized topics that are likely not within the common knowledge of the average juror. The evidence also will include significant evidence retrieved through forensic review of the voluminous electronic evidence obtained during the course of the investigation. As explained below, such topics are suitable for expert testimony.

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. Expert testimony is appropriate if specialized knowledge will assist the jury "to understand the evidence or to determine a fact in issue." *United States v. Eiland*, No. 04-379 RCL, 2006 WL 2844921, at *5 (D.D.C. Oct. 2, 2006), *aff'd*, 738 F.3d 338 (D.C. Cir. 2013).

A witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Id.* (citing Fed. R. Evid. 702).

In order to qualify as an expert and offer expert testimony, a witness must possess "knowledge, skill, experience, training, or education" on the subject about which he is testifying. Fed. R. Evid. 702. The advisory committee's notes to Rule 702 specifically contemplate government agents with "extensive experience" serving as experts on issues within their unique purview. *See* Fed. R. Evid. 702 advisory committee's note.

## WITNESSES

The United States intends to call the below witnesses. Their qualifications, along with review and analysis of relevant records, reports, facts, and evidence, set forth the bases for their testimony.

**A.  Luke Scholl**

The government intends call Luke Scholl to testify on virtual currency and blockchain analysis, including clustering.[1] Mr. Scholl has worked with the Federal Bureau of Investigation (FBI) since 2015. He is employed as a Staff Operations Specialist and is detailed to the Department of Justice's National Cryptocurrency Enforcement Team, serving as the lead tracing analyst for the group, which was formed to work on the Department of Justice's most serious cryptocurrency-related matters. Mr. Scholl was a founding member of the FBI's Virtual Currency Response Team (VCRT) and has provided virtual currency investigative support through blockchain analysis and case strategy consultation in dozens of investigations across the FBI. Mr. Scholl has developed and delivered training curriculum on virtual currency, including blockchain analysis, and related topics to a variety of audiences. Mr. Scholl has extensive experience in using numerous blockchain analysis products, including those offered by Chainalysis, TRM, and Coinbase, as well as free public blockchain analysis tools. He has experience in tracing bitcoin and other cryptocurrencies connected to darknet markets, ransomware, and other unlawful schemes, and is familiar with the use of mixers and different mixing and laundering typologies through his investigative work. Mr. Scholl's additional qualifications, training, experience, and certifications are detailed in his curriculum vitae, which is being provided to defense counsel under separate cover.

---

[1] Other government witnesses, who are not being noticed here, will also provide testimony regarding darknet marketplaces, Tor, virtual currency, exchanges, blockchain analysis, and similar topics. Their testimony, however, will be as fact witnesses based on their personal knowledge and conduct of the investigation, not as expert testimony as defined in Fed. R. Evid. 702.

Through his testimony, Mr. Scholl is expected to explain bitcoin, including how bitcoin transactions are conducted, and how transactions can be traced on the blockchain. Mr. Scholl will explain the structure of a bitcoin transaction, and will define and explain terms and concepts such as bitcoin addresses, private keys, and wallets. Mr. Scholl will testify as to what information is recorded on the bitcoin blockchain and how that blockchain is stored and updated. Mr. Scholl will explain the function of virtual currency exchanges and will explain how bitcoin can be converted to other forms of value, including fiat currency and other cryptocurrencies. He will explain what information virtual currency exchanges collect and will testify regarding the importance of that information.

Mr. Scholl will testify regarding the basis for bitcoin's pricing and how that price fluctuates over time. Mr. Scholl will explain that in his work, he uses several sources for calculating bitcoin prices, including the pricing used by virtual currency exchanges and several widely used pricing indexes, such as CoinMarketCap, as well as the pricing integrated into Chainalysis Reactor and other blockchain analysis products.

Mr. Scholl's testimony will include testimony regarding the basic tenets of other cryptocurrencies in addition to bitcoin, including monero. Mr. Scholl will testify regarding the use of monero to conceal transactions, since monero does not rely on a transparent blockchain.

Mr. Scholl will explain the meaning and significance of various cryptocurrency-related records, references, and files found on the defendant's devices. For example, Mr. Scholl is expected to testify regarding the different systems noted in the defendant's document titled, "Blockchains and Tokens," the defendant's references to various virtual currency exchanges and their compliance programs, and the defendant's notes about different systems and features.

Mr. Scholl will testify regarding common terms and jargon used among cryptocurrency users. For example, Mr. Scholl will testify regarding the meaning and significance of "hodl," a term used to reference holding on to bitcoin indefinitely, despite price fluctuations; "to the moon," a term used by cryptocurrency investors to reference skyrocketing trading prices; and various popular memes.

Mr. Scholl will explain the role of Bitcoin Talk as a popular forum for Bitcoin users, particularly in the early days of Bitcoin. Mr. Scholl will explain the use of bitcoin on darknet markets, and the evolution of the darknet market and cryptocurrency ecosystems since Silk Road.

Mr. Scholl will explain different wallet software, including Bitcoin Core and Mycellium, and other bitcoin-related programs, such as Bisq. He will explain the different ways that individuals can store their bitcoin, including through paper wallets, hardware wallets, and wallet files. He will explain the difference between custodial wallets, where keys are controlled in whole or in part by a third party, and non-custodial, where the keys are controlled by the individual.

Mr. Scholl is also expected to testify regarding clustering, a blockchain analysis technique that identifies linked addresses held by an individual or organization. Mr. Scholl will explain the role of clustering in identifying wallets controlled by a target. Mr. Scholl will explain "co-spend," or "common input," analysis, in which addresses that are spent together in the same transaction can be determined to be under common control. Mr. Scholl will also testify regarding different transaction patterns that inform blockchain analysis, such as the presence of change addresses and peel chains. Mr. Scholl will explain different blockchain analysis products, particularly Chainalysis Reactor, and will testify as to his use of the products to conduct analysis, and will testify that he has found the products that he uses to be reliable. He will also testify as to how he tests and verifies the clusters and attribution by comparing the information in the tools to

information from cases. Mr. Scholl will describe how in this case he verified that transactions sent to and from different exchanges, as confirmed through subpoena returns, were correctly designated in blockchain analysis tools used; that the undercover transactions sent to Bitcoin Fog were recorded in the blockchain analysis tools and that Chainalysis had identified the receiving addresses as belonging to the Bitcoin Fog cluster; and that the defendant's own statements to the press confirming that he received money from Bitcoin Fog further corroborated the clustering.

Mr. Scholl's testimony will include a discussion of the *modus operandi* of criminals operating on the darknet, including common money laundering techniques used to complicate blockchain analysis. Mr. Scholl will explain how darknet market criminals and others try to thwart blockchain analysis and how blockchain analysis addresses those efforts. He will explain how mixers make it more difficult to trace funds on the blockchain, and will testify as to their popularity among criminals for that reason.

Mr. Scholl will testify regarding the addresses held by Bitcoin Fog, as well as other darknet platforms, such as Silk Road, Silk Road 2.0, AlphaBay, Agora, Nucleus, Abraxas, Pandora, Sheep Market, Black Bank, and Welcome to Video. Mr. Scholl will testify to the aggregate direct and indirect fund flows between Bitcoin Fog and these darknet sites and will testify to tracing funds tied to narcotics trafficking, identity theft, fraudulent financial documents, ransomware, computer hacking, and other unlawful activities, to and from Bitcoin Fog.

Mr. Scholl will testify to the blockchain analysis performed in support of the Bitcoin Fog investigation. This testimony will include tracing funds from Mr. Sterlingov's accounts to Bitcoin Fog and infrastructure connected to Bitcoin Fog, as well as tracing funds from Bitcoin Fog to Mr. Sterlingov's accounts or purchases made by Mr. Sterlingov. Mr. Scholl will testify that he reviewed financial records for Mr. Sterlingov's accounts at numerous traditional financial

institutions and virtual currency exchanges, and that he then conducted a source of funds analysis to trace the origin of the funds. Mr. Scholl will testify that the bulk of Mr. Sterlingov's funds in these accounts can be traced to Bitcoin Fog.

Mr. Scholl is compiling a more formal report memorializing the blockchain analysis conducted for the case. The report will be provided to defense counsel upon its completion. The report will be consistent with the blockchain analysis and other records already provided to defense counsel in discovery.

### B. Elizabeth Bisbee

The government intends to call Ms. Elizabeth Bisbee, an expert in virtual currency and blockchain analysis. Ms. Bisbee is the Director of Investigation Solutions for the blockchain analytics company Chainalysis. Prior to joining Chainalysis in January 2021, Ms. Bisbee was the Drug Enforcement Administration's (DEA) national subject matter expert for virtual currency investigations, practices, and policies. During that time, Ms. Bisbee served as the DEA's lead expert witness for virtual currency. Ms. Bisbee was involved in over 400 virtual currency investigations, including work on covert operations, blockchain analysis, suspect interviews, seizure of cryptocurrency, and trial preparation. She developed DEA's training curriculum related to virtual currency and blockchain analysis and has additionally taught numerous classes on virtual currency and virtual currency investigations. Ms. Bisbee's work has been published in the *Department of Justice Journal of Federal Law and Practice*. Ms. Bisbee's experience and qualifications are further detailed in a curriculum vitae which is being provided to defense counsel under separate cover. Ms. Bisbee's testimony will be based on her experience in virtual currency investigations and blockchain analysis and her work at Chainalysis on blockchain analysis and clustering.

Ms. Bisbee is expected to testify regarding blockchain analysis, explaining to the jury how law enforcement and others can trace transactions on the blockchain. Ms. Bisbee will explain how cryptocurrency transactions are structured, and will further explain how information from the blockchain can be used to determine "clusters" of addresses held by the same individual or entity. Ms. Bisbee will explain how the blockchain can be coupled with other sources of information, including undercover transactions, to determine who controls particular clusters. Ms. Bisbee will explain how she performed this work at DEA and Chainalysis. Ms. Bisbee will testify regarding the clusters associated with Bitcoin Fog and with key darknet marketplaces, including AlphaBay, Evolution, Agora, Nucleus, Abraxas, Pandora, Sheep Market, and Black Bank. Ms. Bisbee will testify to fund flow analysis between Bitcoin Fog and darknet markets, through both direct and indirect transactions.

Ms. Bisbee is compiling a more formal report memorializing the analysis conducted for the case. The report will be provided to defense counsel upon its completion.

### C. Matthew St. Jean

The government intends to call Matthew St. Jean to testify at trial. Mr. St. Jean is a Special Agent and Computer Investigative Specialist at the Internal Revenue Service (IRS) – Criminal Investigation, and has been so employed since 2009. Prior to his role with IRS, Mr. St. Jean worked as a Computer Forensic Agent with the U.S. Department of State, and previously as a forensic consultant in the private sector. Mr. St. Jean holds multiple computer forensics certifications, including certification as a Certified Forensic Computer Examiner (CFCE). Mr. St. Jean has particular expertise reviewing electronic evidence tied to cryptocurrency and is considered an IRS subject matter expert for virtual currency, virtual currency-related forensics review, and virtual currency seizures. Mr. St. Jean has been recognized for his considerable

accomplishments through numerous awards, including a 2020 award from IRS for cryptocurrency support to the field. Mr. St. Jean's additional training qualifications and certifications are detailed in his curriculum vitae, which is being provided to defense counsel under separate cover.

Mr. St. Jean is expected to provide testimony about his examination of devices seized from the defendant and other electronic evidence relevant to this case. He is expected to identify particular data that he viewed and extracted from those devices. Mr. St. Jean is expected to explain the metadata associated with certain files and related significance to the investigation.

Mr. St. Jean is also expected to explain certain scripts, code, and software found on the defendant's devices. Mr. St. Jean will explain the nature of the various electronic devices seized from the defendant, including the unusual modem device, the Raspberry Pi microcomputer, and the many SIM cards. Mr. St. Jean will testify to the use of virtual private networks (VPNs), Tor, proxies, and other tools and techniques used to conceal one's location or identity online.

Mr. St. Jean will provide testimony explaining cyber concepts and terms. The defendant wrote notes to himself with technical details regarding his work configuring different devices and concealing his activity. Much of these notes use technical terms and references to actions on a computer that are familiar to individuals such as Mr. St. Jean, but which would not be understandable to a lay jury without explanation.

For example, in a file titled "info-settings," the defendant wrote (translated from Russian into English), "Until it works, maybe you'll have to add these discs inside the Windows machine? . . . Or remake these drives into a regular Linux disk?," and, "On local policy MMC configuration add the new user group to the 'Access this computer from the network'(Win7) (or some s*** like that) policy. (Need to have a special group otherwise even if the Users group is removed, windows still lets him log in interactively.)" In handwritten notes in Russian, the defendant discusses

needing to establish a static IP, and asks himself, "Do we need a dhcp service, at least for the VPN?" and remarks that it needs to be tested first. In another note, the defendant asks himself how the UDP is not working, and wonders how he can reinstall UPS in BunkerX. He discusses changing the address in the UDP speeder client and opening new ports in BunkerX. In yet another document, the defendant discusses needing to insert a SIM card and set up a VPN and then says he can test 168.12 and 168.11 WAN8 MV-4 MV-2 wlan6 first. There are many notes about setting up and configuring VPNs and proxies, as well as files containing references to other technical concepts. A lay jury would benefit from Mr. St. Jean providing context and explaining the meaning of the defendant's many notes and files containing references to technical terms.

As noted below, Mr. St. Jean's insight in this area overlaps considerably with that of FBI Computer Scientist CS Valerie Mazars de Mazarin. Aspects of Mr. St. Jean's expected testimony described above may be covered by CS Mazars de Mazarin, and vice versa.

### D. Valerie Mazars de Mazarin

The government intends to call FBI Computer Scientist (CS) Valerie Mazars de Mazarin to testify at trial. CS Mazars de Mazarin has worked with the FBI since 2018, performing cyber forensic analysis of digital evidence. She works on cyber criminal intrusion matters and supports investigations through technical analysis, cyber research, and custom tool development. She has experience triaging malware and writing tools to parse large datasets and facilitate review of evidence in cyber cases. She also supports the FBI Washington Field Office by configuring secure and anonymous setups for sensitive online operations, and is highly familiar with Tor, proxies, and VPNs. Prior to her work with the FBI, CS Mazars de Mazarin worked as a technologist and analytical tool developer for Booz Allen Hamilton and as a solutions architect at Honeywell. She has a Bachelor of Science in Computer Science from Georgetown University and is proficient in

numerous programming languages, including Python, bash, C/C++, R, JavaScript, SQL, and Visual Basic/VBA. She holds multiple cybersecurity certifications, including GIAC Reverse Engineering Malware (GREM) and GIAC Security Essentials Certification (GSEC). She has participated in numerous cybersecurity team competitions, including a first-place team win at a SANS competition in August 2020.

CS Mazars de Mazarin is expected to provide testimony about her examination of devices seized from the defendant and other electronic evidence relevant to this case, including servers controlled by the defendant that were located at the time in Romania. CS Mazars de Mazarin is expected to identify particular data that she viewed and extracted from those devices. CS Mazars de Mazarin is expected to explain the metadata associated with certain files and related significance to the investigation.

CS Mazars de Mazarin will explain the nature of the various electronic devices seized from the defendant, including the unusual modem device and the Raspberry Pi microcomputer. CS Mazars de Mazarin is also expected to explain certain scripts, code, and software found on the defendant's devices. CS Mazars de Mazarin will testify to the use of Tor, proxies, VPNs, PGP keys, and encryption. CS Mazars will provide testimony regarding how websites are set up and hosted and how user traffic is routed over the Internet, including the use of IP addresses. CS Mazars de Mazarin will explain how IP address blocks are assigned and how IP addresses are allocated across hosting providers, and will testify regarding IP address geolocation. CS Mazars de Mazarin will testify regarding IP addresses used by the defendant and will testify regarding her analysis of those IP addresses and overlap across accounts.

CS Mazars de Mazarin will provide testimony explaining cyber concepts and terms. As described above in the subsection pertaining to Mr. St. Jean's expected testimony, the defendant

wrote notes to himself with technical details of his work. Much of these notes use technical terms and references to actions on a computer that are familiar to individuals such as Mr. St Jean or CS Mazars de Mazarin, but which would not be understandable to a lay jury. CS Mazars de Mazarin's testimony will explain these cyber concepts and terms. CS Mazars de Mazarin is also expected to explain certain other scripts or pieces of code found on the defendant's devices. This will include testimony regarding CS Mazars de Mazarin's review of the defendant's command line history, which includes commands related to server configuration. CS Mazars de Mazarin will explain the function of those commands. CS Mazars de Mazarin will also testify regarding the defendant's use of the Bitcoin Core client and evidence of the defendant sending bitcoin transactions through the command line, and will explain the purpose of such activity. CS Mazars de Mazarin will essentially serve as a translator, explaining technical terms, computer code, programs, metadata, or technical details to the jury.

The government is determining the scope of Mr. St. Jean's testimony in relation to that of CS Mazars de Mazarin, and will make those decisions closer to trial. The government submits that Mr. St. Jean and CS Mazars de Mazarin are both highly qualified to discuss the topics outlined in the other's respective sections.

### E. Theodore Vlahakis

The government intends to call Theodore Vlahakis to testify at trial. Mr. Vlahakis is a Senior Compliance Officer in the Enforcement Division of the U.S. Department of Treasury's Financial Crimes Enforcement Network (FinCEN). Mr. Vlahakis has worked at FinCEN since 2009 in multiple roles that have developed his expertise in the statutes and regulations that FinCEN is responsible for enforcing to safeguard the financial system from illicit use, combat money laundering, and promote national security. Mr. Vlahakis serves as a FinCEN subject matter expert

on financial institutions' registration, recordkeeping, reporting, and program requirements to comply with the Bank Secrecy Act (BSA), the USA PATRIOT Act, and other relevant statutes and regulations enforced by FinCEN.  Mr. Vlahakis is responsible for advising senior FinCEN management on enforcement actions and strategy, examining filings submitted by financial institutions, and reviewing FinCEN enforcement decisions and informational materials.  Mr. Vlahakis regularly represents FinCEN before other federal agencies, industry groups, and foreign officials, and conducts trainings and presentations about FinCEN's authorities and regulatory requirements.  Mr. Vlahakis performs detailed Suspicious Activity Report (SAR) analyses and has overseen Currency Transaction Report (CTR) processes.  Prior to his current position, Mr. Vlahakis served as the Chief of FinCEN's Resource Center where he oversaw FinCEN's Regulatory Helpline, which provides basic and interpretive guidance for inquiries received from industry, regulators, and law enforcement regarding BSA regulations, reports, and published rulings.  Mr. Vlahakis also served as a BSA Resource Specialist at FinCEN, where he directly assisted financial institutions in determining whether to submit a SAR, advised money services businesses (MSBs) of their anti-money laundering program requirements, and conducted outreach to potentially unregistered money service businesses to assist the with their registration, reporting, and recordkeeping requirements.  Mr. Vlahakis' additional qualifications, training, experience, and certifications are detailed in his curriculum vitae, which is being provided to defense counsel under separate cover.

      Mr. Vlahakis will provide testimony about FinCEN's role and responsibilities to oversee and enforce federal anti-money laundering laws and rules.  Mr. Vlahakis will describe the BSA and its related regulations, their purpose, and how they govern money transmitting and work to combat criminal activity.  Mr. Vlahakis is expected to explain what MSBs and money transmitters

are, how those entities must register with FinCEN, and why these registration requirements exist. Mr. Vlahakis may also provide an overview of MSBs' additional state-imposed registration requirements. Mr. Vlahakis will provide testimony describing the types of records MSBs must keep, what reports they are required to file, including SARs and CTRs, and how these reports help advance anti-money laundering efforts. Mr. Vlahakis is also expected to testify about other anti-money laundering compliance requirements that MSBs must implement and what resources exist to help MSBs comply with their FinCEN-enforced obligations.

Mr. Vlahakis is expected to testify about how the BSA and other federal laws and regulations enforced by FinCEN apply to certain entities handling cryptocurrency transactions. Mr. Vlahakis will provide testimony about how U.S. federal anti-money laundering laws and regulations apply to MSBs located abroad that conduct transactions with U.S.-based customers. Mr. Vlahakis will also testify that Bitcoin Fog was not registered as an MSB with FinCEN and that FinCEN did not receive any reports from Bitcoin Fog regarding any transactions or suspicious activity.

Mr. Vlahakis is being noticed here due to his specialized knowledge. He will not be asked to opine as to whether Bitcoin Fog should have registered with FinCEN and/or whether the defendant violated the law by failing to register. That issue will ultimately be left to the court and finder of fact.

### F. Additional Authentication Witnesses

The government is separately filing a motion seeking to authenticate certain electronic evidence through certifications that comply with the requirements of Fed. R. Evid. 902(11), 902(13), 902(14), and/or 18 U.S.C. § 3505, and through the evidence's distinctive characteristics under Fed. R. Evid. 901(b)(4). If that motion is not granted, the government will need to call

additional witnesses to testify regarding the process through which information from various electronic devices or files was reliably retrieved and/or copied. These witnesses may need to be noticed for their testimony regarding the processes by which the electronic evidence was obtained. The government may therefore supplement and amend this notice as trial approaches and will provide reasonable notice before trial.

### G. Translators

The government intends to admit at trial numerous documents that were written in foreign languages, including Swedish, Russian, and Romanian. In particular, the defendant wrote extensive notes to himself, both handwritten and in text documents saved to his devices and accounts. These notes transition with varying frequency between the numerous languages that the defendant speaks, particularly English, Swedish, and Russian. The evidence also includes recordings of the defendant's conversations from jail, and records that originated from providers in foreign countries. The government has provided the original records to defense counsel in discovery, and has provided some official translations, some machine translations, and some translation summaries. The government is having additional official translations completed and certified by qualified translators who would be available to testify at trial if needed. The government is committed to working with defense counsel to resolve any disputes regarding translations in advance of trial and hopes to be able to stipulate to the translations in order to streamline the trial. If stipulations cannot be reached, the government will be calling multiple translators at trial to testify regarding their translations of documents and records in this matter. Each translator is employed by or contracted with the U.S. Department of Justice, FBI, or IRS, and has language training and experience in translating documents for court purposes. The translations

will assist the jury in understanding the underlying texts or conversations, which are written or spoken in languages that would not otherwise be understood by most U.S. jurors.

## CONCLUSION

The government respectfully submits that the testimony of the above witnesses will help the jury understand the evidence in this case.

Respectfully submitted,
MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

BY:  */s/ Christopher B. Brown*
Christopher B. Brown, D.C. Bar No. 1008763
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-7153
Christopher.Brown6@usdoj.gov

*/s/ C. Alden Pelker*
C. Alden Pelker, Maryland Bar
Trial Attorney, U.S. Department of Justice
Computer Crime & Intellectual Property Section
1301 New York Ave., N.W., Suite 600
Washington, D.C. 20005
(202) 616-5007
Catherine.Pelker@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **v.** | : | Criminal No. 21-cr-399 (RDM) |
| | : | |
| **ROMAN STERLINGOV,** | : | |
| | : | |
| **Defendant** | : | |

## ORDER

Upon consideration of the government's Notice of Intent to Provide Expert Testimony, any opposition thereto, and such evidence and argument as has been presented at any hearing on the motion, it is this _____ day of _____, 2022, hereby

ORDERED, that the motion is GRANTED.

_____
THE HONORABLE RANDOLPH D. MOSS
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA