UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. 21-cr-399 (RDM) |
| | : | |
| ROMAN STERLINGOV, | : | |
| | : | |
| Defendant. | : | |

### GOVERNMENT'S NOTICE AND MOTION *IN LIMINE* TO ADMIT EVIDENCE AS INTRINSIC EVIDENCE OR, IN THE ALTERNATIVE, AS EVIDENCE OF OTHER CRIMES OR ACTS PURSUANT TO FEDERAL RULE OF EVIDENCE 404(b)

The United States of America, by and through the United States Attorney for the District of Columbia, hereby provides notice of its intent to introduce evidence described herein as intrinsic evidence relevant to the charges in the Indictment, and moves *in limine* for a ruling on the admissibility of such evidence as intrinsic evidence. In the alternative, the government also hereby provides notice of its intent to introduce evidence pursuant to Fed. R. Evid. 404(b). The government makes this disclosure out of an abundance of caution so that the government will have complied with the notice requirement of Rule 404(b) in the event the Court were to determine that such evidence is not intrinsic and is, in fact, covered by Rule 404(b). Even if such evidence is found to be covered by Rule 404(b), the evidence disclosed in this notice would still be admissible under that Rule as it would be offered to show defendant Roman Sterlingov's motive, intent, preparation, plan, knowledge, identity, and absence of mistake or accident in the scheme to launder darknet narcotics proceeds and operate an unlicensed money transmitting business through his bitcoin mixing service, Bitcoin Fog. *See* Fed. R. Evid. 404(b)(2).

Although the government is providing certain descriptions and specific examples of such evidence in this notice, this filing is intended to satisfy the government's obligation under Rule 404(b) to provide notice of the "general nature" of the crimes, wrongs, or other acts evidence that

the government intends to admit at trial, and is not an exclusive list of the specific pieces of evidence that the government may admit in support of these areas of activity. Fed. R. Evid. 404(b)(2)(A). The defendant should also be on notice that all evidence produced to the defendant, as well as all statements disclosed during discovery, may be offered in the trial of this case, as intrinsic evidence or under Rule 404(b). Further, because the government continues to investigate additional allegations of wrongdoing and the review of the evidence is ongoing, the government reserves the right to supplement and amend this notice as pre-trial investigatory developments dictate.

In support of its motion, the United States relies on the following points and authorities, and such other points and authorities as may be cited at a hearing on this motion.

## ARGUMENT

### I.  Evidence of Other Crimes or Acts Is Admissible as Intrinsic Evidence

As the D.C. Circuit has explained, "[g]enerally intrinsic evidence includes 'act[s] that [are] part of the charged offense' or 'some uncharged acts performed contemporaneously with the charged crime . . . if they facilitate the commission of the charged crime.'"[1] *United States v. Bell*,

---

[1] The D.C. Circuit previously mirrored its sister circuits in articulating the standard for intrinsic evidence by observing, "Evidence of criminal activity other than the charged offense is not considered extrinsic if it is an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, if it was inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime of trial." *United States v. Badru*, 97 F.3d 1471, 1474 (D.C. Cir. 1996) (quoting *United States v. Weeks*, 716 F.2d 830, 832 (11th Cir. 1983)). However, in *United States v. Bowie*, 232 F.3d 923 (D.C. Cir. 2000), a different panel expressed skepticism about the term "inextricably intertwined" as unhelpful and circular and criticized the term "complete the story" as overbroad, despite their broad use in other circuits. *Id.* at 928. In *United States v. Gooch*, 514 F. Supp. 2d 63 (D.D.C. 2007), Judge Collyer rejected the argument that *Bowie* represented a new and narrower test in the D.C. Circuit for intrinsic evidence. The court in *Gooch* noted that "a single panel cannot reverse [the] circuit precedent" established in the line of cases including *Badru*, *supra*, *United States v. Washington*, 12 F.3d 1128, 1135 (D.C. Cir. 1994), and *United States v. Allen*, 960 F.2d 1055, 1058 (D.C. Cir. 1992), in which the D.C. Circuit ruled that uncharged acts which are "inextricably

795 F.3d 88, 100 (D.C. Cir. 2015) (quoting *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000)); *see also United States v. McGill*, 815 F.3d 846, 879 (D.C. Cir. 2016) (approvingly quoting *Bowie,* 232 F.3d at 929); *United States v. Moore*, 651 F.3d 30, 63 (D.C. Cir. 2011) (approvingly quoting *Bowie,* 232 F.3d at 929); *United States v. Alexander*, 331 F.3d 116, 126 (D.C. Cir. 2003) ("[I]f evidence is offered as direct evidence of a fact in issue, not as circumstantial evidence requiring an inference regarding the character of the accused, it is properly considered intrinsic.") (internal quotations omitted); *United States v. Chin*, 83 F.3d 83, 88 (4th Cir. 1996) ("[A]cts are intrinsic when they are inextricably intertwined or [the] acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged.") (internal quotations omitted).

Evidence of uncharged acts that tend to prove the existence of a charged conspiracy is admissible as direct evidence of the charged offense. *See United States v. Lorenzana-Cordon*, No. 03-CR-331-13 (CKK), 2018 WL 10373745, at *5 (D.D.C. Jan. 18, 2018) ("Where the crime charged is conspiracy, evidence closely related to the conspiracy alleged in the indictment is admissible as intrinsic evidence"); *see also United States v. McGauley*, 279 F.3d 62, 72-73 (1st Cir. 2002) (evidence that defendant fraudulently obtained 217 refund checks in uncharged

---

intertwined" with the charged offenses are intrinsic to the charged offenses and exempt from an analysis under Federal Rule of Evidence 404(b). *Gooch*, 514 F. Supp. 2d at 69-70. *Bowie* also concerned factually distinguishable circumstances, where the defendant was charged with a single instance of possession of counterfeit currency, and the government introduced evidence of a prior occasion on which the defendant possessed counterfeit currency—which is far different from the interconnected conspiracy and scheme offenses charged in this case. *See* 232 F.3d at 927-28. Nonetheless, subsequent D.C. Circuit panel decisions have approvingly quoted *Bowie*'s standard for intrinsic evidence. *See United States v. McGill*, 815 F.3d 846, 879 (D.C. Cir. 2016); *United States v. Bell*, 795 F.3d 88, 100 (D.C. Cir. 2015); *United States v. Moore*, 651 F.3d 30, 63 (D.C. Cir. 2011); *but see United States v. Mahdi*, 598 F.3d 883, 890-91 (D.C. Cir. 2010) (finding no error in admission of testimony regarding evidence of uncharged instances of violence by defendant in VICAR and RICO case, characterizing testimony as "intrinsic evidence" of defendant's "organizational control"). The government here conservatively notes the decision in *Bowie* but does not concede that it has entirely supplanted the standard articulated in *Badru* for admission of other-crimes evidence that is intrinsic to the charged offenses.

transactions was directly relevant to three counts of mail fraud because it tended to prove existence of "*a scheme* for obtaining underserved refunds" and "was part and parcel of the charged scheme") (emphasis in original); *United States v. Parker*, 553 F.3d 1309 (10th Cir. 2009) (finding no error in admission of three uncharged sales of faulty aircraft engines during period of charged conspiracy to sell other faulty aircraft engines because the uncharged transactions were "intrinsic to the crime and substantiate[d] the criminal conspiracy"); *United States v. Powers*, 168 F.3d 741, 749 (5th Cir. 1999) (evidence of uncharged transactions was "intrinsic" because it "tend[ed] to show the conspiratorial relationship" between the defendant and his co-conspirator); *United States v. Diaz*, 878 F.2d 608, 614-15 (2d Cir. 1989) (evidence of a cocaine seizure predating period of charged conspiracy was directly relevant because it supported the inference connections between a stash house, pay phone, and the charged cocaine conspiracy). In cases involving ongoing conspiracies or schemes, courts have found that evidence of uncharged conduct involving the same individuals can be intrinsic evidence of the charged offenses. *See, e.g.*, *United States v. Madrid*, 610 F. App'x 359, 384-85, 2015 WL 3875435, at *19 (5th Cir. June 24, 2015) (unpublished) (in conspiracy to defraud the United States by fraudulently procuring federal funds, evidence that conspirators bribed a judge was "inextricably intertwined" with conspiracy and showed the "conspiratorial relationship" and "relevant contextual evidence regarding the nature and extent of the conspiracy").

Here, evidence and testimony related to the categories described below represent direct evidence of the charged offenses and should be admissible as intrinsic evidence.

    **II.**    **Evidence of Other Crimes or Acts Is Alternatively Admissible Under Rule 404(b) for Other Purposes**

Alternatively, evidence described in this motion is admissible under Rule 404(b) to prove, *inter alia*, motive, intent, preparation, plan, knowledge, identity, and absence of mistake or

4

accident, and for other purposes such as showing that the defendant has the technical ability to create and manage a sophisticated bitcoin mixing service such as Bitcoin Fog.  As the D.C. Circuit has summarized:

> Federal Rule of Evidence 404(b) authorizes admission of "[e]vidence of other crimes, wrongs, or acts" provided it is offered not "to prove the character of a person in order to show action in conformity therewith" but rather "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

*United States v. Mahdi*, 598 F.3d 883, 891 (D.C. Cir. 2010).

The D.C. Circuit has adopted a two-pronged test for determining whether evidence of other bad acts is admissible under Rule 404(b).  First, the evidence must be "probative of a material issue other than character."  *United States v. Miller*, 895 F.2d 1431, 1435 (D.C. Cir. 1990); *see also United States v. Douglas*, 482 F.3d 591, 596 (D.C. Cir. 2007) ("A proper analysis under Rule 404(b) begins with the question of relevance: is the other crime or act relevant and, if so, relevant to something other than the defendant's character or propensity [to commit crime]?  If yes, the evidence is admissible unless excluded under other rules of evidence such as Rule 403.").  Second, the evidence is subject to the balancing test of Fed. R. Evid. 403, so that it is inadmissible only if the prejudicial effect of admitting the evidence "substantially outweighs" its probative value. *Miller*, 895 F.2d at 1435; *see also United States v. Lerma-Plata*, 919 F. Supp. 2d 152, 156 (D.D.C. 2013) ("In addressing trial court determinations on the admissibility of 'other crimes' evidence under the Federal Rules of Evidence, this Circuit has employed a two-step mode of analysis.  Under the first step, which addresses Rule 404(b), '[the court] must determine whether the evidence is relevant to a material issue other than character. If so, [the court] proceeds to the second inquiry,' under Federal Rule of Evidence 403, 'whether the probative value is substantially outweighed by

the prejudice.'") (quoting *United States v. Burch,* 156 F.3d 1315, 1323 (D.C. Cir. 1998) (internal quotations omitted).

On the first step, it is significant that, "under Rule 404(b), *any* purpose for which bad-acts evidence is introduced is a proper purpose so long as the evidence is not offered *solely* to prove character." *Miller*, 895 F.2d at 1436 (emphasis in original). In other words, Rule 404(b) "is a rule of inclusion rather than exclusion" and it is "quite permissive, excluding evidence only if it is offered for the sole purpose of proving that a person's actions conformed to his or her character." *United States v. Long*, 328 F.3d 655, 660-61 (D.C. Cir. 2003) (internal quotation marks omitted); *see also Douglas*, 482 F.3d at 596, *Bowie*, 232 F.3d at 929-30, *United States v. Crowder*, 141 F.3d 1202, 1206 (D.C. Cir. 1998) (en banc), *United States v. Lawson*, 410 F.3d 735, 740 (D.C. Cir. 2005). The D.C. Circuit previously observed, "Only one series of evidential hypotheses is forbidden in criminal cases by Rule 404: a man who commits a crime probably has a defect of character; a man with such a defect of character is more likely than men generally to have committed the act in question." *Miller*, 895 F.2d at 1436 (quoting 2 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 404[8], at 404-52 (1989).

On the second step, the D.C. Circuit has emphasized that exclusion of otherwise relevant evidence is not appropriate if the evidence is merely prejudicial; the prejudice must be "unfair." *See United States v. Cassell*, 292 F.3d 788, 796 (D.C. Cir. 2002) ("Virtually all evidence is prejudicial or it isn't material. The prejudice must be unfair.") (internal quotation marks omitted). In close cases, the rule tilts toward admission. *See United States v. Johnson*, 802 F.2d 1459, 1464 (D.C. Cir. 1986) ("[T]he balance should generally be struck in favor of admission when the evidence indicates a close relationship to the offense charged.") (internal quotation marks omitted).

Further, the government is entitled to introduce evidence pursuant to Rule 404(b) in its case in chief to anticipate a defendant's likely defense of lack of intent or knowledge. *See, e.g.*, *United States v. Brown*, 597 F.3d 399, 404 (D.C. Cir. 2010) (extrinsic evidence of defendant's "knowledge, motive, and the absence of mistake or accident" was admissible under Rule 404(b) "to show his specific intent to defraud"); *see also United States v. Inserra*, 34 F.3d 83, 90 (2d Cir. 1994) ("[Rule 404(b) other crimes evidence] is admissible during the Government's case-in-chief if it is apparent that the defendant will dispute that issue."); *United States v. Estabrook*, 774 F.2d 284, 289 (8th Cir. 1985) ("[W]here it is made clear at the outset of the trial that the defendant's principal defense is a lack of knowledge or intent, and thus the issue is unarguably in dispute, the government may take the defendant at his word and introduce the evidence in its case-in-chief"); *United States v. Lewis*, 759 F.2d 1316, 1349 n. 14 (8th Cir. 1985) ("It was not necessary for the government to await defendant's denial of intent or knowledge before introducing [Rule 404(b) other crimes] evidence; instead the government may anticipate the defense and introduce it in its case-in-chief").

Here, evidence and testimony related to the categories described in this motion are admissible for multiple purposes pursuant to Rule 404(b). *See Crowder*, 141 F.3d at 1208 (Rule 404(b) evidence "will often have . . . multiple utility, showing at once intent, knowledge, motive, preparation and the like").

**III.   Evidence of Other Crimes and Acts Is Intrinsic or Admissible Under Rule 403(b)**

The government intends to introduce evidence related to the categories listed below:

**A. Defendant's Use of and Knowledge of Tor, Silk Road, and other Darknet Markets, and Defendant's Recreational Drug Use**

The government intends to introduce evidence and testimony related to the defendant's use and knowledge of Tor, Silk Road, and other darknet markets that primarily trafficked in illegal

7

drugs. Such evidence includes account records for the defendant's personal accounts on Silk Road and Silk Road 2.0, recovered from servers seized through other law enforcement investigations. In addition, the defendant emailed associates with information about Tor, Silk Road, and Bitcoin-related topics, and provided specific Tor addresses and instructions for accessing sites on the darknet. Forensic examination of the defendant's electronics also indicates he installed and used the Tor browser. Finally, the defendant's WhatsApp messaging and other communications indicate that he has engaged in recreational drug use, including the psychedelic drug ayahuasca.

Such evidence is best viewed as intrinsic evidence of the defendant's knowledge that darknet markets, including Silk Road and Silk Road 2.0, primarily trafficked in illegal drugs and other illicit goods, and that Bitcoin Fog was thereby engaging in transactions involving drug proceeds and intended to conceal such proceeds and promote further drug trafficking offenses. It thus constitutes direct evidence of key elements of the charged offenses.

The defendant's knowledge of these darknet markets is also direct evidence of the existence of a conspiracy between the defendant and (among others) darknet market vendors and administrators, who engaged in a common unlawful enterprise to promote drug trafficking on the darknet. These darknet market vendors and administrators fed customers to Bitcoin Fog, creating fees and income for the defendant; and Bitcoin Fog in turn facilitated darknet drug trafficking by making it easier for vendors and customers to engage in untraceable transactions.[2]

---

[2] The conspiratorial agreement need not be explicit, but can be inferred from circumstantial evidence showing "unity of purpose or a common design and understanding." *American Tobacco Co. v. United States*, 328 U.S. 781, 809-801 (1946); *see also United States v. Thorne*, 997 F.2d 1504, 1512 (D.C. Cir. 1993) ("A jury may infer the existence of agreement through circumstantial evidence."). The D.C. Circuit has recognized that a "chain" conspiracy may exist among functionally separate but interdependent actors. *See United States v. Sanders*, 778 F.3d 1042, 1049 (D.C. Cir. 2015) ("[P]articipants in a drug distribution chain are generally considered coconspirators 'even if they do not all know one another, so long as each knows that his own role in the distribution of drugs and the benefits he derives from his participation depend on the

In addition, the defendant's familiarity with Tor, darknet markets, and his recreational drug use is all relevant to prove motive, intent, preparation, plan, and knowledge with respect to Bitcoin Fog and the charged offenses.

### B. Defendant's Technical Knowledge and Programming Ability

Numerous items of evidence, including the defendant's handwritten and electronic notes, his email messages, and forensic examination of his electronic devices and images of the Romanian servers that the defendant used for "MoonVPN" (described below), all demonstrate a high degree of technical skill, knowledge, and programming ability. Such evidence is directly relevant to the defendant's ability to create and manage a sophisticated darknet service such as Bitcoin Fog; it also demonstrates the defendant's preparation and knowledge.

Evidence relating to the defendant's technical abilities is also relevant to proving identity. For example, in or about November 2011 (shortly after the launch of Bitcoin Fog), an individual contacted shormint@hotmail.com (the email address used to register the Bitcoin Fog clearnet domain and to manage the "Akemashite Omedetou" moniker on Bitcoin Talk) about purchasing Bitcoin Fog. The defendant responded that he and the other founders had decided against selling Bitcoin Fog, but added that he was open to other projects, adding: "I am a proficient developer in C/C++ (mostly for windows platform, but many of the libraries I used are platform-independent), Java, PHP, Python, HTML/CSS, JS." Separately, in or about June 2011, the defendant used his

---

activities of the others.'") (quoting *United States v. Childress*, 58 F.3d 693, 709-10 (D.C. Cir. 1995)). Money launderers for a drug trafficking organization can also be part of a chain conspiracy because they facilitate the success of the overall enterprise. *See, e.g.*, *United States v. Lignarolo*, 770 F.2d 971, 978 n.10 (11th Cir. 1985) ("It may be true, in a given case, that the laundering of money is an essential component of drug trafficking; as such, it facilitates the business. Importers, wholesalers, purchasers of cutting materials, and persons who 'wash' money are all as necessary to the success of the venture as is the retailer. They can all be held to have agreed with one another in what has been called a 'chain' conspiracy.").

true-name account, heavydist@gmail.com, to describe his programming skills in strikingly similar terms: "I am very proficient in c++, delphi, php, javascript, a couple of other language, but mainly those." While not dispositive, the fact that the "Akemashite Omedetou" and the defendant shared a common technical skillset tends to support the inference (confirmed by other items of evidence) that they are the same person.

### C. Defendant's Use of Aliases and Efforts To Conceal Identity and Assets

The defendant used various aliases and online monikers (such as "Killdozer," "Akemashite Omedetou," or "Vasily Kunnikov"),[3] and separate email accounts (such as heavydist@gmail.com, gothencoin@aol.com, plasma@plasmadivision.com, kolbasa99@rambler.ru, nfs9000@hotmail.com, and shormint@hotmail.com), in conducting his affairs online and in activity related to creating and maintaining Bitcoin Fog.

Further, as detailed in previous government filings, *e.g.*, ECF No. 19, at 40-45; ECF No. 50, at 27-30; ECF No. 53, at 15-16, transfers from Bitcoin Fog accounted for the bulk of the defendant's income, which in turn was filtered through intermediary steps—such as trading bitcoin for currency through peer-to-peer exchanges using sites like LocalBitcoins.com, or depositing directly into virtual currency exchange accounts. The defendant also made efforts to purchase untraceable assets like gold, and indicated in a WhatsApp message to an associate that "I have some hidden but I don't know if its well enough." The defendant repeatedly expressed interest in offshore bank secrecy and tax havens, and, at the time of his arrest, had exchanged messages suggesting he intended to attend a "Nomad Capitalist" conference in Mexico.

---

[3] The defendant also referred to himself as "Max" or "Max Power" in email and messaging, including the WhatsApp account on his phone.

The elaborate steps taken to conceal the defendant's identity and launder and conceal his assets are best viewed as intrinsic evidence of the Bitcoin Fog conspiracy, including the defendant's state of mind and his efforts to evade detection. In the alternative, they are relevant to prove the defendant's motive, opportunity, intent, preparation, plan, knowledge, and identity as it relates to Bitcoin Fog.

### D. Defendant's MoonVPN Servers

Beginning as early as in or about 2015 and continuing through 2021, the defendant operated servers in Romania which he represented were used for a Virtual Private Network (VPN) service called "MoonVPN," and he also used the servers to run Bitcoin client software. The servers were hosted at the Romanian data center M247 Networks, and were registered to "To the Moon ltd.," with Roman Sterlingov listed as the point of contact. The defendant's email accounts include messages indicating that the defendant incorporated a company called To The Moon VPN in Malta with the assistance of a Maltese accounting company specializing in the creation of offshore companies. The defendant controlled several accounts at virtual currency exchanges that were opened in the name of "To The Moon VPN" and similar variations. The defendant also held a bank account in Malta under the name To The Moon LTD.

Examination of Romanian server images located apparent customer lists, which may be consistent with operating a VPN service. However, evidence also indicates that the defendant used MoonVPN to launder funds derived from Bitcoin Fog by comingling and disguising them as legitimate business income. For instance, the defendant maintained an account in the name of "TO THE MOON LTD | ROMAN" at the virtual currency exchange Kraken which was funded in large part by direct and indirect transfers from Bitcoin Fog. *See* ECF No. 53-5.

Evidence and testimony relating to MoonVPN, particularly including the defendant's use of MoonVPN accounts as a conduit for laundering Bitcoin Fog proceeds, is directly relevant to proving that the defendant was operating Bitcoin Fog as an ongoing business, as well as his state of mind and effort to conceal his activities by disguising Bitcoin Fog proceeds. More broadly, and in the alternative, evidence relating to MoonVPN is also relevant to show the defendant's sophistication and technical ability in creating complex code, using and managing remote server infrastructure, and operating a Bitcoin client capable of sending and receiving bitcoin transactions. It is thus relevant to prove the defendant's intent, preparation, plan, and knowledge.

### E. Defendant's Efforts To Acquire BlindBitcoin

Shortly before Bitcoin Fog was launched in late October 2011, the defendant contacted the creator of an early bitcoin mixer, BlindBitcoin.com, using the defendant's online moniker "Killdozer" on Bitcoin Talk, to explore his interest in "taking over" the BlindBitcoin website. The defendant stated that "operating such a website would be very interesting" and "I believe I have all the needed techincal [sic] qualifications." Less than a month later, on October 27, 2011, the official launch of Bitcoin Fog was announced on BitcoinTalk by the defendant's alter-ego moniker, "Akemashite Omedetou." In a private message to the BitcoinTalk adminsitrator, "Akemashite Omedetou" described the new Bitcoin Fog service as "basically a blindbitcoin-implementation with improvements and more professionally done, operating through tor." Other posts confirmed that Bitcoin Fog was consciously modeled after BlindBitcoin.

Evidence and testimony relating to the defendant's efforts to acquire and operate BlindBitcoin.com are an integral part of the story of how Bitcoin Fog was created and the defendant's involvement in it, and should be considered direct evidence of the charged offenses. In the alternative, the defendant's expressed interest in acquiring and managing a bitcoin mixer,

less than a month before Bitcoin Fog was launched, is strong evidence of the defendant's intent, preparation, plan, and knowledge, as well as his technical ability.

### F.  Defendant's Efforts To Set Up Other Cryptocurrency Projects

Finally, the government intends to introduce evidence that the defendant attempted to engage in a number of other cryptocurrency-related software and web development projects. Starting as early as 2013, the defendant began exploring establishing an "e-currency exchanger company" and reached out to a corporate services provider for assistance in selecting a jurisdiction where it is "easy to get the required license (if such license is needed at all)" and with a "favorable tax regime."  The defendant reached out to various parties about graphic design work for a planned bitcoin "wallet service," which he described in one communication as a "*legitimate* wallet service" (emphasis added).  Eventually, these efforts coalesced into an effort to set up a service the defendant referred to as "Hedged Bitcoin," a business intended to facilitate the automatic exchange of bitcoin deposits for other currencies to hedge against fluctuations in the price of bitcoin.  The defendant contacted authorities in Malta about obtaining a business license for his planned exchange.  He also reached out to various parties to explore purchasing bitcoin-related internet domains, such as bithub.com, bitstation.com, and bitman.com.

These efforts to create a "legitimate" bitcoin exchange service are relevant for a number of purposes, including knowledge and the defendant's technical ability to set up a service performing many of the same functions as Bitcoin Fog.  They also illustrate a persistent focus on bitcoin and awareness of the economic challenges of managing volatile cryptocurrency assets.

In another example, in 2011 the defendant explored the possibility of programming an automated poker program using both his shormint@hotmail.com account (associated with Bitcoin Fog and the aliases "Akemashite Omedetou" and "Vasily Kunnikov") and heavydist@gmail.com

13

account (associated with the defendant's true name). In or about November 2011, shormint@hotmail.com discussed the possible development of "bitcoin poker and bitcoin casinos." In or about June 2011, the defendant used heavydist@gmail.com to outline his efforts to build a "pokerbot" or "pokerai" (*i.e.*, poker artificial intelligence). Evidence relating to these efforts is relevant to proving the defendant's technical ability, and also—given the parallelism between the two accounts—constitutes evidence of identity.

### IV.  Evidence of Other Crimes and Acts Is Admissible Under Rule 403

The probative value of the evidence in each of the categories described above is significant. The potential prejudice does not "substantially outweigh" its probative value. The defendant is charged with an extensive money laundering conspiracy, wherein he allegedly laundered hundreds of millions of dollars of narcotics proceeds from some of the most notorious darknet drug markets in operation at the time. The categories of evidence described above, by contrast, mostly relate to the defendant's knowledge and ability, or they relate to comparatively less serious conduct, such as using aliases or attempting to establish a "legitimate" bitcoin wallet service. There is little risk that introduction of such evidence would tend to inflame the jury or cause it to make a decision on an emotional basis. *See United States v. Ring*, 706 F.3d 460, 471 (D.C. Cir. 2014) (explaining that "unfair prejudice" means "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one") (internal quotation marks omitted). To the contrary, it will be helpful to the jury in understanding the defendant's schemes and establishing the requisite elements of the charged offenses.

Any concern regarding improper use of evidence admitted pursuant to Rule 404(b) can be appropriately addressed with a limiting instruction. *See, e.g.*, *United States v. Lieu*, 963 F.3d 122, 129 (D.C. Cir. 2020) (noting "the district court gave appropriate limiting instructions explaining

the permissible and impermissible uses of [a minor child's] testimony" admitted pursuant to Rule 404(b) in a child pornography trial); *Crowder*, 141 F.3d at 1210 (considering "the effect of a limiting instruction" in conducting balancing under Rule 403).

## CONCLUSION

For the foregoing reasons, the government respectfully requests permission to introduce the above-described evidence as intrinsic evidence and/or evidence of other crimes or acts pursuant to Fed. R. Evid. 404(b).

        Respectfully submitted,
        MATTHEW M. GRAVES
        UNITED STATES ATTORNEY
        D.C. Bar No. 481052

BY:   */s/ Christopher B. Brown*
        Christopher B. Brown, D.C. Bar No. 1008763
        Assistant United States Attorney
        U.S. Attorney's Office for the District of Columbia
        601 D Street, N.W.
        Washington, D.C. 20530
        (202) 252-7153
        Christopher.Brown6@usdoj.gov

        */s/ C. Alden Pelker*
        C. Alden Pelker, Maryland Bar
        Trial Attorney, U.S. Department of Justice
        Computer Crime & Intellectual Property Section
        1301 New York Ave., N.W., Suite 600
        Washington, D.C. 20005
        (202) 616-5007
        Catherine.Pelker@usdoj.gov