UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 21-cr-399 (RDM) |
| | : | |
| ROMAN STERLINGOV, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION FOR ATTORNEY-DIRECTED *VOIR DIRE*** 

The United States of America, by and through the United States Attorney for the District of Columbia, respectfully submits this memorandum in opposition to the defendant Roman Sterlingov's (the "defendant") motion *in limine*, in which he asks the Court to grant attorney-directed *voir dire*. ECF No. 60. In opposition whereof, the government states as follows:

**ARGUMENT**

**I.   Legal Framework**

Under Rule 24, a court may examine prospective jurors or permit the parties' attorneys to conduct *voir dire*. Fed. R. Crim. P. 24(a)(1). Even if the Court chooses to lead voir dire, as is standard practice, Rule 24 still requires the Court to permit attorneys to ask further questions as the court deems proper or to submit additional questions that the court may ask. Fed. R. Crim. P. 24(a)(2).

> Because the obligation to impanel an impartial jury lies in the first instance with the trial judge, federal judges have been accorded ample discretion in determining how best to conduct the voir dire. That discretion extends to the mode and manner of proceeding, as well as to the range of questions put to the prospective jurors.

*United States v. West*, 458 F.3d 1, 6 (D.C. Cir. 2006) (cleaned up). The Supreme Court has reiterated that jury selection is "particularly within the province of the trial judge." *Ristaino v. Ross*, 424 U.S. 589, 594-95 (1976) (internal quotation marks omitted). The Court has also noted

there is "no hard-and-fast formula" that "dictates the necessary depth or breadth of voir dire," allowing trial court judges to make sufficient determinations of what is most appropriate for each jury trial. *Skilling v. United States*, 561 U.S. 358, 386 (2010).

**II.     The Standard Practice of Court-Directed *Voir Dire* Is the Best Practice for Selecting an Impartial Jury in an Efficient and Effective Manner**

The government understands that, pursuant to the Court's customary practice and the scheduling order in this case, the parties have the opportunity to submit "case-specific v*oir dire*" questions, *see* July 1, 2022 Minute Order, and the Court will lead the *voir dire* process while allowing attorneys to ask follow-up questions. This Court-directed process will ensure fairness and efficiency in selecting an impartial jury.

Court-directed *voir dire* is the standard practice not only in this district but also in most districts across the country. *See United States v. Farris*, 733 F. App'x 237, 240–41 (6th Cir. Apr. 26, 2018) ("[T]he majority of judges choose to conduct voir dire themselves."); *Darden v. Snow*, 849 F. App'x 100, 101–02 (5th Cir. June 1, 2021) ("[I]t has long been the practice in many federal courts for judges to conduct the questioning."); *see generally* Lewis O. Unglesby, *"Speaking the Truth" About Attorney Voir Dire*, 62 LA. B.J. 90, 92 (2014) (explaining the shift, starting in the 1920s, that has led to most federal judges conducting *voir dire*). By following Rule 24's requirements to permit attorneys to submit questions to the court and allowing attorneys to ask prospective jurors questions directly—both within the bounds considered appropriate by the Court—the Court can ensure that both parties are closely involved in the examination. *See United States v. Morrow*, No. CRIM.A. 04-355 (CKK), 2006 WL 1147615, at *16 (D.D.C. Apr. 26, 2006) ("Upon a review of the Court's *voir dire*, it is clear that the Court did not abuse its discretion in crafting the inquiry. Instead, Defendants had a vital role in the iterative process leading up to the *voir dire*, suggesting potential questions and requesting certain modifications[.]").

This Court's customary practice of court-directed *voir dire*, which includes questions submitted by the parties' attorneys and which permits attorneys to ask follow-up questions when individual jurors are examined at the bench, has proven to be an efficient process to select an impartial jury, even when a case involves complex subjects and well-publicized offenses. Having a neutral judge leading jury selection with appropriate inputs from the parties' attorneys keeps the process focused on selecting a fair and unbiased jury. Court-directed *voir dire* also prevents attorneys from potentially inquiring about irrelevant, legally impermissible, or otherwise inappropriate topics that may introduce legal error. It also defends against attorneys seeking to impress their arguments on potential jurors before opening statements.

"Attorney-driven voir dire is disfavored, since the opportunity is often abused to delay and to prejudice the jury." *United States v. Taveras*, 436 F. Supp. 2d 493, 504 (E.D.N.Y. 2006), *aff'd in part, vacated in part sub nom*, *United States v. Pepin*, 514 F.3d 193 (2d Cir. 2008). Courts have widely adopted court-directed *voir dire* to prevent such abuses, including excessive and protracted questioning by attorneys resulting in no better outcomes. *See United States v. Dennis*, 183 F.2d 201, 227 (2d Cir. 1950) ("[I]t was exactly the purpose of Criminal Rule 24(a), which allows the judge to frame questions on the voir dire if he thinks best, to avoid the interminable examinations sometimes extending for weeks on end that had frequently resulted from the former method."); *United States v. Givhan*, No. 3:16-CR-57-DJH, 2016 WL 7031905, at *1 (W.D. Ky. Dec. 1, 2016), *aff'd*, 740 F. App'x 458 (6th Cir. June 29, 2018) ("The Court agrees that its standard practice of Court-conducted voir dire would best serve the interest of judicial economy and avoid the risk of prejudicing potential jurors. . . . [A]t least two of [the defendant's] proposed questions would essentially ask panel members whether they agree with the defense's theory of the case."). The Defendant's request for the Court to provide attorneys with "sufficient time" to examine jurors

3

through an attorney-dictated jury selection process would reintroduce the issues that this Court and most others have successfully been able to avoid by adhering to Court-directed *voir dire* with attorney submissions and follow-up questioning.

### III. The Defendant Has Failed To Present a Sufficient Reason for Why the Court Should Deviate From its Standard Practice

When defendants have sought attorney-directed *voir dire*, courts have looked for compelling reasons to depart from their standard jury selection practices. *See United States v. Ray*, No. 20-CR-110 (LJL), 2022 WL 558146, at *21 (S.D.N.Y. Feb. 24, 2022) (finding no reason to permit attorney-led *voir dire* and rejecting the defense's argument that "jurors are more likely to be truthful and forthcoming when questioned by advocates with an in-depth knowledge of the issues in the case than by the Court alone"); *Goines v. Lee Mem'l Health Sys.*, No. 2:17-cv-656-FtM-29UAM, 2019 WL 8918734, at *1 (M.D. Fla. May 22, 2019) ("The Court finds this case does not present issues or concerns justifying conducting voir dire differently from the Court's usual fashion"); *United States v. Porter*, Criminal Action No. 12-001, 2015 WL 6134046, at *7 (E.D. La. Oct. 19, 2015) ("[T]he Court sees no reason to depart from its conventional voir dire procedures in favor of employing the likely more time-consuming voir dire process proposed by defense counsel. . . . [T]he Court has not been persuaded that defense counsel is uniquely more qualified than the Court in ascertaining juror disqualifications").

The defendant has failed to present a sufficient reason for why this case, and the circumstances surrounding it, are so extraordinary to warrant the Court to swap its standard protocol with a now "disfavored" practice. The defendant argues that attorney-led *voir dire* is needed in this case because (1) it presents technical topics such as cryptocurrency, computer law, and blockchain analysis, and (2) because of pre-trial publicity about cryptocurrency in general and an upcoming book that the defense claims will discuss this case. ECF No. 60 at 3. The defendant

4

has not cited a single case in which a court has permitted attorney-led *voir dire* because a trial has entailed technical topics or involved pre-trial publicity.

Courts have regularly held that judge-directed *voir dire* adequately addresses concerns about potential jurors being influenced by pre-trial publicity, including in cases involving "the widest publicity in the news media over extended periods of time." *United States v. Wilson*, 571 F. Supp. 1422, 1428 (S.D.N.Y. 1983). In *United States v. Skilling*, one of the most high-profile white collar criminal investigations of this century, the trial court rejected the defendant's motion to have attorney-led *voir dire*—a decision that the Supreme Court upheld. *Skilling v. United States*, 561 U.S. 358, 389 (2010). The Court also added:

> When pretrial publicity is at issue, "primary reliance on the judgment of the trial court makes [especially] good sense" because the judge "sits in the locale where the publicity is said to have had its effect" and may base her evaluation on her "own perception of the depth and extent of news stories that might influence a juror."

*Id.* at 386 (quoting *Mu'Min v. Virginia*, 500 U.S. 415, 427 (1991)).

Courts in this District have a long history of impaneling fair juries in highly publicized cases. In several Watergate cases, defendants' arguments about inadequacies with standard court-led *voir dire* procedures were rejected. *See United States v. Haldeman*, 559 F.2d 31, 70 (D.C. Cir. 1976) (upholding the district court's *voir dire* process to prevent pre-trial publicity about Watergate from unfairly influencing jurors); *United States v. Ehrlichman*, 546 F.2d 910, 916 (D.C. Cir. 1976) ("The trial court's examination here adequately probed the question of prejudice and enabled the defendants to ascertain within limits of reasonableness, and necessary adequacy what the prospective jurors had heard about the case and the extent to which they might have made preliminary determinations about guilt or innocence"); *United States v. Liddy*, 509 F.2d 428, 436 (D.C. Cir. 1974) ("Although the trial judge recognized that the Watergate matter had been

publicized extensively, he did not abuse his discretion in declining the defendants' request that all the veniremen who had heard anything about the case be examined individually").

Courts in this District have similarly rejected defendants' arguments that ordinary *voir dire* procedures would be insufficient in the January 6th Capitol siege cases. *See United States v. Bochene*, 579 F. Supp. 3d 177, 182 (D.D.C. 2022) (finding that *voir dire* would ensure that jurors do not harbor biases against the parties); *United States v. Nassif*, No. CR 21-421 (JDB), 2022 WL 4130841, at *11 (D.D.C. Sept. 12, 2022) ("[T]his Court is confident that the standard voir dire process will be sufficient here. Accordingly, the Court will deny [the defendant's] request for expanded examination of prospective jurors before and during voir dire."); *United States v. Brock*, No. CR 21-140 (JDB), 2022 WL 3910549, at *8 (D.D.C. Aug. 31, 2022) ("[A]s the D.C. Circuit has noted, courts should avoid relying too heavily on pre-trial publicity to establish prejudice . . . . [A]ny impact pretrial publicity may have on potential jurors can, and should, be probed and rooted out through voir dire").

Finally, pre-trial publicity in this matter has been limited and, if anything, has been promoted by the defense team. *See* Lily Hay Newman & Andy Greenberg, *Bitcoin Case Could Put Cryptocurrency Tracing on Trial*, WIRED (Aug. 2, 2022), https://www.wired.com/story/bitcoin-fog-roman-sterlingov-blockchain-analysis/ (based on interviews of Mr. Sterlingov and Mr. Ekeland). Nothing about this case or its modest coverage in the press warrants a deviation from this Court's standard jury selection process.

The defendant relies on two studies from more than three decades ago. The defendant uses the findings of one study that found that among a sample of 190 jurors interviewed after criminal trials, notable percentages answered two *voir dire* questions differently in post-trial interviews pertaining to being or being related to a crime victim (25 percent) or knowing someone in law

enforcement (nearly 30 percent). Richard Seltzer et al., *Juror Honesty During the Voir Dire*, 19 J. Crim. Just. 451-462 (1991). This study does not prove that jurors were telling the truth in their unsworn interviews, nor does it prove that trial attorneys would have elicited different responses in *voir dire*. And nothing about the subject matter of these standard *voir dire* questions is of special relevance to this case.

The defendant offers a second study for the proposition that attorneys are best suited to lead *voir dire* because of their mastery of the facts of the case and allegedly superior ability to uncover bias and prejudice. In this study, a law professor and a law school student played the roles of attorneys and judges in eight mock jury selections to compare mock jurors' answers in a *voir dire* simulation to those submitted in a pre-*voir dire* written questionnaire. Susan E. Jones, *Judge Versus Attorney-Conducted Voir Dire*: *An Empirical Investigation of Juror Candor*, 11 Law & Hum. Behav. 131 (1987). Although the defendant uses this study's findings to assert that attorney-led *voir dire* elicits more candid responses from prospective jurors, others have cautioned against relying on this role-playing exercise to draw larger conclusions. *See* Reid Hastie, *Is Attorney-Conducted Voir Dire an Effective Procedure for the Selection of Impartial Juries?*, 40 Am. U. L. Rev. 703, 721 (1991) (explaining reasons why "[g]eneralizing the results of this mock-jury simulation to all voir dire presents a problem," including the lack of follow-on research to determine which answers were indeed true). In fact, much of the literature comparing attorney-led and court-led *voir dire* has been highly critical of the former. *See United States v. Barnes*, 604 F.2d 121, 142 n.10 (2d Cir. 1979) (citing "many articles relating the abuses of attorney-controlled voir dire, which suggest that a reasonable inquiry into the essentials raised in the particular case should be sufficient, and that the trial judge should retain the discretion to apply limits"); Hastie, *supra*, at 722-26 (finding that "Attorney-conducted voir dire is not an effective procedure for

selection of impartial juries. . . . Extended attorney-conducted voir dire procedures are ineffective at winnowing out prejudiced jurors, subject to abuse by attorneys, lower public regard for the justice system, and are expensive" and, "[E]vidence suggests that attorneys do not perform the jury selection function substantially above chance levels").

Finally, the defendant's motion is unclear about what role the judge should play in *voir dire*. The defendant asserts that the "fundamental issue is the status of the judge, not the judges' [sic] ability to ask questions" and that potential jurors will alter their answers to judge-asked questions "by conforming to a perceived notion of what is socially acceptable." ECF No. 60 at 5. To the extent the defendant seems to be arguing for attorney-led *voir dire* outside of the presence of the judge, such a process would invite legal error and would not be conducive to impaneling an impartial jury.

## **CONCLUSION**

For the foregoing reasons, the defendant's motion for attorney-directed *voir dire* should be denied and the Court should follow its customary jury selection procedure.

        Respectfully submitted,
        MATTHEW M. GRAVES
        UNITED STATES ATTORNEY
        D.C. Bar No. 481052

BY:   */s/ Christopher B. Brown*
        Christopher B. Brown, D.C. Bar No. 1008763
        Assistant United States Attorney
        U.S. Attorney's Office for the District of Columbia
        601 D Street, N.W.
        Washington, D.C. 20530
        (202) 252-7153
        Christopher.Brown6@usdoj.gov

        */s/ C. Alden Pelker*
        C. Alden Pelker, Maryland Bar
        Trial Attorney, U.S. Department of Justice
        Computer Crime & Intellectual Property Section
        1301 New York Ave., N.W., Suite 600
        Washington, D.C. 20005
        (202) 616-5007
        Catherine.Pelker@usdoj.gov