UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ROMAN STERLINGOV,<br><br>　　　　Defendant. | 21-CR-399 (RDM) |

**Defendant's Reply to Government's Opposition to Defendant's Motions in Limine - Dkt. 73**

1

## Table of Contents

**Introduction** .................................................................................................... *1*

**Argument** ........................................................................................................ 1

*I.    The Government's "Blockchain Analysis" is Junk Science* ................................ *1*

    A.   The Clustering Heuristics are Unscientific, Unverifiable, and Unreproducible .... 3

    B.   The *Daubert/Frye* Analysis is Case and Fact Specific ................................. 4

    C.   Federal Rules of Evidence 702 & 901 Require that the Government's Experts Testimony Be Based on Authentic Evidence ....................................................... 4

    D.   Without Production of the Government's Forensic Software Source Code the Defense Cannot Confront and Challenge Mr. Sterlingov's Accusers .......................................... 4

*II.   The Government's Undefined "Blockchain Analysis" is Untested* ...................... *5*

    A.   The Computer Forensic Software Code is Material to the Defense ......................... 6

*III.  The Defense Will Meet and Confer with the Government Regarding the Outstanding Discovery Disputes* ....................................................................... *7*

*IV.   The Government's Online Market Evidence is Irrelevant and Inadmissible* .. 8

*V.    FBI Intelligence Analyst Pelker is one of Defendant's Accusers and a Material Fact Witness* ..................................................................................................... *9*

*VI.   The Defendant Should Be Transferred to a Facility Under Federal Control*. *9*

**Conclusion** ..................................................................................................... 10

## Introduction

For the reasons previously argued this Court should grant Defendant's Motions in Limine. In the alternative, it should order comprehensive pre-trial evidentiary and *Daubert/Frye* hearings, so the Defense may debunk outside the presence of the jury the Junk Science that is the Government's case. The danger of prejudice is great given that the Government has nothing but computer forensic evidence for its case. It has no eyewitnesses or corroborating evidence.

The Defense accepts the Government's invitation to meet and confer as to the discovery disputes in this case. This Court should withhold ruling on Defendant's Motion in Limine to Compel until the parties meet and confer and report back to the Court. Furthermore, the Defense will be filing an opposed motion for a three-month continuance given the current status of this case.

## Argument

### I. The Government's "Blockchain Analysis" is Junk Science

To date, the Government refuses to produce the computer source codes, and the complete input and output datasets it used to generate its forensics. The Defense disagrees with the Government's characterization of its production and will seek to resolve this issue when it meets and confers with the Government regarding this case. Regardless, none of the Government's results are reproduceable based on its discovery.

The Government complains in its Opposition that the "defense offers few specifics for his challenge." But this is a direct result of the Government's refusal to produce any detailed evidence as to its datasets, methodologies, and the computer software used to produce its forensic results. The Government falsely states that it has produced its "analytics" to the

Defense, and its 11th hour claim that it will offer further evidence of its unscientific and unaccepted "clustering" methodology does little to help its position. Without the software used, and its complete input and output datasets there is no way to verify anything the Government asserts in this case. The Government's proffered experts do not solve this issue.

Blockchain analysis is a newly emergent, standardless forensic field. The Government claims - without defining the phrase - that "blockchain analysis" is widely accepted in the financial and academic community. It mainly cites to caselaw, and to no scientific evidence of the validity of its particular forensic software and methodologies used in this case. But the scientific reliability of "blockchain analysis" is a question of fact, and there isn't a single case where the type of analysis involved here has been subject to *Daubert/Frye* scrutiny.

Moreover, even if the Government's undefined "blockchain analysis" had been subject to *Daubert/Frye* scrutiny in other cases it does not follow that this validates the forensics or methodologies in this case. Hiding behind case law does nothing for the fact that the Government has its math wrong. If the Government's math is correct, why are they afraid to show it?

The Government has yet to produce anything of substance related to Excygent, LLC, the for-profit company started by IRS Criminal Investigator Aaron Bice while working on this case. Excygent, LLC was prominently featured in DOJ's press release trumpeting Mr. Sterlingov's arrest. There is scant information on Chainalysis and its work in the discovery, and little of what looks like a significant amount of information related to then FBI Intelligence Analyst Catherine Alden Pelker's initial investigation in 2014.

This case proceeds from a foregone conclusion. Since Mr. Pelker's breathless 2014 Intelligence Analyst report on Bitcoin Fog naming Mr. Sterlingov as a suspect, her seven-year

2

investigation produces no substantial new corroborating evidence for her initial conjecture. This is despite extensive surveillance of Mr. Sterlingov when he traveled to America, and seizing his computers, hard drives, and handwritten notes upon arresting him at LAX. As such, this case stands in glaring contrast to all other blockchain-based prosecutions to date.

The Government asserts that "address-to-address tracing . . . shows the defendant paying for Bitcoin Fog infrastructure and receiving proceeds from the Bitcoin Fog cluster year after year."[1] These type of vague, pseudo-scientific phrases like "Bitcoin Fog infrastructure," "the Bitcoin Fog cluster," and "peel chain" are all over the Government's case. Nothing in the Government's convoluted case is straightforward; everything proceeds on assumption after assumption as it peels back layers using unscientific methodologies. Review of the Government's discovery reveals the Government deploys these terms in arbitrary fashion while ignoring contrary evidence. This is a reason for holding a comprehensive pretrial evidentiary and *Daubert/Frye* hearing. To test the validity of this type of pseudo-scientific jargon before it can prejudice a jury that might mistake it for something meaningful.

### A.   The Clustering Heuristics are Unscientific, Unverifiable, and Unreproducible

Heuristics are at type of short cut. Clustering lops off a substantial portion of a bitcoin wallet address to use just a few digits for its analysis.[2] This is like chopping off the last seven digits of a phone number and basing your forensics on just the area code. The Government used computer forensics software - which it has not produced - from private, for-profit

---

[1] Gov. Opp. to Def. Mot. in Limine, Dkt. 73, at 3.

[2] Bitcoin addresses are usually 34 digits long, but vary in length.

vendors for its arbitrary cluster forensics. This Court should order a thorough *Daubert/Frye* hearing to test the Government's Junk Science cluster forensics.

### B. The *Daubert/Frye* Analysis is Case and Fact Specific

For all the Government's recitation of generic blockchain case law and simple crypto tracing, nothing in the discovery supports the proposition that any relevant forensics or methodologies accord with *Daubert/Frye* as to this case. From the fact that the forensics were right in one case, it does not follow they are right in the next one.[3] The inquiry is too fact specific for that, and in this case numerous human judgment calls, assumptions, and interpretations are part of the alleged forensics and methodologies (to the extent they can be gleaned from the discovery).

### C. Federal Rules of Evidence 702 & 901 Require that the Government's Experts Testimony Be Based on Authentic Evidence

As argued in its initial Motions in Limine, this Court should order a hearing to determine whether the foundations of any expert testimony are authentic under Federal Rule of Evidence 901, before doing any 702 analysis.

### D. Without Production of the Government's Forensic Software Source Code the Defense Cannot Confront and Challenge Mr. Sterlingov's Accusers

The Government argues that its experts don't need a sophisticated understanding of their technical tools.[4] While this may be true of an Excel spreadsheet, because its math is

---

[3] *See, e.g.,* Fed R. Evid. 702.
[4] Gov. Opp. to Def. Mot. in Limine, Dkt. 73, at 9.

4

easily checked, here the Government's math isn't easily checked. Source code is necessary to do so. "Blockchain Analysis," whatever that amorphous phrase precisely means, along with cryptographic "Cluster" analytics are a far cry from an Excel spreadsheet using simple mathematics whose source code is accessible. This case doesn't involve simple, easily checked math using a well-established software. It appears from the discovery that Chainalysis beta tested its Chainalysis Reactor software on this case. They did so in conjunction with then FBI Intelligence Analyst Pelker, who was instrumental in getting a DOJ license with Chainalysis for its Reactor software.

## II.     The Government's Undefined "Blockchain Analysis" is Untested

The Government repeatedly uses the phrase "Blockchain Analysis" without defining it. Then it assumes its undefined phrase matches the forensics and methodologies in unrelated blockchain prosecutions. It doesn't point to a single instance of the particular forensic software at issue here being subject to any scientific, peer reviewed analysis. Instead, it makes generic reference to basic principles. But the forensics at issue here are brand new and untested. The forensic companies profiting here did not exist a decade ago, and at least two of them used this case to build their reputations and raise capital. None of the forensic software or methodologies at issue here ever seem to have been subject to *Daubert/Frye* challenge. The Government also assumes that the simple tracing at issue in the cases it cites is the same as the tracing in this case. If the issue is so simple here, why does the Government spend years using expensive software like Chainalysis Reactor before arresting Mr. Sterlingov out of the blue at LAX? This is not a simple tracing case because the simple tracing never leads to Mr. Sterlingov. Only the use of brand new, untested, unscientific, and unverifiable forensic

software comes to those conclusions. There is no simple tracing of anything in this case that traces back to Mr. Sterlingov.

Almost all the cases the Government cites discuss analysis of the public blockchain; not the use of proprietary software at issue here like Chainalysis Reactor, or whatever software Elliptic LLC, and Excygent LLC used. The Government cites a case form this district written by Magistrate Judge Faruqui. It neglects to mention Magistrate Judge Faruqui was a prosecutor on this case and is one of the sources for WIRED Magazine author Andy Greenberg's book, coming out tomorrow, November 15th, 2022.

Magistrate Judge Faruqui is just one of the prosecutors and investigators seeking publicity in the newly emergent Junk Science sphere of blockchain forensics. Like IRS-CI Aaron Bice, who sold his company he built on this investigation to Chainalysis a few months after Mr. Sterlingov's arrest. Or Chainalysis, which uses Mr. Sterlingov's case for private equity fund raising purposes. FBI Intelligence Analyst Pelker builds her blockchain prosecutorial career with this case, first accusing Mr. Sterlingov in her 2014 Intelligence Note distributed on the DOJ intranet. These apparent conflicts of interest render suspect the credibility, integrity, and reliability of the blockchain analysis at issue here, and this Court should order a comprehensive *Daubert/Frye* hearing.

### A.   The Computer Forensic Software Code is Material to the Defense

The Government's clustering heuristics depends on computer software. There is no way to check how a computer program generates clusters without review of the code. To the extent that "where the government has used commercially available software such as Chainalysis Reactor to which the defense and its experts have equal ability to access" should

be read as the Government saying they cannot produce Chainalysis Reactor's source code, the Defense will subpoena Chainalysis.

But this Court shouldn't allow the Government to hide its criminal investigation behind private vendors. This Court should exclude all output from computer forensic programs the Government cannot provide the relevant source or software code to the Defense for analysis. How the programs calculate clusters and generate graphics are determined by a program's code, and the input data. You cannot check the program's output without accurate information as to both. The Government's production is deficient on this front, consisting of some output graphic files, barely any communications, and almost no information on the generation of the key data outputs the Government perches its case on. The disclosure of all relevant forensic source code is material to Mr. Sterlingov's defense.

## III. The Defense Will Meet and Confer with the Government Regarding the Outstanding Discovery Disputes

The Government states that it "remains available to confer in good faith" regarding the Defense's discovery concerns. The Defense accepts this invitation and will reach out to the Government this week to schedule a discovery conference. As for the Government's description of its production, the Defense disagrees.

Given the state of the discovery, the difficulties Mr. Sterlingov's jailing pose to his review of the e-discovery, the need for full expert disclosure and forensic analysis, and time for subpoenas and responses, the Defense intends to file a Motion for a Continuance. The Government has stated its opposition.

## IV. The Government's Online Market Evidence is Irrelevant and Inadmissible

The Government argues that talk of Silk Road, Agora and the like somehow are related to the core charges. Yet the Government has yet to identify a single criminal transaction on these sites involving Defendant. Nor is he charged with operating any of those sites. Nor does the Government have any evidence, beyond its layered forensic conjecture, that Defendant operated Bitcoin Fog. No eyewitnesses, no corroborating evidence for any of its forensics.

The Government's allegation is that Defendant conspired with mystery actors "darknet vendors and darknet administrative teams" yet there is no evidence of any such communications in the discovery. The Government parrots the conclusory language of the Indictment, but this does nothing for the fact that the Indictment lacks all particularity and nothing in the discovery supports this highly prejudicial connection of alleged criminal activity there is no evidence the Defendant was connected to. It is not relevant because the Government cannot establish a proper evidentiary foundation connecting it to the Defendant; its earnest insistence is not enough.

Allowing the Government to smear the Defendant with these highly prejudicial allegations without foundation violates not only Federal Rule of Evidence 403, but the Defendant's rights under the Sixth Amendment's Indictment Clause. Because it effectively puts him on trial for felonies the Government has not officially charged him for. The Court should exclude all reference to any online marketplaces like Silk Road, Agora, and the like, because the Government lacks a foundation connecting them to the Defendant, and the admission of such evidence is highly prejudicial. There is zero evidence of Defendant's involvement in the Government's parade of horribles.

8

## V.   FBI Intelligence Analyst Pelker is one of Defendant's Accusers and a Material Fact Witness

The Defense seeks testimony from the primary FBI investigator in this case for its first several years. As argued in its prior papers, now AUSA Catherine Alden Pelker is that primary investigator; donning the mantle of prosecutor in a case does not change the fact that she identified Defendant in her 2014 Intelligence Note. Mr. Sterlingov has a constitutional right to cross-examine her on her initial investigation, and the forensics and methodologies underlying her conclusory accusations. Ms. Pelker is the reason this case is in the District of Columbia. This makes her a fact witness to the jury question of venue. Ms. Pelker's story is crucial to the jury's understanding of the case, and it goes directly to the weight, credibility, and integrity of the all the evidence in this case.

The Government cannot override the Sixth Amendment's confrontation clause with self-created administrative regulations. It's *Touhey* regulations are inapplicable here. This is a federal criminal case. The Defense is not seeking the testimony of a prosecutor here. The Defense is seeking to cross-examine the primary FBI investigator in this case; the investigator who initially identified the Defendant in 2014, and transferred this case to D.C. This is not frivolous - Ms. Pelker as an FBI Agent, at the start of her Blockchain prosecutorial career, is the but/for cause of this prosecution. She is a necessary material witness as to the forensics and methodologies used to allegedly identify Defendant.

## VI.   The Defendant Should Be Transferred to a Facility Under Federal Control

The Government states is does not control the state facility they've jailed Mr. Sterlingov in. This Court should order transfer to a minimum security federal facility near

9

D.C. or New York City under the Government's control so that the impediments posed to Mr. Sterlingov's defense and ability to review discovery are removed.

## Conclusion

This Court should grant the Defense's Motions in Limine. In the alternative, it should order a comprehensive evidentiary hearing and a *Daubert/Frye* hearing on the forensics and methodologies that are the entirety of the Government's case. The Court should also grant Defendant's Motion to Compel and order the Government to produce the source code for all the software it used for its forensics in this case, pending a joint discovery conference between the parties and reporting back to the Court. Finally, this Court should order the transfer of Mr. Sterlingov to a minimum security facility close to D.C. or New York City, to ease the burden upon his ability to mount a complete defense.

Dated: November 14, 2022
New York, New York

        Respectfully submitted,

        /s/ Tor Ekeland
        Tor Ekeland (NYS Bar No. 4493631)
        *Pro Hac Vice*
        Tor Ekeland Law, PLLC
        30 Wall Street, 8th Floor
        New York, NY
        t:  (718) 737 - 7264
        f:  (718) 504 - 5417
        tor@torekeland.com

        /s/ Michael Hassard
        Michael Hassard (NYS Bar No. 5824768)
        *Pro Hac Vice*
        Tor Ekeland Law, PLLC
        30 Wall Street, 8th Floor
        New York, NY
        t:  (718) 737 - 7264
        f:  (718) 504 - 5417
        michael@torekeland.com

        /s/ Marina Medvin, Esq.
        Counsel for Defendant
        MEDVIN LAW PLC
        916 Prince Street
        Alexandria, Virginia 22314
        Tel:  888.886.4127
        Email: contact@medvinlaw.com

        *Counsel for Defendant Roman Sterlingov*

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of November 2022, the forgoing document was filed with the Clerk of Court using the CM/ECF System. I also certify that a true and correct copy of the foregoing was sent to the following individuals via e-mail:

s/ Tor Ekeland

U.S. Department of Justice
District of Columbia
555 Fourth St. N.W.
Washington, D.C. 20530

Catherine Pelker
Catherine.Pelker@usdoj.gov

Christopher Brown
Christopher.Brown6@usdoj.gov