UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 21-cr-399 (RDM) |
| | : | |
| ROMAN STERLINGOV, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S MOTION TO QUASH EARLY-RETURN RULE 17(c) SUBPOENAS**

The United States of America, by and through the United States Attorney for the District of Columbia, respectfully moves to quash the defendant's four Rule 17(c) subpoenas issued on November 18, 2022 to Chainalysis, Inc. and to three of its employees, with a three-week deadline for the production of documents directly to defense counsel. These subpoenas impermissibly demand early production without prior leave of Court; they seek to misuse Rule 17(c) as an improper discovery tool seeking a massive volume of irrelevant and inadmissible records; and they were accompanied by inappropriate threats to the third-party respondents about "potential liability should [Roman Sterlingov] be acquitted." The government requests that the Court quash the subpoenas and order the defense to comply with Rule 17(c)'s requirement that the issuing party obtain specific leave of Court before issuing any early-return Rule 17(c) subpoenas.

**FACTUAL BACKGROUND**

On November 18, 2022, the defendant purported to serve four Rule 17(c) subpoenas on respondents Chainalysis, Inc. ("Chainalysis") and three of its employees, Michael Gronager, Jonathan Levin, and Youli Lee, by delivering a demand to Chainalysis's General Counsel via email and FedEx. *See* Ex. 1 (Def. Rule 17(c) Subpoenas). The defense did not provide notice of its early-return third-party subpoenas to the government. The government only learned about the subpoenas after being notified by counsel for the respondents on Monday, November 21, 2022.

In a cover letter accompanying the subpoenas, defense counsel threatened the respondents about unspecified legal liability: "Finally, please be advised because of your company's involvement in Mr. Sterlingov's prosecution, you face potential liability should he be acquitted." *Id.* at 2.[1]  The cover letter did not explain the legal basis for this "liability" or why it would depend on the verdict in this criminal prosecution.

The defense subpoenas purported to require testimony and the production of documents directly to defense counsel prior to trial, either on December 21, 2022 or "21 days from date of receipt," *i.e.*, December 9, 2022 (the two deadlines appear in different parts of the defendant's subpoenas).  Notably, the third-party subpoenas appear to have been served *after* the government filed its opposition to the defendant's motion to continue the trial at approximately 2:38 p.m. on November 18, 2022.  *See* ECF No. 84.  In that filing, the government specifically flagged the defendant's then-apparent intent to issue early-return subpoenas without leave of Court, and directed the defendant's attention to Supreme Court and District-specific authorities holding that such practices violate the plain text of Rule 17(c).  *Id.* at 3-4 n.2 (citing *United States v. Binh Tang Vo*, 78 F. Supp. 3d 171 (D.D.C. 2015); *Bowman Dairy Co. v. United States*, 341 U.S. 214 (1951); *United States v. Santiago-Lugo*, 904 F. Supp. 43 (D.P.R. 1995)).

## ARGUMENT

**A. The Defendant Failed To Obtain Court Approval for Early-Return Rule 17(c) Subpoenas**

Rule 17(a) and (c) allows a party to issue a trial or hearing subpoena *duces tecum*, which requires a witness "to produce any books, papers, documents, data, or other objects the subpoena

---

[1] Defense counsel has made similar threats about unspecified "litigation" to undersigned counsel for the government, including his September 12, 2022 email stating: "[Y]ou are on notice that we consider all your communications with Wired, Andy Greenberg, and anyone else you've been selling your story to the last couple of years relevant not only to this case but any litigation afterwards."

2

designates." Fed. R. Crim. P. 17(c)(1).  The rule further provides: "*The court* may direct the witness to produce the designated items in court *before trial* or *before they are to be offered in evidence*." *Id.* (emphasis added).  Under the plain text of the rule, only "[t]he court" may authorize an early-return subpoena "before trial."

In *United State v. Binh Tang Vo*, 78 F. Supp. 3d 171 (D.D.C. 2015), Judge Sullivan held that prior authorization was required for an early-return subpoena.  This requirement, moreover, is not just a formality, but an important safeguard that arises out of the Court's duty to supervise the proper use of Rule 17(c) subpoenas:

> Rule 17 first creates a general rule: Subpoenas are issued without the court's involvement when they command the recipient's presence and possibly the production of documents at a particular hearing.  Rule 17(c) creates a limited exception to this rule, declaring that "[t]he court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence." . . .  The Rule, in leaving advance production to the court's discretion, is no mere technicality.  It is a vital protection against misuse or improvident use of such subpoenas.

*Id.* at 178 (cleaned up).  The D.C. Circuit has long held that an early-return subpoena is permissible "only upon a showing" by the issuing party that the subpoena is proper.  *United States v. Haldeman*, 559 F.2d 31, 75 (D.C. Cir. 1976) ("Criminal Rule 17(c), which is not a discovery device, confines a subpoena duces tecum to admissible evidence, authorizes the quashing of the subpoena if it is 'unreasonable or oppressive,' and *indulges pretrial inspection of subpoenaed papers only upon a showing* (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'") (emphasis added, cleaned up); *see also Monroe v. United States*, 234 F.2d 49, 55 (D.C. Cir. 1956)

3

(noting that "the trial court *in its discretion* could have required pre-trial production" of admissible recordings) (emphasis added).

Here, the defendant purported to serve four early-return subpoenas on Chainalysis and its employees without prior leave of Court—requiring production of documents, and possibly testimony,[2] directly to defense counsel in as short a period as three weeks (over the Thanksgiving holiday weekend). The defendant has offered no justification for the three-week turnaround or for the requirement that the records be produced only to defense counsel. The subpoenas are procedurally invalid and should be quashed.

Further, as discussed in detail below, the defendant's end-run around the procedural protections of Rule 17(c) prevents the Court from supervising the appropriate use of the third-party subpoenas in the first instance. Thus, because "it is this court's duty to make certain that the subpoena power is invoked legitimately and legally," *United States v. Santiago-Lugo*, 904 F.Supp. 43, 45 (D.P.R.1995), not to mention the plain text of Rule 17(c), the Court should order the defendant to obtain specific leave of Court before issuing any more early-return Rule 17(c) subpoenas.

### B. The Defendant's Rule 17(c) Subpoenas Fail the *Nixon* Test for Relevancy, Admissibility, and Specificity

#### 1. Legal Framework

Under Rule 17(c), "'[t]he Court has an independent duty to review the propriety of the subpoena.'" *Binh Tang Vo*, 78 F. Supp. 3d at 176 (quoting *United States v. Vasquez*, 258 F.R.D. 68, 72 (E.D.N.Y. 2009)); *accord Bowman Dairy*, 341 U.S. at 221 ("The burden is on the court to

---

[2] Each subpoena is styled as a "Subpoena for Documents and Testimony." It is not clear whether the intended testimony is limited to authentication at trial (contrary to the early-return date) or whether the defendant intends to conduct a civil-style deposition of the Chainalysis witnesses at defense counsel's offices on December 9, 2022.

see that the subpoena is good in its entirety and it is not upon the [subpoenaed party] to cull the good from the bad."). The trial court retains the power to "quash or modify" the subpoena "if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). The decision to quash or modify a subpoena lies within the "sound discretion of the Trial Court." *United States v. Boyle*, 338 F. Supp. 1025, 1028 (D.D.C. 1971).

Courts have consistently ruled that Rule 17(c) was intended as a vehicle to secure specific pieces of evidence for trial. It was not intended to be used—as the defendant attempts to do here—as a vehicle to compel broad, civil-style discovery from third parties. "A long line of precedent makes clear that Rule 17(c) is 'not intended to provide a means of discovery for criminal cases.'" *United States v. Fitzsimons*, 342 F.R.D. 18, 20 (D.D.C. 2022) (quoting *United States v. Nixon*, 418 U.S. 683, 698-99 (1974), and collecting cases). As the Third Circuit has explained:

> [R]ule 17(c) is designed as an aid for obtaining relevant evidentiary material that the moving party may use at trial. . . . Courts must be careful that rule 17(c) is not turned into a broad discovery device, thereby undercutting the strict limitation of discovery in criminal cases found in Fed. R. Crim. P. 16.

*United States v. Cuthbertson*, 630 F.2d 139, 144, 146 (3d Cir. 1980). Judge Sullivan emphasized the same point in *Binh Tang Vo*:

> Rule 17 is not a rule for discovery. It does contain the additional provision that the Court may make a subpoena *duces tecum* returnable prior to the trial. It was not the purpose of this provision to permit some sort of discovery. The object was to prevent delays during the trial when documents are produced in response to a subpoena *duces tecum* and are offered in evidence.

78 F. Supp. 3d at 179 (quoting *United States v. Ferguson*, 37 F.R.D. 6, 7-8 (D.D.C. 1965) (internal alterations omitted)); *see also United States v. Edwards*, 191 F. Supp. 2d 88, 89 (D.D.C. 2002) ("While a Rule 17(c) subpoena *duces tecum* is a legitimate device to obtain evidentiary material, it was never intended to be a broad discovery device going beyond that which is required either by Rule 16 of the Federal Rules of Criminal Procedure or by *Brady*."); *United States v. Brooks*, 966

5

F.2d 1500, 1505 (D.C. Cir. 1992); *United States v. Gonzalez-Acosta*, 989 F.2d 384, 389 (10th Cir. 1993); *United States v. Adritti*, 955 F.2d 331, 346 (5th Cir. 1992); *United States v. George*, 883 F.2d 1407, 1418 (9th Cir. 1989). As such, Rule 17(c) subpoenas may only be used to obtain relevant and admissible evidence "that the moving party may use at trial." *Cuthbertson*, 630 F.2d at 144.

A Rule 17(c) subpoena cannot properly be issued upon a "mere hope." *United States v. Hang*, 75 F.3d 1275, 1283 (8th Cir. 1996); *see also Cuthbertson*, 630 F.2d at 146 ("Thus, the defendants' broad request . . . was based solely on the mere hope that some exculpatory material might turn up. We do not think that this 'mere hope' justifies enforcement of a subpoena under rule 17(c)."). Accordingly, court have universally disapproved the use of a Rule 17(c) subpoena to conduct an open-ended "fishing expedition." *See, e.g.*, *Bowman Dairy*, 341 U.S. at 221 (invalidating "catch-all provision" in Rule 17(c) subpoena because it was "not intended to produce evidentiary materials but is merely a fishing expedition to see what may turn up"); *United States v. Libby*, 432 F. Supp. 2d 26, 34 (D.D.C. 2006) (rejecting Rule 17(c) demand for witness's calendar and telephone records because "the defendant has not provided this Court with any basis upon which it can draw a reasonable inference that there is a real likelihood that the telephone records and calendar would contain relevant and admissible evidence," and "the requests again appear to be nothing more than a fishing expedition"); *Boyle*, 338 F. Supp. at 1027-28 (rejecting Rule 17(c) subpoenas to Department of Justice officials related to claims of selective enforcement because "to allow the instant subpoenas duces tecum to stand would be tantamount to authorizing a fishing expedition which is not authorized by either Rules 16 or 17 of the Federal Rules of Criminal Procedure"); *Binh Tang Vo*, 78 F. Supp. 3d at 182 (rejecting Rule 17(c) subpoena for defendant's call records because "it is clear that the subpoenas were just a fishing expedition").

The Supreme Court distilled these principles into a three-part test in *United States v. Nixon*, 418 U.S. 683 (1974), holding that a party seeking to enforce a Rule 17(c) subpoena "must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." *Id.* at 700. "The burden of satisfying the 'exacting standards' of the three-part *Nixon* test falls 'on the party requesting the information.'" *Fitzsimons*, 342 F.R.D. at 20 (quoting *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 386-87 (2004)).

### 2. The Defendant Cannot Articulate Any General Theory of Relevance for His Fishing Expedition

The defendant's Rule 17(c) subpoenas fail at each step of the *Nixon* test. Even before reaching the subpoena requests, the defendant's vaguely menacing cover letter—threatening that "you face potential liability should [Mr. Sterlingov] be acquitted"—suggests that the subpoenas are *intended* to be "unreasonable" and "oppressive," Fed. R. Crim. P. 17(c)(2). Defense counsel in this case has exhibited a personal animosity toward the respondents that appears to go well beyond the issues in this case. He has repeatedly used his personal Twitter account, as well as the interview he and his client conducted for WIRED reporters, to make out-of-court statements attacking Chainalysis as "the Theranos of blockchain analysis"—making an outlandish and false claim that the company is a fraudulent or even criminal enterprise. Whatever defense counsel's personal feelings toward the respondents, they do not justify the sweeping and irrelevant discovery demands made in his client's name in the Rule 17(c) subpoenas.

Nor do the subpoena requests themselves reflect that "the application is made in good faith and is not intended as a general 'fishing expedition.'" *Nixon*, 418 U.S. at 700. To begin with, subject to a single exception, *every single request* calls for the production of "[a]ny documents, records and communications" related to a given topic. The only exception is request No. 20 from the subpoena to Jonathan Levin, which simply demands "[a]ll communications with WIRED

7

reporter Andy Greenberg"—unbounded by subject matter or date range. Open-ended demands for "any" or "all" records are, in themselves, strong evidence that these requests are fishing expeditions that fail the relevancy and specificity prongs of *Nixon*. As Judge Walton explained in *Libby*, "courts will not approve a subpoena for documents based upon requests for disclosure from broad categories of documents." 432 F. Supp. 2d at 31.

The defendant cannot articulate any theory of relevance to justify his sweeping demands. Indeed, all of the defendant's requests suffer from the same defect: they appear designed to uncover materials that may or may not exist, without any articulated relevance to any issue in this case, much of which is inadmissible hearsay. This type of fishing expedition might be acceptable in civil discovery, but Rule 17(c) is substantially more narrow in scope: "Rule 17(c) can be contrasted with the civil rules which permit the issuance of subpoenas to seek production of documents or other materials which, although not themselves admissible, could lead to admissible evidence." *Libby*, 432 F. Supp. 2d at 30 (internal quotations omitted). As Judge Contreras explained in *Fitzsimons*:

> The relevance prong is not satisfied merely because a defendant can articulate what they hope to find in the subpoenaed evidence. . . . [C]ourts have quashed subpoenas based on a defendant's mere expectation about what could be recovered without a showing of a sufficient likelihood that the documents actually contained relevant evidence.

342 F.R.D. at 21. In much the same way, the defendant's demands here reflect, at best, what the defendant "hope[s]" to find among the respondent's records. He cannot satisfy his threshold burden of showing a "sufficient likelihood" that the requested documents "actually" will contain relevant evidence.

To the extent any rationale can be discerned, the subpoena requests appear to arise from the defendant's nebulous conspiracy theory about Chainalysis and alleged government

8

"profiteering." The defendant has now had numerous opportunities to explain the logic behind his conspiracy theory and articulate its relevance to any material fact before the jury at trial. To date, however, he has only been able to restate his conclusion—that his conspiracy theory, whatever it is, relates in some vague way to the "weight, credibility, and integrity of the Government's evidence." ECF No. 69, at 5. Especially here, in the context of a third-party subpoena, such conclusory assertions of relevance are insufficient to satisfy the defendant's burden under *Nixon*.

Nor can the defendant justify the Rule 17(c) subpoenas merely because the government has noticed a Chainalysis employee, Elizabeth Bisbee, as one of its blockchain experts. *See* ECF No. 61, at 7-8 (noticing expected testimony about blockchain analysis and the clusters associated with Bitcoin Fog and key darknet marketplaces). The defendant will have the opportunity to cross-examine Ms. Bisbee about her qualifications, her analysis, the tools she used, and any sources of potential bias. But the conspiracy theory asserted by the defendant in his pleadings, and reflected in his third-party subpoena requests, goes well beyond the scope of any challenge to the single government witness affiliated with Chainalysis. The defendant cannot use Rule 17(c) to expand the scope of expert discovery otherwise provided for under Rule 16. *See United States v. Raheja*, 2022 WL 2870902, at *8 (N.D. Ohio July 20, 2022) ("By his own admissions, Dr. Sawhny's Rule 17(c) requests to Dr. Schneck are designed to expand expert discovery beyond that to which he is entitled under Rule 16. . . .  By seeking an extensive list of documents and information to which he is not entitled under Rule 16—including internal communications, timesheets, and invoices—it is clear that the present subpoena is being used to expand the scope of expert discovery beyond that supported by Rule 16. It, therefore, represents an abuse of the Court's subpoena power, and Dr. Sawhny's second motion is denied for this additional reason.").

### 3. The Defendant Cannot Carry His Burden of Showing His Individual Requests Seek Relevant, Admissible, and Specific Records

As the party seeking enforcement of the third-party subpoena, the defendant bears the burden of showing in the first instance that each request satisfies the three-part *Nixon* test for (1) relevancy, (2) admissibility, and (3) specificity. *Fitzsimons*, 342 F.R.D. at 20. The government is not required to exhaustively address each one of the defendant's *eighty-one* discovery requests. But even a sampling of the requests shows that they are grossly overbroad and irrelevant, and cannot pass muster under *Nixon*.

Request No. 1 to Chainalysis, Inc. calls for any records related to "the DOJ press releases [*sic*] announcing Roman Sterlingov's arrest."[3] The defendant cannot articulate any real theory of relevance for the requested records. Even assuming (doubtfully) that the respondents are in possession of documents related to the Department of Justice press release, there is no conceivable explanation for how such records would constitute admissible evidence for the jury. The mere fact that a press release was issued does not make any material fact at issue before the jury more or less probable. Request No. 1 goes on to demand records related to "the timing of the release, and communications with WIRED reporter Andy Greenberg"—appearing to rehash the defendant's false theory that there was something untoward about the timing of the press release announcing the defendant's arrest.[4] Even if the theory were true, the *timing* of a press release bears no more relevance to the jury's deliberations than the fact that a press release was issued in the first place.

---

[3] The four subpoenas to Chainalysis and its employees contain mostly identical requests. For the sake of discussion, the government focuses here on the subpoena to the corporate entity, Chainalysis, Inc., but its objections apply across the board to all four subpoenas.

[4] As the government has previously explained, the complaint and arrest warrant were automatically unsealed upon the defendant's arrest on April 27, 2021, and the initial WIRED reporting credited a tip-off from a well-known PACER researcher. *See* ECF No. 53, at 3 n.2.

Further, the defendant offers no basis to believe such records even exist within the respondent's possession, custody, or control.  Where the requesting party "is unable to verify whether the requested material even exists," *United States v. Morris*, 287 F.3d 985, 991 (10th Cir. 2002), that is a red flag indicating that the subpoena is being used for an impermissible fishing expedition.

Almost as an afterthought, the last clause of Request No. 1 makes a sweeping demand for "any communications related to Andy Greenberg's book 'Tracers in the Dark – The Global Hunt for the Crime Lords of Cryptocurrency.'"  The defendant does not confine this demand to communications related to the Bitcoin Fog case.  In fact, the government understands that Mr. Greenberg's book focuses overwhelmingly on other, unrelated cases and investigations: out of 326 pages, the Bitcoin Fog case occupies less than 2 pages of the book.[5]  Such a broad demand goes well beyond the bounds of the *Nixon* test.  And even if the request were limited to communications in which Bitcoin Fog is discussed, they would have no probative value regarding any material fact in front of the jury.  Any communications between two third-party observers, such as Mr. Greenberg and employees of the respondent, would be nothing more than spectator commentary about a case that both are following.  That is not relevant evidence of anything.  (Nor, for that matter, would such hearsay communications likely be admissible.)

Request No. 3 is a catch-all request for "[a]ny documents, records and communications" that are "related" in any way to the Bitcoin Fog case.  Request No. 16 is a variation of the same request, demanding "[a]ny documents, records and communications" that were "initiated or received by Michael Gronager, Jonathan Levin, Youli Lee, John Lewis Golinvaux, Gurvais Grigg,

---

[5] Ironically, given the defendant's accusations about Mr. Greenberg's book in his pleadings and in correspondence with the government (accusations that the government was leaking non-public information about the case), publication of the book now shows that *defense counsel* was one of Mr. Greenberg's sources on the Bitcoin Fog case.  *See* Andy Greenberg, *Tracers in the Dark* 291 (2022) (quoting Tor Ekeland on his client's case).

11

*or anyone else affiliated with Chainalysis*" (emphasis added) that are "related" to the Bitcoin Fog case. As the Supreme Court stated in *Bowman Dairy*, in rejecting a similarly unbounded request: "This is a catch-all provision, not intended to produce evidentiary materials but is merely a fishing expedition to see what may turn up. The clause is therefore invalid." 341 U.S. at 221.

Other requests appear to call for communications between various persons and entities. *See, e.g.*, Request No. 10 (communications "between Chainalysis and Catherine Alden Pelker"); Request No. 11 (communications "between Chainalysis and Excygent"); Request No. 12 (communications "between Chainalysis and Elliptic"); Request No. 13 (communications "between Chainalysis and MITRE"); Request No. 14 (communications "between Chainalysis and Excygent" [*sic*], duplicating Request No. 11); Request No. 15 (communications "between Chainalysis and Aaron Bice"); Request No. 17 (communications "between Chainalysis and the Swedish Prosecution Authority"); Request No. 18 (communications "between Chainalysis and the Financial Crimes Enforcement Network"); Request No. 19 (communications "between Chainalysis and any other federal agency"). First, these are impermissible catch-all requests of the type the Supreme Court rejected in *Bowman Dairy*. *See* 341 U.S. at 221. The defendant has not articulated any basis to believe specific "communications" related to Bitcoin Fog even exist among the listed parties, let alone that they would constitute relevant and admissible evidence in this case. *See Libby*, 432 F. Supp. 2d at 31 ("If the moving party cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes that something useful will turn up, this is a sure sign that the subpoena is being misused.") (internal quotations and alteration omitted).

Second, any records of "communications" between third parties will likely be inadmissible hearsay. *See United States v. Cherry*, 876 F. Supp. 547, 552-53 (S.D.N.Y. 1995) ("The weight of

authority holds that in order to be procurable by means of a Rule 17(c) subpoena, materials must themselves be admissible evidence."); *Cuthbertson*, 651 F.2d at 195 (denying Rule 17(c) subpoena for "materials [that] are simply hearsay" where neither party "asserted a relevant exception to the hearsay rule"); *United States v. Basciano*, 2006 WL 8451585, at *5 (E.D.N.Y. Apr. 17, 2006) (denying Rule 17(c) subpoena for agents' "investigative files" in part because "at least a portion of the material is inadmissible hearsay"); *United States v. Brown*, 1995 WL 387698, at *10 (S.D.N.Y. June 30, 1995) (denying Rule 17(c) subpoena for memoranda of interviews conducted by NYPD or the Bronx District Attorney's Office because "[s]uch memoranda would, of course, be hearsay, and inadmissible as evidence at trial"). The defendant does not articulate any hearsay exception that would permit introduction of the communications at trial—nor could he, because these are general fishing expeditions and he cannot identify the general content or circumstances of the communications in question. The requests therefore fail the admissibility prong of the *Nixon* test, in addition to the relevancy and specificity prongs.[6]

Request No. 9 calls for records relating to the "development of Chainalysis Reactor software," listing out categories of documents such as "reports, sandbox results, beta testing,

---

[6] The Supreme Court has cautioned that "[g]enerally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial." *Nixon*, 418 U.S. at 701; *see, e.g.*, *United States v. Weissman*, 2002 WL 31875410, at *1 (S.D.N.Y. Dec. 26, 2002) ("Defendant argues that he needs to examine the materials to determine their evidentiary value. He asserts that the subpoena *may* have some evidentiary basis other than impeachment—such as to show bias, to show state of mind or as recorded recollection. Defendant's argument, however, fails because the *Nixon* standards prohibit the use of a Rule 17(c) subpoena as a fishing expedition."). Although courts have recognized limited exceptions to this rule, "a witness's memory and credibility are only at issue if that witness actually testifies," and the defendant bears the burden of showing "with a reasonable probability" that the proposed statements would actually constitute impeachment material. *Fitzsimons*, 342 F.R.D. at 21-22 (denying Rule 17(c) subpoena to obtain outtakes of interview of "key witness for the government" because the defendant could not show the requested statements would be inconsistent with his testimony). Here, none of the individuals listed in the defendant's subpoenas will be called as a government witness at trial.

penetration testing results," and so forth. Notably, this request does not actually demand production of "source code," which the defendant has demanded from the government in his omnibus motions *in limine*.[7] But it appears to be of a piece with the defendant's baseless fixation on the software tools used by the government's investigators, rather than the data and conclusions that will be introduced at trial. As the government has previously explained, the defendant does not need access to obscure technical details of a given software application—whether source code or, as here, records of the software's "development"—in order to effectively cross-examine a witness who used the software to conduct analysis presented at trial. *See* ECF No. 73, at 32-35; *see also United States v. Morgan*, 45 F.4th 192, 203 (D.C. Cir. 2022) ("But we have never held that Rule 702 requires an expert to have a sophisticated understanding of the software underlying her technological tools. If we required expert witnesses to have detailed knowledge of the software underlying their testimony, they could almost never testify on matters related to proprietary technology. For example, anyone who testifies using any basic software such as Excel to provide financial analysis would be required to be an expert in the algorithms by which Excel codes its formula and calculations.") (cleaned up). That is especially so here, where any blockchain evidence presented by the government at trial can be tested against the publicly available blockchain or examined by any competing expert with knowledge of the blockchain and blockchain evidence. ECF No. 73, at 12-13. The defense will have ample opportunity to cross-examine the government's blockchain experts at trial or in any *Daubert* proceeding. The defendant has not made the preliminary showing needed to show that technical information related of the software tools used in this case is relevant and material to his defense.

---

[7] To be clear, source code of any kind is irrelevant to this case. The defendant has not articulated any basis to compel the production of source code from any party, for the reasons outlined in the government's opposition to the defendant's omnibus motions *in limine*, *see* ECF No. 73, at 32-37.

Finally, Request No. 8 demands records and communications that were "exchanged" between Chainalysis and certain named "researchers" in connection with a whitepaper presented at the USENIX Security Symposium in August 2022.[8]  The government finds itself at a loss about how this whitepaper, or materials "exchanged" between the respondents and the whitepaper's authors, is supposed to make any material fact before the jury more or less probable.  The government can only speculate it is because the paper uses the *publicly available* Complaint Affidavit in this case, ECF No. 1-1, to replicate Special Agent Beckett's analysis of the beta-test mixing transaction originating from the defendant's Mt. Gox account prior to the launch of Bitcoin Fog.  *See* ECF No. 1-1, at 10-11.  If anything, this provides external validation of the government's case.  But it is unclear how the records being requested—specifically, materials "exchanged" between Chainalysis and the researchers—relate to any question before the jury in this case or would otherwise be admissible.

## **CONCLUSION**

For the foregoing reasons, the Court should quash the defendant's Rule 17(c) subpoenas to Chainalysis, Inc. and its employees, and it should order the defendant to seek specific leave of Court before issuing any early-return Rule 17(c) subpoenas.

---

[8] George Kappos *et al.*, *How to Peel a Million: Validating and Expanding Bitcoin Clusters* (2022), https://www.usenix.org/system/files/sec22-kappos.pdf.

        Respectfully submitted,
        MATTHEW M. GRAVES
        UNITED STATES ATTORNEY
        D.C. Bar No. 481052

BY: */s/ Christopher B. Brown*
    Christopher B. Brown, D.C. Bar No. 1008763
    Assistant United States Attorney
    U.S. Attorney's Office for the District of Columbia
    601 D Street, N.W.
    Washington, D.C. 20530
    (202) 252-7153
    Christopher.Brown6@usdoj.gov

    */s/ C. Alden Pelker*
    C. Alden Pelker, Maryland Bar
    Trial Attorney, U.S. Department of Justice
    Computer Crime & Intellectual Property Section
    1301 New York Ave., N.W., Suite 600
    Washington, D.C. 20005
    (202) 616-5007
    Catherine.Pelker@usdoj.gov