# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

*United States of America*,

              Plaintiff,

    *v.*

*Roman Sterlingov*,

           Defendant.

**21 - CR - 399 (RDM)**

## Opposition to Government's Motion to Quash Federal Rule of Criminal Procedure 17(c) Subpoenas for Chainalysis, Inc., Michael Gronager, Jonathan Levin and Youli Lee

# Table of Contents

Table of Contents ........................................................................................................................... 2

Introduction ................................................................................................................................... 3

Background .................................................................................................................................... 3

Legal Standard .............................................................................................................................. 7

Argument ....................................................................................................................................... 7

    I.    The Court Should Dismiss the Government's Motion to Quash as Moot Because the Subpoenaed Parties have Filed Their Own Motion to Quash ...................................................... 9

    II.    Pre-Trial Production of the Requested Materials are Necessary for Mr. Sterlingov's Defense ....................................................................................................................................... 10

    III.    The Subpoenas Seek Relevant, Admissible and Specific Testimony and Evidence ..... 11

        A.    The Subpoenaed Testimony and Evidence are Relevant ........................................... 12

        B.    The Subpoenaed Testimony and Evidence are Admissible ....................................... 15

        C.    The Subpoenaed Testimony and Evidence are Specific ............................................ 16

    IV.    1974's *United States v. Nixon* ......................................................................................... 17

Conclusion .................................................................................................................................. 18

## Introduction

Defendant Roman Sterlingov submits this opposition to the Government's Motion to Quash Defendant's Rule 17(c) Subpoenas to Chainalysis Inc, Michael Gronager, Jonathan Levin and Youli Lee. For the reasons argued below, this Court should dismiss the Government's motion as moot. In the alternative, it should stay decision on the Government's motion until the subpoenaed parties' Motion to Quash is fully briefed. Regardless, Defendant's subpoenas meet the guidelines under *United States v. Nixon* and this Court should order compliance with the subpoenas and pre-trial production of the requested evidence. The subpoenaed evidence is relevant, admissible, and specific. Without it, Mr. Sterlingov cannot mount a complete defense.

## Background

On November 18, 2022, Defendant served subpoenas on Chainalysis Inc., Michael Gronager, Jonathan Levin and Youli Lee. Michael Gronager is a co-founder and Chief Executive Ofiicer of Chainalysis.[1] Jonathan Levin is a co-founder of Chainalysis and its Chief Strategy Officer.[2] Youli Lee is a former prosecutor on this case who now works for Chainalysis as the Senior Legal Director of Global Investigations, Litigation and Governance.[3] The subpoenas seek testimony and pre-trial production of relevant, admissible, and specific testimony and evidence.

According to published press reports, Chainalysis was the official investigator for the Mt. Gox bankruptcy proceedings and did investigative work into Mt. Gox on behalf of the United

---

[1] *See* Chainalysis website https://www.chainalysis.com/company/ (last accessed Dec. 14, 2022).
[2] *Id.*
[3] See LinkedIn page for Youli Lee https://www.linkedin.com/in/youli-lee-64b7bb19a/ (last accessed Dec. 14, 2022).

States Government.[4] The Defense's review of the discovery indicates that the Government intends to rely heavily on data from Mt. Gox.

On November 30, 2022, the Government filed its Motion to Quash Early-Return Rule 17(c) Subpoenas at issue here.[5] On December 9, 2022, the subpoenaed parties sought leave of the Court to file their own motion to quash. This Court granted permission the same day.[6]

This investigation starts in 2014 and is one of the government's oldest ongoing blockchain investigations and prosecutions.[7]

In 2015, Aaron Bice begins working, through his employer MITRE, on a contract with the IRS as a criminal investigator ("IRS-CI"). As an IRS-CI, Bice works extensively on this case, using a blockchain analysis software platform from a British company called Elliptic, as well as using what Chainalysis in its Motion to Quash states is Chainalysis' proprietary intellectual property in the form of Chainalysis's Reactor blockchain forensic software: "[Defendant's] requests for software development records, 'source code' … would require Chainalysis to divulge its intellectual property…. Reactor's source code…is proprietary information…."[8]

To date, no evidence of the accuracy or scientific validity of this software has been produced in relation to Chainalysis Reactor, or any software used in this case. The discovery contains numerous references to, and outputs from, Chainalysis Reactor and indicates that there were conversations between Chainalysis, Aaron Bice and the Government directly related to this prosecution that have not been produced.

---

[4] *See* Jamie Redman, *Chainalysis Says They've Found the Missing $1.7 Billion Dollar Mt Gox Bitcoins*, available at https://news.bitcoin.com/chainalysis-says-theyve-found-the-missing-1-7-billion-dollar-mt-gox-bitcoins/ (last accessed Dec. 14, 2022).

[5] *See* GOVERNMENT'S MOTION TO QUASH EARLY-RETURN RULE 17(C) SUBPOENAS (Dkt. No. 93).

[6] (*See* Dkts. Nos. 94-95).

[7] The following is based on the Defense's review of the Government's discovery.

[8] *See* MOTION TO QUASH SUBPOENA BY NON-PARTIES CHAINALYSIS, INC., MICHAEL GRONAGER, JONATHAN LEVIN, AND YOULI LEE AND INCORPORATED MEMORANDUM OF LAW (Dkt. No. 95 at 15).

In 2017, during this investigation, Aaron Bice and an associate found Excygent, LLC, registering it in Virginia. In 2018, Mr. Bice leaves MITRE to devote himself to Excygent, LLC, while still working as an IRS-CI on this case. Government contract databases contain public records of both Chainalysis and Excygent LLC's Government contracts. These contracts show revenue from government contracts in the hundreds of millions of dollars.

Around 2020, individuals from Chainalysis, the prosecution, investigators and others involved in this case, began conversations with a WIRED Magazine reporter. These discussions and interviews, over the course of the last two years, form the basis of "Tracers in the Dark: The Global Hunt for the Crime Lords of Cryptocurrency" by Andy Greenberg, released this November. The book chronicles Chainalysis's work in the emerging field of blockchain forensics and directly identifies Mr. Sterlingov by name, characterizing him as the operator of Bitcoin Fog despite the fact Mr. Sterlingov has a pending trial. The index contains entries for Aaron Bice, Catherine Pelker, former prosecutor on this case Zia Faruqui, Michael Gronager, Jonathan Levin and Youli Lee.[9] The book contains an alleged account of a conversation between government law enforcement and Mr. Sterlingov upon his arrest at LAX in April 2021.[10]

On April 27, 2021, the FBI arrests Mr. Sterlingov at Los Angeles International Airport. The same day WIRED runs an exclusive article announcing the arrest and quoting Jonathan Levin promoting the blockchain forensics used in the case. DOJ does not issue an official press release until the next day.

---

[9] *See* Andy Greenberg, TRACERS IN THE DARK: THE GLOBAL HUNT FOR THE CRIME LORDS OF CRYPTOCURRENCY, Index, (Doubleday Nov. 15, 2022).

[10] *See id.* at 290-91.

ANDY GREENBERG   SECURITY   APR 27, 2021 6:20 PM

# Feds Arrest an Alleged $336M Bitcoin-Laundering Kingpin

**The alleged administrator of Bitcoin Fog kept the dark web service running for 10 years before the IRS caught up with him.**

"This is yet another example of how investigators with the right tools can leverage the transparency of cryptocurrency to follow the flow of illicit funds," says Jonathan Levin, cofounder of blockchain analysis company Chainalysis.

As of Tuesday afternoon, Bitcoin Fog remained online, though it's unclear who, if anyone, now operates it. Neither the IRS nor the Department of Justice responded to WIRED's requests for comment.

On April 28, 2021, Excygent LLC features prominently in the two DOJ press releases announcing Mr. Sterlingov's arrest. The DOJ thanks Excygent, LLC at the head of a list of names including FBI field offices and domestic and international law enforcement. Neither MITRE, Elliptic nor Chainalysis are mentioned.

The IRS-CI District of Columbia Cyber Crime Unit and the FBI Washington Field Office are investigating the case. Essential support was provided by Excygent; the IRS-CI Los Angeles Field Office, Van Nuys Post of Duty; FBI Los Angeles Field Office; Homeland Security Investigations; Customs and Border Patrol; the U.S. Attorneys' Offices for the Central District of California, Northern District of California, and Southern District of New York; and the Financial Crimes Enforcement Network of the U.S. Department of Treasury. The Department of Justice's Office of International Affairs provided invaluable assistance, as did Europol; the Swedish Economic Crime Authority, the Swedish Prosecution Authority, and the Swedish Police; and the General Inspectorate of Romanian Police, Directorate for Combatting Organized Crime and the Directorate for Investigating Organized Crime and Terrorism.

Trial Attorney C. Alden Pelker of the Criminal Division's Computer Crime and Intellectual Property Section and Assistant U.S. Attorney Christopher B. Brown of the U.S. Attorney's Office for the District of Columbia are prosecuting the case, with assistance from Paralegal Specialist Chad Byron. Former Assistant U.S. Attorneys Youli Lee and Zia Faruqui made invaluable contributions during their tenures on the case team. The team also appreciates the previous support of Trial Attorney S. Riane Harper of the Computer Crime and Intellectual Property Section; Paralegal Specialist Kenny Nguyen; former Paralegal Specialists Toni Anne Donato and Bianca Evans; and former Assistant U.S. Attorney Allen O'Rourke over the course of this long-running investigation.

Less than two months after Mr. Sterlingov's arrest, on June 24, 2021, Chainalysis completes its Series E funding round, raising $100 million. At the time, Chainalysis values itself at $4.2 billion.

On October 5, 2021, Chainalysis buys Excygent, LLC for undisclosed compensation, and Mr. Bice begins working for Chainalysis. A review of government contracting records shows

that Excygent has a revenue stream of roughly $10 million since its formation during Mr. Bice's

tenure as an IRS-CI.

In January 2022, Chainalysis hires Youli Lee, a former prosecutor on this case, as Senior

Legal Director of Global Investigations, Litigation and Governance.

As of May 2022, Chainalysis' market valuation stands at $8.6 billion.[11]

## Legal Standard

The 6th Amendment to the United States Constitution guarantees a defendant compulsory

process to confront witnesses and put on a defense. The 5th Amendment to the United States

Constitution guarantees a defendant the right to put on a complete defense. Federal Rule of

Criminal Procedure 17(c) governs the issuance of criminal subpoenas. For information sought

returnable prior to trial, Federal Rule of Criminal Procedure 17(c)(1) states that "the court may

direct the witness to produce the designated items in court before trial, or before they are to be

offered into evidence." Neither the Local Rules nor the Rules of this Court require permission of

the Court before issuing a Rule 17(c) subpoena. Federal Rule of Criminal Procedure 17(c)(2)

states that "on motion made promptly, the court may quash or modify the subpoena if

compliance would be unreasonable or oppressive." The pre-internet era case of *United States v.

Nixon* provides guidelines for the evaluation of the validity of criminal subpoenas.[12]

## Argument

All the subpoenaed parties are directly involved in the investigation of this case and have

financial interests in it. There is a substantial body of scientific evidence that the profit motive

distorts criminal forensics, particularly in newly emergent standardless fields like blockchain

---

[11] *See* Gertrude Chavez-Dreyfuss, CHAINALYSIS RAISES $170 MILLION IN 6TH FUNDING ROUND WITH $8.6 BILLION VALUATION, available at https://www.reuters.com/technology/chainalysis-raises-170-mln-6th-funding-round-with-86-bln-valuation-2022-05-12/ (last accessed Dec. 14, 2022).

[12] *See United States v. Nixon*, 418 U.S. 683, 699-700 (1974).

forensics.[13] 53% of wrongful convictions involve misapplied forensic science.[14] As seems to be the case here, "[i]nstead of testing out hypotheses empirically, self-described forensic specialists start with a desired solution of establishing guilt and then work back to the science that would support it."[15] The National Academy of Sciences has long been skeptical of the state of forensic science in the United States even when it comes to the reliability of evidence from experts working in long-established forensic sciences.[16] Blockchain forensics is not an established forensic science and currently there are no accepted standards governing it by any government agency like the National Institute of Standards and Technology.

There are no eyewitnesses in this case. There will be no testimony from anyone who saw the Defendant do what he is accused of, heard him talking about doing what he is accused of, or any evidence at all that he operated Bitcoin Fog. All the Government's investigators did their work from desks thousands of miles away from Sweden, and years after the fact. The discovery contains speculation, errors, and omissions. This includes incorrect wallet addresses, incorrect transaction hashes, and fictitious transactions.

The Mt. Gox data produced by the Government contains inexplicable errors that do not match the public blockchain. The Government's entire case depends on unproven, untested, standardless blockchain forensics that have never been challenged in the adversarial process like they're being challenged here. This case is unique and a matter of first impression when it comes

---

[13] *See* M. Chris Fabricant, JUNK SCIENCE AND THE AMERICAN CRIMINAL JUSTICE SYSTEM, (2022); *see also* Adam Benforado, UNFAIR: THE NEW SCIENCE OF CRIMINAL JUSTICE, (2015).

[14] *See* Innocence Project, EXPLORE THE NUMBERS, INNOCENCE PROJECT CASES AND IMPACT, available at https://innocenceproject.org/exonerations-data/, (last accessed Dec. 14, 2022).

[15] *See* The Crime Report Staff, 'JUNK' FORENSIC SCIENCE LANDS THOUSANDS OF INNOCENTS IN PRISON, available at https://thecrimereport.org/2022/04/28/junk-forensic-science-lands-thousands-of-innocents-in-prison/ (last accessed Dec. 14, 2022).

[16] *See* Committee on Identifying the Needs of Forensic Sciences Community, National Research Council, STRENGTHENING FORENSIC SCIENCE IN THE UNITED STATES: A PATH FORWARD, available at https://www.ojp.gov/pdffiles1/nij/grants/228091.pdf, (last accessed Dec. 14, 2022).

to the accuracy of its newly emergent standardless forensics marketed and beta-tested on Mr. Sterlingov.

The blockchain forensics at issue here are not simply a matter of accessing the public blockchain. Blockchain tracing through peel-chains and clustering methodologies is not something one simply does by accessing the public blockchain; but rather it requires, as here, sophisticated computer software and complex heuristics. The Defense's review of the Government's forensic output against the public blockchain raises serious issues as to the accuracy of the proprietary software, methodologies, and authenticity of the evidence, underlying the Government's accusations.

Proprietary software is not part of the public blockchain. If it was so simple, why does Chainalysis and Elliptic LLC charge the Government millions of dollars for the use of their software and methodologies? Why doesn't FBI Cyber do the work itself? That the Government seeks to hide the proprietary computer software foundational to its case is telling. If it can withstand forensic scrutiny, then the Government has nothing to hide. Chainalysis and Excygent willingly chose to market their products and services to federal law enforcement; they cannot now complain that they are the subject of constitutional scrutiny in a federal criminal case where the Defendant faces fifty years to life in prison.

**I.      The Court Should Dismiss the Government's Motion to Quash as Moot Because the Subpoenaed Parties have Filed Their Own Motion to Quash**

After the filing of the Government's Motion to Quash, Chainalysis and the subpoenaed parties appeared in this case and filed their own motion to quash. As such, the Government lacks standing to bring this motion to quash because the subpoenaed parties have brought their own motion to do so. The Government should not get two bites at the apple. This Court should dismiss the Government's motion because it is duplicative of the subpoenaed parties Motion to

Quash and is an unduly burdensome waste of resources that requires the Defense to answer two motions to quash for each subpoena. [17] As the subpoenaed entities and individuals are now fully represented by counsel, this Court should strike the Government's Motion to Quash as moot. In the alternative, this Court should stay its decision on the Government's Motion to Quash until the redundant subpoenaed parties' Motion to Quash is fully briefed.

## II.    Pre-Trial Production of the Requested Materials are Necessary for Mr. Sterlingov's Defense

This Court should order the pre-trial production of the subpoenaed material under Federal Rule of Criminal Procedure 17(c). This entire case is based solely on forensic evidence involving newly emergent standardless blockchain forensic software and methodologies that require extensive and time-consuming analysis to assess their validity. The fact that by its own admission Chainalysis's Reactor software is proprietary belies the claim that the forensics in this case are as simple as looking at the public blockchain. Chainalysis uses an unproven cluster methodology for its blockchain tracing. The Defense cannot effectively review and assess the forensic output in this case without examining the computer code, the algorithms, the assumptions and the methodologies involved in generating the forensic data that is critical to the Government's case. Chainalysis's interest in its profit comes second to the demands of the Constitution. If it had wished to avoid scrutiny of its heavily marketed proprietary software, then it should have gone into a different business and not sought to enrich itself with Government law enforcement contracts.

The 5th and 6th Amendment to the United States Constitution and the interests of justice require production of the subpoenaed evidence including the proprietary computer code, input

---

[17] *See United States v. Cartagena-Albaladejo*, 299 F.Supp. 3d 378 (D.P.R. 2018) (discussing R. 17(c) standing case law).

data, and communications at issue here, well before trial. There is no practical way the Defense

can forensically analyze proprietary code produced after the direct of a government witness in

time to effectively cross-examine that witness. Not allowing the Defense to review the

subpoenaed materials well before trial would require the Defense to move for a lengthy

continuance every time the requested information is produced after the direct of a witness.

Neither Rule 17(c), nor the Local Rules, require permission from the Court for the

Defense to issue a Rule 17(c) subpoena. The Defense has no obligation to reveal its strategy to

the Government. Because so few federal criminal indictments go to trial, the rules and caselaw

are outdated in relation to subpoenas in cases involving complex questions of computer law and

blockchain forensics. To the extent that 1974's *United States v. Nixon* bars production of the

requested evidence in this complex computer law case it is unconstitutional as applied. The

evidentiary standards in a case involving Bitcoin, the blockchain, and crypto transaction tracing

differ from the brick-and-mortar evidentiary context of *Nixon*.

A large portion of federal criminal subpoena practice is customary. It is routine for the

parties to communicate through counsel to discuss the subpoenas. The Government and

subpoenaed parties filed their motions before any discussion.

Finally, whether or not the subpoenaed materials are subject to pre-trial production does

not settle the question whether they must be produced by the subpoenaed parties at trial. The

specified subpoenaed testimony and evidence are still subject to production because Defendant's

subpoenas seek relevant, admissible, and specific evidence material to Mr. Sterlingov's defense.

III.    **The Subpoenas Seek Relevant, Admissible and Specific Testimony and Evidence**

The Government makes much of the subpoenas detailed and specific definition of terms

but little of the detailed and specific requests for testimony and evidence that follows. This is not

a fishing expedition. This is a request for material evidence necessary for Mr. Sterlingov to mount a defense in a complex computer law case involving newly emergent, untested, standardless blockchain forensics. Mr. Sterlingov cannot effectively challenge the evidence and confront his accusers if they hide their software, methodologies, and communications regarding their conclusions from him. There is no small irony in the Government accusing Mr. Sterlingov of hiding his tracks when the Government and Chainalysis hide theirs.

### A.      The Subpoenaed Testimony and Evidence are Relevant

Chainalysis is involved in the investigation of this case since at least 2015. The discovery indicates that the forensic investigation in this case relied heavily on Chainalysis Reactor, as well as assumptions regarding inputs to, and outputs from, Reactor and other computer forensic software. In the discovery there are printed outputs from Chainalysis Reactor that are impossible to evaluate without knowing the inputs and how they were chosen, the computer code that processed those inputs, and the methodologies and assumptions involved. All the parties subpoenaed are materially involved with this process. Jonathan Levin and Michael Gronager are heavily involved in the marketing and development of Chainalysis and its blockchain forensic software since the beginning of this case. The discovery indicates that Chainalysis beta-tested its software on this case and had to correct errors in its software during the pendency of this investigation. While the discovery indicates this, the underlying communications related to these errors aren't in the current discovery. Youli Lee was a prosecutor on this case who is now a paid employee of Chainalysis. She took this position during the pendency of this case.

This is all directly relevant to the issue of whether the profit motive and career self-interest have led to confirmation bias, and a willful blindness as to the accuracy of the forensic conclusions in this case. Those conclusions are not science because they are unsupported by any

generally accepted scientific standards. There is more evidence for the distorting effect of the profit motive on forensic science than there is for the accuracy of Chainalysis's Reactor software, or any of the software or methodologies used in this case. Every subpoenaed entity and person stand to profit from Mr. Sterlingov's conviction. And they all have a lot of money to lose should Mr. Sterlingov be acquitted. This case has served as a useful marketing tool for Chainalysis in its growth into a company with an $8.6 billion market valuation. Therefore Chainalysis's and the subpoenaed parties' communications with investors are directly relevant to this case. It is evidence of the parties' self-interested bias and again calls into question the weight, credibility, and integrity of all the conclusions. The Defense intends to proffer expert testimony on this point at trial.

This is relevant evidence for the jury to consider when determining Mr. Sterlingov's innocence. This is analogous to cross-examining an expert witness as to their compensation, except on a far larger scale because most experts don't make hundreds of millions of dollars from their forensic software that they license to the Government. None of the software or methodologies have ever been tested in a federal criminal trial. All the subpoenaed parties and entities have an incentive for Mr. Sterlingov to be found guilty, and a disincentive for him to be found innocent. To ignore the conflicts of interest here is to deny Mr. Sterlingov the right to confront his accusers and put on a complete defense with relevant, admissible, and specific evidence.

Moreover, the Defense's review of the Mt. Gox data, produced to date by the Government, reveals inexplicable errors that the Defense needs to cross-examine the subpoenaed witnesses on. This is not a matter of simply checking the public blockchain because proprietary software like Chainalysis Reactor is not part of the public blockchain.

Jonathan Levin and Chainalysis are involved in working on the Mt. Gox bankruptcy and appear to have communicated with the Government regarding the Mt. Gox data in this case. Those communications are relevant just as Chainalysis's proprietary software is relevant to the weight, credibility, and authenticity of the evidence the Government seeks to use against Mr. Sterlingov. There are mismatched transaction dates, fictious transactions, incorrect wallet addresses, and erroneous transaction hashes in the Mt. Gox data provided by the Government.

In a case that turns solely on the forensics, speculations, methodologies, and assumptions of investigators and prosecutors thousands of miles away from Sweden, years after the fact, without a single eye-witness, the computer programs, communications, and assumptions involved in those forensic conclusions are relevant. Every one of the subpoenaed parties played a direct role in those conclusions and has a financial interest in them. They spoke to the press in this case for their own marketing purposes. They are all to be found in the index to WIRED reporter Andy Greenberg's book released pre-trial this November.[18] Thus, not only is the subpoenaed information relevant, but it is also admissible because it goes directly to the credibility of the witnesses and evidence. If the Government wishes to use forensics against Mr. Sterlingov, the Defense is entitled to examine the evidentiary sources that generated the Government's conclusions.

It is not enough that the Government puts on an expert witness from Chainalysis who never worked on this case until recently. Elizabeth Bisbee's expert report fails to mention Mr. Sterlingov by name anywhere in it except for in the title, and it does nothing to explain the inexplicable errors in the discovery. If someone had checked the public blockchain against the Mt. Gox data, they would have noticed discrepancies. The defense of this case requires cross-

_____

[18] *See* Andy Greenberg, TRACERS IN THE DARK: THE GLOBAL HUNT FOR THE CRIME LORDS OF CRYPTOCURRENCY, Index, (Doubleday Nov. 15, 2022).

examination of the actual people involved in the Government's investigation, not an after-the-fact expert neither necessary nor sufficient, relying on the assumptions and conclusions of prior investigators. One is left scratching their head as to what exactly Ms. Bisbee is basing her conclusions on, and evidence is missing. If the software and methodologies are as accurate as claimed, why does the Government seek to hide them?

**B.      The Subpoenaed Testimony and Evidence are Admissible**

All the subpoenaed testimony and evidence relates directly either to the evidence that the Government seeks to introduce against Mr. Sterlingov, or its weight, credibility, integrity, or authenticity. If the Government's evidence of its forensic conclusions is admissible, then the foundations of those conclusions should be admissible as well. They are intricately, digitally linked. This is the first time that Chainalysis and the Government's blockchain forensics are truly being challenged in the adversarial process. All the previous blockchain prosecutions by the Government either resulted in a plea deal or had substantial corroborating evidence linking the defendant to the accusations. There is no such evidence in this unique computer prosecution.

The requested evidence and testimony are necessary for effective cross-examination and go directly to the authenticity, weight, integrity and credibility of the evidence. It also goes to the state of mind of Mr. Sterlingov's accusers, their motives, and incentives to ignore contrary evidence. Courts routinely admit evidence, substantively and for impeachment purposes, going to the credibility of the witnesses and the evidence those witnesses proffer. The subpoenaed parties are not ancillary to this case, they are key players.

Nor is the amount of money that they are making inadmissible. All of it goes directly to the weight, credibility and integrity of the forensics that form the entirety of the accusations against Mr. Sterlingov. The profit motive leads to junk forensic science. The jury cannot

properly determine Mr. Sterlingov's innocence without the critical material relevant evidence the

Government and the subpoenaed parties seek to hide.

Access to Chainalysis's proprietary intellectual property forensic computer code is

necessary to determine the authenticity of the conclusions generated by Chainalysis's software.

The communications requested go directly to the underlying assumptions and methodologies that

the Government and the subpoenaed parties used to arrive at their forensic conclusions.

Moreover, Chainalysis's communications with investors go directly to the issue of whether or

not the profit motive has produced junk science. If the Government's forensic conclusions are

admissible in this case, then how they arrived at those conclusions should be admissible as well.

The Government articulates no specific evidentiary objection. It makes a general

statement acknowledging that numerous communications exist between the Government and the

subpoenaed parties yet claims that the majority of them are inadmissible hearsay. As the Court is

aware, there are numerous exceptions to the hearsay rule. Nor does the Defense necessarily seek

to proffer statements produced by the subpoenaed parties for the truth of the matter asserted. To

the contrary, the subpoenaed evidence goes to the falsity of the Government's and Chainalysis'

accusations.

### C.     The Subpoenaed Testimony and Evidence are Specific

The Defendant's tailored package of subpoenas to Chainalysis, Michael Gronager,

Jonathan Levin and Youli Lee, totaling 51-pages together, are specific.[19] They request relevant,

admissible, specific material evidence necessary to Mr. Sterlingov's defense. The numbered

requests are tailored to each witness and the evidence in their custody, possession, or control. A

detailed set of definitions are provided prior to the numbered requests for the subpoenaed party.

---

[19] (*See* Ex. A).

None of the parties reached out to the Defense to discuss the subpoenas before filing of their motions to quash.

The Defense specifically seeks the testimony of the subpoenaed witnesses because they are all key players in this investigation with personal knowledge of material facts. Additionally, among other things, the Defense requests to analyze the computer code for Chainalysis's Reactor software, and all forensic software used in this case; the input datasets used in the forensic analysis; communications related to the analysis; communications related to the parties' financial interests related to this case; communications with investors discussing this case; and pre-trial communications with the press. All of these are material, relevant, admissible, specific, and necessary evidence for Mr. Sterlingov's defense.

## IV.    1974's *United States v. Nixon*

*United States v. Nixon* affirms the D.C. District Court's denial of President Nixon's claim of executive privilege for his tapes, made in the face of the Special Prosecutor's Rule 17(c) subpoena.[20] The Court concluded that:

> [W]hen the ground for asserting of the privilege as to subpoenaed materials, sought for use in a criminal trial, is based solely on the generalized interest in confidentiality as distinguished from the situations whereat maybe based upon military secret or diplomatic secrets, it cannot prevail over the fundamental demands of due process of law in the fair administration of criminal justice.[21]

*Nixon* further considers the ability of the party issuing the subpoena to obtain the evidence from other sources and the necessity of the subpoenaed evidence to pre-trial preparation and trial efficiency.[22] Here, the subpoenaed parties have exclusive custody,

---

[20] *See United States v. Nixon*, 418 U.S. 683 (1974).
[21] *Id* at 713.
[22] *Id.* at 698-99.

possession and control of the subpoenaed evidence, and their testimony is material to Mr. Sterlingov's defense. Additionally, analysis of Chainalysis's Reactor computer software code, forensic methodologies, and the like, cannot efficiently be done during trial. *Nixon* compels compliance with the Rule 17(c) subpoenas in this case, just as it did for President Nixon.

The brick-and-mortar standards of 1974's *Nixon* provide general guidelines for an analysis but are outdated in the computer age. *Nixon* does not involve the blockchain, it involves reel-to-reel tapes. The evidence and context of *Nixon* are unlike this case. To the extent that *Nixon* bars production under the subpoenas, it is unconstitutional as applied under the 5th and 6th Amendments to the United States Constitution. The complexities of the digital evidence in this case and their necessary relation to the Government's forensic conclusions are nothing like reel-to-reel audio recordings.

## Conclusion

This Court should deny the Governments Motion to Quash, and order production of the subpoenaed evidence pre-trial. The evidence in this case is too complex and novel for analysis during trial. In the alternative, this Court should stay decision on the Government's motion until the subpoenaed parties' own Motion to Quash is fully briefed. Furthermore, the Defense requests a hearing on this issue.

Dated: December 14th, 2022              Respectfully submitted,

/s/ Tor Ekeland
Tor Ekeland (NYS Bar No. 4493631)
*Pro Hac Vice*
Tor Ekeland Law, PLLC
30 Wall Street, 8th Floor
New York, NY
t:  (718) 737 - 7264
f:  (718) 504 - 5417
tor@torekeland.com

/s/ Michael Hassard
Michael Hassard (NYS Bar No. 5824768)
*Pro Hac Vice*
Tor Ekeland Law, PLLC
30 Wall Street, 8th Floor
New York, NY
t:  (718) 737 - 7264
f:  (718) 504 - 5417
michael@torekeland.com

/s/ Marina Medvin, Esq.
Counsel for Defendant
MEDVIN LAW PLC
916 Prince Street
Alexandria, Virginia 22314
Tel:  888.886.4127
Email: contact@medvinlaw.com


*Counsel for Defendant Roman Sterlingov*

## Certificate of Service

I hereby certify that on the 14th day of December 2022, the forgoing document was filed with the Clerk of Court using the CM/ECF System. I also certify that a true and correct copy of the foregoing was sent to the following individuals via e-mail and mail delivery via first class mail:

s/ Tor Ekeland

U.S. Department of Justice
District of Columbia
555 Fourth St. N.W.
Washington, D.C. 20530

Catherine Pelker
Catherine.Pelker@usdoj.gov

Christopher Brown
Christopher.Brown6@usdoj.gov