# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

*United States of America*,

                Plaintiff,

                              **21 - CR - 399 (RDM)**

    *v.*

*Roman Sterlingov*,

               Defendant.

**Defendant's Supplemental Motion to Free Untainted Seized Assets**

## Table of Contents

Introduction ............................................................................................................................... 3
Procedural Posture ................................................................................................................... 4
Background .............................................................................................................................. 4
Argument ................................................................................................................................ 11
I.   Mr. Sterlingov Needs the Seized Funds to Pay for Counsel of His Choice, Blockchain Forensic Experts, and the Cost of Trial ................................................................................. 12
   A.   The Seized Funds Are Necessary to Pay Counsel of Choice ......................................... 13
   B.   The Seized Funds are Necessary to Pay Blockchain & Computer Forensics Experts ... 14
II.   The Government Lacks Probable Cause to Seize Mr. Sterlingov's Assets ........................ 14
Conclusion ............................................................................................................................. 15

## Introduction

Defendant Roman Sterlingov submits this Supplemental Motion to release his seized assets at the request of the Court. Mr. Sterlingov has a Sixth Amendment right to counsel of his choice, and a Fifth Amendment right to put on a complete defense. His untainted seized funds are the only way he has to pay for his defense in this novel, complex crypto currency prosecution. The untainted seized funds come from Mr. Sterlingov's personal money earned through legal employment in Sweden and then invested in Bitcoin before Bitcoin explodes in value. There is no evidence that they are the proceeds of any crime. The Government has yet to identify a single crime tied to any of Mr. Sterlingov's assets. Its bare bones' Indictment is a direct reflection of the paucity of its case.

As a computer geek and early adopter of Bitcoin, Mr. Sterlingov, like many, used Bitcoin Fog for the completely legal purpose of securing the privacy of his rapidly appreciating Bitcoin assets. The Government's own principal forensics' vendor and expert on this case, Chainalysis, Inc. ("Chainalysis"), states that privacy and security concerns are behind roughly 90% of all Bitcoin mixer usage; criminal activity accounts for less than 10%.

The Government has not charged Mr. Sterlingov with using Bitcoin Fog - they cannot because that isn't illegal. It is legal to mix your paycheck, or currencies you purchased with your paycheck. That is what Mr. Sterlingov did. And there is no evidence of Mr. Sterlingov ever operating or administrating Bitcoin Fog, despite a lengthy and expensive investigation. The Government's case turns entirely on the work of investigators at computers far from Sweden, years after the fact, speculating. It masquerades as science when it's arbitrary and suffused with confirmation bias and conflicts of interest.

Mr. Sterlingov maintains his innocence in the face of the Government's forensic junk science juggernaut. But without his seized assets he cannot afford counsel of his choice, the forensic experts necessary to rebut the Government's conflicted junk science, and the costs of what will be a lengthy and costly trial. This Court should release Mr. Sterlingov's assets for the sole purpose of paying his legal fees and expenses in this complex cryptocurrency blockchain prosecution involving numerous matters of first impression and novel, newly emergent blockchain forensics that have never been tested thoroughly in any court of law. Otherwise, he cannot put on the defense that is his right under the Constitution. This supplemental motion incorporates by reference the arguments made in his prior Motion for Release of Funds.[1]

## Procedural Posture

On August 1, 2022, undersigned counsel filed a Motion for Release of Funds.[2] On August 29, 2022, the Government filed its Opposition.[3] On December 2, 2022, the Court asked for supplemental briefing as to the seized assets, set a briefing schedule, and set the matter for a hearing on January 13, 2023.[4]

## Background

Mr. Sterlingov is a computer geek and early adopter of Bitcoin. He first heard of Bitcoin in 2010 and set up his first wallet that same year.[5] At age 14 Mr. Sterlingov flees Russia with his mother, moving to Jonkoping, Sweden.[6] After graduating the Swedish equivalent of high school in Jonkoping he works several odd jobs - both manual and digital - before landing a full-time job

---

[1] (Dkt. No. 48).
[2] (*Id.*).
[3] (Dkt. No. 53).
[4] (*See* Dkt. Dec. 2, 2022, (ordering hearing on seized assets on Jan. 13, 2023)).
[5] (Decl. of R. Sterlingov at ¶ 9 (Ex. A)).
[6] (*Id.* at ¶ 2-3).

with Capo Marknadskommunikation.[7] Capo Marknadskommunikation provides full-service marketing both traditional and digital. Mr. Sterlingov keeps this job when he moves in around 2009 to Gothenburg, Sweden, where he lives when not held pretrial in the Northern Neck Regional Jail in rural Warsaw, Virginia.[8] He is currently 32 years old.

Around 2011, Mr. Sterlingov began buying, selling, and investing in Bitcoin thinking that it was a good additional income source on top of his day job.[9] He enjoyed socializing with the people that he met at Bitcoin meetups that were sprouting up at this time. Mr. Sterlingov never made a significant amount of money from his sales commissions or trading of cryptocurrencies.[10] The discovery reflects this, leaving the Government referencing secret assets only it can see to explain the disparity between Mr. Sterlingov's actual net worth of less than a million dollars, and what it would be if he was the Government's fantasy crypto drug money laundering king pin earning regular royalty payments on some $330 million of criminal proceeds.[11] The substantial portion of his current assets comes from the dramatic appreciation of Bitcoin from the time he began to dabble with it. This is no different than someone buying a stock that rapidly shoots up in value.

On January 1, 2011, you can buy 1 BTC for $0.30 USD.[12] On January 1, 2014, it costs $754.22.[13] By the time of Mr. Sterlingov's arrest, on April 21, 2021, the closing price of Bitcoin is $55,022.04.[14]

---

[7] (*Id.* at ¶ 4-6).
[8] (*Id.* at ¶ 6).
[9] (*Id.* at ¶ 13).
[10] (*Id.* at ¶ 9-12).
[11] (*See* Statement of Net Worth (Ex. B) (filed under seal)).
[12] *See* https://www.in2013dollars.com/bitcoin-price-in-2011.
[13] *See* https://www.in2013dollars.com/bitcoin-price-in-2014.
[14] *See* https://www.statmuse.com/money/ask/bitcoin+price+april+27%2C+2021.

Early on, someone recommended that Mr. Sterlingov use a Bitcoin mixer site known as Bitcoin Fog for privacy and security reasons.[15] Concerned about the privacy and security of his assets, Mr. Sterlingov became a user of Bitcoin Fog. He never ran or operated Bitcoin Fog in any capacity. He has no administrator login credentials for Bitcoin Fog and never has.[16] There is nothing in the evidence that shows otherwise. All the evidence is entirely consistent with his innocence and at this juncture he is entitled to the presumption of innocence, not the Government's presumption of guilt.

As part of his routine InfoSec and OpSec measures, Mr. Sterlingov mixes most, if not all, of his Bitcoin before depositing it into his Kraken Accounts the Government seized.[17] So do countless Bitcoin users. Michael Gronager, co-founder of Chainalysis - the key for profit forensic company in this case - is a co-founder of Kraken; it is not a criminal enterprise.[18] Mixing your crypto currency for privacy and security is a common practice, as the Government's own blockchain expert and vendor Chainalysis attests.

According to Chainalysis most cryptocurrencies people tumble have no connection to darknet activity or involve stolen funds. In a 2019 webinar, "Cryptocurrency Typologies: What You Should Know about Who's Who on the Blockchains," Chainalysis states that "users of mixing services mostly leverage [mixers] for privacy reasons."[19] Here is Chainalysis' visualization of the flow of funds into crypto mixers like Bitcoin Fog:

---

[15] (*Id.* at ¶ 15).
[16] (*Id.*).
[17] "InfoSec" is short for "Information Security" and "OpSec" is short for Operational Security. *See, e.g.,* https://www.commerce.gov/osy/programs/information-security (giving an example of InfoSec); https://www.commerce.gov/osy/programs/operations-security-opsec (giving an example of OpSec).
[18] *See* Crunchbase, INDIVIDUAL INVESTOR: MICHEL GRONAGER, available at https://www.crunchbase.com/person/michael-gronager (last accessed Dec. 20, 2021).
[19] Aaron Van Wirdum, *Chainalysis: Most Mixed Bitcoin Not Used for Illicit Purposes*, Bitcoin Magazine (Aug. 26, 2019) available at, https://bitcoinmagazine.com/articles/chainalysis-most-mixed-bitcoin-not-used-for-illicit-purposes (last accessed Dec. 21, 2022).



Mr. Sterlingov mixes his Bitcoin for the same reasons the overwhelming majority of people using crypto mixers do - to protect his privacy and assets from theft. There is no evidence that any of Mr. Sterlingov's funds are the proceeds of any crime. Simply saying they came from a mixer is not enough. Even if Mr. Sterlingov ran Bitcoin Fog for a decade, for which there is no evidence, by Chainalysis' own analysis only about 10% of cryptocurrency sent to mixers like Bitcoin Fog involve criminal activity.

In its webinar, Chainalysis claims that it can trace the source of funds going into a mixer. Nothing in the discovery reveals that any of Mr. Sterlingov's funds come from the proceeds of a crime. That proposition is entirely the speculation of conflicted government investigators unsupported by any evidence. One of those Government investigators - Aaron Bice - uses this case to launch a multi-million dollar company he sells to Chainalysis for a substantial sum a few months after Mr. Sterlingov's arrest. Mr. Bice is just one example of individuals involved with

this case using it for marketing purposes, something that calls into question the credibility, reliability, and integrity of the Government's evidence and forensics.[20]

In 2014, when Bitcoin skyrockets in value, Mr. Sterlingov decides to take six-months off from work, with his employer's consent.[21] Around this time, Mr. Sterlingov opens a Kraken account to manage his appreciating crypto assets. He does this in his own name and provides valid identification.[22] Later, when Mr. Sterlingov starts To the Moon, Ltd. ("To the Moon"), a legal VPN business based out of Malta, he creates a second Kraken account. To The Moon never takes off, because Mr. Sterlingov underestimated the amount of work it would take.[23] The Government seized and searched the To the Moon server and there is no evidence on it of Mr. Sterlingov operating or administering the far more complicated Bitcoin Fog Tor network onion mixing site.

Just like they found no evidence that Mr. Sterlingov operated Bitcoin Fog on the computers, hard drives, thumb drives, phones, and notebooks they seized when they arrested him at LAX. And just like the Government found no evidence he operated Bitcoin Fog during the Government's extensive physical, wiretap, and pen trap surveillance of Mr. Sterlingov when he visited the United States. Had the Government bothered to do any witness interviews in Sweden or bothered to research Mr. Sterlingov's personal life at all, they would have discovered the same. But they did not. Throughout its investigation the Government and its vendors cut corners and construe normal business and computer activities by Mr. Sterlingov as nefarious - without any solid evidence, and all while marketing their blockchain investigatory prowess to the

---

[20] (*See, e.g.,* Defendant's Opposition to Government's Mot. to Quash Chainalysis et. al. Subpoenas, (Dkt. No. 97)).
[21] (Decl. of R. Sterlingov at ¶ 19 (Ex. A)).
[22] (*Id.* at ¶ 28).
[23] (*Id.* at ¶ 33).

8

media.[24] The Government constantly sees what it wants to see while ignoring contradictory evidence like investigative reports naming a host of suspects other than Mr. Sterlingov.[25]

The origin of Mr. Sterlingov's funds are the Bitcoin he bought with the money he earned from his legal jobs and what little he made trading and selling Bitcoin.[26] Mr. Sterlingov's accounts do not knowingly contain any illegal proceeds. There is nothing in the evidence that shows otherwise. Nothing in the Government's discovery shows the source of Mr. Sterlingov's deposits. Mr. Sterlingov's own hard work and foresight are the sources of those deposits, not the fantastic money laundering scheme envisioned by the Government.

A review of Mr. Sterlingov's Kraken accounts supports his story.[27] There are only 84 deposits on it (in the incomplete version produced by the Government). Mr. Sterlingov rarely, if ever, exchanged Bitcoin for U.S. currency and all U.S. dollar amounts in the pleadings are the Government's calculations.[28] In 2014 you can see him depositing his money, and over the course of time the deposits dwindle as Mr. Sterlingov lives off the capital gains from his fortuitous investments.

The Government argues that the Kraken account contained service fee payments from Bitcoin Fog, but this doesn't withstand cursory analysis. Between March 19, 2014, and October 25, 2019, there are only 571 listed transactions in Mr. Sterlingov's Kraken accounts, the majority of which are not deposits and consist of Mr. Sterlingov's trading activity. If the Kraken deposits were service fee payments from Bitcoin Fog transactions, why are they inconsistent, dwindle

---

[24] *See, e.g.,* Andy Greenberg, TRACERS IN THE DARK: THE GLOBAL HUNT FOR THE CRIME LORDS OF CRYPTOCURRENCY 290-91 (discussing this case) (Doubleday, Nov. 15, 2022); *id.* at Index (containing entries for a large number of individuals and entities that worked on this case).
[25] There are several documents in the discovery pointing to individuals and entities other than Mr. Sterlingov.
[26] (*See* Decl. of R. Sterlingov at ¶4, 9-13(Ex. A)).
[27] The Government's spreadsheet of Mr. Sterlingov's Kraken accounts could not be easily attached as an exhibit, it is available from the Defense upon request by the Court or the Government.
[28] (*See* Decl of R. Sterlingov at ¶ 56(Ex. A)).

over time, and not add up to what one would expect from regular payments from a massive crypto money laundering organization? The Kraken accounts don't support the Government's case - they are entirely consistent with Mr. Sterlingov's innocence, just like all the evidence in this case. The Kraken accounts reveal no steady stream of service fee payments from what the Government claims is $330 million worth of transactions. Nor does the Government even identify a single criminal transaction for any of the deposits entering the Kraken accounts. You must apply a presumption of guilt to reach that conclusion, something that is unconstitutional pretrial. All the evidence in this case is speculative and flimsy.

The criminal complaint and the Government's case also rely heavily on using IP addresses as a form of personal identification for entirely legal acts like registering the name of a website - years before the statute of limitations for the vaguely charged crimes. Even assuming, arguendo, the data routed through the IP addresses in question originated from Mr. Sterlingov's studio apartment, he had numerous guests and friends who came and stayed at his apartment and used his WiFi during this period of time over a decade ago.[29] IP addresses can be spoofed, and highjacked.[30] Courts long ago recognize the inherent problems in using internet routing addresses as a means of personal identification.[31] The readers of this brief right now, if they are at office or at home, are likely using an IP Address shared with others.

---

[29] (*See* Decl of R. Sterlingov at ¶ 16 (Ex. A)).
[30] *See, e.g.,* Cloudfare, WHAT IS IP SPOOFING?, available at https://www.cloudflare.com/learning/ddos/glossary/ip-spoofing/ (last accessed Dec. 20, 2022) ("The ability to modify the source IP is inherent to the design of TCP/IP, making it an ongoing security concern."); Geeks for Geeks, TCP/IP Hijacking, available at https://www.geeksforgeeks.org/tcp-ip-hijacking/ (last accessed Dec. 20, 2022) ("After hijacking a TCP/IP session, an attacker is able to easily read and modify the transferred packets and the hacker is also able to send its own requests to the user.").
[31] *See, e.g., In re Nickelodeon Consumer Privacy Litigation*, 827 F. 3d 262, 283-84 (3d Cir. 2016) (discussing issue).

After Mr. Sterlingov's arrest on April 27, 2021, the Government seizes substantially all of his assets.[32] His access to the small amount of assets the Government didn't seize is hampered by the difficulties of communicating from the jail he's in and having to use a power of attorney through a relative to liquidate them. What he has been able to access has already been spent on his legal defense.[33] All of it are assets that Mr. Sterlingov legally earned either through his hard work, or as a return on his foresight for being an early Bitcoin adopter.

## Argument

The Sixth Amendment to the United States Constitution guarantees Mr. Sterlingov the right to counsel of his choice. Erroneous deprivation of a defendant's counsel of choice is a reversible structural error.[34] Seizure of a defendant's property untainted by any crime, as happened here, violates the Sixth Amendment's assistance of counsel clause because it makes it impossible for a defendant to pay for their lawyer of choice:

> In this case, the Government has obtained a court order that freezes assets belonging to the third category of property, namely, property that is untainted by the crime, and that belongs fully to the defendant. That order, the defendant says, prevents her from paying her lawyer. She claims that insofar as it does so, it violates her Sixth Amendment 'right ... to have the Assistance of Counsel for [her] defence.' We agree.[35]

This Court has ordered a hearing on January 13, 2023, into whether to release Mr. Sterlingov's seized assets for his legal fees and expenses. *United States v. Monsanto* guides the

---

[32] (*See* Ex. B (filed under seal)).
[33] (*Id.*).
[34] *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 150 (2006) ("We have little trouble concluding that erroneous deprivation of the right to counsel of choice, with consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifies as structural error." (citation omitted)); *see generally,* Legal Information Institution, RIGHT OF CHOICE OF COUNSEL, available at https://www.law.cornell.edu/constitution-conan/amendment-6/right-of-choice-of-counsel#fn9amd6 (last accessed Dec. 21, 2022) (collecting cases).
[35] *Luis v. United States*, 136 S. Ct. 1083 (2016).

analysis in this situation, requiring that there be probable cause connecting the seized assets to a crime:[36]

> In *Monsanto,* our principal case involving this procedure, we held a pre-trial asset restraint constitutionally permissible whenever there is probable cause to believe that the property is forfeitable. That determination has two parts, reflecting the requirements for forfeiture under federal law: There must be probable cause to think (1) that the defendant has committed an offense permitting forfeiture, and (2) that the property at issue has the requisite connection to that crime.[37]

The Government fails when it comes to point 2. Mr. Sterlingov cannot relitigate the Grand Jury's finding of probable cause, but he doesn't need to for the purposes of this motion. Because there is no probable cause linking any of his cryptocurrency assets to any identifiable crime. This Court should unfreeze Mr. Sterlingov's assets for the sole purpose of paying his legal fees and costs in this complex and novel crypto prosecution where he faces a potential life sentence.

## I.    Mr. Sterlingov Needs the Seized Funds to Pay for Counsel of His Choice, Blockchain Forensic Experts, and the Cost of Trial

The Government has seized substantially all of Mr. Sterlingov's assets. His pretrial jailing for the last two years in a remote, difficult to communicate with location, along with the seizure of his computers, phones, notebooks, and files severely limits his access to his assets. He has listed his assets to the best of his abilities in his current circumstance, and those accessed and paid to his attorneys since his arrest, in the attached exhibits.[38] The attached Exhibit B, filed under seal, contains these amounts. They are inadequate to mount a complete defense in a complex cryptocurrency prosecution with untested, standardless, forensics and where the cost of

---

[36] *See, United States v. Monsanto*, 491 U.S. 600 (1989).
[37] *Kaley v. United States*, 134 S. Ct. 1090, 1094 (2014).
[38] (*See* Exs. A, and B (filed under seal)).

12

experts alone could run $500,000.00. In comparison, the Government has spent seven years on this investigation, and millions of dollars, both on its investigation, and on its blockchain forensic vendors Chainalysis, Excygent, and Elliptic.

### A.     The Seized Funds Are Necessary to Pay Counsel of Choice

Mr. Sterlingov has chosen undersigned counsel Tor Ekeland Law, PLLC for his counsel. Tor Ekeland Law (the "Firm") has spent the last decade litigating federal computer crime cases across the country and internationally. Beginning in 2011 with *United States v. Andrew Auernheimer* to the present day, the Firm marches at the vanguard of complex computer crime trials. Some forty law reviews and numerous decisions cite *Auernheimer* for the Third Circuit's analysis of the Firm's winning computer venue argument.[39] The New York Times, the Washington Post, and the Associated Press all recognize the Firm as computer law experts.[40] The national and international media routinely turn to the Firm for our insights on computer law. Wired magazine lists three of our Computer Fraud and Abuse Act cases as among the "most controversial hacking cases of the last decade."[41] There are four feature length documentaries on Netflix, Amazon, Hulu and Peacock, and numerous shorter videos, on the Firm's computer cases as well as numerous articles.[42] The Firm's experience in complex federal criminal computer trials is unparalleled. The Firm has a deep Rolodex of experts to work on this case, if it can pay them.

---

[39] *United States v. Andrew Auernheimer* 748 F3d 525 (3d. Cir. 2014).
[40] *See* www.torekeland.com.
[41] Kim Zetter, THE MOST CONTROVERSIAL HACKING CASES OF THE PAST DECADE, Wired Magazine (Oct 26, 2015), available at https://www.wired.com/2015/10/cfaa-computer-fraud-abuse-act-most-controversial-computer-hacking-cases/ (last accessed Dec. 21, 2022).
[42] *See, e.g.,* Futurism Films Trailer, TRUST MACHINE: THE STORY OF BLOCKCHAIN, YouTube, available at https://www.youtube.com/watch?v=hvohNgVWKvw (last accessed Dec. 21, 2022); NBC Peacock Official Trailer, THE BATTLE FOR JUSTINA, YouTube, available at https://www.youtube.com/watch?v=1laM72Co0oM (last accessed Dec. 21, 2022) (the Firm is in episodes 2 & 3); Official Trailer, ENEMIES OF THE STATE, YouTube, available at https://www.youtube.com/watch?v=ez9cg-qK6-k (last accessed on Dec. 21, 2022).

The Firm cannot afford to finance Mr. Sterlingov's defense, and the only source available to do so are his untainted seized funds and what little is left of his assets the Government has not seized.[43]

### B.  The Seized Funds are Necessary to Pay Blockchain & Computer Forensics Experts

Mr. Sterlingov cannot defend himself against the Government's onslaught of expensive experts without his own qualified and expensive experts. The Government's entire case turns on its expert testimony. It has no eyewitnesses. No one who saw Mr. Sterlingov do what he is accused of. No one heard him talking about doing it. No names of any of the alleged co-conspirators. No communications with them. No computer logs showing him doing it. No evidence of any administrator logins or administrator accounts for Bitcoin Fog. And not a single transaction traced to any identifiable crime. The Government's case is foggy. To demystify it costs money.

## II.  The Government Lacks Probable Cause to Seize Mr. Sterlingov's Assets

There is not a single piece of evidence tying Mr. Sterlingov to any identifiable crime. 90% of mixing transactions involve legitimate assets.[44] All of the Government's accusations are as vague and conclusory as its bare bones Indictment. That the Government, after an expensive seven-year investigation, cannot produce an Indictment with any particularity is telling. Nothing sums up the Government's case more than its forfeiture claim in its Indictment to "approximately 1,354 BTC currently held in the Bitcoin Fog wallet, identified by root address 1YZJKaAx2HRWvcbCXDBtQbBZcRU46WJqw." There is no evidence tying Mr. Sterlingov to

---

[43] (*See* Ex. B (sealed)).

[44] *See* Aaron Van Wirdum, *Chainalysis: Most Mixed Bitcoin Not Used for Illicit Purposes*, Bitcoin Magazine (Aug. 26, 2019) available at, https://bitcoinmagazine.com/articles/chainalysis-most-mixed-bitcoin-not-used-for-illicit-purposes (last accessed Dec. 21, 2022).

14

this wallet. And a review of the public blockchain reveals that its current balance is zero, and that its last transaction occurred on March 25, 2012. The Court can easily look this fact up using a free blockchain wallet app (and competitor to Chainalysis) known as breadcrumbs.[45] The Government cannot meet its burden that any of the seized funds are the proceeds of any crime because there is no evidence tying Mr. Sterlingov to any identifiable crime involving any of the seized assets.

This is not a bank robbery case, where the crime that occurred is obvious. This is a complex Bitcoin prosecution that doesn't identify a single crime. As the Supreme Court points out, an arrested bank robber can't use the bank's readily identifiable funds to pay for his defense.[46] But these brick-and-mortar cases are inapposite here, where the Government has identified no actual crimes, the entire case turns on newly emergent, standardless blockchain forensics, and all the forensic evidence is entirely consistent with the Defendant's innocence.

## Conclusion

This Court should release all of Mr. Sterlingov's assets for the sole purpose of paying his legal fees and costs because he has no other way of paying for them. None of his assets are the proceeds of any crime; they are the results of him, as an early adopter of Bitcoin, investing his paychecks and reaping the gain when Bitcoin's value skyrocketed. If the Government had bothered to investigate the person who is Roman Sterlingov, instead of playing its numbers game, it would've discovered this. All the evidence is entirely consistent with Mr. Sterlingov's innocence, and he is constitutionally entitled to the presumption of innocence because no jury

---

[45] *See, e.g.* Breadcrumbs, Report on Bitcoin Wallet Address 1YZJKaAx2HRWvcbCXDBtQbBZcRU46WJqw, available at https://www.breadcrumbs.app/reports/1YZJKaAx2HRWvcbCXDBtQbBZcRU46WJqw/2/10/10 (last accessed Dec. 21, 2022).

[46] *See Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 631 (1989).

has found him guilty. For a jury to find him innocent, he needs his legally earned money to fight this misguided juggernaut of a prosecution. Therefore, he respectfully moves this Court for the release of all his untainted assets that the Government has seized because they are not the proceeds of any crime, and without them he cannot hire his counsel of choice or mount a complete defense.

Dated: December 21, 2022

Respectfully submitted,

/s/ Tor Ekeland
Tor Ekeland (NYS Bar No. 4493631)
*Pro Hac Vice*
Tor Ekeland Law, PLLC
30 Wall Street, 8th Floor
New York, NY
t:  (718) 737 - 7264
f:  (718) 504 - 5417
tor@torekeland.com

/s/ Michael Hassard
Michael Hassard (NYS Bar No. 5824768)
*Pro Hac Vice*
Tor Ekeland Law, PLLC
30 Wall Street, 8th Floor
New York, NY
t:  (718) 737 - 7264
f:  (718) 504 - 5417
michael@torekeland.com

/s/ Marina Medvin, Esq.
Counsel for Defendant
MEDVIN LAW PLC
916 Prince Street
Alexandria, Virginia 22314
Tel:  888.886.4127
Email: contact@medvinlaw.com

*Counsel for Defendant Roman Sterlingov*

## Certificate of Service

I hereby certify that on the 21st day of December 2022, the forgoing document was filed with the Clerk of Court using the CM/ECF System. I also certify that a true and correct copy of the foregoing was sent to the following individuals via e-mail:

s/ Tor Ekeland

U.S. Department of Justice
District of Columbia
555 Fourth St. N.W.
Washington, D.C. 20530

Catherine Pelker
Catherine.Pelker@usdoj.gov

Christopher Brown
Christopher.Brown6@usdoj.gov