IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** <br><br> v. <br><br> **ROMAN STERLINGOV**, <br><br> Defendant. | Criminal No. 21-CR-399 (RDM) |

# MOTION TO QUASH SUBPOENA BY NON-PARTY MICHAEL GRONAGER AND INCORPORATED MEMORANDUM OF LAW

sf-5562485

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ................................................................................... 1

II. BACKGROUND ........................................................................................................... 2

III. LEGAL STANDARDS ................................................................................................. 4

IV. ARGUMENT ................................................................................................................. 5

    A. Mr. Gronager's Testimony Is Irrelevant to Qualifying Any Expert Witness and Irrelevant to Deciding Motions *in limine* ........................................................ 5

    B. Defendant's Second Subpoena Continues to Harass Mr. Gronager and Chainalysis ........................................................................................................ 8

V. CONCLUSION .............................................................................................................. 9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Barnes v. Dist. of Columbia*,
　924 F. Supp. 2d 74 (D.D.C. 2013) ............................................................................................7

*Cheney v. United States Dist. Ct.*,
　542 U.S. 367 (2004) ..................................................................................................................5

*In re Grand Jury Subpoena for THCF Med. Clinic Recs.*,
　504 F. Supp. 2d 1085 (E.D. Wash. 2007) .................................................................................8

*Houlahan v. World Wide Ass'n of Specialty Programs & Sch.*,
　2007 WL 4730934 (D.D.C. May 30, 2007) ..............................................................................7

*Stern v. United States Dist. Ct.*,
　214 F.3d 4 (1st Cir. 2000) .........................................................................................................4

*United States v. Bebris*,
　4 F.4th 551 (7th Cir. 2021) ................................................................................................... 4, 6

*United States v. Libby*,
　432 F. Supp. 2d 26 (D.D.C. 2006) ................................................................................... 4, 7, 8

*United States v. Nixon*,
　418 U.S. 683 (1974) ............................................................................................................. 4, 7

*United States v. North*,
　713 F. Supp. 1448 (D.D.C. 1989) .............................................................................................5

*United States v. Perocier*,
　269 F.R.D. 103 (D.P.R. 2009) ..................................................................................................5

*United States v. Riego*,
　2022 WL 4182431 (D.N.M. Sept. 13, 2022) ............................................................................4

*Walen v. United States*,
　2019 WL 4261160 (D.D.C. Sept. 9, 2019) ...............................................................................6

**Other Authorities**

Fed. R. Crim. P.
　17(c)(2) .....................................................................................................................................8

Pursuant to Federal Rule of Criminal Procedure 17(a), non-party Michael Gronager moves to quash the purported subpoena for testimony served on him by defendant Sterlingov.

## I. PRELIMINARY STATEMENT

On May 5, 2023, defendant Sterlingov purported to serve a second subpoena on non-party Michael Gronager, Co-founder and CEO of Chainalysis Inc. ("Chainalysis"). This subpoena comes after defendant's November 18, 2022 subpoenas served on non-parties Chainalysis and several of its executives and employees, including Mr. Gronager. The government and the Chainalysis non-parties moved to quash those subpoenas under Federal Rule of Criminal Procedure 17(c). (ECF Nos. 93, 95.) Their motions remain pending.

This time, defendant Sterlingov demands Mr. Gronager's testimony at a *Daubert* hearing to be held June 23, 2023.[1] Mr. Gronager is not an expert witness in this case. His testimony can have no bearing on the qualifications of the government's expert witness, Elizabeth Bisbee. Defendant Sterlingov's counsel intend to question Mr. Gronager about Mt. Gox data and Chainalysis' Reactor software. But questioning *Mr. Gronager* about Mt. Gox data and Reactor can have no relevance in qualifying Ms. Bisbee. The focus of a *Daubert* hearing is on the expert's methodology, not on a third party's understanding of data that was not even used by an expert. As stated in her expert report, the government requested that Ms. Bisbee analyze the aggregate flow of funds between Bitcoin Fog and eight services, none of which included Mt. Gox. None of Ms. Bisbee's expert analysis or conclusions relate to Mt. Gox. As for Reactor, Ms. Bisbee will herself be available to testify about her methodology. Nor would questioning Mr. Gronager about the potential bias of Ms. Bisbee, a Chainalysis employee, have any

---

[1] Initially, defendant Sterlingov subpoenaed Mr. Gronager to testify on June 16 and 23, 2023. Subsequently, defense counsel clarified that they would limit the subpoena to the hearing on June 23, 2023.

1

sf-5562485

relevance in qualifying her. Potential bias goes to the weight, not the admissibility, of Ms. Bisbee's testimony. Mr. Gronager's testimony would also have no bearing on motions *in limine*, which address purely legal issues on the admission of evidence.

Mr. Gronager's testimony has no relevance whatsoever to any task before the Court at the upcoming hearing. We are unaware of any court that has relied on a non-expert's testimony as part of the qualification process under *Daubert* or asked for a third-party witness' testimony to decide a motion *in limine*.

Defendant's request is at bottom a recurring episode in its harassment of Chainalysis. Having been thus far unsuccessful at obtaining documents or testimony from the Rule 17(c) subpoenas issued in November 2022, defendant again attempts to circumvent the Rules of Criminal Procedure in obtaining testimony to serve ends outside of this case. As with the November 2022 subpoenas, this subpoena is designed to obtain irrelevant discovery and harass Chainalysis and its executives. Defendant's counsel have continued to disparage Chainalysis publicly and have reiterated their intent to "sue the crap out of Chainalysis" following the conclusion of this criminal trial. Those motives do not provide a proper basis for any subpoena, much less one demanding testimony at a hearing to qualify an expert witness.

This Court should quash the subpoena served on Mr. Gronager.

**II.    BACKGROUND**

A fuller recitation of the relevant procedural background is contained in the Chainalysis non-parties' Motion to Quash Subpoena, filed December 9, 2022. (ECF No. 95 at 2-4.) Mr. Gronager presumes that the Court is familiar with this background and only highlights select details here.

On January 31, 2023, the Court set a *Daubert* hearing for June 16 and 23, 2023. (Jan. 31,

sf-5562485

2023 Minute Order.) In addition, there are a number of pending motions *in limine* filed by the Parties. (ECF Nos. 59, 60, 62, 63, 64, 65, 66.) We understand that the Court may address these motions at the June 16 and 23 hearing.

The government has noticed Elizabeth Bisbee as an expert witness in virtual currency and blockchain analysis. (ECF No. 61 at 7-8, ECF No. 124-2.) Ms. Bisbee is a former Drug Enforcement Administration subject matter expert in virtual currency investigations. Since January 2021, she is Director of Investigation Solutions for Chainalysis. (ECF No. 124-2 at 1.) The government has disclosed that Ms. Bisbee is expected to testify on blockchain analysis. This testimony will explain how blockchain information can be used to trace transactions, including by identifying "clusters" of addresses held by the same individual or entity. (*Id.* at 2.) Ms. Bisbee is expected to testify regarding the clusters that are associated with various darknet marketplaces and the flow of funds between these darknet markets. (*Id.*) Ms. Bisbee is expected to testify at the hearing on June 16 or 23. Her expert report listed eight services which interacted with Bitcoin Fog, none of which included Mt. Gox.

Mr. Gronager is the Co-founder and CEO of Chainalysis. He has not been noticed as an expert witness by either side. On November 18, 2022, defendant Sterlingov purported to serve subpoenas on Mr. Gronager, other Chainalysis employees, and Chainalysis itself demanding documents and testimony in 81 broad categories. (*See* ECF No. 95-1.) Defendant failed to seek leave of the Court before serving these subpoenas. On December 9, 2022, these non-parties moved to quash these subpoenas as improper under Federal Rule of Criminal Procedure 17(c). (ECF No. 95.) The government also moved to quash these subpoenas. (ECF No. 93.) The Court will address these motions to quash on June 16, 2023. (May 25, 2023 Minute Order.)

On May 5, 2023, defendant Sterlingov purported to serve a second subpoena on

Mr. Gronager, seeking testimony at the June 16 and 23 hearing. (*See* Ex. A.) The subpoena did not specify the relevance of Mr. Gronager's testimony at a *Daubert* hearing nor was it accompanied by any communication that did so. Defense counsel later requested Mr. Gronager's testimony on June 23 only. Counsel for defendant Sterlingov stated their intention to question Mr. Gronager on (1) the authenticity of Mt. Gox records and (2) Chainalysis' Reactor software in the context of pending motions *in limine* and the qualification of Ms. Bisbee as an expert witness.

### III.   LEGAL STANDARDS

"Federal Rule of Criminal Procedure 17(a) governs subpoenas *ad testificandum* in criminal proceedings." *United States v. Riego*, 2022 WL 4182431, at *2 (D.N.M. Sept. 13, 2022). "Although Rule 17(a) . . . does not provide explicitly for quashal or modification, courts routinely have entertained motions seeking such relief and decided them by reference to comparable principles. Specifically, a subpoena ad testificandum survives scrutiny if the party serving it can show that the testimony sought is both relevant and material." *Stern v. United States Dist. Ct.*, 214 F.3d 4, 17 (1st Cir. 2000). "Where the sought testimony is cumulative or immaterial, a court does not abuse its discretion by quashing a Rule 17(a) subpoena." *United States v. Bebris*, 4 F.4th 551, 559 (7th Cir.), *cert. denied*, 142 S. Ct. 489 (2021). In other words, "[r]oughly the same standard applies to subpoenas compelling the attendance of witnesses" as to subpoenas *duces tecum*. *Stern*, 214 F.3d at 17. That standard requires that the subpoena "clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." *United States v. Nixon*, 418 U.S. 683, 700 (1974). "The specificity requirement ensures that a Rule 17(c) subpoena will not be used as a fishing expedition to see what may turn up." *United States v. Libby*, 432 F. Supp. 2d 26, 32 (D.D.C. 2006) (citation omitted). A defendant must "demonstrate with requisite

4

sf-5562485

specificity" that the testimony is "material and essential to the defense." *United States v. North*, 713 F. Supp. 1448, 1449 (D.D.C. 1989). The burden of "satisfy[ing these] exacting standards" falls "on the party requesting the information." *Cheney v. United States Dist. Ct.*, 542 U.S. 367, 386 (2004).

IV. **ARGUMENT**

    A. **Mr. Gronager's Testimony Is Irrelevant to Qualifying Any Expert Witness and Irrelevant to Deciding Motions *in limine***

Defendant's subpoena should be quashed because Mr. Gronager's testimony is quite simply irrelevant to qualifying an expert witness or to deciding motions *in limine*. The focus of the *Daubert* hearing is Ms. Bisbee's qualifications to testify as an expert at trial. Mr. Gronager is not himself an expert witness. We have identified no case in which a person who is not a noticed expert has been required to appear at a *Daubert* hearing. Motions *in limine* decide purely legal issues and no third-party testimony should be required.

A *Daubert* hearing tests an expert's qualifications and the reliability of the expert's methodology. In an earlier filing, defendant argued that Mr. Gronager's testimony may be relevant to "challenge the authenticity, integrity and credibility of Ms. Bisbee's proffered testimony and evidence." (ECF No. 103 at 12.) Because Ms. Bisbee "did not generate the data that she is basing her expert opinions on," defendant claims, Mr. Gronager's testimony is necessary. (*Id.*) This argument is misplaced. First, the focus of a *Daubert* hearing is on the reliability of the *expert's* methodology, not on those who may have generated the data. "Reliability under Rule 702 is a question concerning the expert's methods, not the method of obtaining the underlying data by non-experts." *United States v. Perocier*, 269 F.R.D. 103, 114 (D.P.R. 2009) (rejecting argument that a party should call "witnesses who could testify to the authenticity and reliability of the data underlying [the expert's] opinion"). Second, to the extent

5

...
...
...
...
...

the defendant disagrees with Ms. Bisbee's choice of data, that is a potential subject for cross-examination of Ms. Bisbee but not grounds for exclusion.  "[T]he party offering the expert need not prove that the expert's opinions are correct but rather that the expert is a qualified person who has reached his opinions in a methodologically reasonable manner." *Walen v. United States*, 2019 WL 4261160, at *14 (D.D.C. Sept. 9, 2019).  In any event, Ms. Bisbee's expert analysis and conclusions do not relate to Mt. Gox at all.  Mr. Gronager has nothing to add to this line of inquiry and his testimony is accordingly irrelevant.

If defendant Sterlingov argues that Mr. Gronager's testimony is necessary to understand the functionality of Chainalysis' Reactor software that, too, would be irrelevant to any necessary legal inquiry at the June 23 hearing.  Ms. Bisbee can testify about her methods, including use of Reactor and how the software identifies "clusters" of Internet addresses.  Testimony by Mr. Gronager or anyone else on this subject would be cumulative.  Indeed, if Mr. Gronager's testimony on Reactor were somehow relevant, so would the testimony of every Chainalysis employee.  "Where the sought testimony is cumulative or immaterial, a court does not abuse its discretion by quashing a Rule 17(a) subpoena." *Bebris*, 4 F.4th at 559.  Nor is it clear that Reactor's identification of addresses associated with defendant Sterlingov is even in dispute.  Mr. Sterlingov has stated that he used Bitcoin Fog to "mix" funds.  (Jan. 31, 2023 Hr'g Tr. at 16:8-20.)

Defendant may also argue that Ms. Bisbee's bias should be tested because she is a Chainalysis employee.  Defendant has gone on at great length in its filings about the "profit motive" that could lead to what it calls "confirmation bias" (ECF 103 at 14) and Chainalysis' reliance on outside investors who "focus on returns, not justice" (ECF 125 at 7).  Those arguments are also irrelevant at the June 16 and 23 hearing.  Sources of potential bias may be

proper subjects for cross-examination of Ms. Bisbee at trial, but bias is not a relevant inquiry when determining whether an expert should be excluded. *See, e.g.*, *Houlahan v. World Wide Ass'n of Specialty Programs & Sch.*, 2007 WL 4730934, at *5 (D.D.C. May 30, 2007) (denying motion to exclude expert because "concerns . . . about [an expert's] bias, are fodder for cross examination and impeachment but do not warrant exclusion"). Nor can Chainalysis' business model or outside investors be of any possible relevance in deciding motions *in limine*. Mr. Gronager's testimony is again irrelevant to the decision to permit or exclude Ms. Bisbee's testimony.

On the issue of the authenticity of data, there is no need for Mr. Gronager's testimony. Defendant Sterlingov claims that Mr. Gronager was involved in reviewing or generating data for the Mt. Gox bankruptcy trustee. (ECF 103 at 4, 11-12.) Mr. Gronager's involvement with any Mt. Gox data is irrelevant. As the government has disclosed to the defendant, analysis of Mt. Gox data is derived from a database recovered directly from the Japanese government. (*See* ECF No. 62 at 20-22.) Even were that not the case, testimony from Mr. Gronager to resolve a motion *in limine* on the authenticity of Mt. Gox data would be inappropriate. "In light of their limited purpose, motions *in limine* should not be used to resolve factual disputes." *Barnes v. Dist. of Columbia*, 924 F. Supp. 2d 74, 78 (D.D.C. 2013) (internal quotation marks and citation omitted). Mr. Gronager's anticipated testimony would therefore be irrelevant.

As for the specificity requirement, defendant Sterlingov has so far provided only the most general description of the anticipated subjects of Mr. Gronager's testimony. It is precisely this broad-brush approach that the law prohibits in compelling testimony. A Rule 17 subpoena "is not intended as a general 'fishing expedition.'" *Nixon*, 418 U.S. at 700; *see also Libby*, 432 F. Supp. 2d at 35 (quashing subpoena where "defendant is simply seeking to examine general

categories of documents with the hope that they contain information that may be helpful to his defense"). Defendant's subpoena should be quashed for failing to satisfy the *Nixon* requirements.

### B. Defendant's Second Subpoena Continues to Harass Mr. Gronager and Chainalysis

This subpoena continues defendant's counsel's harassment of Chainalysis. Rule 17(c)(2) authorizes this Court to quash defendant's subpoenas "if compliance would be unreasonable or oppressive." "A subpoena that fails to satisfy these three [*Nixon*] requirements will be deemed unreasonable or oppressive." *Libby*, 432 F. Supp. 2d at 31. In addition, Courts have explained that "a subpoena may still be unreasonable or oppressive if it is . . . abusive or harassing." *In re Grand Jury Subpoena for THCF Med. Clinic Recs.*, 504 F. Supp. 2d 1085, 1088 (E.D. Wash. 2007).

There is no doubt that defendant's counsel have their sights set on Chainalysis after this trial is over. Defendant's counsel have threatened multiple times to bring litigation against Chainalysis, and they are abusing the subpoena power of the Court to further that end. In his cover letter to the November 18, 2022 subpoenas, Mr. Ekeland alluded to bringing a malicious prosecution case against Chainalysis. (ECF 97-1 at 3.) He and his co-counsel have repeatedly called Chainalysis the "Theranos of blockchain analysis." Lily Hay Newman & Andy Greenberg, *Bitcoin Fog Case Could Put Cryptocurrency Tracing on Trial*, WIRED (Aug. 2, 2022), https://www.wired.com/story/bitcoin-fog-roman-sterlingov-blockchain-analysis/; *see also* Mike Hassard (@mikehassard), Twitter (Nov. 18, 2022), https://twitter.com/mikehassard/status/1593843340931481600. And in a recent podcast, defendant's counsel threatened to "sue the crap out of" Chainalysis after defendant's trial concludes. *The Vonu Podcast, TVP #184: ChainAnalysis* [sic] *Coercion & Quack Science: The*

8

*Troubling Case of Roman Sterlingov with Tor Ekeland, Mike Hassard, & SW from Samourai Wallet* (Apr. 29, 2023), at 1:00:02-1:00:13, https://podcasts.apple.com/us/podcast/the-vonu-podcast/id1196082587?i=1000611135399. Defendant's counsel doubtless hope to use testimony from Chainalysis' CEO to further these ends. Needless to say, a *Daubert* hearing is not the appropriate forum for pursuing these goals.

Defendant also appears to be circumventing the pending motions on his earlier Rule 17(c) subpoenas by demanding the same testimony in the context of a *Daubert* hearing. Mr. Gronager and the other Chainalysis non-parties explained in their motion to quash those subpoenas that the subpoenas were improper. (ECF 95.) Defendant has done nothing to explain why qualification of an expert or motions *in limine* would require testimony from Mr. Gronager on the same subjects that he has failed to show are relevant, admissible, or specific.

The Court should quash defendant's subpoena for this additional reason.

### V. CONCLUSION

It is respectfully submitted that the Court should quash the subpoena for testimony issued by defendant to Mr. Gronager.

Dated this 26th day of May, 2023.

>
> Respectfully submitted,
>
> MORRISON & FOERSTER LLP
>
> By: /s/ William Frentzen
> William Frentzen (D.C. Bar No. 1740835; *pro hac vice*)
> WFrentzen@mofo.com
> 425 Market Street, 32nd Floor
> San Francisco, CA 94105
> Telephone: (415) 268-7000
> Facsimile: (415) 268-7522

James M. Koukios (D.C. Bar No. 477072)
JKoukios@mofo.com
2100 L Street, NW, Suite 900 Washington, DC 20037
Telephone: (202) 887-1500
Facsimile: (202) 887-0763

OF COUNSEL:

Michael Komorowski
MKomorowski@mofo.com
Emani N. Oakley
EOakley@mofo.com
425 Market Street, 32nd Floor
San Francisco, CA  94105
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

*Attorneys for Non-party Michael Gronager*