UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>   Plaintiff,<br><br>v.<br><br>ROMAN STERLINGOV<br><br>   Defendant. | **No. 21-cr-399 (RDM)** |

**DEFENDANT'S OPPOSITION TO THE GOVERNMENT'S MOTION TO QUASH DEFENSE SUBPOENA TO FBI ANALYST CATHERINE ALDEN PELKER**

## Table of Contents

I.  FBI Analyst Catherine Alden Pelker is one of Mr. Sterlingov's Accusers and a Material Fact Witness ................................................................................................................... 7

II.  The Defense Seeks Testimony from Ms. Pelker Related to her Role as an FBI Analyst ........ 9

III.  Ms. Pelker's Work as an FBI Analyst Isn't Privileged .......................................................... 9

   A.  Deliberative Process Privilege does not Apply .................................................................... 9

   B.  The Attorney Work-Product Privilege is Inapposite .......................................................... 11

IV.  Ms. Pelker Should be Removed as a Prosecutor from this Case in Accordance with D.C. Bar Rule of Professional Conduct 3.7 and ABA Code of Professional Responsibility Rule 3.7 . 11

## Introduction

The Government seeks to deny Mr. Sterlingov his right to confront the most knowledgeable witness to the initiation, transfer, and course of this investigation, former FBI Analyst and lead investigator in this case, Catherine Alden Pelker. In 2014, Ms. Pelker begins work on this investigation. She does not become a lawyer until 2016. This makes her a material fact witness and one of Mr. Sterlingov's accusers. Despite this fact, and the District of Columbia Rule of Professional Responsibility 3.7 and the American Bar Association's Model Rule 3.7 which both prohibit lawyers from representing parties in cases where they are a material fact witness, the DOJ chose to appoint her as a prosecutor on this case. She appears to be the sole reason this case is in Washington D.C. Cross-examination of Ms. Pelker is crucial to Mr. Sterlingov's constitutional right to confront his accusers and put on a complete defense.

Ms. Pelker's testimony is directly relevant to several key issues in this case including venue, forensics, confirmation bias, cognitive bias, the distorting effects of careerism and profiteering on this investigation, and the primacy given to Chainalysis's inaccurate proprietary black-box heuristic blockchain tracing methodologies. The Government cannot now complain of the situation it willingly and knowingly created by appointing the lead FBI Analyst and investigator on this case as a prosecutor, years after the initiation of this investigation.

As an FBI Analyst, Ms. Pelker is the primary point of contact with Chainalysis Inc., and the primary analyst when it comes to the forensic output of the Government's blockchain tracing using Chainalysis Reactor software. She is also directly involved in DOJ's hiring of Chainalysis Inc. Chainalysis's forensics are foundational to the Government's case. She is in communication with Chainalysis from the beginning, well before becoming a prosecutor. The Government so far refuses to produce these communications and in general communications between the Government and Chainalysis are missing from the discovery.

The Government is mistaken in claiming that the Defense seeks privileged testimony. Attorney privileges do not attach to the time Ms. Pelker was not an attorney, nor can the Government hide behind the primarily civil discovery case law on the deliberative process

privilege because this is a subpoena under the Sixth Amendment for testimony from a material fact witness in a criminal case. Contrary to the Government's assertions, the Defense does not seek any testimony regarding her role as a prosecutor in this case. Because she is a material fact witness, the Court should remove her as a prosecutor on this case so as not to confuse the jury as to whether Ms. Pelker's testimony is as a witness with personal knowledge or as an advocate for the Government. This is the sound policy rationale behind the ABA and District of Columbia Bar rules prohibiting the conduct at issue here.

## Background

Undersigned counsel informed the Government of Ms. Pelker's status as a material fact witness during its first meeting about this case with the Government. Despite this, the Government has not removed her as a prosecutor from this case.

Additionally, on September 12, 2022, Defense counsel informed the Government via email that "Ms. Pelker is a material fact witness in this case and we are going to subpoena her testimony. We give you a final opportunity to have her withdraw from this case as a prosecutor before we raise the issue with the court."

On September 17, 2022, the Government responded by letter and declined to consider Ms. Pelker's removal from this case.

On October 24, 2022, the Defense filed a motion *in limine* asking for a hearing "as to [Ms. Pelker's] role as a material fact witness and removal as a prosecutor in this case."[1] That same day, the Government moved *in limine* to preclude the Defense from calling Ms. Pelker as a witness.[2]

---

[1] Dkt. 59 at 17.
[2] Dkt. 64.

On November 7, 2022, Defense counsel filed its opposition to the Government's motion *in limine* to preclude the Defense from calling Ms. Pelker as a witness.[3] On November 14, 2022, the Government filed its reply.[4]

On March 8, 2023, Defense counsel issued a subpoena for Ms. Pelker's testimony.[5] On March 17, 2023, the Government responded via email to the subpoena indicating that they would be challenging the subpoena at the upcoming hearing on Motions *in Limine*.

On March 23, 2023, the Chief of the Civil Division of the United States Attorney's Office for the District of Columbia sent Defense counsel a *Touhy* letter requesting the substance of the requested testimony from Ms. Pelker.[6]

On May 3, 2023, Defense counsel responded to Mr. Hudak's letter pointing out that:

> "*Touhy*, an administrative regulation cannot abrogate Mr. Sterlingov's Sixth Amendment right to confront his accusers. Nor can it usurp his Sixth and Fifth Amendment rights not to disclose his defense strategy until trial. *Touhy* involves a collateral appeal through civil habeas corpus after exhaustion of direct appeal. This procedural posture is on the opposite end of a case yet to go to trial like Mr. Sterlingov's."

And that:

> "Ms. Pelker is a material fact witness. She is not being called by the Defense in her capacity as a prosecutor. However, given the fact that she is both a prosecutor and a material fact witness, the Department should withdraw her from this case to avoid confusing the jury as to whether she is a witness or an advocate. Ms. Pelker has knowledge to which no one else can testify to. Under the Sixth Amendment's Confrontation Clause, Mr. Sterlingov has the right

---

[3] Dkt. 67. The Defense incorporates by reference its prior briefing on this issue.
[4] Dkt. 80.
[5] See Ex. A.
[6] *See* Ex. B.

>to confront Ms. Pelker, and under the Sixth and Fifth Amendments the government cannot compel him to reveal his defense strategy pre-trial under the guise of an administrative regulation instantiated by the Department itself"[7]

On May 18, 2023, the Government filed a motion to quash Defense counsel's subpoena to Ms. Pelker. This opposition follows.

## Argument

The Government concedes in its motion *in limine* that Ms. Pelker was heavily involved in the Bitcoin Fog investigation from its outset in 2014 while working as an Intelligence Analyst for the FBI office in Philadelphia.[8] She is the reason this case is in the District of Columbia. Ms. Pelker takes this case with her to D.C., where she becomes a lawyer in 2016 after graduating from Georgetown Law School. The Government has produced no documents or communications related to the decision to transfer this case despite the Defense requesting this information and despite it being directly relevant to the question of whether venue is constitutional in the District of Columbia. As the FBI analyst who initiated the Bitcoin Fog investigation, Ms. Pelker spent years participating in the investigation before becoming a prosecutor on this case.

In 2014, Ms. Pelker authored and distributed internally at DOJ an "Intelligence Note" in which she outlines the Bitcoin Fog investigation and targets "Akemashite Omedetou" as the creator of Bitcoin Fog. She mentions "Akemashite Omedetou" no fewer than 43 times in the 10-page document. This Intelligence Note was circulated within the DOJ and directed all inquiries related to the Bitcoin Fog investigation to Ms. Pelker. Despite an ensuing nine-year investigation, there is little new evidence beyond what is in Ms. Pelker's Bitcoin Fog Intelligence Note.

---

[7] *See* Ex. C.
[8] Dkt. 64 at 1.

The Government has produced no privilege log asserting any type of attorney-client, attorney-work product, or deliberative process privilege for any of the withheld discovery in this case. The Government has withheld its communications and information regarding Ms. Pelker's use of Chainalysis Reactor (the Chainalysis forensic software used in this case) during the time she was an FBI analyst. The Government is also withholding information and communications related to the DOJ's license acquisition of Chainalysis Reactor software, and its use by Ms. Pelker, the FBI and Treasury to investigate this case. The discovery reveals that Ms. Pelker was instrumental in getting the DOJ to purchase a license for Chainalysis Reactor, having first used a copy licensed to the Treasury Department. This goes directly to the issues of confirmation and cognitive bias that taint this investigation because it gives Ms. Pelker an incentive to make sure that Chainalysis Reactor is successful. Nor has the Government produced communications between Chainalysis, Ms. Pelker and IRS criminal investigator on this case Aaron Bice, among others working on the forensics in this case.

## I.     FBI Analyst Catherine Alden Pelker is one of Mr. Sterlingov's Accusers and a Material Fact Witness

Ms. Pelker is a material fact witness in this case and Mr. Sterlingov has a Sixth Amendment right to cross-examine her. "As a general matter, the Sixth Amendment mandates that a defendant receive 'compulsory process for obtaining witnesses in his favor.' Few rights are more fundamental than that of an accused to present witnesses in his own defense."[9] The threshold is merely the plausible showing of materiality for the Defense's case.[10]

---

[9] *United States v. Michel*, CRIMINAL ACTION 19-148-1 (CKK) (D.D.C. Mar. 6, 2023) (q*uoting United States v. Valenzuela-Bernal*, 458 U.S. 858, 876 (1982) ("A governmental policy of deliberately putting potential defense witnesses beyond the reach of compulsory process is not easily reconciled with the spirit of the Compulsory Process Clause.").
[10] *See id.*

The Defense seeks to cross-examine Ms. Pelker because she was the lead FBI Analyst and investigator on this case for years prior to DOJ's appointment of her as a prosecutor on it. She has unique, materially relevant, personal knowledge of the novel proprietary black-box heuristic blockchain software that constitutes the crux of the Government's accusations against Mr. Sterlingov. As the lead FBI investigator on this case she is responsible for its transfer to Washington D.C. These facts alone, (1) her intimate involvement in, and use of, the forensics accusing Mr. Sterlingov, (2) her role as the lead investigator for years before becoming a prosecutor, and (3) her intimate involvement in the transfer of this case to Washington D.C. (thereby implicating the constitutional issue of venue), are sufficient, relevant, material facts that Mr. Sterlingov has the Sixth Amendment right to cross-examine Ms. Pelker about. To deny Mr. Sterlingov's right to confront and cross-examine his primary accuser not only violates the Sixth Amendment, but also his Fifth Amendment right to put on a complete defense.[11]

Mr. Sterlingov has a constitutional right under the Sixth Amendment to confront Ms. Pelker. "Fair and full cross examination of a government witness on the subjects of his examination in chief is an absolute right of an accused. And denial of the right constitutes reversible error."[12]

As the United States Supreme Court says in *Crawford v. Washington*:

> The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." The right of confrontation, which is secured for defendants in state as well as federal criminal proceedings[13], "means more than being allowed to confront the witness physically."[14] Indeed, " `[t]he main and essential purpose

---

[11] *See United States v. Ramos*, 763 F.3d 45 (1st Cir. 2014); *United States v. Walshe*, Criminal Action No. 10-cr-00181-MSK (D. Colo. Nov. 3, 2011); *U.S. v. Weisberg*, 08-CR-347 (NGG) (RML) (E.D.N.Y. Apr. 5, 2011).
[12] *Dickson v. United States*, 182 F.2d 131 (10th Cir. 1950).
[13] *See Pointer* v. *Texas,* 380 U. S. 400 (1965).
[14] *See Davis* v. *Alaska,* 415 U. S. 308, 315 (1974).

of confrontation is *to secure for the opponent the opportunity of cross-examination.'"*[15]

## II.    The Defense Seeks Testimony from Ms. Pelker Related to her Role as an FBI Analyst

The Defense does not seek to cross-examine Ms. Pelker on any topics related to her work as a prosecutor in this case. The Defense merely seeks testimony from Ms. Pelker related to her role as an FBI Analyst on this case. Thus, the Government's contentions that any proposed cross-examination would be subject to prosecutorial privilege, deliberative process privilege, or attorney work-product doctrine is misplaced. Moreover, the Government is free to object on privilege grounds should any such issue arise at trial.

## III.    Ms. Pelker's Work as an FBI Analyst Isn't Privileged

The Government has produced no privilege log of withheld discovery in this case. Nor has it identified a single piece of privileged information. Its claims of attorney privilege are unavailing for the simple fact that none of the sought after testimony involves Ms. Pelker's role as a belated prosecutor on this case. And the Government's talismanic invocation of the deliberative process privilege does it no better.

### A.    Deliberative Process Privilege does not Apply

The deliberative process privilege protects the decision-making processes of government agencies from discovery primarily in civil actions. The deliberative process privilege in its purest form protects from discovery documents and internal communications that are part of an agency's decision-making process.[16] The Defense seeks testimony from Ms. Pelker with its subpoena - not documentation.

---

[15] *See Crawford v. Washington*, 541 U.S. 36 (2004) (quoting *Davis* v. *Alaska,* 415 U. S. 308, 315-16 (1974) (quoting 5 J. Wigmore, Evidence § 1395, p. 123 (3d ed. 1940)) (emphasis in original).
[16] *See Schomburg v. N.Y.C. Police Dep't*, 298 F.R.D. 138, 144 (S.D.N.Y. 2014) (internal alterations omitted) (quoting La Raza, 411 F.3d at 356 ).

The deliberative process privilege covers documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated. [17] Its object is to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government.[18] The policy rationale behind the deliberative process privilege is essentially one of administrative law and not criminal law.

To invoke the deliberative process privilege, the Government must show that a document in question is both predecisional and deliberative.[19] Again, the Government's motion to quash is against the Defense's subpoena *ad testificandum*, not a subpoena *duces tecum*.[20] A document is predecisional if it was created before a final decision was made, and deliberative if it reflects the give-and-take of the decision-making process. In some cases, the Government may also need to demonstrate that the disclosure of the document would discourage candid discussion within the agency and undermine its ability to perform its functions. None of this is at play here when it comes to Ms. Pelker's testimony as a material fact witness in a federal criminal case.

The deliberative process privilege does not provide a blanket basis upon which to withhold documents that an agency has created during its decision-making process," because such a rule "would provide an exemption from the discovery rules for decision-making agencies generally," which, "of course, is not the law.[21]

Defense counsel seeks to cross-examine Ms. Pelker about her investigation, not her deliberation. It's indisputable Ms. Pelker was the primary FBI Analyst on this case well before

---

[17] *Dept. of Interior v. Klamath Water Users Protective Assn.*, 532 U.S. 1, 8-9 (2001) (internal citations and quotation marks omitted).
[18] *Howard v. City of Chicago*, Case No. 03 C 8481 (N.D. Ill. Aug. 10, 2006).
[19] *Doe v. Metro. Gov't of Nashville & Davidson Cnty.*, 3:20-cv-01023 (M.D. Tenn. Dec. 13, 2021).
[20] *See* Ex. A.
[21] *See United States v. Wey*, 252 F. Supp. 3d 237 (S.D.N.Y. 2017).

she ever became an attorney or a prosecutor. What's inexplicable here is that DOJ chose to make her a prosecutor on this case knowing her role as an FBI Analyst in this investigation. By so doing the Government waives any claims to privilege in the face of Mr. Sterlingov's Sixth and Fifth Amendment rights to confront his accusers and put on a complete defense.

Here, there is no justification for application of the privilege because this is a subpoena for testimony and the Government identifies no predecisional deliberative document implicated by the Defense's compulsory process.

### B. The Attorney Work-Product Privilege is Inapposite

The Defense is not seeking testimony on anything from the time period Ms. Pelker is an attorney on this case, or even an attorney at all. The Defense seeks testimony from the time-period Ms. Pelker worked as an FBI Analyst during which she initiated the investigation into Bitcoin Fog and worked with Chainalysis and its Reactor software on the forensics at the heart of this case.

The Government does not identify a single document subject to the attorney work-product doctrine. Again, the Defense seeks Ms. Pelker's testimony as an FBI Analyst and investigator on this case, not as an attorney.

To the extent the Government identifies any work-product it is withholding in the face of this subpoena and its Federal Rule of Criminal Procedure 16 obligations, the Court should order the Government to produce a privilege log and, if necessary, engage in *in camera* review of any disputed discovery.

### IV. Ms. Pelker Should be Removed as a Prosecutor from this Case in Accordance with D.C. Bar Rule of Professional Conduct 3.7 and ABA Code of Professional Responsibility Rule 3.7

The ABA Code of Professional Responsibility Rule 3.7 and D.C. Bar Rule of Professional Conduct 3.7 both prohibit lawyers from acting as an advocate and a witness in the

same case, except in limited circumstances not applicable here. These rules are designed to avoid conflicts that arise when an attorney puts their own credibility at issue in litigation and avoid confusing the jury as to whether the lawyer is testifying as a witness or arguing as an advocate.[22] Moreover, ABA Model Code of Professional Responsibility Disciplinary Rule 5-101(B) prohibits lawyers from accepting employment in litigation if they know they could be called as a witness.[23] These rules are old and well-established. DOJ was on notice of these rules when it chose to appoint Ms. Pelker as a prosecutor on the very case that she is a primary material fact witness in. The Defense subpoena for Ms. Pelker's testimony should not surprise the Government.

## Conclusion

Ms. Pelker's role as the primary FBI Analyst and investigator in this case for years before becoming a prosecutor on this case requires denial of the Government's motion to quash in its entirety. Without Ms. Pelker's testimony, not only is Mr. Sterlingov denied his constitutional right to confront his accusers, but he is denied his constitutional right to mount a complete defense. The Court should deny the Government's motion in its entirety.

---

[22] *See e.g. S.S. v. D.M*, 597 A.2d 870, 877 (D.C. 1991).
[23] *O'Neil v. Bergan*, 452 A.2d 337 (D.C. 1982).

Dated: June 1, 2023
New York, New York

        Respectfully submitted,

        /s/ Tor Ekeland
        Tor Ekeland (NYS Bar No. 4493631)
        *Pro Hac Vice*
        Tor Ekeland Law, PLLC
        30 Wall Street, 8th Floor
        New York, NY
        t:  (718) 737 - 7264
        f:  (718) 504 - 5417
        tor@torekeland.com

        /s/ Michael Hassard
        Michael Hassard (NYS Bar No. 5824768)
        *Pro Hac Vice*
        Tor Ekeland Law, PLLC
        30 Wall Street, 8th Floor
        New York, NY
        t:  (718) 737 - 7264
        f:  (718) 504 - 5417
        michael@torekeland.com

        *Counsel for Defendant Roman Sterlingov*

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of June 2023, the forgoing document was filed with the Clerk of Court using the CM/ECF System, and sent by email to the attorneys for the Government listed below:

s/ Tor Ekeland

U.S. Department of Justice
District of Columbia
555 Fourth St. N.W.
Washington, D.C. 20530

Catherine Pelker
Catherine.Pelker@usdoj.gov

Christopher Brown
Christopher.Brown6@usdoj.gov