# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    Plaintiff,<br>v.<br><br>ROMAN STERLINGOV<br><br>    Defendant. | **No. 21-cr-399 (RDM)** |

# DEFENDANT'S REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S NOTICE OF INTENT TO PRESENT EXPERT TESTIMONY

## Table of Contents

I.   The Government has Substantially Prejudiced the Defense by Failing to Meet its Obligations Under Federal Rule of Criminal Procedure 16 ............................................................................... 3

II.  The Defense has Provided the Government with Ample Information to Prepare Cross-Examination of Defense Experts ................................................................................................... 7

    A.  Dr. Francisco Cabañas ................................................................................................. 8

    B.  Dr. Dror ....................................................................................................................... 9

    C.  Jeff Fischbach ............................................................................................................ 10

    D.  Jonathan Scott ........................................................................................................... 10

    E.  J.W. Verret ................................................................................................................ 11

III. The Court Should Reserve the First Few Days of Trial to Deal with any Outstanding Motions ............................................................................................................................... 12

## Introduction

Defendant Roman Sterlingov submits this Reply to the Government's Opposition to Defendant's Notice of Intent to Provide Expert Testimony. The Government's objections celebrate form over substance and are not objections against the sufficiency of the disclosures as much as they are attempts to argue the invalidity of the Defense experts' proffered opinions. Whether or not the new or old version of Federal Rule of Criminal Procedure 16 applies to these disclosures, the Defense has substantially disclosed all the information the Government requires to cross-examine the Defense's witnesses. This includes the Defense's fulsome Notice of Expert Testimony, and the CVs emailed separately to both the Government and the Court, detailing the Defense's experts' achievements and testimony. As the Defense relies heavily, if not exclusively, upon the Government's disclosures, and lack thereof, for its own experts' analysis, there is no substantial prejudice to the Government. Any perceived deficiencies are easily cured. Should the Court require further disclosure, there is ample time to do so as we are still three months out from trial and the new version of FRCrP 16 provides for supplementation and correction of experts' disclosures.[1] For the reasons argued below, this Court should deny the Government's Opposition in its entirety.

### I.  The Government has Substantially Prejudiced the Defense by Failing to Meet its Obligations Under Federal Rule of Criminal Procedure 16

The Government fails to meet its obligations under FRCrP 16 by withholding critical evidence necessary for both the Defense's *Daubert* and *in limine* motions. Since at least September of 2022, the Defense has repeatedly asked for the full native format datasets used by the Government, as well as the source code and access to the Chainalysis Reactor software, and

---

[1] *See* FRCrP 16 (a)(1)(C)(vi) and (b)(1)(C)(vi).

any other software, in the versions used in this case.[2] Both the Government and Chainalysis refuse to produce them.[3] Yet, their experts work is entirely dependent on these datasets and as such the Government's experts' disclosures as to the basis of their experts' opinions are deficient. The Government picks and chooses what datasets to disclose and when it does disclose its datasets, it generally does not disclose them completely in their original native format. Rather, it selectively parses its datasets choosing only what it deems fit to put in an Excel spreadsheet. This type of subjective editing renders it difficult to assess the accuracy of the Government's experts' conclusions or to cross-examine those experts.

Throughout this case, the Government and Chainalysis hide their work. Among other things, the Government has yet to produce the full Mt. Gox database despite an extensive public record demonstrating that the database is inauthentic and corrupt.[4] Without the Mt. Gox database and the analysis based on it, the Government's case collapses.

The Government complains that it has received no reports based on the Defense's use of OXT and other software to attempt to recreate the Government's traces. That's because all the Government needs to do is use the commercially available OXT and other publicly available software, like the Defense does, to do the same traces they have done with the proprietary Chainalysis Reactor software to discover their errors. As the Government told the Defense in its Opposition to the Defense's Omnibus Motion *In Limine*, "the defense can completely recreate the government's blockchain analysis from scratch, address-by-address, if it so chooses."[5] But this is disingenuous. Chainalysis Reactor is a highly subjective, heuristic, probabilistic software

---

[2] *See* Letter from Tor Ekeland and Michael Hassard, Counsel for Defendant Roman Sterlingov, Tor Ekeland Law PLLC, to Christopher Brown and Catherine Pelker, Assistant United States Attorneys, United States Attorney's Office for the District of Columbia (Sept. 23, 2022) (attached as Ex. A); *see also* Dkts. 59, 69, 72, 76, 103.
[3] The Defense has a Motion to Compel pending and given the current state of affairs intends to file a supplemental motion to compel.
[4] Dkt. 131.
[5] Dkt. 73 at 12.

that has never been peer-reviewed, has no scientific validity, and whose sources code is necessary for any analysis of its accuracy. It is not as simple as just looking at the public blockchain. If it was, why does the Government and Chainalysis fight so hard to keep from revealing the source code to the Defense? The failure of the Government to disclose its source code and native format databases to the Defense renders all of their expert disclosures insufficient under FRCrP 16 and substantially prejudices the Defense. When and if the Government meets its discovery obligations under FRCrP 16 the Defense will, as necessary, be able to generate expert reports.

The Government's failure to produce the complete Mt. Gox database is perhaps its worst omission. As outlined in Defendant's Opposition to Chainalysis's Motion to Quash Subpoena, the Mt. Gox data is corrupt and inauthentic.[6] This adulterated Mt. Gox data was provided to the Government through twice criminally convicted data fraudster Mark Karpelès. It is foundational to the Government's case.[7] The Government's experts' analyses are heavily dependent upon it. For instance, the Mt. Gox data is central to the Government's heuristic tracing used to allege Mr. Sterlingov paid for the domain fees for the www.bitcoinfog.com clearnet site in 2011.[8]

On September 23, 2022, the Defense sent its first Federal Rule of Criminal Procedure Rule 16 letter (under the old version of FRCrP 16) making detailed requests for the Mt. Gox data that the Government has yet to fulfill.[9] The Defense has repeatedly asked the Government for the complete Mt. Gox database, but the Government has produced nothing in response to these requests beyond their original deficient production. They expect the Defense to be content with

---

[6] Dkt. 131.
[7] *Id.*
[8] Dkt. 1, 131
[9] *See* Letter from Tor Ekeland and Michael Hassard, Counsel for Defendant Roman Sterlingov, Tor Ekeland Law PLLC, to Christopher Brown and Catherine Pelker, Assistant United States Attorneys, United States Attorney's Office for the District of Columbia, Request Nos. 73, 74, 78, 80, 98, 99 (Sept. 23, 2022) (attached as Ex. A).

Excel spreadsheets containing cut and paste search query results from the corrupted Mt. Gox database in the Government's custody and control. A preliminary analysis of the cut and paste Mt. Gox spreadsheet data reveals glaring inaccuracies and errors like missing transaction IDs, missing transactions, missing digits from various identifiers and missing wallet addresses, just to name a few. If the Government bothered to check their data, they would notice this as well, if they haven't already. The complete Mt. Gox database in its native format is necessary, exculpatory *Brady* evidence being withheld by the Government in a matter that directly inhibits Mr. Sterlingov's ability to effectively prepare for the upcoming June 16 and 23 *Daubert* and *in limine* hearings, as well as for trial. He cannot effectively cross-examine the proffered experts for *Daubert* purposes without it, nor can he prepare any contemplated expert reports without it.

Finally, given the scope, depth, and complexity of the *Daubert* and *in limine* questions in this novel blockchain forensics case rife with issues of first impression, this Court should consider reserving time at the top of the scheduled trial calendar for further hearings on *Daubert* and *in limine* issues.

The Defense maintains that the prior version of Federal Rule of Criminal Procedure 16 that was in effect at the start of this case controls. Regardless, any perceived deficiency in the Defense's disclosures do not substantially prejudice the Government and are easily corrected through supplementation of the disclosures. On the other hand, the Government's failure to produce relevant data and exculpatory information relied upon by its experts substantially prejudices Mr. Sterlingov.

Finally, it is not clear whether the Government has disclosed all of their experts' trial and deposition testimony for the last four years for Ms. Glave, Mr. Scholl, Ms. Mazarin, Mr.

Vlahakis, or Ms. Bisbee. Nor is it clear if all their publications in the last decade have been disclosed as the new Rule 16 requires.[10]

## II. The Defense has Provided the Government with Ample Information to Prepare Cross-Examination of Defense Experts

The Defense has provided the Government with more than enough information to prepare cross-examination. The Defense has noticed its experts in detail, discussing their expected testimony, and providing their CVs to the Government and Court.[11] All the Defense's experts are well established in their fields and are easily researched by the Government. Most of them have worked for the Government or the FBI as experts in some capacity. For instance, Dr. Dror, the Defense's confirmation and cognitive bias expert has trained the FBI on confirmation and cognitive bias in forensic investigations.[12] Forensic expert Jeff Fischbach has worked extensively with the FBI for years.[13] Jonathan Scott has a Master's in computer science, is currently working on his doctorate degree, works professionally as a blockchain forensics examiner, and has in-depth experience with Chainalysis Reactor and digital forensics.[14] Dr. Cabañas is a well-known expert on blockchain privacy and holds a PhD in physics with an emphasis on the statistical analysis of error, a subject directly relevant to this case.[15] Finally, J.W. Verret is a professor of law at George Mason University where, as a well-known blockchain expert, privacy advocate and anti-money laundering professional, he teaches classes on financial and forensic accounting.[16] As a private lawyer, he represented clients in the blockchain space.[17] The practical

---

[10] FRcrP 16(a)(G)(iii).
[11] Dkt. 122.
[12] *See* CV – Dr. Dror, provided via email to the Government and the Court (May 24, 2023).
[13] *See* CV – Jeff Fischbach, provided via email to the Government and the Court (May 24, 2023).
[14] *See* CV – Jonathan Scott, provided via email to the Government and the Court (May 24, 2023).
[15] *See* CV – Dr. Francisco Cabañas, provided via email to the Government and the Court (May 24, 2023).
[16] *See* CV – J.W. Verret, provided via email to the Government and the Court (May 24, 2023).
[17] *Id.*

experience and education of the Defense's proffered experts easily rivals, if not surpasses, that of the Government's proffered experts.

The Defense experts sit at the top of their respective fields. The Department of Justice, governments, universities, and private institutions around the world regularly turn to them for insight into digital forensics, cryptocurrency and investigatory bias.[18] Three of the five Defense experts have or are working on doctorate degrees in their respective fields of expertise. The other two have decades of experience and have publicly testified in front of Congress and courts for years in their fields.[19]

### A. Dr. Francisco Cabañas

Dr. Cabañas, who the Government dismisses as "a retired physicist turned real estate investor who is interested in cryptocurrencies,"[20] is one of the leading minds on blockchain privacy and a physicist with expert-level knowledge in statistical error analysis.[21] Since Chainalysis's clustering methodologies are nothing more than a statistical analysis of possible transaction relationships, Dr. Cabañas's testimony is key to challenging the legitimacy and efficacy of the Government's investigation. In its Opposition the Government chooses not to acknowledge Dr. Cabañas's 45 years of experience as a computer network administrator. The Government will have ample opportunity to voir dire Dr. Cabañas's at the June 16, 2023, *Daubert* and *in limine* hearing. Moreover, as the trial is not until September 14th, 2023, roughly three months away, there is ample time under FRCrP 16 (b)(C)(vi) to supplement his expert disclosure should the Court order it.

---

[18] Dkt. 122; *see also* Expert CVs submitted via email to the Court and Government on May 24, 2023.
[19] *Id.*
[20] Dkt. 130 at 24.
[21] *See* Dkt. 122.

## B. Dr. Dror

Dr. Dror is one of the world's leading experts in the scientifically established phenomena of confirmation and cognitive bias in forensic investigations.[22] The Department of Justice itself hired Dr. Dror to help design protocols that avoid confirmation bias when it comes to its FBI's fingerprint database. The Government desperately argues the irrelevancy of Dr. Dror's testimony because it secretly knows its truth.

The Government mistakenly argues that testimony on prevalent confirmation bias throughout the investigation would "constitute impermissible expert commentary on the credibility of other witnesses' testimony."[23] This is false. The question is not why the Government did what it did, but how it and its agents did it. And how the choices they made led to false results because of the scientifically verified phenomena of confirmation bias distorting their forensic conclusions. This is not about credibility, it's about scientific accuracy.

Dr. Dror will testify to the scientific inaccuracy of the conclusions drawn by the Government from the forensics in this case and how confirmation and cognitive bias distort those conclusions. There is more scientific evidence for the basis of Dr. Dror's testimony than there is for any of the Government's blockchain forensics used in this case. It is an indisputable fact that confirmation and cognitive bias are leading factors in wrongful convictions in the United States based on junk forensic science in newly emergent, standardless fields like blockchain forensics.[24] Far from being irrelevant, Dr. Dror's expert testimony is perhaps the most relevant of any in this case because it goes to the truth of what is going on here – the distortion of justice in the quest for profits and status.

---

[22] *See* Dkt. 122.
[23] Dkt. 130 at 19.
[24] *See* M. Chris Fabricant, Junk Science and the American Criminal Justice System, AKASHIC BOOKS (2022); Adam Benforado, Unfair: The New Science of Criminal Injustice, PENGUIN RANDOM HOUSE (2015).

Dr. Dror's testimony will also discuss the distorting effect of the Government's use of for-profit, private forensic vendors, like Chainalysis, on this investigation and forensics in general. His expertise in these areas is recognized worldwide. Moreover, as the trial is not until September 14th, 2023, roughly three months away, there is ample time under FRCrP 16 (b)(C)(vi) to supplement his expert disclosure should the Court order it.

### C. Jeff Fischbach

Mr. Fischbach is a highly qualified expert in computer forensics with over twenty years' experience in the field.[25] The Government complains about Mr. Fischbach's alleged lack of experience in cryptocurrency when all the Government's experts suffer from an even greater deficiency. When it comes to the nascent field of cryptocurrency and the blockchain, practical experience, like Mr. Fischbach's trumps the pseudo-scientific certifications of for-profit private forensic vendors like Chainalysis. That's because cryptocurrencies and the blockchain are new phenomena with few, if any, scientific, peer-reviewed, community accepted forensic standards. Mr. Fischbach arguably has more practical experience than the Government's proffered experts combined. Moreover, as the trial is not until September 14th, 2023, roughly three months away, there is ample time under FRCrP 16 (b)(C)(vi) to supplement his expert disclosure should the Court order it.

### D. Jonathan Scott

Jonathan Scott has extensive experience in digital forensics related to the blockchain, hacking, and malware. He holds a master's in computer science and is currently completing his doctorate in computer science with an emphasis on digital forensics and malware research.[26] He currently works professionally as a blockchain forensic examiner and smart contract auditor, and

---

[25] *See* Dkt. 122.
[26] *See* CV – Jonathan Scott, provided via email to the Government and the Court (May 24, 2023).

10

he has extensive, in-depth, practical experience rivaling, if not surpassing all the Government's proffered blockchain experts.[27] Mr. Scott regularly works with government agencies nationally and internationally on computer forensic matters. Moreover, as the trial is not until September 14th, 2023, roughly three months away, there is ample time under FRCrP 16 (b)(C)(vi) to supplement his expert disclosure should the Court order it.

### E.   J.W. Verret

Professor Verret is highly qualified to testify to the matters disclosed in his expert disclosure because of his academic, institutional and practical experience.[28] His experience with cryptocurrencies rivals or surpasses any of the Government's proffered experts.[29] Not only is he a law professor at George Mason University Antonin Scalia School of Law, where he teaches classes on cryptocurrency and privacy, he is a certified CPA in the state of Virginia, a Certified Fraud Examiner by the American Institute of CPAs in Financial Forensics, and a Certified Valuation Analyst by the National Association of Certified Valuation Analysis. His deposition and testimony history are disclosed in the CV sent both to the Court and the Government.[30] Like all the proffered experts, he reviewed the expert disclosure before it was filed, and obtaining his signature on it is a formality easily done.

Among other things, he will testify to his opinion that the Government's allegation that Mr. Sterlingov's Kraken account received service fees from Bitcoin Fog is speculative and forensically unsound.[31] He will explain his opinion that no sophisticated cybercriminal or money launderer would use a know-your-customer ("KYC") Kraken Account. He will testify as to his opinion that the so-called "beta transactions" the Government attributes to Mr. Sterlingov are not

---

[27] *Id.*
[28] *See* Dkt. 122.
[29] *See* CV – J.W. Verret, provided via email to the Government and the Court (May 24, 2023).
[30] *Id.*
[31] Dkt. 122 at 24.

what the Government alleges them to be.[32] Professor Verret's expert disclosures as to the opinions and basis for his testimony run 8-pages, and the Government's allegations that they are vague and ambiguous are baseless. Moreover, as the trial is not until September 14th, 2023, roughly three months away, there is ample time under FRCrP 16 (b)(C)(vi) to supplement his expert disclosure should the Court order it.

### III. The Court Should Reserve the First Few Days of Trial to Deal with any Outstanding Motions

We are still 3 months out from trial and given the volume and complexity of this case, and the outstanding and upcoming motions to be decided, the Defense suggests that the first few days of trial be reserved to deal with any outstanding and upcoming motions. Given the current state of affairs, the Defense anticipates having to file supplemental motions.

## Conclusion

The Defense's expert disclosures are more than sufficient to put the Government on notice. Whether or not the prior or amended version of FRCrP 16 applies, there is no substantial prejudice to the Government. This Court should deny the Government's Opposition in its entirety.

---

[32] *Id.* at 25.

Dated: June 9, 2023
New York, New York

                        Respectfully submitted,

                        <u>/s/ Tor Ekeland</u>
                        Tor Ekeland (NYS Bar No. 4493631)
                        *Pro Hac Vice*
                        Tor Ekeland Law, PLLC
                        30 Wall Street, 8th Floor
                        New York, NY
                        t:  (718) 737 - 7264
                        f:  (718) 504 - 5417
                        tor@torekeland.com

                        <u>/s/ Michael Hassard</u>
                        Michael Hassard (NYS Bar No. 5824768)
                        *Pro Hac Vice*
                        Tor Ekeland Law, PLLC
                        30 Wall Street, 8th Floor
                        New York, NY
                        t:  (718) 737 - 7264
                        f:  (718) 504 - 5417
                        michael@torekeland.com

                        *Counsel for Defendant Roman Sterlingov*

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of June 2023, the forgoing document was filed with the Clerk of Court using the CM/ECF System, and sent by email to the attorneys for the Government listed below:

s/ Tor Ekeland

U.S. Department of Justice
District of Columbia
555 Fourth St. N.W.
Washington, D.C. 20530

Catherine Pelker
Catherine.Pelker@usdoj.gov

Christopher Brown
Christopher.Brown6@usdoj.gov