**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CRIMINAL NO. 21-cr-399 (RDM)** |
| | : | |
| **ROMAN STERLINGOV,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S MOTION TO STRIKE DEFENDANT'S LATE-FILED OPPOSITION TO GOVERNMENT'S NOTICE AND MOTION FOR ORDER TO SHOW CAUSE REGARDING ONGOING VIOLATIONS OF LOCAL CRIMINAL RULE 57.7(b)**

The United States respectfully moves to strike the Defendant's late-filed Opposition to the Government's Notice and Motion for Order To Show Cause Regarding Ongoing Violations of Local Criminal Rule 57.7(b), ECF No. 134. The defendant's opposition was filed without leave of Court and in violation of the Local Rules nearly *four weeks* after the government's motion, and just *two days* before oral argument is scheduled on the government's motion. The defendant's decision to sandbag the government (and the Court) with new arguments two days before the motions are to be heard represents a transparent attempt to deprive the government of an opportunity to prepare its substantive a Reply brief. It also ill-serves this Court by presenting new arguments and authorities without adequate time for the Court to review. Under these circumstances, the Court should strike the defendant's opposition and "treat the [government's] motion as conceded." LCrR 47.7(b).

**1. Procedural History**

On May 18, 2023, the government filed its Notice and Motion for Order To Show Cause Regarding Ongoing Violations of Local Criminal Rule 57.7(b), ECF No. 121. Under the Local Criminal Rules, any opposition to a motion is due "[w]ithin 14 days of the date of service or at such other time as the Court may direct." LCrR 47(b). The rule further states: "If such a

memorandum is not filed within the prescribed time, *the Court may treat the motion as conceded*." *Id.* (emphasis added).

On May 23, 2023, the defense filed its copy-cat "Defendant's Notice and Motion for Order to Show Cause Regarding Ongoing Violations of Local Criminal Rule 57.7(b)," ECF No. 125.  As the government observed in its response, the defense, through its copy-cat motion, "concede[d] that Local Criminal Rule 57.7(b) appropriately restricts attorneys in criminal cases, and that an order pursuant to Rule 57.7(c) is warranted under the circumstances of this case to safeguard the rights of both parties to a fair trial with an impartial jury."  ECF No. 127, at 1.

On May 25, 2023, the Court issued a Minute Order directing the parties to meet and confer about what motions and witnesses the parties intended to present during the long-scheduled motions hearings on June 16 and 23, 2023.  The Court specifically directed the parties to prepare for argument on, *inter alia*, their "respective motions for orders to show cause regarding alleged violations of Local Criminal Rule 57.7(b)" during the June 16, 2023 hearing.

On June 1, 2023, the deadline for the defense to file any opposition to the government's Rule 57.7 motion elapsed.  The defense filed no opposition.  Nor did the defense confer with the government about an extension or seek leave of Court to file a late response.  The government assumed that the defense did not oppose the government's motion, and that its copy-cat cross-motion represented the defense's only response.

Further on June 1, 2023, the parties filed their Joint Status Report pursuant to the May 25, 2023 Minute Order.  The defense never indicated that it intended file a late opposition to the government's Rule 57.7 motion.

Finally, on June 14, 2023—27 days after the government's motion, 13 days after the deadline elapsed, and just 2 days before oral argument—the defense filed a 20-page opposition.

The defense did not seek leave from the Court to file a late response. Nor does the 20-page opposition provide any explanation, let alone excuse, for the untimely filing two days before oral argument.

      **2.**    **The Court Should Strike the Defendant's Untimely Opposition Filed Two Days Before Oral Argument, Without Providing the Government with an Opportunity To Respond**

"A party who fails to file a timely response 'is deemed to have waived his opposition to the [motion].'" *Stephenson v. Cox*, 233 F. Supp. 2d 119, 121 (D.D.C. 2002) (quoting *Weil v. Seltzer*, 873 F.2d 1453, 1459 (D.C. Cir. 1989)). "When presented with a response filed late and without a request for an extension of time, a district court may reject the response and, consequently, treat the motion as conceded." *Id.* at 120; *see also* LCrR 47(b) ("Within 14 days of the date of service or at such other time as the Court may direct, an opposing party shall serve and file a memorandum of points and authorities in opposition to the motion. If such a memorandum is not filed within the prescribed time, the Court may treat the motion as conceded.").

Here, the defendant failed to respond to the government's opening motion within 14 days. The defendant did not confer with the government or seek an extension from the Court to file an opposition outside the 14-day deadline. Instead, the defendant filed a copy-cat motion that agreed with the government about the applicable legal principles and sought only to apply Local Criminal Rule 57.7 on equal terms to the government. The defendant's copy-cat cross-motion, and the defendant's failure to file any timely opposition to the government's motion, reasonably led the government to believe that an order under Local Criminal Rule 57.7 was warranted and that its original motion was unopposed.

Just two days before oral argument, the defendant reversed course and filed an untimely opposition—depriving the government of adequate time to respond through a Reply brief, and depriving the Court of adequate time to consider the defendant's new arguments and authorities

prior to oral argument.  The defendant did not seek leave of Court to file an untimely opposition, nor did the defendant offer any basis for the Court to find excusable neglect.

Under these circumstances, reflecting an unfair attempt to sandbag the government and the Court on the eve of oral argument, the defendant's untimely opposition should not be accepted, and the Court should deem the government's opening motion, ECF No. 121, as "conceded" pursuant to Local Criminal Rule 47(b).  Such a procedural default would work no prejudice to the defendant's legal defense in this proceeding, as it limits only extrajudicial statements by counsel. The proposed order docketed at ECF No. 127-1 would do no more than specifically require that counsel comport with Local Criminal Rule 57.7(b)—as they are already required to do.  *See* LCrR 57.23(b) ("These Rules shall apply . . .  to all attorneys who appear before this Court or who participate in proceedings, whether admitted or not").

### 3.  The Untimely Opposition Provides No New Facts or Analogous Legal Authority To Rebut the Government's Motion

In any event, nothing in the defendant's untimely opposition provides any reason for this Court to doubt the facts and authorities in the government's opening motion.  Indeed, the defendant's opposition focuses on supplementing its own copy-cat cross motion rather than even attempting to defend the propriety of defense counsel's blatant and ongoing violations of Local Criminal Rule 57.7.  But abusive and false counter-accusations are not a defense.

As the government has previously stated: "The government supported its request for an order with specific documentation of specific statements implicated [by] the Local Rule; the defense filing was rife with false information and did not demonstrate any failure by the government to comply with the rule." ECF No. 127, at 4.  The same holds true for the defendant's untimely opposition, which, like the defendant's cross-motion, is full of misstatement and clumsy misdirection.

The defense filing purports to describe (at 4) a government "press junket" about this case, but the defense cannot point to a single statement by a government attorney about the merits or evidence in this case in violation of Local Rule 57.7(b).  At most, the government released a single bare-bones press release upon the defendant's arrest in April 2021 that did no more than recite the publicly-available Complaint's allegations, while also noting that "a complaint is merely an allegation, and all defendants are presumed innocent."[1]  *See generally* LCrR 57.7(b)(3) (noting that "[t]he foregoing shall not be construed to preclude the lawyer or law firm during this period, in the proper discharge of official or professional obligations, from announcing the fact and circumstances of arrest . . . from disclosing the nature, substance, or text of the charge, including a brief description of the offense charged; [or] from quoting or referring without comment to public records of the court in the case").

Unable to cite a single such statement from the prosecution, the defense filing tosses out (at 5-6) dozens of irrelevant page numbers from a journalist's book, but if those page numbers actually corresponded to any statement by a prosecutor about Bitcoin Fog or the defendant, the defense would no doubt quote such passage instead of just reciting index entries.  As the government has already explained, "[o]ut of 326 pages (not including endnotes), *less than three full pages* relate to Bitcoin Fog or the defendant in any way."  ECF No. 127, at 2.  Tellingly, the book contains no quotations from prosecutors about this case (unlike defense counsel), nor does it provide any other support for the defense's baseless allegations that prosecutors discussed this case with the journalist covering it.  The defense inserts (at 8-10) irrelevant pictures and references to Chainalysis, but as the government has previously stated, "[d]efense counsel's personal animus

---

[1] *See* U.S. Dep't of Justice, *Individual Arrested and Charged with Operating Notorious Darknet Cryptocurrency "Mixer"* (Apr. 28, 2021), available at https://www.justice.gov/opa/pr/individual-arrested-and-charged-operating-notorious-darknet-cryptocurrency-mixer.

towards Chainalysis . . . is irrelevant to Local Criminal Rule 57.7(b), which governs statements by attorneys about the merits of a pending criminal case, not statements by private companies about unrelated subject matter."  ECF No. 127, at 4.  Critically, again, unlike the seminar-length presentations defense counsel have given about their views of the witnesses and evidence in this case, no member of the prosecution team has engaged in any similar discussion of the evidence, witnesses, and merits of the case in any news media outlet or public forum.  Defendants' claims to the contrary are belied by the sources they cite and their inability to quote even a single sentence anywhere that purports to do so.  Rather, they seem displeased that non-parties, including potential witnesses may be following and commenting on the case, but those non-parties are not government counsel and not covered by Local Criminal Rule 57.7 as the lawyers before the Court are.

At most, rather than try to defend or explain their conduct, or reconcile it with Local Rule 57.7, defense counsel attempt to argue the violations are permissible because (they claim) there will be no prejudice from continued out-of-court commentary on the witnesses and evidence in the case by the litigants.  The defense relies on two cases, *United States v. Nassif*, No. 21-cr-421 (JDB), 2022 U.S. Dist. LEXIS 164181 (D.D.C. Sept. 12, 2022), and *Skilling v. United States*, 561 U.S. 358 (2010).  Neither case is apposite.  In *Nassif*, the defendant in a January 6 Capitol riot prosecution moved for change of venue based, in part, on the media coverage of the events of January 6, 2021.  2022 U.S. Dist. LEXIS 164181, at *22.  In denying the motion, Judge Bates emphasized that the media coverage of the January 6 riot was not *specific* to the defendant:

> Nassif has not presented any evidence regarding media focused on himself. It is likely that not a single member of the venire will ever have heard of John Nassif, much less have formed an opinion of his guilt. And although media coverage of the events of January 6, and subsequent investigations and prosecutions, has continued since the time of Nassif's alleged crimes, that coverage is neither sufficiently intense nor sufficiently specific to Nassif to require a change of venue.

6

*Id.* at *26.  Here, by contrast, all of defense counsel's inaccurate, inflammatory, and *ad hominem* statements pertaining to this case are specifically related to the defendant's name and the prosecution in this case.  Further, the media coverage in *Nassif* arose organically from events of national, historic proportion (unlike here).  There was no allegation in *Nassif* that any of the attorneys involved in the case had contributed to jury prejudice by making public statements about the merits, evidence, and witnesses in the case in violation of their obligations under Local Criminal Rule 57.7(b).  *Skilling* is even further afield, involving a post-trial claim of jury prejudice arising from negative press coverage of the case.  561 U.S. at 377.  Again, there was no allegation that any attorneys had contributed to the negative press coverage through pretrial public statements about the merits of the case in violation of their ethical obligations.  There is a vast difference between evaluating the effects of organic press coverage on a case post-verdict, as in *Skilling*, and seeking a pretrial Order that merely enforces preexisting ethical obligations on attorneys for both sides, pursuant to Local Criminal Rule 57.7(b), in order to avoid a clear and present danger that inaccurate, inflammatory, and *ad hominem* public statements by attorneys will have a substantially prejudicial effect on this case.

The defense invokes the First Amendment only in passing, citing without further explanation or authority (at 13) "the People's 1st amendment right to know what their justice system is doing in their name."  But this overwrought rhetoric only highlights the limited scope of Local Criminal Rule 57.7(b): it applies only to lawyers representing parties in a criminal case before trial has commenced.  An order pursuant to Rule 57.7(c) would only enforce the preexisting obligations of Rule 57.7(b), and it would bind only the *lawyers* in this case—"counsel who serve as officers of the court, a body which has a duty to insure that the accused receives an impartial trial," *Application of Dow Jones & Co., Inc.*, 842 F.2d 603, 612 (2d Cir. 1988).  It would in no

way restrict the *press* or interfere with the public's right of open access to court proceedings.[2]  The

defense also claims (at 12) that defense counsel's public commentary about the evidence and

merits of the case was necessary to raise funds and attract experts.  But as CJA-appointed lawyers,

defense counsel now have access to public funding for trial expenses including experts, and their

---

[2] Had the defense timely filed any opposition, the government and the Court would have been better positioned to research and examine relevant precedent and see through defendant's inapposite authority.  But even on cursory review, the sole authority for defendant's First Amendment argument (at 17), *United States v. Ford*, 830 F.2d 596 (6th Cir. 1987), appears superseded by the Supreme Court's decision in *Gentile v. State Bar of Nevada*, 501 U.S. 1030 (1991), such that even District Courts in the Sixth Circuit view *Ford*'s analysis as no longer good law.  *See United States v. Koubriti*, 307 F. Supp. 2d 891, 899 (E.D. Mich. 2004) (upholding order restricting pretrial statements, noting that the reasoning in *Ford* is outdated, as "the *Gentile* Court determined that speech of *those participating in litigation before the courts* may be regulated under a far less demanding standard than the standard established for regulation of the press, . . . and expressly upheld as constitutionally permissible restrictions on lawyers' speech when there is a showing of only a 'substantial likelihood of material prejudice' to fair trial rights").  By contrast, even preliminary research reveals several federal appellate court decisions upholding similar orders properly restricting pretrial out-of-court statements by trial participants, including lawyers. *See, e.g.*, *United States v. Brown*, 218 F.3d 415, 428 (5th Cir. 2000) (upholding order restricting pretrial statements, collecting cases, and explaining: "If the district court determines that there is a 'substantial likelihood' (or perhaps even merely a 'reasonable likelihood,' a matter we do not reach) that extrajudicial commentary by trial participants will undermine a fair trial, then it may impose a gag order on the participants, as long as the order is also narrowly tailored and the least restrictive means available.  This standard applies to both lawyers and parties, at least where the court's overriding interest is in preserving a fair trial and the potential prejudice caused by extrajudicial commentary does not significantly depend on the status of the speaker as a lawyer or party."); *see also id*. at 428 ("An attorney's ethical obligations to refrain from making prejudicial comments about a pending trial will exist whether a gag order is in place or not."); *Application of Dow Jones & Co., Inc.*, 842 F.2d 603, 604 (2d Cir. 1988) (upholding "order restraining trial participants in a criminal case from speaking with the press"); *In re Russell*, 726 F.2d 1007, 1011 (4th Cir. 1984) (upholding order restricting pretrial statements directed at *witnesses*); *United States v. Tijerina*, 412 F.2d 661, 666 (10th Cir. 1969) (upholding order restricting pretrial statements, and explaining; "The public has an overriding interest that justice be done in a controversy between the government and individuals and has the right to demand and expect 'fair trials designed to end in just judgments.' *Wade v. Hunter*, 336 U.S. 684, 689 [(1949)] . . . .  This objective may be thwarted unless an order against extrajudicial statements applies to all parties to a controversy. The concept of a fair trial applies both to the prosecution and the defense."); *id*. at 667 (rejecting out of hand Fifth and Sixth Amendment arguments against gag orders).  But for defendant's last-minute, weeks-late opposition, and afforded the time to reply set forth in the Local Rules, the government could more thoroughly address relevant precedent here.

fundraising efforts appear to violate rules governing CJA appointments. *See* CJA Guidelines § 230.40(a) ("An attorney appointed under the CJA may not accept a payment from or on behalf of the person represented without authorization by a U.S. district, circuit, or magistrate judge on Form CJA 7.").

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should strike the defendant's late-filed Opposition to the Government's Notice and Motion for Order To Show Cause Regarding Ongoing Violations of Local Criminal Rule 57.7(b), ECF No. 134, and it should treat the government's Notice and Motion for Order To Show Cause Regarding Ongoing Violations of Local Criminal Rule 57.7(b), ECF No. 121, as conceded. In the alternative, the government requests additional time to draft and file a Reply brief, and requests that the Court rule on the papers as promptly as possible thereafter.

Respectfully submitted,
MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

BY:    */s/ Christopher B. Brown*
Christopher B. Brown, D.C. Bar No. 1008763
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-7153
Christopher.Brown6@usdoj.gov

*/s/ C. Alden Pelker*
C. Alden Pelker, Maryland Bar
Trial Attorney, U.S. Department of Justice
Computer Crime & Intellectual Property Section
1301 New York Ave., N.W., Suite 600
Washington, D.C. 20005
(202) 616-5007
Catherine.Pelker@usdoj.gov

9