# Exhibit 'A'

# Exhibit 'A'

DocuSign Envelope ID: D6CDA2EB-122D-4BAC-86C6-623D36D3AECF

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>            Plaintiff,<br><br>v.<br><br>ROMAN STERLINGOV<br><br>            Defendant. | No. 21-cr-399 (RDM) |

### SUMMARY OF QUALIFICATIONS AND EXPECTED TESTIMONY FOR DR. FRANCISCO CABAÑAS

Mr. Sterlingov intends to call **DR. FRANCISCO CABAÑAS** ("Dr. Cabañas") as an expert witness. His qualifications, along with review and analysis of relevant records, reports, facts, and evidence set forth the basis for his expected testimony.

Dr. Cabañas' testimony is based on his review of discovery in this case, and his depth of experience in digital currencies, blockchain forensics and statistical analysis. Since 2016, he has been a core team member of Monero's development organization. He is a key contributor to the European Union's Public Consultation on Preventing Money Laundering and Terrorism Financing. He has 45 years of experience as a computer and network administrator and has a wide range of experience with data analysis and technologies.

Since 2020, Dr. Cabañas has been a contributor with the Monero Policy Working Group through which he has advanced the privacy protocols of the Monero cryptocurrency and developed scaling technologies to expand the Monero network.

Dr. Cabañas has spoken at many panels and conferences around the world advocating for privacy in cryptocurrency and has shared his research with privacy interest groups around the globe.

Dr. Cabañas holds a Ph.D. in Physics, a M.Sc. in Physics, and a B.Sc. Honors in Physics and Mathematics from the University of British Columbia. He has over 20 years of experience in the fields of experimental physics, physical chemistry, and radio astronomy where he specialized in mathematical analysis of random errors (or noise) and systematic errors (bias) in statistics.

At the July 19, 2023, hearing on Motions in Limine and *Daubert* challenges, as well as at trial, the Defense expects Dr. Cabañas to testify regarding the following:

1. Dr. Cabañas will testify to the critical importance of identifying and quantifying both systemic error (bias) and random error (noise) in the Government's and Chainalysis's investigation into Bitcoin Fog.

2. Dr. Cabañas will explain that while clustering over a large number of transactions and statistical techniques can mitigate random error, clustering over a large number of transactions and using statistical techniques does not mitigate systemic error.

3. Dr. Cabañas will testify that systemic error in investigations results in inaccurate conclusions that cannot be relied upon.

4. Dr. Cabañas will testify to the prevalence of systemic errors in the Government's and Chainalysis's investigation into Bitcoin Fog.

5. Dr. Cabañas will explain that the Government's and Chainalysis's investigation into Bitcoin Fog is dependent upon multiple assumptions, otherwise described as heuristics. These assumptions are introduced at every step in the investigation. A failure of any assumption at any step will add systemic error to the investigation.

6. Dr. Cabañas will explain that the discrepancies between the Government's proffered experts Luke Scholl's and Elizabeth Bisbee's testimony at the June 23rd,

2023, Daubert Hearing, and contained in their expert reports, regarding the total amount of illicit funds claimed to have flowed through Bitcoin Fog from TOR-based marketplaces is indicative of systemic error in the investigation and cannot be relied upon.

7. Dr. Cabañas will testify to the limitations of the assumptions applied by Chainalysis and the Government in their investigation.

8. Dr. Cabañas will explain that the assumptions relied upon during the course of the investigation compound the systemic error.

9. Dr. Cabañas will testify that the co-spending assumption incorporated by Chainalysis in the investigation contributed to its inaccurate conclusions.

10. He will explain that it is incorrect to assume that multiple cryptocurrency addresses are controlled by the same individual or entity when they are used as inputs in the same transaction.

11. He will explain how this assumption ignores techniques that pool addresses such as CoinJoins or PayJoins and that application of the co-spending assumption results in inaccurate conclusions.

12. Dr. Cabañas will testify that even without CoinJoins or PayJoins a simple merchant refund can cause clustering on a different chain, leading to additional systemic error.

13. Dr. Cabañas will testify that the behavioral clustering assumption incorporated by Chainalysis in the investigation contributed to its inaccurate conclusions.

14. He will explain that spatial and temporal proximity, or use of the same or similar wallet software, is not necessarily indicative of common ownership.

15. He will explain that depending on the false positive rate of a particular methodology, application of the behavioral clustering assumption jeopardizes the accuracy of the analysis, and the fact that Chainalysis has no data on its false positive rates compounds the possibility of errors in its tracing analysis.

16. Dr. Cabañas will testify that the intelligence-based clustering assumption incorporated by Chainalysis in the investigation contributed to its inaccurate conclusions.

17. He will explain that there is no way to validate the accuracy of leaked data incorporated into Chainalysis's blockchain tracing and how it jeopardizes the accuracy of the investigation.

18. He will explain how this assumption is particularly vulnerable to human error and that incorporating human error into assumption-based analysis further compounds the risk of systemic error in an investigation.

19. Dr. Cabañas will testify to the relative systemic errors prevalent in Chainalysis's assumptions.

20. He will explain the scope of illicit virtual asset transfers, as documented by the Financial Action Task Force study referenced by proffered Government expert Luke Scholl in his expert report.

21. He will explain how different blockchain forensic tracing software make contradictory cluster attributions for identical addresses.

22. He will explain how this variability introduces a high level of arbitrariness into forensic conclusions in blockchain investigations that rely upon assumptions.

23. He will explain that the percentage of transactions implicated in illegal activity may be as low as 0.5% or as high as 12.7% depending on which blockchain surveillance company conducts the analysis.

24. He will explain how this is indicative of the very high level of systemic error in blockchain surveillance.

25. Dr. Cabañas will testify that it is possible to transfer Bitcoin without leaving any trace on the blockchain, and that this possibility makes attribution of blockchain activity to a specific individual unverifiable absent corroborating evidence.

26. He will explain how public and private keys work on the blockchain.

27. He will explain how it is impossible to know for certain who, if anyone, exercises direct control over the keys.

28. He will explain how digital currency like Bitcoin can be transferred off chain.

29. He will explain the problems that off-chain transfers of cryptocurrency cause for blockchain tracing forensics.

30. Dr. Cabañas will testify on the arbitrariness of the number of hops assumption, and how the number of hops is not indicative of ownership.

31. He will explain how a simple private key transfer can negate the assumption of ownership.

32. Dr. Cabañas will testify how, without identifying the false positive and false negative rates, the scientific legitimacy of the investigation is put into question.

33. Dr. Cabañas will testify that random error or "noise" is a phenomenon that jeopardizes the accuracy of the investigation's conclusions.

34. Dr. Cabañas will explain that without any analysis on the statistics of random error, the conclusions of the investigation are not reliable.

35. Dr. Cabañas will testify that statistical analysis is key to determining the scientific accuracy of the Government's investigation.

36. Dr. Cabañas will testify that statistical analysis is required to determine the scientific legitimacy of an investigation, and that without such a study, the conclusions of the investigation are not reliable.

37. Dr. Cabañas will testify to the statistical and mathematical limitations of the blockchain tracing methodologies employed by the Government and Chainalysis in its investigation.

38. He will explain how blockchain surveillance software like Chainalysis Reactor cannot mathematically scale with the rise in global cryptocurrency activity and produces inaccurate tracing as a result of its inability to scale.

39. Dr. Cabañas will testify that identifying the random error and systemic error rates is integral to ascertaining the scientific legitimacy of forensic conclusions.

40. Dr. Cabañas will testify that without any analysis into an investigation's false positive rates, it is impossible to validate the conclusions derived from that investigation.

41. Dr. Cabañas will testify to the comments and posts made by Akemashite Omedetou on BitcoinTalk.org. As a well-respected voice on BitcoinTalk.org with "legendary" status on the platform, Dr. Cabañas will testify to the inferences that can be drawn from the language used in specific posts identified by the Government.

42. Dr. Cabañas will testify to how BitcoinTalk was used by Bitcoin enthusiasts during the time-period in question.

43. Dr. Cabañas will testify to the culture of the cryptocurrency space during the time-period in question.

44. Dr. Cabañas will testify to the importance of possessing private keys in order to determine custody and control of digital assets.

45. Dr. Cabañas will testify to the difficulties jurisdictions around the world are having with effectively and accurately attributing blockchain transactions to the individuals behind them.

46. He will discuss The Monero Policy Working Group contributions to United States, the European Union, and The Financial Action Task Force.

47. Dr. Cabañas will testify to the challenges involved with developing privacy protecting technologies.

48. He will explain his work with the Monero project before and after the launch of confidential transactions in 2017.

49. He will explain large and outlier transactions together with the use of noise to create privacy.

50. He will explain the issue of large and outlier transactions in Bitcoin Fog and Coinjoins, and the need to test with large and outlier amounts.

51. Dr. Cabañas will testify to the difficulties with calibrating blockchain forensics.

52. He will explain the mathematical obstacles of properly calibrating the false positive rate of the Government's digital forensics.

53. Dr. Cabañas will testify to the mathematical inconsistencies when applying probabilistic blockchain assumption-based methodologies in blockchain forensics.

54. He will explain the mathematical limitations of Chainalysis' assumption based clustering techniques.

55. The Defense expects Dr. Cabañas to testify in rebuttal to the Government's expert testimony. However, the content of Dr. Cabañas' rebuttal testimony is contingent on the substance of testimony from the witnesses produced by the Government in the Hearings and at trial.

Witness Attestation

I, Francisco Cabañas, have reviewed and approve the contents of this filing.

_____          7/6/2023
*Francisco Cabañas*                        _____
F1735270B4AE4DF...

Dr. Francisco Cabañas                      Date