# Exhibit 'B'

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    Plaintiff,<br>v.<br><br>ROMAN STERLINGOV<br><br>    Defendant. | No. 21-cr-399 (RDM) |

## SUMMARY OF QUALIFICATIONS AND EXPECTED TESTIMONY FOR DR. ITIEL DROR

Mr. Sterlingov intends to call **DR. ITIEL DROR** ("Dr. Dror") as an expert witness. His qualifications, along with review and analysis of relevant records, reports, facts, and evidence set forth the basis for his expected testimony. His CV has been sent to the Court and the Government via email along with a list of the cases that he has testified in during the last four years.

Dr. Dror's testimony is based on his review of discovery in this case, and his academic and professional experiences. Dr. Dror is a Principal Consultant and Researcher with Cognitive Consultants International ("CCI-HQ") through which he provides research, training, and consultancy services to organizations around the world concentrating on minimizing bias and error in expert decision making and investigations. Dr. Dror holds a Ph.D. and a master's degree from Harvard University in Psychology.[1]

Dr. Dror trained the forensic digital experts at the Serious Fraud Office (SFO) in the United Kingdom (the U.K. governmental body investigating serious fraud, where digital evidence is critical). He was commissioned by the United States Attorney's Office in this District

---

[1] (*See* Dkt. 122, Ex. C.)

1

for a *Daubert* Hearing. Dr. Dror trains forensic experts at top investigative agencies all over the world, including the United States, about bias in digital and other forensic domains. He has been commissioned to train forensic experts at the FBI, NYPD, LAPD, and many other agencies, on how to minimize biases and errors in their investigations. He has been invited by the National Institute of Justice and the Department of Justice, as well as many other agencies, to deliver keynote presentations. Recently, the Attorney General of the State of Maryland has asked Dr. Dror to be part of the design team for the review of potential bias in forensic decisions made about deaths of people while in police custody.

Dr. Dror has published over 150 articles which have been cited over 11,000 times, with an h-index of 56 (i.e., 56 articles that are cited over 56 times), these include articles with over 600 citations, and over 30 articles with over 100 citations. Many of the articles appear on the most viewed and most cited lists of several journals. Furthermore, his articles and research have been cited in various court cases,[2] as well as by the U.S. National Commission on Forensic Science, the National Academy of Science report on forensic science, and the President's Council of Advisors on Science and Technology's report on forensic science, who, in addion to citing his research, invited Dr. Dror to provide expert testimony in-person.[3]

Dr. Dror has been an Associate Editor and on the Board of Editors for multiple journals, including *Forensic Science International: Mind and Law*, *Science & Justice*, *Journal of Experimental Psychology: Applied*, *Journal of Applied Memory & Cognition,* and *Pragmatics & Cognition*.

---

[2] *See e.g. Regina v. Dlugosz, Pickering, and MDS* (2013) (United Kingdom Court of Appeal); *Commonwealth vs. Gambora* (2012) (Supreme Court of Massachusetts).
[3] (*See* Dkt. 122, Exs. D-F).

2

Top scientific journals such as *Science* and *Nature*, as well as media outlets like *The Economist*, *the New York Times*, *the Guardian* and *the London Times* cover Dr. Dror's work and research findings on how bias impacts forensic science decisions, and ways to minimize such biases.[4]

Specifically in digital investigation and digital forensic analyses, Dr. Dror has published a number of peer reviewed scientific articles, published, for example, in *Digital Investigations* an article on "Cognitive and human factors in digital forensics: Problems, challenges, and the way forward" (*Digital Investigation*, 2019, 29, 101-108), and "A Hierarchy of Expert Performance (HEP) applied to digital forensics: Reliability and biasability in digital forensics decision making" (*Forensic Science International: Digital Investigation*, 2021, 37, 301175). At the July 19, 2023, hearing on Motions in Limine and *Daubert* challenges, as well as at trial, the Defense expects Dr. Dror to testify regarding the following:

1. The Defense expects Dr. Dror to testify generally about cognitive bias in forensic science, and particularly about the role of confirmation and other biases in digital forensic investigations.

2. He will explain the concept of cognitive bias (in contrast to the everyday notion of intentional and discriminatory biases).

3. He will explain the current state of the research and scientific standards related to cognitive bias in relation to forensic decisions.

4. He will explain how the brain processes decisions, and how architecture constraints give rise to biases.

---

[4] (*See* Dkt. 122, Ex. G).

5. He will explain the eight sources of cognitive and human error that exist specifically within the framework of digital forensics, and the six fallacies about bias.

6. The Defense expects Dr. Dror to testify about confirmation and other biases in digital forensics and how they impact the underlying heuristic assumptions at play in the use of Chainalysis Reactor and other blockchain forensics involved in this case. He will also testify to the impact of cognitive bias and confirmation bias on the forensic analysis in general on this case including the Mt. Gox data, and the IP address attributions made by the Government to Mr. Sterlingov. He will also testify as to the distorting effects of the financial and status incentives involved in the Government's use of private forensic investigators like Chainalysis and the Government's extensive use of publicity to promote this case.

7. He will explain how confirmation and other biases that impact forensic experts, and how they are at play in this case.

8. He will explain how confirmation and other biases can taint an investigation.

9. He will explain evidence of confirmation bias in the Government's discovery.

10. He will explain how escalation of commitment can lead to inaccurate conclusions contrary to the evidence, and explain how just such an escalation of commitment occurred in this case.

11. The Defense expects Dr. Dror to testify to the cognitive and human factors in digital forensics.

12. He will explain how miscarriages of justice and misleading evidence highlight human error as an issue within forensic science, and the threat they pose in this case.

13. He will explain the issues and the fertile ground for biases created by the lack of objective standards in blockchain forensics and how the lack of any scientific evidence for the accuracy of the blockchain forensics used in this case, and the total lack of any evidence as to the statistical error rates, false positive rates or false negative rates for Chainalysis Reactor impacts the cognitive and confirmation biases at play in this case.

14. Testimony will be based on the Government's disclosures, the Government's experts' testimony and reports, as well as his extensive experience as one of the world's leading experts in cognitive and confirmation biases in forensic practices.

15. The Defense expects Dr. Dror to testify in rebuttal to the government's expert testimony.

16. The content of Dr. Dror's rebuttal testimony is contingent on the substance of testimony from the witnesses produced by the Government in the Hearings and at trial.

---

Witness Attestation

I, Dr. Itiel Dror, have reviewed and approve the contents of this filing.

DocuSigned by:
*Dr. Itiel Dror*
6AEB22F168F14CE...

7/7/2023

Dr. Itiel Dror                    Date