UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | CRIMINAL NO. 21-cr-399 (RDM) |
| : | |
| ROMAN STERLINGOV, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S REPLY IN SUPPORT OF GOVERNMENT'S SUPPLEMENTAL
NOTICE AND MOTION *IN LIMINE* TO ADMIT MT. GOX RECORDS**

The United States respectfully files the following reply in support of its Supplemental Notice and Motion *in Limine* To Admit Mt. Gox Records, ECF No. 140.

**A. Certified Mt. Gox Records Are Self-Authenticating Under Fed. R. Evid. 902**

The Mt. Gox records are certified, self-authenticating records under Fed. R. Evid. 902, as set forth in the government's original motion *in limine*, ECF No. 62, and supplemental motion, ECF No. 140. Specifically, the records are authenticated by certifications executed by Japanese officials complying with Fed. R. Evid. 902(14), and by a certification from FBI Special Agent Kenneth Keller complying with Fed. R. Evid. 902(13) and (14). *See id.* at 2-6. Because the records are self-authenticating, they should be admitted without requiring further analysis of extrinsic evidence of their authenticity. Fed. R. Evid. 902.

The defense opposition does not address the certifications attached to the government's motion. Instead, the defense repeatedly confuses the issue of authenticity and reliability, asserting, "The Mt. Gox data was inauthentic before it was handed over to the Japanese bankruptcy trustee." ECF No. 144 at 8. However, the defense arguments deal with *reliability* rather than *authenticity*. In fact, the defense does not appear to meaningfully challenge the records' *authenticity* — that these are true copies of records from the Mt. Gox database in the custody of the Mt. Gox

1

bankruptcy Trustee. The defense says that this "misses the point," ECF No. 144 at 8, but that actually *is* the point where authentication is concerned, even if defense wishes that were not so. The defense is challenging the records' *reliability* by speculating that they may have been altered by hackers or Mr. Karpeles. Such arguments go to the weight of the evidence before the jury, not admissibility. *See United States v. Hassanshahi*, 195 F. Supp. 3d 35, 48 (D.D.C. 2016); *United States v. Safavian*, 435 F. Supp. 2d 36, 41 (D.D.C. 2006).

> As Judge Contreras observed in *United States v. Hassanshahi*:
>
> The threshold for the Court's determination of authenticity is not high, however, and the proponent's burden of proof for authentication is slight. Rule 901(a) does not erect a particularly high hurdle to evidence's admission, nor does it require the proponent to rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be. The ultimate resolution of the evidence's authenticity is reserved for the jury.

*Id.* (cleaned up). Here, just as in *Hassanshahi,* "[t]he court must admit the evidence if sufficient proof has been introduced to support a finding that the fact does exist, and in spite of any issues the opponent has raised about flaws in the authentication (which only go to the weight of the evidence instead of its admissibility)." *United States v. Hassanshahi*, 195 F. Supp. 3d 35, 48 (D.D.C. 2016).

### B. Significant Corroborating Evidence Bolsters the Mt. Gox Records' Authenticity

As set forth in the government's prior motions, testimony, and evidence at the June 23 *Daubert* hearing, the admissibility of the certified Mt. Gox records is further supported by significant corroborating evidence from within the Mt. Gox dataset and from external sources. *See* Fed. R. Evid. 901(b)(4) (providing for authentication through distinctive characteristics), 901(b)(3) (providing for authentication through comparison by an expert witness or the trier of fact). This corroborating evidence includes matching email confirmations, matching records on the public blockchain, matching records across Mt. Gox accounts, and matching records in other financial

datasets. The defense's only rebuttal to this extensive corroborating evidence is to reprise its criticism of Chainalysis. ECF No. 144 at 10. However, as Mr. Scholl explained during the *Daubert* hearing on June 23, 2023, the corroboration of the Mt. Gox records does not rely on Chainalysis Reactor software. 6/23/23 Tr. at 69.

Of note, the defendant's personal email account included numerous confirmation emails from Mt. Gox corresponding to deposits and withdrawals in the defendant's Mt. Gox account. The government has matched these emails to entries in the Mt. Gox database. The information — *inter alia*, amounts, IP addresses, transaction reference information, and transaction IDs — is consistent across the Mt. Gox database entries and the email messages received by the defendant. *See, e.g.,* ECF No. 140, 10-13; 6/23/23 Tr. at 69-70; 6/23/23 Hr'g, Ex. 2 (Scholl Report), at 36.

On several occasions, the defendant's Mt. Gox accounts received deposits from or withdrew funds to addresses on the bitcoin blockchain. The deposit and withdrawal information reflected in the Mt. Gox records matches transfers found outside the Mt. Gox database on the public bitcoin blockchain. *See, e.g.,* ECF No. 140, 13-15; 6/23/23 Tr. at 67-69; 6/23/23 Hr'g, Ex. 2 (Scholl Report), at 37-8. On other occasions, funds were moved from one Mt. Gox account to another, through the use of Mt. Gox "redeem codes." The transfers out of the sending accounts were matched to transfers into the receiving account, corroborating the transfers. *See, e.g.,* 6/23/23 Hr'g, Ex. 2 (Scholl Report), at 38, 42, 44, 48.

The government has also been able to match transfers between Mt. Gox and records from Liberty Reserve, a separate financial institution. For example, one of the defendant's Mt. Gox accounts reflects an approximately $130 deposit from Liberty Reserve on September 27, 2011, specifying the Liberty Reserve UserID U7489869 and noting "MtGox.com Funding MTGOX#92441X." 6/23/23 Hr'g, Ex. 2 (Scholl Report), at 27. The Liberty Reserve records for

the U7489869 account reveal that it was registered to Roman Sterlingov and that on September 27, 2011, the account transferred 130 LRUSD, with the memo, "MtGox.com Funding MTGOX#92441X".

The Mt. Gox records for the defendant's true-name account included a copy of the defendant's Swedish identity card, ECF No. 140-1, and a bill from the defendant's cable/Internet provider bearing the defendant's name and address. The Swedish identity card depicts Mr. Sterlingov's photograph and biographical information. Furthermore, the Mt. Gox know-your-customer documents exactly match an identity card and utility bill associated with the defendant's account at Bitstamp, another cryptocurrency exchange. In communications with Bitstamp, obtained directly from Bitstamp and provided to defense in discovery, the defendant advised Bitstamp that he had an account at Mt. Gox and provided a screenshot of his Mt. Gox claim form:

> 13. 116027
>
> Rok Pristov (240487)
>
> Aug. 2, 2016, 12:58 p.m.
>
> None
>
> "Dear Roman, thank you for the provide documentation. Alternatively, would it be possible to provide us with some screenshots of email confirmations you have received for the purchase of your BTC on Mt.Gox? We are looking forward to hearing from you. Best regards, Rok Pristov"
>
> 14. 116027
>
> Roman Sterlingov (52443)
>
> Aug. 2, 2016, 1:40 p.m.
>
> 83.248.64.79
>
> "Here is the screenshot of the one of the few pages which I can log in with my Mt.Gox account. It's on the mount gox website now, even thought it's not an exchange, it shows my account there with my credentials."

*Ex. A - Defendant Communications with Bitstamp*



*Ex. B: Mt. Gox Claim Form Screenshot Sent from Defendant to Bitstamp*

The defendant also provided Bitstamp with a screenshot of a confirmation email from Mt. Gox, consistent with the email located in the government's copy of the defendant's email account, and showing a transaction registered in the Mt. Gox database:



*Ex. C: Defendant Communications with Bitstamp*



*Ex. D: Screenshot of Mt. Gox Email Provided by Defendant to Bitstamp*

These Bitstamp records and the defendant's own communications further corroborate the authenticity of the Mt. Gox records the government seeks to admit at trial.

The sheer size and volume of the Mt. Gox dataset as a whole is yet more indicia that these are authentic Mt. Gox account records. The evidence provided by Japan consists of approximately 3.3 terabytes of data, including logical images of numerous Mt. Gox servers. The Mt. Gox database includes hundreds of thousands of entries for thousands of users. Furthermore, the request to Japan was not specific to the instant investigation; the records that the government seeks to admit are a miniscule fragment of the voluminous records contained in the fulsome Japanese production. It would be a gargantuan undertaking to manufacture such a massive volume of detailed records. The incredible size and detail of the dataset supports the authenticity under Fed. R. Evid. 901(b)(4).

The pattern, style, and internal characteristics of the Mt. Gox records themselves further corroborate that they are, in fact, Mt. Gox account records. The records were contained in a database full of other Mt. Gox user and transaction records. The contents of the database and

record format are consistent with that of a large financial dataset such as Mt. Gox. Such distinctive characteristics serve to authenticate the records. *See generally United States v. Dumeisi,* 424 F.3d 566, 574-75 (7th Cir. 2005) (finding a file from Saddam Hussein's former Iraqi Intelligence Service was properly authenticated based on distinctive characteristics of the documents themselves, "including the style and form of the documents" as well as the circumstances relating to the file recovery).

### C. Circumstances of Records Transfer From Japan Further Support Admissibility under Fed. R. Evid. 901

The transmission of the records in response to a Mutual Legal Assistance Treaty request also bears significance to the basis for authenticity under Fed. R. Evid. 901. Because Mt. Gox was based in Japan, U.S. law enforcement seeking access to the records generally submitted official records requests to Japan pursuant to the Treaty Between the United States of America and Japan on Mutual Legal Assistance in Criminal Matters ("the Treaty"). The Treaty includes attached forms providing for the authentication of records produced in response to mutual legal assistance requests made under the Treaty. The Treaty states in relevant part:

> Testimony, statements or items provided under this Treaty may be authenticated by the requested Party by use of a form in the Attachment, which is an integral part of this Treaty. Testimony, statements or items authenticated in such manner shall be admissible in evidence in proceedings in the requesting Party in accordance with the relevant provisions of the Attachment.

Treaty Between the United States of America and Japan on Mutual Legal Assistance in Criminal Matters, at 10 (Article 13), *available at* https://www.state.gov/wp-content/uploads/2019/02/06-721.3-Japan-MLAT.pdf. The Treaty was ratified on May 19, 2006, following advice and consent of the Senate. *See* https://www.state.gov/06-721-3. The Treaty thus has the force of federal statute, and the Treaty certifications are a basis for authentication under Fed. R. Evid. 901(b)(10),

which provides for authentication by "[a]ny method of authentication or identification allowed by a federal statute or a rule prescribed by the Supreme Court." Fed. R. Evid. 901(b)(10). The executed Treaty certifications, in addition to complying with Fed. R. Evid. 902(13), thus are also grounds for admission under Fed. R. Evid. 901(b)(10).

**D. The Mt. Gox Trustee's Possession of the Data Strengthens the Data's Admissibility**

The receipt of the records from the Mt. Gox Trustee further bolsters their authenticity and reliability. *See United States v. Dumeisi,* 424 F.3d 566, 575 (7th Cir. 2005) (noting that the circumstances to consider in a Rule 901(b)(4) analysis "include circumstances surrounding discovery"); *United States v. Hassanshahi*, 195 F. Supp. 3d 35, 49 (D.D.C. 2016) (*citing Dumeisi,* 424 F.3d 566, 575, to support the same); *United States v. Elkins*, 885 F.2d 775 (11th Cir. 1989) (the circumstantial evidence of where the documents were found—in West Germany, in the briefcase of a Libyan arms dealer—was sufficient to authenticate the documents, as Rule 901 "requires only some competent evidence in the record to support authentication"). The defense objects to the Mt. Gox Trustee certifying the records, ECF No. 144 at 7, but this is entirely beside the point, as the government is not relying on a certification from the Mt. Gox Trustee under Fed. R. Evid. 902(11) or 18 U.S.C. § 3505.[1]  However, to the extent it is relevant to the court's

---

[1] To the extent the defense objection relates to a potential *hearsay* argument, rather than authentication, such an argument is similarly misplaced, as the Mt. Gox records are not statements but instead non-hearsay machine-generated records. Even if the financial records were considered "statements," they are only "statements" of the account holder – that is, the defendant himself, and therefore still admissible as non-hearsay. Fed. R. Evid. 801(d). Furthermore, any "statement" would be a statement contained in a document affecting an interest in property, admissible under Fed. R. Evid. 803(15). Even if the records were hearsay and did not fall under an exception under Fed. R. Evid. 803, the substantial corroboration set forth in this filing related to authenticity would further support admissibility under the Fed. R. Evid. 807 Residual Exception. While the residual exception should be invoked only where records are found to be hearsay and no other exception applies, out of an abundance of caution, the government herein provides notice under Fed. R. Evid. 807(b) and will submit briefing or argument on the point if the court deems it necessary or appropriate.

assessment of the reliability and admissibility of records, the records are appropriately viewed as business records of the Mt. Gox Trustee, and the retrieval of the records from the Trustee highlights their authenticity under Fed. R. Evid. 901(b)(4).

Since assuming the management of Mt. Gox's assets and liabilities in 2014, the Mt. Gox Trustee has been responsible for managing the complex bankruptcy process for thousands of Mt. Gox accountholders and other creditors worldwide. The Trustee has operated the Mt. Gox website and has used the site to accept claims and to post information and legal notices regarding the lengthy bankruptcy and rehabilitation process. *See* mtgox.com. In an update dated November 26, 2014, the Trustee advised that "Copies of the data (including personal information) and software stored on [Mt. Gox's servers and PCs] will remain with and managed by the bankruptcy trustee and used for purposes of examination, administration of properties, and bankruptcy distribution." https://www.mtgox.com/img/pdf/20141126_announcement.pdf. The Trustee solicited claims from Mt. Gox users and undertook an "investigat[ion of] the monetary and Bitcoin balances of Users" in order to assess the thousands of claims it received. *See* https://www.mtgox.com/img/pdf/201504_faq_en.pdf. According to records submitted by the defendant to the bitcoin exchange Bitstamp and provided to defense in discovery, the defendant himself participated in the claims process. The Trustee has been recognized in U.S. court as the foreign representative of Mt. Gox for the purposes of the bankruptcy proceedings. *In re: MtGox Co., Ltd. (a/k/a MtGox KK)*, *Debtor in a Foreign Proceeding*, Case No. 14-31229-sgj-15 (Bankr. N.D. Tex.). The Mt. Gox Trustee would thus be expected to have the Mt. Gox records in its possession, and the retrieval of the records from the Trustee lends further credence to their authenticity. *See United States v. Vidacak*, 553 F.3d 344 (4th Cir. 2009) (affirming admission of records purportedly created by a foreign military group, noting that the documents were

"discovered in a place where they would be expected to be found — the Zvornik Brigade headquarters" — finding "sufficient circumstantial evidence" to authenticate the documents, "despite the fact that the government could not trace the precise history of the documents prior to their seizure").

The defense argues that only an original employee of Mt. Gox can authenticate the records.[2] ECF No. 144 at 7-8. However, to admit records, "there [i]s no requirement that the business records be created by the business having custody of them." *United States v. Adefehinti*, 510 F.3d 319, 326 (D.C. 2007) (cleaned up) (collecting cases). *See also United States v. Duncan*, 919 F.2d 981, 986 (5th Cir. 1990) (admitting records provided by insurance companies that included records obtained from separate hospitals, even though the insurance companies did not generate the records). In bankruptcy proceedings, trustees and receivers often become the custodian of records for the underlying business and can authenticate those records. The Eleventh Circuit considered this issue in *Curtis v. Perkins*, 781 F.3d 1262, 1267 (11th Cir. 2015), in which a trustee of an investment business ("IMA") which operated as a Ponzi scheme sought to introduce records of the business. Similar to the Mt. Gox Trustee, the trustee in *Curtis v. Perkins* had taken possession of IMA's business records and conducted further investigation into the company's financial activities. *Id.* at 1265. The Eleventh Circuit determined that, "as IMA's court-appointed receiver, the trustee was the 'custodian' of the underlying documents." *Id.* at 1267. The Fifth Circuit came to a similar conclusion in *Warfield v. Byron*, 436 F.3d 551, 559 (5th Cir. 2006),

---

[2] As explained below, the government does have business record certifications from Mark Karpeles authenticating the Mt. Gox database, attached hereto as Ex. 1. The government is not seeking to rely on these certifications to authenticate the records produced from Japan, though it reserves the right to do so if the court rules that the current certifications and briefing are insufficient.

10

finding that the federally appointed receiver for a Ponzi scheme qualified as the scheme's record custodian.

Even if the Mt. Gox Trustee were not appropriately viewed as a custodian, the Trustee could nonetheless authenticate the records under the Federal Rules of Evidence. Rule 902(11) explicitly provides for certifications by "the custodian or *another qualified person*." Fed. R. Evid. 902(11) (emphasis added). In considering parallel language in Rule 803(6), the Federal Rules advisory committee explicitly envisioned the admission of business records prepared by another entity. *See* Fed. R. Evid. 803(6), advisory committee notes ("Occasional decisions have reached for enhanced accuracy by requiring involvement as a participant in matters reported. . . . The rule includes no requirement of this nature."). Courts have opined that "[t]he term 'qualified witness' is to be interpreted broadly," and "requires only someone who understands the system used to record and maintain the information." *United States v. Sofidiya*, No. 97-4681, 1998 U.S. App. LEXIS 27056, at *9 (4th Cir. Oct. 23, 1998). The witness "does not need firsthand knowledge of the contents of the records, of their authors, or even of their preparation." *Curtis v. Perkins*, 781 F.3d 1262, 1268. *See also Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*, 610 B.R. 197, 220 (Bankr. S.D.N.Y. 2019) (in a trial related to the Madoff bankruptcy proceeding, Bernard L. Madoff Investment Securities LLC (BLMIS) books and records were authenticated over defense objection by a representative of the trustee who reviewed their contents).

### E. Defense Raises No Specific Question of Authenticity of Records

The defense opposition is based on multiple layers of hearsay and conjecture regarding the Mt. Gox service generally. However, the defense has not provided any specific evidence suggesting that the five sets of customer account records the government seeks to admit in this case are inauthentic or have been tampered with. In its opposition, the defense simply claims that

11

"the public record contains evidence of manipulation," ECF No. 144 at 9, and cites to a passage from *Tracers in the Dark*, *id.* at 5–6.  The defense does not identify any supposed discrepancies or inconsistencies in the records the government seeks to admit in this case.  The defense does not establish that any information has been deleted or altered from those records.  The defense posits that because the Mt. Gox platform as a whole was previously hacked and the CEO attempted to conceal the hack, all records for all users — conveniently including the defendant — are incapable of authentication.  However, "merely raising the possibility of tampering is not sufficient to render evidence inadmissible."  *United States v. Kelly,* 14 F.3d 1169, 1175 (7th Cir. 1994); *see also United States v. Safavian*, 435 F. Supp. 2d 36, 41 (D.D.C. 2006) ("The *possibility* of alteration does not and cannot be the basis for excluding e-mails as unidentified or unauthenticated as a matter of course[.]").  Just as the court found in *Safavian*, "[t]he defendant's argument is more appropriately directed to the weight the jury should give the evidence, not to its authenticity."  *Id.*

Under the defense theory of admissibility, the 2014 hack of J.P. Morgan Chase hack — which impacted over 80 million user accounts — would have rendered all J.P. Morgan Chase account records unreliable and unable to be admitted in court.  Similarly, all records from the Washington, D.C. Metropolitan Police Department would be inadmissible following a 2021 ransomware incident; Uber records would be excluded following the 2016 and 2021 breaches; Intuit/TurboTax records would be inauthentic by virtue of a 2021 compromise; no Microsoft email messages could be admitted at trial because of a Microsoft Exchange Servers breach reported in January 2021; Capital One users could commit crimes with impunity following a 2019 data breach; and the SolarWinds incident alone would render inadmissible records from thousands of companies and U.S. government agencies.  The Federal Rules of Evidence do not envision such sweeping exclusion, and the defense cites to no authority to suggest that they do.

12

Nor can allegations of malfeasance[3] by a company executive render all company records unreliable. Such a rule would lead to absurd results, effectively insulating corporate fraudsters from any prosecution reliant on company records. Courts have considered and rejected such arguments. In a trial arising from the Bernie Madoff bankruptcy proceedings, for example, the defense objected to the admission of certain Madoff books and records because "they are permeated with fraud and are not trustworthy." The court disagreed and admitted the records over the defense objection. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*, 610 B.R. 197, 223 (Bankr. S.D.N.Y. 2019). The *Madoff* court noted that some of the disputed records matched other undisputed data points — including other transaction records — similar to the government's corroboration of the Mt. Gox records at issue in this case, detailed in the government's previous filings, ECF No. 140, and above. *See also Am. Pegasus SPC v. Clear Skies Holding Co., LLC* (N.D. Ga., Sept. 15, 2015) LEXIS 189547, *27, 30-31 (rejecting defense arguments that records were "inherently untrustworthy" because the company operator was accused of fraud and manipulating corporate records, noting, "by virtue of this logic, a wrongdoer could escape liability for his (or, in this case, a co-conspirator's) actions, so long as he engaged in *so much* wrongdoing that any documents or potential evidence he was connected to would necessarily be excluded as untrustworthy").

### F. The Government Has Been Responsive to Defense Discovery Requests

The defense opposition significantly mischaracterizes the status of the Mt. Gox discovery, alarmingly suggesting that the "the Government is doing everything in its power to deny the

---

[3] The Japanese court found that former Mt. Gox CEO Mark Karpeles had modified the exchange's books to conceal the platform's insolvency, but also found that he had acted without ill intent. Yuki Furukawa, *Former Mt. Gox CEO Karpeles Gets Suspended Jail Sentence*, Mar. 16, 2019, *available at*
https://www.bloomberglaw.com/ms/product/blaw/document/POE4QC6JIJUQ.

13

Defense unfettered access to the data." ECF No. 144 at 11.  In actuality, the government produced fulsome Mt. Gox records for the defendant's four accounts (one in his true name and three under alleged aliases) to current defense counsel on April 25, 2022.  Those records included the account logs, details of transactions associated with each account, and know-your-customer information for the defendant's true name account — namely, a copy of the defendant's Swedish identity card and a bill from the defendant's cable/Internet provider.

On September 23, 2022, defense counsel sent the government by email a letter titled "Def.'s First R. 16 Letter" containing more than 100 numbered paragraphs spanning 15 pages of discovery "requests."  *See* Ex. 2 (Def. Sept. 23, 2022 Ltr).  The letter included requests for Mt. Gox records along with numerous other records that had already been produced, as well as demands for generic categories of documents, requests for voluminous records that appeared irrelevant and immaterial to any claim or defense in this proceeding, and civil interrogatory-style inquiries calling for narrative responses by the government.  The government responded on October 4, 2022, noting that it was committed to working with the defense to resolving any good-faith discovery concerns and requesting the defense respond in writing to narrow the range of potential discovery issues and facilitate a more constructive dialogue.  *See* Ex. 3 (Gov. Oct. 4, 2022 Ltr.).  With regard to the request for records that had already been produced in discovery — which included the Mt. Gox records — the government asked the defense:

> For all such requests seeking the production of records that have already been produced in discovery, please (1) identify the records related to this request that have already been provided in discovery; (2) explain why you believe the production to date has been inadequate, including whether you have a good-faith basis to believe that additional discoverable records related to the request exist and are within the prosecution team's possession, custody, or control; and (3) explain how these additional materials are relevant and material to preparation of the defense.

The defense did not respond to the government's letter.

On November 22, 2022, the defense asked the government to re-produce nearly all of its prior discovery productions by re-uploading the productions to the government's file-sharing platform. The government did so on November 23, 2022. At the *Monsanto* hearing on January 13, 2022, when discussing the defense's budgetary restraints in uploading the government's voluminous discovery productions to the defense e-discovery review platform, Mr. Ekeland advised, "The Government's totally met their -- been fine." 1/13/23 Tr. at 14:23-24.

On April 12, 2023, the government produced trial pulls[4] of the Mt. Gox records for the defendant's four accounts, as well as the Mt Gox account for AurumXChange, another payment platform through which the defendant routed funds. Those records, which are the records that the government intends to admit at trial, were copied by qualified FBI personnel from the official Japanese MLAT production of the Mt. Gox data. The records reflect the contents of the Mt. Gox database pertaining to each account. FBI Supervisory Special Agent Kenneth Keller executed a certification pursuant to Fed. R. Evid. 902(13)/(14) attesting that the retrieved records were accurate copies of the original information in the database and were retrieved through an electronic process that produces an accurate result — specifically, a SQL database query. ECF No. 140-4.

The government's first indication that the defense was seeking a full copy of the Mt. Gox database was on a call with defense counsel on or about May 31, 2023. On that call, the government explained that the database contained voluminous third-party financial data that the government did not believe was subject to discovery, and inquired whether there were particular additional records or information from the database that would address the defense's ask. The defense advised that they would speak with their expert and advise the government accordingly.

---

[4] The government's usual practice for seized datasets is to work from working copies, and retrieve "trial pulls" with an accompanying records certification in advance of trial.

Following that call, on June 5, the defense made a discovery demand via email for the Mt. Gox database. *See* Ex. 4 (Def. June 5, 2023 Email). The government responded on June 12, explaining that it would make a copy of the database[5] available for defense review at the FBI's Washington Field Office, where the FBI cyber squad working on the instant investigation is located. *See* Ex. 5 (Gov. June 12, 2023 Ltr.).

The defense never responded to the government's letter and has not contacted the government to arrange any review. The defense's opposition to the government's supplemental motion *in limine* to admit the Mt. Gox records, ECF No. 144, is the first time the defense has raised concerns regarding reviewing the Mt. Gox records in FBI space.

If the defense has specific concerns or requests regarding the set-up for its expert(s) to review the Mt. Gox data in FBI space, the government welcomes defense counsel to explain these concerns and the government will attempt to reasonably accommodate them. Prior to responding to defense counsel on June 12, undersigned counsel discussed the Mt. Gox data hosting with the FBI supervisor and ensured that the FBI would be able to provide the space and staffing needed to accommodate the defense expert for as long as the expert needed access to the data. FBI and undersigned counsel are committed to providing the defense ample opportunity for inspection, viewing, and examination of the Mt. Gox records. The defense expert will be able to bring in his own equipment, subject to approval from FBI security personnel. The government understands

---

[5] The government's letter referred specifically to the hard drive image provided by Japanese officials, as this is the copy from which the government retrieved the intended trial exhibits. The IRS also obtained a copy of the Mt. Gox database, supported by business records certifications signed by Mr. Karpeles. While the IRS and FBI copies are simply copies of the same underlying dataset, the government has arranged for a forensic image of the IRS copy to be transferred to FBI so that the defense expert can review both the IRS copy and the FBI copy, if the defense so chooses. The government does not believe that producing multiple copies of the full dataset is required, but it does not wish to delay proceedings by engaging in needless discovery disputes.

that Mr. Fischbach, the defense expert, has frequently reviewed sensitive evidence in law enforcement facilities, and believes that he is familiar with these procedures. If, upon an initial review, the defense expert identifies a subset of files that are of interest to the defense but that do not include the detailed, sensitive financial records of tens of thousands of uninvolved third parties, the government is willing to produce those additional records to the defense for their review and examination outside of FBI space.

The defense's demand for a copy of the full Mt. Gox database is sweeping in scope, the equivalent of demanding that the government produce each and every JPMorgan Chase user record and transaction for the bank's tens of millions of customers in order to admit a single defendant's account statement, simply because the company was breached in 2014. The hard drive provided by the Japanese contains 3.3 terabytes of voluminous sensitive financial information of uninvolved third parties, including logical images of multiple Mt. Gox servers. The Mt. Gox database includes hundreds of thousands of of entries, detailing each transaction conducted by Mt. Gox's thousands of users. The records also include scans of passports, drivers licenses, utility bills, and other identity verification documents for thousands of Mt. Gox customers who underwent know-your-customer checks. That a subset of these records were previously leaked online does not undermine the legitimate privacy interests that the innocent third parties maintain in the records. A massive dataset with this volume of sensitive records warrants appropriate protections.

**G.  Mark Karpeles**

The government has no further information regarding defense counsel's bizarre assertion that Mr. Sterlingov's arresting officer was on the phone with Mark Karpeles at the time of his arrest. As best the government can tell, based on the evolution of this story across the defense's numerous interviews, it appears that one of the agents during transport may have taken a phone

call with someone who spoke with an accent.  From this, the defense has somehow concluded that this otherwise unknown caller must be Mark Karpeles.  *See* What Bitcoin Did Podcast, *The Case of Roman Sterlingov with Tor Ekeland & Mike Hassard* (May 24, 2023) (Tr.), *available at* https://www.whatbitcoindid.com/wbd662-tor-ekeland-mike-hassard ("Roman was saying that he went in the car with one of the agents, I think it was Matthew Price, it may have been Tigran Gambaryan, and that the guy on the other end of the line who this agent had called had a French accent and Roman thought that it might be Mark Karpelès, and we didn't think anything of it until we read Andy Greenberg's book and the story comes out and we're like, 'Oh man, that actually makes total sense'.").  The government does not believe that this evidence-free speculation has any bearing on the authenticity of the Mt. Gox records, but writes to clarify the record.

**CONCLUSION**

For the foregoing reasons, the defendant's challenge to the Mt. Gox account records should be rejected, and the Court should rule that they are authenticated and admissible at trial over the defendant's objection.

                Respectfully submitted,
                MATTHEW M. GRAVES
                UNITED STATES ATTORNEY
                D.C. Bar No. 481052

BY:   */s/ Christopher B. Brown*
                Christopher B. Brown, D.C. Bar No. 1008763
                Assistant United States Attorney
                U.S. Attorney's Office for the District of Columbia
                601 D Street, N.W.
                Washington, D.C. 20530
                (202) 252-7153
                Christopher.Brown6@usdoj.gov

                */s/ C. Alden Pelker*
                C. Alden Pelker, Maryland Bar
                Trial Attorney, U.S. Department of Justice
                Computer Crime & Intellectual Property Section
                1301 New York Ave., N.W., Suite 600
                Washington, D.C. 20005
                (202) 616-5007
                Catherine.Pelker@usdoj.gov