UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 21-cr-399 (RDM) |
| | : | |
| ROMAN STERLINGOV, | : | |
| | : | |
| Defendant. | : | |

### SUPPLEMENT TO THE GOVERNMENT'S
### OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

The United States respectfully files this Supplement to the Government's Opposition to Defendant's Motion To Dismiss, ECF No. 52, in order to respond to the Court's questions during the June 23, 2023 hearing. Specifically, the Court inquired about which undercover transactions support the government's theory of venue, and whether the Court should make factual findings as to venue prior to trial, *see United States v. Jensen*, 93 F.3d 667, 670-71 (9th Cir. 1996) (Fletcher, J., concurring). In answer to the Court's questions, the government is relying on three undercover transactions, described in further detail below, in addition to the defendant's omissions in the District of Columbia. The government further agrees that the Court should make factual findings and rule on the defendant's venue challenge prior to trial because there is no genuine issue of material fact as to venue.

### A. Undercover Transactions in the District of Columbia

As outlined in the Government's Opposition to Defendant's Motion To Dismiss the Indictment, venue is proper in the District of Columbia because undercover transactions with Bitcoin Fog were executed in the District of Columbia, and because omissions occurred in the District of Columbia—namely, the defendant's failure to obtain a money transmitter's license from the D.C. Department of Insurance, Securities, and Banking (DISB), and his failure to register as a

money transmitting business with the U.S. Department of Treasury, Financial Crimes Enforcement Network (FinCEN), in Washington, D.C.  *See* ECF No. 52, at 2-18.

Specifically, the government is relying on the following three undercover transactions that occurred in the District of Columbia.  Two of the transactions are described in the Affidavit in support of the Criminal Complaint, ECF No. 1-1, at 5-7, and one is referenced in the Superseding Indictment, ECF No. 43, ¶ 2 (Count Two).

### 1.  The September 2019 Undercover Transaction

On or about September 11, 2019, while physically located in the District of Columbia, an IRS-CI Special Agent operating in an online undercover capacity ("IRS UC") accessed Bitcoin Fog at foggeddriztrcar2.onion through the Tor browser.  The IRS UC created an account through the registration page by creating a username and password and entering a security text phrase pictured below the registration text boxes.  The registration page of Bitcoin Fog stated: "As an anonymous service, we do not collect any additional information about you besides a user name and password."  When creating the account, the IRS UC was never asked for any identifying information such as an email account, date of birth, social security number, or passport number, or for any other proof of identification.

On or about September 11, 2019, while physically located in the District of Columbia, the IRS UC sent approximately 0.02488936 BTC ($249.99) from an IRS-CI controlled covert wallet ("UC Sending Wallet") into a wallet address ("the UC Deposit Address") provided by Bitcoin Fog.  On or about September 12, 2019, while physically located in the District of Columbia, the IRS UC accessed foggeddriztrcar2.onion.  The IRS UC's undercover Bitcoin Fog account showed a balance of approximately 0.02425700.  The difference of approximately 0.00063236 BTC between the amount deposited and the balance shown was approximately 2.5% of the total deposit.  This

was the service fee charged by Bitcoin Fog.  On or about September 12, 2019, while physically located in the District of Columbia, the IRS UC sent 0.02 BTC from Bitcoin Fog to an IRS-CI controlled covert wallet ("UC Receiving Wallet").  *See* ECF No. 1-1, at 5.

### 2. The November 2019 Undercover Transaction

On or about November 18, 2019, while physically located in the District of Columbia, an IRS-CI Special Agent operating in an online undercover capacity ("IRS UC") sent approximately 0.0117 BTC to the UC Deposit Address at Bitcoin Fog from an IRS-CI controlled undercover account on the Apollon darknet market.  Apollon was a darknet market known to sell illegal narcotics, stolen PII, and other illegal items.  On November 19, 2019, while physically located in the District of Columbia, the IRS UC accessed Bitcoin Fog at foggeddriztrcar2.onion.  The IRS UC's undercover account on Bitcoin Fog showed that the account had been credited by the amount of the send transaction, less an approximately 2.32% fee.

On or about November 19, 2019, while physically located in the District of Columbia and after confirming the deposit of funds from Apollon Market had been credited to the IRS UC's Bitcoin Fog account, the IRS UC sent the message below to the Bitcoin Fog administrator using the messaging function on the Bitcoin Fog site, stating the funds were the proceeds of illegal narcotics sales.

On or about November 21, 2019, while physically located in the District of Columbia, the IRS UC again accessed Bitcoin Fog operating in an online undercover capacity.  There was no response to the above message posted by the IRS UC on or about November 19, 2019. The IRS UC then directed Bitcoin Fog to send 0.01146764 BTC from the undercover account on Bitcoin Fog to an IRS-CI controlled undercover wallet.  Bitcoin Fog executed the transaction.  *See* ECF No. 1-1, at 6-7; ECF No. 43, ¶ 2 (Count Two).

### 3. The July 2016 Undercover Transaction

On or about July 26, 2016, while physically located in the District of Columbia, an FBI employee acting in an online undercover capacity ("FBI UC") accessed Bitcoin Fog at foggeddriztrcar2.onion through the Tor browser, logging in to an undercover Bitcoin Fog account. The FBI UC navigated to the Bitcoin Fog deposit page and obtained a deposit address. The FBI UC then deposited 0.1628 BTC to the above-referenced Bitcoin Fog deposit address. The FBI UC observed 0.15974667 BTC in the undercover account registered on Bitcoin Fog at foggeddriztrcar2.onion, reflecting the deduction of Bitcoin Fog's randomized transaction fee. The FBI UC then directed Bitcoin Fog to send 0.01146764 BTC from the undercover account on Bitcoin Fog to an FBI-controlled undercover wallet on a third-party wallet service. Bitcoin Fog executed the transaction. *See* Ex. 1 (FBI 302 dated Aug. 8, 2016).

## B. The Court Should Make Factual Findings and Rule on Venue Before Trial

### 1. The Defense Venue Challenge Raises a Purely Legal Issue and Is Appropriate To Resolve Before Trial

The government agrees with Judge Fletcher's concurrence in *United States v. Jensen*, 93 F.3d 667, 670-71 (9th Cir. 1996), that the Court can and should resolve a pretrial challenge to venue even if it requires the Court to make factual findings. In *Jensen*, the defendants were charged in the Western District of Washington with offenses arising from the operation of a fish processing ship at sea, pursuant to the extraterritorial venue provision in 18 U.S.C. § 3238. *Id.* at 668-69. The defendants moved to dismiss the indictment for improper venue, attaching to their motion extrinsic evidence and affidavits showing that, at the time of the alleged offenses, their vessel was located in Alaskan waters or on the high seas. *Id.* at 669. The district court granted the motion to dismiss, but the Ninth Circuit reversed. *Id.* at 670. The panel majority relied on the

venue allegations in the charging instruments and opined that it was error for the district court to consider extrinsic factual material on a motion to dismiss. *Id.* at 669-70.

In concurrence, Judge Fletcher argued that a district court could properly "'make preliminary findings of fact necessary to decide the questions of law presented by pre-trial motions so long as the court's findings on the motion do not invade the province of the ultimate trier of fact.'" *Id.* at 670 (Fletcher, J., concurring) (quoting *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986)). In Judge Fletcher's view, the defense challenge raised a purely "legal" issue—whether the extraterritorial venue provision in § 3238 applies to conduct occurring both on the high seas as well as in another district. *Id.* at 671. Therefore, the question of the vessel's location "can be resolved without interfering with the jury's fact finding role." *Id.* And failing to rule on the defense challenge pretrial would only result in the district court confronting "the same issue—with the same evidence" at trial. *Id.*

Here, as in *Jensen*, the defense venue challenge raises a purely "legal" question—whether the undercover transactions and omissions in the District of Columbia are sufficient to justify venue for the various counts charged in the Superseding Indictment under Fed. R. Crim. P. 18, 18 U.S.C. § 3237(a), and 18 U.S.C. § 1956(i). Indeed, *Jensen* presented a much closer question in which the defendants presented extrinsic evidence contradicting the factual allegations in the charging instruments. 93 F.3d at 669-670 (charging instruments alleged offenses occurred either "upon the high seas" or "within the Western District of Washington" and "upon the high seas," whereas defense evidence indicated they also occurred in Alaska). Here, by contrast, the defendants have not disputed the underlying facts, only the legal conclusions arising from those facts. There is no defense challenge to the factual accuracy of the government's venue allegations. The defense is not arguing, for example, that the government's undercover transactions occurred

5

outside the District of Columbia, or that the defendant did in fact obtain a D.C. money transmitter's license from DISB and he did register Bitcoin Fog as a money transmitting business with FinCEN. Accordingly, the Court would run no risk of invading the province of the jury in making findings consistent with these uncontested allegations before trial and ruling on venue as a matter of law.

> 2. **There Is No Genuine Issue of Material Fact as to Venue To Be Submitted to the Jury**

Resolving the defense venue challenge in this manner is also consistent with D.C. Circuit precedent holding that venue is not a substantive element of the offense and does not present a jury question unless there is a genuine issue of material fact as to venue.

In *United States v. Haire*, 371 F.3d 833 (D.C. Cir. 2004), *vacated on other grounds*, 543 U.S. 1109 (2005), the D.C. Circuit rejected an appeal based on the trial court's failure to instruct the jury on venue. *Id.* at 838-40. While the holding in *Haire* rested on the defendant's failure to request such an instruction—foreclosing the defendant's challenge under plain-error review—the panel went on express in dicta that venue is not a "substantive" element of an offense that must "automatically" be presented to the jury. Instead, venue should be submitted to the jury "only when the question of venue is genuinely in issue," satisfying three conditions: "'(1) the defendant objects to venue prior to or at the close of the prosecution's case-in-chief, (2) there is a genuine issue of material fact with regard to proper venue, and (3) the defendant timely requests a jury instruction.'" *Id.* at 840 (quoting *United States v. Perez*, 280 F.3d 318, 334 (3d Cir. 2002)).

In *United States v. Nwoye*, 663 F.3d 460 (D.C. Cir. 2011), the D.C. Circuit reiterated *Haire* and denied a venue challenge where the defendant failed to request any venue instruction, finding that the evidence at trial sufficiently established the facts that would have supported venue— namely, in a conspiracy prosecution, that "at least one overt act in furtherance of the conspiracy . . . occurred in the District of Columbia." *Id.* at 465-66. *Nwoye* declined to reach the question of

whether venue can be determined by the district court alone under a preponderance standard. *Id.* at 466. This Court need not resolve that open question because here, as in *Nwoye* and *Haire*, there is no "genuine issue of material fact" to submit to the jury as to venue—*i.e.*, no genuine factual dispute that the undercover transactions and omissions occurred in the District of Columbia. Accordingly, the Court need not decide any disputed issue of material fact (unlike in *Jensen*) and can rule as a matter of law that those undercover transactions and omissions constitute a sufficient basis for venue in this case.

### 3. Venue Can Be Decided by the Court Under a Preponderance Standard

Courts of appeals have repeatedly explained that, because venue is not an element of a criminal offense, it need only be proved by a preponderance of the evidence. *See e.g.*, *United States v. Rommy*, 506 F.3d 108, 119 (2d Cir. 2007); *United States v. Muhammad*, 502 F.3d 646, 652 (7th Cir. 2007); *United States v. Lanoue*, 137 F.3d 656, 661 (1st Cir. 1998); *United States v. Griley*, 814 F.2d 967, 973 (4th Cir. 1987). Other courts of appeals have reached the same result but employed different language, stating that although venue may be an "element in the strictest sense" or an "element more akin to jurisdiction," it falls short of a "substantive" or "essential" element of an offense that must be determined by a jury beyond a reasonable doubt. *See, e.g.*, *Perez*, 280 F.3d at 330 (observing that "the term 'element' lacks its usual force in the context of venue."); *United States v. Stickle*, 454 F.3d 1265, 1271-72 (11th Cir. 2006); *United States v. Kaytso*, 868 F.2d 1020, 1021 (9th Cir. 1988). Regardless of the label given to venue, courts universally have distinguished it from elements in the traditional sense—those that bear on guilt or innocence and thereby implicate the commands of the Fifth and Sixth Amendments that a criminal conviction "rest upon a jury determination that the defendant is guilty of every element

of the crime with which he is charged, beyond a reasonable doubt." *United States v. Gaudin*, 515 U.S. 506, 510 (1995); *In re Winship*, 397 U.S. 358, 364 (1970).[1]

The reasoning behind courts' decisions not to treat venue as a traditional criminal element is sound. "[U]nlike the substantive facts which bear on guilt or innocence in the case[,] venue is wholly neutral; it is a question of procedure, more than anything else, and it does not either prove or disprove the guilt of the accused." *Wilkett v. United States*, 655 F.2d 1007, 1011-12 (10th Cir. 1981); *accord Perez*, 280 F.3d at 330; *Kaytso*, 868 F.2d at 1021; *cf. United States v. Maldonado-Rivera*, 922 F.2d 934, 969 (2d Cir. 1990) ("[V]enue provisions deal not with whether prosecution of a given charge is permissible but only with that prosecution's permissible location."). Venue is fundamentally different from the elements of an offense in additional respects. Unlike elements, venue need not be proved in every case. The issue of proper venue can be waived if not timely raised, *e.g.*, *United States v. Knox*, 540 F.3d 708, 716 (7th Cir. 2008); *Perez*, 280 F.3d at 328; *United States v. Dabbs*, 134 F.3d 1071, 1078 (11th Cir. 1998), including where the defendant fails to move to dismiss the case for improper venue before trial based on a defect that is apparent from the face of the indictment, *e.g.*, *United States v. Khan*, 821 F.2d 90, 93 (2d Cir. 1987). Courts have also noted that "the standard for finding a waiver of venue rights is much more relaxed than the rigorous standard for finding waivers of the right to trial by jury, the right to confront one's accusers or the privilege against compulsory self incrimination." *United States v. Winship*, 724

---

[1] The government is aware of no Supreme Court authority that has ever bifurcated the term "element" into a hierarchy consisting of lesser "jurisdictional elements" and more robust "substantive elements," nor any suggestion by the Supreme Court that "elements" refer to anything other than those facts upon which guilt or innocence rest and that always must be proven to a jury beyond a reasonable doubt. *See Gaudin*, 515 U.S. at 510; *In re Winship*, 397 U.S. at 364. Although perhaps only a matter of nomenclature, the government takes the position consistent with the precedents of the Supreme Court and those courts of appeals that have held that venue is not an element. Accordingly, the government will refrain here from the practice deployed by some courts of referring to venue as a mere "jurisdictional" element rather than a "substantive" element.

F.2d 1116, 1124 (5th Cir. 1984); *accord United States v. Miller*, 111 F.3d 747, 750 (10th Cir. 1997). Accordingly, the government submits—consistent with all courts of appeals to have addressed the issue—venue is not a substantive "element" in the traditional sense.

To be sure, *Nwoye* declined to reach the question of whether venue can be decided solely by the trial judge. But the panel in *Nwoye* also noted that in *United States v. Gaudin*, 515 U.S. 506 (1995), which required "'every element of the crime' to be decided by a jury," "three justices concurred . . . to explain that venue remained a question to be decided by the judge by a preponderance of the evidence." 663 F.3d at 466 (quoting *Gaudin*, 515 U.S. at 522-23). Further, as noted above, courts of appeals have unanimously concluded that venue need only be proved by a preponderance of the evidence. And in reaching this conclusion, although they may have used varying language, courts of appeals have also unanimously ruled that venue falls short of being classified as a traditional element of the offense upon which guilt or innocence rests. It logically follows that, because the propriety of venue has no bearing on guilt or innocence and because it has never been elevated to the status of an element in the traditional sense, it does not implicate the requirements under the Fifth and Sixth Amendment that a criminal conviction "rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." *Gaudin*, 515 U.S. at 510. Accordingly, consistent with the concurring opinion in *Gaudin*, the "propriety of venue . . . may be decided by the trial court." 515 U.S. at 526.

## CONCLUSION

For the foregoing reasons, there is no genuine issue of material fact as to venue, and the Court should make factual findings and rule as a matter of law that the three undercover transactions in the District of Columbia and the defendant's failure to obtain a money transmitter's

license from the D.C. Department of Insurance, Securities, and Banking (DISB), and his failure to register as a money transmitting business with the U.S. Department of Treasury, Financial Crimes Enforcement Network (FinCEN), in Washington, D.C., are sufficient to establish venue for each count in the Superseding Indictment.

        Respectfully submitted,
        MATTHEW M. GRAVES
        UNITED STATES ATTORNEY
        D.C. Bar No. 481052

BY:   */s/ Christopher B. Brown*
        Christopher B. Brown, D.C. Bar No. 1008763
        Assistant United States Attorney
        U.S. Attorney's Office for the District of Columbia
        601 D Street, N.W.
        Washington, D.C. 20530
        (202) 252-7153
        Christopher.Brown6@usdoj.gov

        */s/ C. Alden Pelker*
        C. Alden Pelker, Maryland Bar
        Trial Attorney, U.S. Department of Justice
        Computer Crime & Intellectual Property Section
        1301 New York Ave., N.W., Suite 600
        Washington, D.C. 20005
        (202) 616-5007
        Catherine.Pelker@usdoj.gov