UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ROMAN STERLINGOV,<br><br>*Defendant*. | Criminal Action No. 21-399 (RDM) |

## ORDER

This Order addresses a variety of matters raised during the hearing held on August 29, 2023; most substantively, the Court makes findings of fact related to Defendant's motion for leave to file a motion to authorize issuance and pretrial return of subpoena *duces tecum* to Chainalysis, Inc., Dkt. 155.

***First***, as discussed during the hearing, it is **ORDERED** that:

(1) the Government shall file a brief on or before September 4, 2023, addressing whether D.C. Code § 26-1023(c) applies in the circumstances alleged here and how 18 U.S.C. § 1960, especially § 1960(b)(1)(B), applies to this case;

(2) the Defense shall file a response on or before September 6, 2023;

(3) the Defense shall meet and confer with the Government and then shall file a brief on or before September 4, 2023, setting forth in detail the specific grounds, if any, it has for opposing the Government's motion to admit certain government exhibits, Dkt. 62; and

(4) the Defense shall meet and confer with the Government and then shall file with the Court on or before September 5, 2023, a document identifying with specificity its objections, if any, to the Government's translations.

***Second***, at the hearing, the Court directed the Government to provide the Defense with the following information obtained from Chainalysis: (1) the specific assumptions and specific

heuristics utilized as part of the behavioral heuristics in Heuristic 2 used in the analysis relied upon by the Government in this case; (2) specifics as to how Heuristic 1 detects and controls for coin joins; and (3) information regarding whether there were manual alterations made in relation to Heuristic 3 and if so, what they were. Chainalysis may file a motion or report with the Court on or before August 31 addressing any need to revise or amend this requirement.

As for the source code itself, the Defense has yet to convince the Court that its proposed expert, Laurent Salat, is an appropriate expert to review Chainalysis's Reactor source code. By way of background: On June 16, the Court instructed Defense counsel to find a computer code expert and have that expert prepare a statement detailing the specific facts that the expert needed to "make an assessment of whether [Reactor] is fairly predictive." June 16, 2023 Hrg. Tr. (Rough at 27). The Court further instructed Defense counsel to provide their expert's statement to the Government and Chainalysis and to meet and confer with them about it. *Id.* Defense counsel agreed that this was an "excellent idea." *Id.* at 28.

During a *Daubert* hearing held on July 20, Defense counsel again affirmed their need for the source code, and the Court again asked if they had a computer code expert. July 19, 2023 Hrg. Tr. (Rough at 76). The Defense pointed to Jeff Fischbach, who had just testified. But Mr. Fishbach has not taken a single course in computer science and has no other coding experience. *Id.* at 76–77; *id.* at 77 ("I didn't hear any testimony about his experience as a coder or knowledge as a coder."). The Defense seemingly agreed stating: "I'm not going to argue the point with you here," and "I'm quite confident that I can find somebody who can read the source code through my connections." *Id.*

On August 22, over a month later, the Defense still had not identified an expert and had not provided the required expert statement to the Government, Chainalysis, or the Court. At that

time, the Court stated: "I was pretty clear about the process that I intended to take place, and you didn't seem to follow that where I said what I need is [for] you to provide me with some statement by a coding expert or other person with the relevant knowledge to identify to me what is it in the code that you need." Aug. 22, 2023 Hrg. Tr. (Rough at 10). The Court again summarized its guidance: "[G]ive me an expert that can tell me what they want to look at and someone who is not [Chainalysis's] principal competitor who is expert in code." *Id.* at 11. Defense counsel agreed that they would "find an expert that will meet those parameters," adding "[t]here's [never] been a moment where we thought this wouldn't be subject to come kind of protective order in terms of competitive concerns." *Id.* at 12.

The discussion ended with "the same order I gave you last time. Go find that expert, have that expert write down what it is the expert needs to look for in the source code. Come up with a plan for how to do it. Discuss it with Chainalysis, discuss it with the government. I'm not saying you need to reach agreement. But you [need to] discuss it with them." *Id.* at 18.

On August 27, 2023, the Defense, for the first time, complied in part with that order. On that day, Defense counsel sent Mr. Salat's resume to the Government and Chainalysis. It was emailed to the Court on the evening of August 28. On August 29, the Court heard from Defense counsel, counsel for Chainalysis, and the Government on Mr. Salat.

At this juncture, the Court is not convinced that Mr. Salat is an appropriate expert to review the Reactor source code for at least three reasons.

First, the Defense has not provided a statement of any kind prepared by Mr. Salat explaining, as directed, what he might need to review or hope to find in the source code. Nor has the Defense otherwise explained to the Court what the source code would reveal that it could not otherwise obtain, including from disclosure of the relevant heuristics.

3

Second, the Court finds that Mr. Salat founded a competing company (OXT). According to his resume, Mr. Salat is presently employed by OXT as a sub-contractor. At the hearing, counsel for Chainalysis represented that OXT is a "competitor whose mission is effectively to try to put other blockchain analytics programs out of business or to assist people in evading the detection." Aug. 29, 2023 Hrg. Tr. (Rough at 8). Thus, Chainalysis argued, OXT is "in the business of not only competing but trying to defeat Chainalysis—handing [Mr. Salat] the source code is handing him a golden ticket." *Id.* at 11.

OXT itself states that its "mission is to improve financial privacy within the Bitcoin ecosystem." About, Oxt, oxt.me/about (last visited Aug. 30, 2023). A tweet by Samourai Wallet, which acquired OXT in 2017 (*see* FAQ, Oxt, oxt.me/faq (last visited Aug. 30, 2023)), states that OXT "gives individuals the possibility of self defensive chain analysis." @SamouraiWallet, X (Apr. 19, 2023, 7:29 a.m.), https://twitter.com/SamouraiWallet/status/1648649920033824769. And, in its Terms and Conditions, OXT states that it is "available to all users without restriction with the exception of" "law enforcement" agencies and "any entity investigating 'money laundering' or 'unexplained wealth.'" Terms & Conditions, Oxt, oxt.me/faq (last visited Aug. 30, 2023). More generally, it appears that OXT's business model (even if not-for-profit) is directly at odds with Chainalysis's business model. In addition, Mr. Salat's posts on Twitter, now-X, read into the record by counsel for Chainalysis and the Government, strongly suggest that he views Chainalysis as a competitor who he is seeking to undermine.

In response, Defense counsel stated that he did not agree with the characterization of OXT as a competitor, but only because OXT is an open-source service. Beyond that, he failed to offer any rebuttal to the legitimate concerns voiced by Chainalysis. If Defense counsel has a

4

specific rebuttal, they should promptly offer it, be it through testimony of Mr. Salat or other means.

Third, Mr. Salat apparently resides outside of the United States and is a non-U.S. citizen; it would thus seem that he is beyond the contempt power of this Court. Given this context, the Defense has not demonstrated that Mr. Salat is someone who could be granted access to highly confidential, proprietary information on which law enforcement agencies currently rely.

Defense counsel is once again instructed to find an appropriate expert, that is, an expert who could review the source code without posing a competitive risk to Chainalysis, and relatedly, to have such an expert prepare an explanation of precisely what he or she would need to review in the source code and for what reason.

And, the Court once again cautions Defense counsel that trial is fast approaching and that, unless and until, Defense counsel complies with the Court's directives, the Court will not enforce a pretrial subpoena requiring access to the Reactor source code.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  August 30, 2023