UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>   Plaintiff,<br><br>v.<br><br>ROMAN STERLINGOV<br><br>   Defendant. | No. 21-cr-399 (RDM) |

**NOTICE OF SOURCE CODE EXPERT BRYAN BISHOP REGARDING INDEPENDENT ANALYSIS OF CHAINALYSIS REACTOR SOURCE CODE AND REQUEST FOR PRODUCTION OF CHAINALYSIS REACTOR SOURCE CODE AND RELEVANT RELATED BRADY MATERIAL**

Mr. Sterlingov proposes calling **BRYAN BISHOP** ("Mr. Bishop") as an expert witness to analyze the Chainalysis's Reactor software central to this case and present his findings at trial. Mr. Bishop's resume has been sent to the Court and the Government via email. His qualifications, along with review and analysis of relevant records, reports, facts, and evidence set forth the basis for his expected testimony. The Defense considers the requested information *Brady* material that should have been produced to the Defense as part of the Government's initial Federal Rule of Criminal Procedure 16 production at the onset of this case. The Defense has been requesting access to the Chainalysis Reactor source code since the beginning of undersigned counsel's representation of Mr. Sterlingov.

The below requests are particularly critical to Mr. Sterlingov's due process rights given the fact neither the Government nor Chainalysis is able to produce any evidence involving Chainalysis Reactor's error rates, rate of false positives, or rate of false negatives. Nor can the Government or Chainalysis produce a single scientific peer-reviewed paper attesting to the accuracy of their software. Nor has any independent audit or model validation been performed

1

on Chainalysis Reactor. Moreover, the Defense's expert witness Ciphertrace's Jonelle Still's expert report documents numerous issues with the Chainalysis Reactor software and concludes that it should not be used in a federal criminal trial.

Despite these established facts, Chainalysis and the Government claim, in their supplemental expert filings after their *Daubert* testimony, that their software is both scientific and deterministic. The only way for the Defense to rebut these belated claims by the Government and Chainalysis is for access to the information requested below. In the alternative, this Court should exclude any evidence derived from Chainalysis Reactor in its entirety from this trial as it meets none of the *Daubert* factors.

## Background

On August 28, 2023, Defense counsel provided notice to the Government and this Court of its desire to present Laurent Salat ("Mr. Salat") as an expert to review the Chainalysis source code and change logs. Mr. Salat is a world-renowned expert in bitcoin protocol as well as blockchains and distributed ledger technology. He co-founded OXT (https://oxt.me) an open blockchain analytics platform exclusively focused on the bitcoin blockchain, and previously worked for the French Central Bank where he redesigned the ledger system for the Banque de France.

On August 29, 2023, at a hearing on the matter, the Court, citing competitive concerns, denied Laurent Salat as a suitable witness to review the Chainalysis source code because of his involvement with OXT and because he is a French citizen.

On August 30, 2023, the Court directed the Defense to propose another computer science expert who can review the source code and change logs for the Chainalysis Reactor software used by the Government and Chainalysis in its investigation. Additionally, the Court directed the

Defense to identify someone who can analyze the source code and change logs without posing a competitive risk to Chainalysis. The Court requested that any proffered expert prepare an explanation of precisely what is needed to review the source code and for what reasons.

### Bryan Bishop

Bryan Bishop is an independent software developer based out of Austin, Texas. Mr. Bishop is not affiliated with any known competitor of Chainalysis Inc. Mr. Bishop is a co-founder of Custodia Bank (previously named Avanti Bank & Trust) and served its Chief Technology Officer. In his non-commercial work, Mr. Bishop volunteers as a contributor to the Bitcoin Core project. He is also a public speaker and published scholar.

Mr. Bishop has a background in software engineering. He worked at LedgerX from 2014-2018 before beginning as a freelance consultant in the fintech and biotech industries. Mr. Bishop started his own consulting agency in 2018 called 10x Management. In his consulting work, Mr. Bishop has advised cryptocurrency projects and constructed systems for private over-the-counter swaps.

As part of his work with the Bitcoin Core project, Mr. Bishop directly contributed to Bitcoin's success when he created a mechanism of cold storage and vaults that shield wallets, and other custody solutions, from theft by placing a ceiling on the maximum quantity of Bitcoin that a thief could steal.

Mr. Bishop co-founded Custodia Bank to serve as a compliant bridge to the U.S. dollar payments system and as a custodian of digital assets that can meet the strictest levels of institutional custody standards. Custodia Bank fully complies with all applicable laws and regulations, including the Bank Secrecy Act, federal know-your-customer ("KYC") laws, anti-money laundering laws, and all other relevant laws and regulations. Custodia Bank is posed to

grow substantially as the global economy shifts away from centralized financial institutions and the U.S. dollar, and becomes increasingly decentralized through the adoption of cryptocurrency.

Like many of the greatest minds in blockchain and computer science, Mr. Bishop has no post-secondary degree. Mr. Bishop has been engaged in the computer sciences for over two decades and is a respected authority in the blockchain space.

Mr. Bishop holds two patents. He holds a patent for the cryptographic token with separate circulation groups, as well as a patent for systems and methods for data storage in nucleic acids. Mr. Bishop is at the forefront of constructing computer technology systems that replicate the form of nature and incorporate biological elements, and a well-respected biohacker with experience in genetic manipulation.

Mr. Bishop is an American citizen, and he does not work for a competitor of Chainalysis. Mr. Bishop has requested the following categories of production and provided justification for each request as outlined below.

## Specific Requests and Justifications

1) **Source Code**

Chainalysis source code, broadly. Requests are not necessarily restricted to Chainalysis Reactor or the Chainalysis frontend visualization tools that the prosecution or investigators may have used, as other important software and data is involved in the Chainalysis services. For example, this request also covers data collection and analysis, other data processing pipeline software, or other data integration software created by or used by Chainalysis. This includes Chainalysis' use of any data ingestion system or data collection team for collection, annotation and labeling, processing, querying or presentation of data.

Source code is requested for the periods leading up to the investigation and the investigatory period during which Chainalysis software was used, such that any previous data processing can also be analyzed in addition to data analysis functions at the exact time the product was used.

Independent of when the data was processed, this request also covers the source code of any systems that were used to process the data. Logs, records, or details pertaining to software dependencies and libraries - such as system software dependencies, system packages, application-level dependencies and packages or libraries such as from software package repositories - that were used in the making of the Chainalysis Reactor software. If possible, the exact versions of those libraries as used during the relevant investigation period and software operation period, including for data collection, data analysis, data querying, and data visualization.

This source code request includes affirmation from Chainalysis as to whether a given feature or software was used during the investigation, as the software underlying this capability should also be analyzed to determine the accuracy of the visualizations.

A quote from the Chainalysis Reactor marketing website states: "Build a narrative with custom notes and annotations. Investigators can share graphs directly or export raw data for a complete record of their findings." It is important to analyze the customer notes and annotations, including whether those annotations affected the clustering input datasets.

This source code request includes any source code or software related to bitcoin block indexing used by Chainalysis, any source code or software related to Bitcoin nodes, and any vendors that provide bitcoin node services. The Defense needs to review all applicable

5

information about those integrations, either included in diagrams, documentation, or other materials.

This source code request includes any machine/disk images of cloud VMs or computers that Chainalysis was using during the time of the investigation, with snapshots of the software that was running, and any docker container images.

This source code request includes access to the automated software test suites that are used internally at Chainalysis for automatic software testing of the Chainalysis Reactor product both on the frontend, backend, and any other related system or component necessary to operate the Chainalysis Reactor product or any data collection, data processing, data querying, or data visualization activities.

This source code request includes both compiled binaries as well as underlying source code, as well as build environments necessary to compile the source code into the software.

This source code request includes whether Chainalysis is using deterministic builds for its software The Defense requires information about deterministic builds at Chainalysis. If the builds are non-deterministic, then that should also be possible to determine from the requested materials.

This source code request includes any software or source code for theorem proving and formal correctness proofs regarding any aspects of the Chainalysis software.

As indicated in its 2021 Whitepaper, Chainalysis's high-level system architecture consists of multiple cloud services and APIs.[1]

---

[1] Chainalysis Privacy and Security Whitepaper, CHAINALYSIS INC. (Dec. 21, 2021) (last accessed Sept. 1, 2023) (available at: https://www.chainalysis.com/wp-content/uploads/2023/05/privacy-and-security-white-paper.pdf).



Based on this publicly available Whitepaper, there are several key components that need to be fully reviewed by the Defense.

- Chainalysis Reactor frontend and backend source code, and any relevant kubernetes or docker containers, other OCI images or virtual machine ("VM") images, including environment variables and other product configuration settings;
- To the extent used by the investigators during this case, Chainalysis Know Your Transaction ("KYT") Monitoring, both frontend and backend source code and kubernetes or docker containers, including environment variables and product configuration settings;
- Chainalysis API Platform source code and any execution environment;

- Application microservices. At minimum, a list and overview of these microservices, as well as the source code, execution environments, and configurations;
- Chainalysis Data Platform microservices. At minimum, a list and overview of these microservices, as well as the source code, execution environments, and configurations;
- Access logs and schema for the Amazon RDS and Aurora database services, and information pertaining to Amazon S3 object/file storage. Especially any files that were used in the facilitation of any investigation or relevant report for this case.
- Source code and operating environments, and configurations, from relevant third-party integrations such as the bitcoin node/network integration, flashpoint integration, or any other vendors that provide data processing or threat intelligence information that may have been used to produce data, labeled or unlabeled, annotated or unannotated, in the process of the product's use during the investigation into Bitcoin Fog.

    *a)*     *Justification:*

"Source code" refers to the set of human-readable instructions that get transformed into machine code for a particular software project or product. While machine code itself is important to study and examine to see what the machine was told to do at the time the software was executed, "source code" is itself valuable because it shows high level abstractions, concepts, and the intentions of the programmers which can be compared against the machine code. It includes details such as comments, version history, and human-readable documentation as to the purpose of different function calls, libraries, and dependencies.

This source code request includes software beyond Chainalysis Reactor because it is possible the Reactor product itself is only a visualization and query interface to other Chainalysis systems and that meaningful computations do not occur directly within Chainalysis Reactor.

Without having an overview of the Chainalysis systems and not having previously reviewed Chainalysis architecture and source code, it is difficult to determine whether Chainalysis Reactor itself will encompass the materials sufficient to draw conclusions as to the accuracy of Chainalysis's clustering methods. Software related to data collection, annotation, and other data functions is also requested because data and processed data is the basis of the product's supposed value.

**2)      Source Code Version History**

Chainalysis software version control history leading up to the use of the software in the investigation and for all relevant periods of the investigation. Any changelogs from a version control history perspective, but also any written or automated product changelogs describing changes for different software releases, tags, cuts, branches, forks, or deployments, that were used for the software during the course of the investigation and prior to the investigatory period. In addition to source code version control repository access, or any such history, any software-oriented or product-oriented "changelog" that was maintained is also requested, which lists out changes in human-readable language along with each version or release of the software, usually prepared for upper management as a summary of changes.

a)      *Justification:*

"Source code" and other artifacts of software development teams are usually stored in software version control history repositories, such as "git", "svn", or "cvs" type files. These versions represent ongoing work of a company and refer specifically to different versions of the source code and the resulting software derived from the source code and other software artifacts or software inputs. During the investigation period, it is possible that multiple versions of the Chainalysis software were used to resolve investigatory requests or queries while using the

product or loading the product into the investigator's web browser. A complete understanding of the change log history and the types of changes made to the software is integral to putting on a complete defense.

3) **Independent Software Environment**

Information and tooling to recapitulate the Chainalysis web applications and other software in a separate, isolated environment to investigate the function and behavior of the Chainalysis software using independent data and Chainalysis-provided data such as any proprietary data that was used in any calculations, querying, or processing of data whether open-source intelligence data or proprietary data.

This independent software environment request includes access to appropriate hardware and software environments to replicate the conditions under which the software was used, and replication of the conditions under which data was collected, inserted, analyzed, processed, and transformed or converted, to produce results that were then displayed in the Chainalysis Reactor product frontend.

This independent software environment request includes access to the datasets that the Chainalysis Reactor frontend and backend was pulling from at the time of the investigation. As well as access to the datasets that were used to produce the datasets that were used by the Chainalysis Reactor software or any other backend software for statistical inference, clustering, or any other algorithmic processing.

a) *Justification*:

Having an independent software environment is critical to being able to reconstruct the results using the Chainalysis software. It provides substantial information about the types of data that are used in the software system and provides opportunity for investigating different

scenarios without interference from other Chainalysis systems on latest versions of the software which have been updated since the investigation period.

If the data sets are proprietary or otherwise not downloadable from the public Internet, then it is important to have the Chainalysis data sets made available to check the independent isolated operation of their software, how results are computed and the meaning of those results from that data. The ability to tweak data and test other scenarios is also relevant for determining the behavior of the software under different circumstances.

Having an independent Chainalysis software environment would enable the ability to conduct controlled experiments on the Chainalysis software, such as to determine the consistency of outputs and operation on any input data, input queries, output data, etc.

Having an independent Chainalysis software environment would also enable an analysis of bias or discrimination in its analysis, particularly if it involves critical human-based decision-making processes. This could involve analyzing the software's algorithms or human intervention points, such as for Chainalysis employee administrator dashboards that can be used to manage data, update, or edit data, manage or view results, or update other information.

4) **Logs**

Chainalysis user access logs for the investigators involved in this case, including query logs and any other logs for their queries or investigations. Any data, and how it was accessed, that was served to these investigators during the course of the investigation.

This logs request includes answers to the following questions:

- Were users also assessing a separate investigation simultaneously?
- How many simultaneous investigations were these users engaged in?
- Is it possible that they conflated data from different queries?

- Were there any saved reports, and if so, why weren't they produced?

- Were the saved reports created later?

- How many times was Chainalysis Reactor accessed and used during the course of the investigation, and were conflicting results ever produced?

This logs request includes access to all conflicting results or even slightly differing results, as well as any logs and records pertaining to investigator user certification of the Chainalysis software.

a) *Justification*:

Product logs, such as traffic logs, usage logs, access logs, HTTP logs, and other logs, provide critical information as to how the product was used and which features were used by which users at which times. This can be used to assemble a "trace" of the user history as the user navigated through the product and tried different queries, rejecting different data, and accepting other data as the user may have done. These logs can be used by the Defense's proffered expert Mr. Bishop to reconstruct the user's activity and attempt to use the product in a similar way.

5) **Training Materials**

The Defense requests a copy of the training materials or training course Chainalysis provides to investigators. This training materials request includes answers to the following questions regarding the training materials:

- Was the training module certification granted on a pass/fail basis?

- What is the subject matter of the Chainalysis webinars?

- On the Chainalysis website, they advertise (as of 2023): "Chainalysis Reactor's intuitive interface allows users with minimal training to create powerful visualizations of

cryptocurrency flows. Trace the flow of funds through an unlimited number of "hops" and link suspicious activity to real-world entities." What is this minimal training consist of?

- How is suspicious activity identified in Chainalysis Reactor and on what basis?

a) *Justification:*

Training materials are key to determining whether the investigators conducting the investigation into Bitcoin Fog were using the Chainalysis Reactor Source code in a manner that would allow them to derive accurate conclusions. In conjunction with the change logs, the training materials will allow the Defense to determine whether the conduct of the investigators aligns with Chainalysis' use protocol.

6) **Documentation**

This request includes internal documentation describing the Chainalysis system architecture, documentation pertaining to the product design and specifications of the Chainalysis Reactor software and related subsystems or other systems, internal documentation of said products and systems, and external user-facing documentation for Chainalysis customers.

This documentation request pertains to pre-existing documentation, and does not require the creation of any new documentation of existing or previous systems. Any internal system diagrams or architecture documents for the architecture of Chainalysis's data collection, predictive analytics or statistical clustering algorithms, as well as downstream user-facing products.

This documentation request includes any standard operating procedures or manuals for employees or contractors on any data collection team, documentation detailing the sources of proprietary data and the methods used for data collection, aggregation, and transformation.

This documentation request includes any documentation or training materials used for data collection teams, whether for writing new data collection software or for manually inserting any data into the Chainalysis system.

a)   *Justification:*

This documentation will allow expert witness Mr. Bishop to more expeditiously navigate the Chainalysis source code, products, and isolated environments and hasten the work of analyzing the Chainalysis source code, algorithms, and other information. Standard operating procedures and other policies or instructions for data collection teams are also critical for evaluating the procedures of teams or data entry into the software, if any, such that activities beyond software that strongly influence the operation of the software are captured by the request.

7)   **Assistance**

Some assistance from Chainalysis is requested for handling Chainalysis software and software environments. This request could be satisfied by a full-stack software engineer, principal architect, devops engineer, or anyone else from Chainalysis who can facilitate the setup of the software and basic assessment of the system's functionality in normal operating parameters.

a)   *Justification*:

Having the assistance of a Chainalysis employee will speed up the process of setting up the software and debugging any issues with taking Chainalysis software into an isolated software environment. It could also be the case that this has never been done before, and Chainalysis expertise may be required to fix or update their product to allow for this kind of external expert analysis.

## Conclusion

This Court should recognize Mr. Bishop as an expert witness and order Chainalysis to produce the requested categories of materials listed above in their entirety. It is only upon a complete review of the Chainalysis Reactor source code and its connected materials that a complete picture of Chainalysis' software and clustering methodologies can be evaluated and its accuracy assessed. Neither the Government nor Chainalysis has ever appeared to have done any such work. The Government's reliance on Chainalysis Reactor software in this case justifies this Court to allow the Defense to conduct an in-depth review of the software's accuracy for the first time ever.

Dated: September 5, 2023
Brooklyn, New York

                                      Respectfully submitted,

                                      /s/ Tor Ekeland
                                      Tor Ekeland (NYS Bar No. 4493631)
                                      *Pro Hac Vice*
                                      Tor Ekeland Law, PLLC
                                      30 Wall Street, 8th Floor
                                      New York, NY
                                      t:  (718) 737 - 7264
                                      f:  (718) 504 - 5417
                                      tor@torekeland.com

                                      /s/ Michael Hassard
                                      Michael Hassard (NYS Bar No. 5824768)
                                      *Pro Hac Vice*
                                      Tor Ekeland Law, PLLC
                                      30 Wall Street, 8th Floor
                                      New York, NY
                                      t:  (718) 737 - 7264
                                      f:  (718) 504 - 5417
                                      michael@torekeland.com

                                      *Counsel for Defendant Roman Sterlingov*

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of September, 2023, the forgoing document was filed with the Clerk of Court using the CM/ECF System, and sent by email to the attorneys for the Government listed below:

s/ Tor Ekeland

U.S. Department of Justice
District of Columbia
555 Fourth St. N.W.
Washington, D.C. 20530

Catherine Pelker
Catherine.Pelker@usdoj.gov

Christopher Brown
Christopher.Brown6@usdoj.gov

Jeffrey Pearlman
Jeffrey.Pearlman@usdoj.gov