UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. 21-CR-399 (RDM) |
| | : | |
| ROMAN STERLINGOV, | : | |
| | : | |
| Defendant. | : | |

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION
FOR SUBPOENA TO CHAINALYSIS, INC. UNDER FED. R. CRIM. P. 17(c)
AND PURPORTED EXPERT NOTICE

The United States of America, by and through the United States Attorney for the District of Columbia, respectfully files its opposition to the Defendant's Notice of Source Code Expert And Request for Production of Chainalysis Reactor Source Code. *See* ECF No. 179. Following briefing and argument on prior related motions, *see* ECF No. 174 (Court Order), the Court instructed that if the defense wanted to pursue a potential subpoena to non-party Chainalysis under Rule 17(c), the defense needed first to obtain a declaration from a qualified expert in support of a tailored request. ECF No. 174. Instead, the defense expanded the scope of its prior requests, now seeking that the Court permit access not just to the source code but essentially unfettered access to every file and computer in Chainalysis' control, including sensitive records from unrelated government investigations.

**ARGUMENT**

**I.      Defense Request for Discovery of Source Code Is Legally Insufficient**

For many of the same reasons articulated in the government's opposition to the prior defense motions to compel production of Chainalysis source code, most recently at ECF No. 161, the defense request does not meet the threshold for specificity, relevance, or admissibility required

1

by the Supreme Court in *United States v. Nixon*, 418 U.S. 683, 700 (1974).

### A. Any Basis for Source Code Discovery Will Be Mooted by Forthcoming Chainalysis Production

At a hearing on August 29, 2023, Chainalysis advised the Court that it would provide additional detail regarding its heuristics as applied to the clusters in this case. ECF No. 174. The government has conferred with Chainalysis multiple times over the past week regarding the timing and substance of the disclosure. Based on Chainalysis' representations to undersigned counsel, the government anticipates the forthcoming disclosure will provide the additional granularity and detail that the defense purports to be seeking.

The government understands that the Court has expressed concern that the defense have a sufficient "under the hood" understanding of Chainalysis' heuristics, and also the ability to test that the heuristics are executing the way that Chainalysis claims. Neither of these requires production of or access to the Chainalysis source code, not to mention the massive scope of additional materials in the defense's latest request. The government understands that, given the extremely compressed timeline in advance of trial, the Court directed the potential source code discovery issue to be briefed on a parallel schedule with the Chainalysis production of additional detail regarding its heuristics. However, the government anticipates that Chainalysis' forthcoming disclosures will comprehensively dispel any potential good-faith basis for seeking access to Chainalysis' source code, to the extent one ever existed.

The government understands that the forthcoming production from Chainalysis will set forth the specific parameters of each heuristic,[1] as customized for each entity. For example, for

---

[1] The defense frequently refers to heuristics as "assumptions," but, as applied in the context of bitcoin clustering, they are better understood as sets of defined rules for when an address should be added to a cluster. For Behavioral Heuristics (Heuristic 2), those rules are customized for each

2

each address contained in the Bitcoin Fog cluster, the production will identify what specific heuristic was applied, and what the starting address[2] was for running the heuristic. The defense would be able to look at the starting address, apply the heuristic as described, and confirm that it does lead to the particular address noted in the spreadsheet. The defense would be able to do this 925,742 times, for each and every address contained in the Bitcoin Fog cluster. The defense can use this information to continue to argue, unconvincingly in the government's view, that the heuristics are too broad and invite errors — as Ms. Still has already opined. This also allows the defense to continue to test and verify that the heuristic is working exactly as Chainalysis claims, as the defense can apply the heuristic parameters to the starting address noted and confirm that it does deliver the resulting address added to the cluster. (The government does not concede that this exceptional degree of detail on an address-by-address level is necessary to validate or critique the government experts' work in this or any other matter. Indeed, Ms. Still's expert report shows that the defense has been able to robustly use the information provided by the government in discovery to evaluate the government's findings.)

B. The Latest Defense Request Has Lost Any Remaining Hint of Specificity

The Court has repeatedly provided clear instructions to the defense that it must identify with specificity what it is seeking and the relevance of that information. *See also United States v.*

---

entity, and are based on close study of the behavior of that entity and an understanding of the particular pattern in which the addresses within the cluster interact. That understanding is then distilled to a series of parameters, or rules, that Chainalysis applies in determining whether or not to add an address to a cluster, with a focus on being under-inclusive rather than risk false positives.

[2] The defense appears to refer to the starting points for a clustering heuristic as "input" addresses and the resulting address(es) added to the cluster as the "outputs"; that is not a term used by Chainalysis and can create confusion given the more commonly accepted use of "input" and "output" when describing individual transactions on the blockchain. For that reason, the terms are not adopted here.

*Nixon*, 418 U.S. 683, 700 (1974). Instead, in its latest filing, the defense *broadened* its request rather than narrow it. The first "specific request" in the defense filing is "Chainalysis source code, broadly." ECF No. 179 at 4. The justification for the source code is two short paragraphs consisting of a definition of source code and the "justification" that "Without having an overview of the Chainalysis systems and not having previously reviewed Chainalysis architecture and source code, it is difficult to determine whether Chainalysis Reactor itself will encompass the materials sufficient to draw conclusions as to the accuracy of Chainalysis' clustering methods." ECF No. 179 at 9. The defense is *admitting* that, not only can it not explain what specifically in the source code it is looking for, it may not even be in the source code at all. The defense continues to seek leave from the Court to engage in a pure fishing expedition, now using trawling nets.

The defense further emphasizes the breadth of its request, explaining that the request is "not necessarily restricted to Chainalysis Reactor" and is intended to cover additional software, systems, and data "created by used by Chainalysis." ECF No. 179 at 4. The defense seems to seek access to and/or copies of all of the computers that Chainalysis as a corporation was using during the pendency of this case. (ECF No. 179 at 6, seeking "any machine/disk images of cloud VMs or computers that Chainalysis was using at the time of the investigation").[3] The request even extends beyond Chainalysis itself, including requests pertaining to Chainalysis vendors. ECF No. 179 at 5. The defense goes so far as to seek to analyze the "customer notes and annotations" of each and every Chainalysis user. *Id*. The government's prior oppositions discussed the relevant framework under *United States v. Nixon*, 418 U.S. 683, 700 (1974) and related cases for assessing

---

[3] The defense requests appear to be premised on the false idea that Chainalysis somehow conducted the "investigation" in this case, instead of federal law enforcement investigators. The government does not understand the defense team's basis for continuing to maintain this demonstrably untrue conspiracy theory in filings before this Court.

specificity, relevance, and admissibility in considering Rule 17(c) subpoenas; the government does not repeat that full discussion here, but notes that the defense's latest request falls short for all the same reasons previously discussed.  ECF No. 161.

The defense then indicates that it seeks access to an "Independent Software Environment" that appears to be a standalone, duplicate copy of Chainalysis' entire technical infrastructure, with access to and support from Chainalysis engineers and employees.  The defense does not offer any citation for its novel reading of Rule 17 that would allow for such mandatory and burdensome set-up as a subpoena production.

### C. Defense Fishing Expedition Raises Broader Concerns That Would Warrant Additional Briefing

The defense seeks to have this Court stamp the defense's review all of the tracing that the "investigators" conducted using Reactor *without limitation to the instant case*.  It is unclear whether the defense is referring to the government, Ms. Bisbee, or both.  In any event, this sweeping data pull would reveal detailed information about numerous ongoing sensitive law enforcement investigations that are entirely unrelated to Mr. Sterlingov's matter.  The defense is not entitled to, for example, Mr. Scholl's work product for active ransomware investigations, or Ms. Bisbee's tracing in support of a darknet vendor trial in another district.  Defense can no more seek this through access to Chainalysis' internal records than it can through discovery received directly from the Department of Justice.

Defense's listed bases and justifications for seeking this information, ECF No. 179 at 11-12, confirm that the information sought has nothing to do with assessing whether Chainalysis' software accurately applies the heuristics.  Rather, the defense submits that the information would reveal, *inter alia*, the users' activity across multiple investigations, frequency of Reactor use, and

patterns of saving reports. The defendant has now not only graduated to using a trawling net in his fishing expedition, he is seeking from the Court to leave the Potomac and traverse the entire Atlantic Ocean with his broad net trailing behind.

Indeed, other areas of the defense request suggest that they would in fact be seeking access to the logs of *all* users' queries, which would potentially reveal detailed information about thousands of active and ongoing law enforcement investigations. The broad language of the defense request suggests that similar issues may arise under other areas where the defense request extends beyond the Reactor software itself. The government vigorously objects to any production in this vein. If the court were inclined to grant such a sweeping, dangerous request, the government would seek the opportunity to more thoroughly brief the serious law enforcement and national security repercussion of revealing this information.

## II.     Expert Testimony Notice Does Not Comply With Rule 16

The defense notice is styled as a notice of expert testimony at trial as well as review of the Chainalysis source code. To the extent the notice is intended to serve as an expert disclosure pursuant to Rule 16, the disclosure is facially insufficient. The notice does not set forth the expert's opinions, or his bases for them. Instead, it is a laundry list of speculation dressed up in technical jargon intended to justify a Rule 17(c) fishing expedition. Presumably, the defense envisions that Mr. Bishop would formulate his actual *opinions* after reviewing all of Chainalysis's software and computer infrastructure and all of the government investigations that have used it during the past decade. At what point would such a disclosure be made?

This is a clear violation of the plain text of Rule 16, which requires that the substance and bases for any defense expert's testimony be disclosed "sufficiently *before trial* to provide a fair opportunity for the government to meet the defendant's evidence." Fed. R. Crim. P. 16(b)(1)(C)(ii) (emphasis added). The remarkable breadth of the request does not lend itself to a review that can

6

be completed in the five remaining days prior to the start of trial—let alone a Rule 16-compliant disclosure of Mr. Bishop's yet-to-be-formulated opinions, a fair opportunity for the government to review, and time for the Court and parties to litigate the glaring *Daubert*, relevance, and Rule 403 issues that would arise from such proposed testimony.  The expert disclosure requirements in Rule 16 are intended in part to prevent unfair surprise by either party.  A mid-trial disclosure by the defense would directly contravene Rule 16's plain text, and it would leave the government without the opportunity to evaluate the defense expert's opinions, much less to identify and retain a proper rebuttal witness if needed.  This is precisely what the expert witness disclosure requirements are intended to guard against.

This is a problem of the defense team's own making.  The defense demanded a nine-month continuance of this trial *over the government's objection* in order to identify suitable experts, but they have repeatedly ignored the Court's directives, failed to accept proposed accommodations from Chainalysis, and continue to move the goalposts and stake out maximalist positions that go well beyond the scope of Rule 17(c) or Rule 16.

7

**CONCLUSION**

For the foregoing reasons, and those set forth in the previous briefing and hearings on the matter, the Court should continue to deny leave for the defense to issue its proposed Rule 17(c) subpoena on Chainalysis, and it should not allow as-yet undisclosed "expert" testimony from Mr. Bishop in violation of Rule 16(b)(1)(C)(ii).

        Respectfully submitted,
        MATTHEW M. GRAVES
        UNITED STATES ATTORNEY
        D.C. Bar No. 481052

BY:    */s/ Christopher B. Brown*
        Christopher B. Brown, D.C. Bar No. 1008763
        Assistant United States Attorney
        U.S. Attorney's Office for the District of Columbia
        601 D Street, N.W.
        Washington, D.C. 20530
        (202) 252-7153
        Christopher.Brown6@usdoj.gov

        */s/ C. Alden Pelker*
        C. Alden Pelker, Maryland Bar
        Jeffrey Pearlman, D.C. Bar No. 466901
        Trial Attorneys, U.S. Department of Justice
        Computer Crime & Intellectual Property Section
        1301 New York Ave., N.W., Suite 600
        Washington, D.C. 20005
        (202) 616-5007 (Pelker)
        (202) 579-6543 (Pearlman)
        Catherine.Pelker@usdoj.gov
        Jeffrey.Pearlman2@usdoj.gov