# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CRIMINAL NO. 21-cr-399 (RDM)** |
| | : | |
| **ROMAN STERLINGOV,** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S RESPONSE TO DEFENSE NOTICE REGARDING COURT'S PROPOSED PROTECTIVE ORDER GOVERNING REVIEW OF CHAINALYSIS'S PROPRIETARY INFORMATION

The United States of America, by and through the United States Attorney for the District of Columbia, files the following response to the defense's September 20, 2023, notice regarding Ms. Still's refusal to review Chainalysis heuristics information. Ciphertrace's position as set forth in the notice is inconsistent with Ms. Still's work to date on this case, which has already entailed extensive review of detailed Chainalysis heuristics information.

As the trial in the instant matter was continued in order to allow Ms. Still to review the more detailed heuristics information at the defense's request, the government seeks clarity as to whether Ciphertrace now intends to terminate Ms. Still's work on this case in its entirety. If so, the government requests a careful colloquy as to the nature and timing of the changed circumstances that have given rise to this about-face. The government strongly objects to any continuance of this case beyond October 10, 2023. Furthermore, in light of the defense notice, the government seeks Court review of the handling of the previously produced information by Ciphertrace employees, consistent with the terms of the original protective order, ECF No. 18.

### I.    The Defense Notice Should Not Impact Trial Scheduling

The recent defense notice suggests that Ciphertrace may be fundamentally changing Ms. Still's approved role on this case, to the point of precluding further testimony at trial that would

discuss or opine on Chainalysis heuristics.  If Ms. Still is simply declining to review the supplemental production of materials, the parties should proceed with trial on October 10, 2023, with Ms. Still's testimony hewing to her original report.  Defense may use the information from the supplemental production to inform its cross-examination, as consistent with the protective order.  If Ciphertrace is now retracting Ms. Still as an expert witness, the government respectfully requests the Court set the matter for trial on October 10, 2023.  The defense has had extensive opportunity to identify qualified experts over several months; based on the track record to date, it is highly unlikely that the defense will identify a new, qualified expert who can complete an appropriate review and survive a *Daubert* inquiry before February 12, 2024.  The government reiterates its concern that a continuance until February 2024 will only be met by another request for a further continuance, undermining the public's and Mr. Sterlingov's right to a speedy trial. The defense has had ample opportunity to prepare, and will be able to launch a robust cross-examination of the government experts.

## II.     Ms. Still Has Already Reviewed Sensitive Chainalysis Heuristics Information

To the extent that Ciphertrace counsel seeks to prevent Ms. Still from reviewing Chainalysis heuristics information, that horse has left the barn.  Ms. Still and Ciphertrace have already accepted, received, handled, analyzed, and opined on Chainalysis heuristic data.  The situation that Ciphertrace counsel purports to be attempting to prevent ("Neither Ciphertrace nor Ms. Still may accept, receive, handle, analyze, or otherwise opine on any of the heuristic data from Chainalysis, Inc., regardless of the scope of any protective order," ECF No. 199 at 1) has already occurred.  Indeed, Ms. Still's primary role in this case has been to deliver an "expert opinion" that Chainalysis' heuristics are unreliable — even going so far at times as to condemn Ciphertrace's

heuristics alongside those of Chainalysis.[1]  While the Court cannot force Ciphertrace to continue to donate its expert witness services to the defense, a careful inspection of what has transpired here — including what was represented to whom and when — is appropriate.  This is particularly appropriate given that the last-minute defense continuance on September 13, 2023, was based largely, if not entirely, on the defense's stated desire to provide Ms. Still with additional time to review the more granular information that the defense had requested — information that Ciphertrace is now saying it will not review.

Ms. Still's August 7, 2023, report and testimony at the August 22 and 23, 2023 *Daubert* hearings were based on her in-depth review of detailed information provided by Chainalysis regarding its heuristics.  That material included Ms. Bisbee's report as well as voluminous spreadsheets listing hundreds of thousands of addresses clustered by Chainalysis, and explanations of the bases for clustering them.  Ms. Bisbee's report described Chainalysis' clustering methodologies, including the numerous datapoints that the company assesses in applying behavioral heuristics.

Ms. Still undertook an extensive review of this material.  Ms. Still's report and testimony included discussion of her address-by-address analysis and assessment of Chainalysis clustering, including direct comparisons of the information from Chainalysis to the information in Ciphertrace's holdings.  *See* 8/22/23 Tr. at 121-124.  Her report — which, unlike the government

---

[1] *See, e.g.,* 8/22/23 Tr. at 151-152, 154 (testifying, *inter alia*, that Ciphertrace's change address heuristic "is wrong" and "I don't think it's accurate enough, and I think it can be misleading," that Ciphertrace has no algorithm or process to identify peel chains, that Ciphertrace's heuristics have never been peer-reviewed, that she "can't recall" the error rate for Ciphertrace's clustering heuristics, and that "I'm also not saying we're 100 percent accurate either" in clustering); 8/23/23 Tr. at 244 (testifying that Ciphertrace's proprietary software tool did not flag specific CoinJoin transactions listed in Ms. Still's expert report and would have mistakenly clustered them as a co-spends).

expert reports, was filed on the public docket and was widely distributed in the crypto press[2] — included a detailed comparison of Chainalysis' Bitcoin Fog cluster to Ciphertrace's, ECF No. 159-1 at 28-29, as well as a comparison of the clusters for the additional darknet sites discussed in the government's reports, *id.* at 34. Ms. Still has an entire section in her report titled, "Evaluation of Chainalysis Expert Reports," and she testified regarding her assessment of Chainalysis' Heuristics 1 and 2. *See, e.g.,* 8/22/23 Tr. at 111. Ms. Still's report also included a section on "Evaluation of the Application of Heuristic 2 to Chainalysis' Model," in which she specifically opined regarding "the application of Heuristic 2 by Chainalysis." ECF No. 159 at 21.

The recent defense notice states, "Ciphertrace and Ms. Still must respectfully decline the Court's invitation to review and opine on proprietary data of a competitor." ECF No. 199 at 2. This confuses the genesis of the supplemental heuristics information while ignoring what has already occurred. Ms. Still and Ciphertrace already agreed to review and opine on Chainalysis heuristics when they committed to serve as defense experts in this matter. The additional information provided by Chainalysis was produced in part based on Ms. Still's demand, set forth in her sworn report and adopted in her testimony, that, "Basically, I need an audit trail of every single cryptocurrency address from the time it was collected to the present. This is a basic requirement necessary to validate any data." ECF No. 159-1 at 7. The defense has pushed for additional information, purportedly to enhance Ms. Still's review and analysis. On September 13, 2023, the day before trial was slated to begin, defense counsel represented that he had spoken with

---

[2] Ciphertrace appears to have pushed breathless and one-sided coverage of Ms. Still's report and its meritless criticism of Chainalysis, while ignoring Ms. Still's admissions on the stand about the shortcomings of Ciphertrace's own proprietary software tool. *See, e.g.*, Tristan Greene, *CipherTrace expert says Chainalysis data contributed to 'wrongful arrest' of alleged Bitcoin Fog founder*, CoinTelegraph (Aug. 9, 2023), https://cointelegraph.com/news/cipher-trace-expert-says-chainalysis-data-contributed-wrongful-arrest-alleged-bitcoin-fog-founder.

Ms. Still the evening prior and that, following her consultations with superiors at Ciphertrace, Ciphertrace was objecting to the new protective order because "they need to take the data and use CipherTrace's systems to evaluate the stuff," with "stuff" appearing to refer to the detailed heuristics data. 9/13/23 Tr. at 8. It now appears that the issue is just the opposite — Ciphertrace does not want to have the data at all.

Ciphertrace[3] can hardly claim that it was unaware of Ms. Still's work on the case prior to the most recent protective order dispute. At the August 22, 2023 *Daubert* hearing, Ms. Still testified that her work on *U.S. v. Sterlingov* was officially sanctioned by Ciphertrace management, including Dave Jevans, Pamela Clegg, and Ciphertrace leadership. 8/22/23 Tr. at 144. Ms. Still testified that she was working pro bono and that Ciphertrace was donating the working hours for the case and covering a portion of her expenses, which appeared to be valued well in excess of $150,000 even before trial time was considered. 8/22/23 Tr. at 140-142 (estimating that she had spent "over 150 hours looking and working on this case," and that her usual rate was $1,000 to $2,000 per hour, 8/22/23 Tr. at 142). Ms. Still's report and testimony on behalf of Ciphertrace prompted significant media attention in the crypto news that would have garnered the attention of numerous individuals at Ciphertrace. Ms. Still herself commented on a LinkedIn post discussing her report.

The language in Ms. Still's report further belies an ulterior motive by Ciphertrace in supporting Ms. Still's participation in the case. Ms. Still's report reads as an attack on a competitor, with its final conclusion recommending that, "To prevent wrongful arrests like this one, and failures in compliance, like with FTX, it is recommended that Chainalysis, and their

---

[3] The government understands that Ciphertrace's outside counsel may have only recently been alerted to these issues, and is not intending to question Ciphertrace counsel's good faith basis for making its representations.

methodologies of blockchain analysis be independently audited." ECF No. 159-1 at 40. This gratuitous recommendation, entirely divorced from the issues at play in this case, emphasized Ms. Still's full and intentional participation in the defense's singular, strategic focus of discrediting and harassing Ciphertrace's competitor, Chainalysis. Based on the record available, Ms. Still either acted as a rogue entity and misled the Court regarding Ciphertrace management's approval of her work, or Ms. Still's partnership with defense counsel was part of a campaign by Ciphertrace to discredit Chainalysis, which campaign Ciphertrace counsel is now belatedly trying to halt. Either way, the gamesmanship should not interfere with the public's and Mr. Sterlingov's interest in a speedy trial.

### III.   Protective Order Review

The defense's most recent notice regarding Ciphertrace's position also raises concerns regarding Ms. Still's prior acceptance of and handling of Chainalysis heuristics information under the original protective order. As set forth above, Ms. Still has already conducted an extensive review of Chainalysis heuristics information, which was produced to the defense subject to the original protective order entered in the case, ECF No. 18. That protective order included strict prohibitions on the use of the material for any purpose outside the defense of the instant case. *Id.* at 1 (requiring that materials produced in discovery can be used "solely in connection with the defense of this case, *and for no other purpose*, and in connection with no other proceeding, without further order of this Court") (emphasis added). Ciphertrace's counsel's new pronouncement that any review of such materials is improper raises significant questions and concerns regarding the understanding of and adherence to the original protective order.

The original protective order required any expert retaining copies of the materials to sign an acknowledgement form, attached to the protective order as Attachment A. ECF No. 18 at 1, 5.

The form further states that, "a copy of this acknowledgment will be provided to the Court for *ex parte* review upon request by the Court or the United States." ECF No. 18 at 5. The government hereby requests the Court review the Attachment A forms executed by Ms. Still, and any Ciphertrace employee, to ensure that they did agree to be bound by the terms. The government notes that the section of Ms. Still's report comparing Ciphertrace's and Chainalysis' clustering data suggests that Ms. Still may have shared Chainalysis' heuristics information with others at Ciphertrace. In particular, Ms. Still refers to the work done by "Ciphertrace," (e.g., "Ciphertrace identified 527,731 addresses that did not cluster via Chainalysis Heuristic 1") and uses the pronoun "we." ECF No. 159-1 at 21, 28. In her testimony, Ms. Still repeatedly referred to consultations with Ciphertrace's "engineering" team and other Ciphertrace personnel, suggesting that her report was a group effort involving multiple Ciphertrace employees. *See, e.g.*, 8/23/23 Tr. at 246 ("I need to speak with engineering."), 247 ("I'm sorry, Your Honor, but I really do need to confirm with engineering before I actually offer this testimony in court."), *id.* ("I have been informed that we do [control for CoinJoins], but I have not confirmed with engineering. The person who told me does not work for engineering.").

Pursuant to the terms of the Protective Order entered in this case, ECF No. 18 at 5, the government formally requests that Ciphertrace counsel be required to submit copies of the Protective Order "Acknowledgment" signed by Ms. Still and any other Ciphertrace employee exposed to the government's discovery in this case to the Court for *ex parte* review, certify which Ciphertrace employees have been exposed to any such information provided pursuant to the Protective Order, and confirm that they have adhered to the Protective Order's terms and will continue to abide by them.

IV.     Conclusion

The most recent defense filing seeks to turn back time and undo a disclosure that has already been made.  To the extent that the defense intends to use this as a basis for further delaying trial, the government strongly objects.  The government is further concerned that the most recent filing suggests that the defense, Ms. Still, and Ciphertrace may have failed to properly safeguard the previously produced information as required by the terms of the original protective order, ECF No. 18.  The government formally requests that Ciphertrace and defense counsel be prepared to address these concerns at the hearing on September 21, 2023.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

BY:     /s/ Christopher B. Brown
Christopher B. Brown, D.C. Bar No. 1008763
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-7153
Christopher.Brown6@usdoj.gov

/s/ C. Alden Pelker
/s/ Jeffrey Pearlman
C. Alden Pelker, Maryland Bar
Jeff Pearlman, D.C. Bar No. 466901
Trial Attorneys, U.S. Department of Justice
Computer Crime & Intellectual Property Section
1301 New York Ave., N.W., Suite 600
Washington, D.C. 20005
(202) 616-5007 (Pelker)
(202) 579-6543 (Pearlman)
Catherine.Pelker@usdoj.gov
Jeffrey.Pearlman2@usdoj.gov