## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 21-cr-399 (RDM) |
| | : | |
| ROMAN STERLINGOV, | : | |
| | : | |
| Defendant. | : | |

### GOVERNMENT'S MOTION *IN LIMINE* FOR EXPEDITED APPOINTMENT OF CONFLICT-FREE COUNSEL AND CONFLICT INQUIRY HEARING

The United States of America respectfully moves this Court *in limine* for appointment of conflict-free counsel and a conflict inquiry hearing well in advance of the February 12, 2024 trial date, to address defense counsel's filing on January 19, 2024, of a lawsuit against the government's expert witness's employer, Chainalysis, in New York State Court.

In addition, the government informs the Court about possible violation of the Protective Order in this case by anyone involved in defense counsel's New York lawsuit; about defense counsel using their lawsuit as an end-run around Local Criminal Rule 57.7(b); and about the New York lawsuit being the latest effort in defense counsel's campaign of harassment and attempted witness intimidation targeting a government witness.

### FACTUAL BACKGROUND

On December 26, 2023, an anonymous Internet commentator published an opinion article in Bitcoin Magazine announcing advanced knowledge of a lawsuit being filed against Chainalysis by a Hong Kong-based "crypto project" called YieldNodes. As the Court may recall, the same anonymous Internet commentator previously published a gratuitous *ad hominem* attack against the government's expert witness from Chainalysis, claiming the witness was working for "corporate overlords" and was "better suited pursuing an art history degree"—in an article that was based on

the "unreleased transcript" of the June 23, 2023 *Daubert* hearing in this case.  *See* ECF No. 161, at 11-12.  In December, this anonymous Internet commentator wrote to promote the forthcoming lawsuit against Chainalysis, and explained that the lawsuit would be based on the defense allegations in this case: "YieldNodes now accuses Chainalysis of putting 'marketing ahead of reliability,' citing the admitted lack of scientific evidence for their flagship product . . . ."  The word "admitted" contains a hyperlink to the CourtListener page for the government's supplemental expert disclosure in this case, ECF No. 149-1 (which, contrary to the Internet commentator's characterization, nowhere "admit[s]" to "lack of scientific evidence").

On January 17, 2024—two days before defense counsel filed their lawsuit against Chainalysis—a YouTube video was released showing defense counsel's appearance at a cryptocurrency conference in May 2023 to comment about this case and solicit donations.  In the video, Mr. Hassard explicitly linked defense counsel's advice regarding the government's prior plea offer with the attorneys' desire to "take down Chainalysis," stating:

> A couple of days ago, we get this plea offer from the government, right.  And Roman calls us, we're talking to him about the plea.  'I don't want to hear about the plea, you know, I want to talk about the case, we're taking this sh*t, you know.'  And I was like, you know, that's the f***ing right attitude, man, let's f***ing go, let's take down Chainalysis, let's take down DOJ on this one, you know?

Profits Over Justice w/ Michael Hassard & Tor Ekeland #Monerotopia23, at 54:33 (Jan. 17, 2024), https://www.youtube.com/watch?v=_LBUdHK47o0.[1]

On January 19, 2024, the same two lawyers representing the defendant in this case filed a lawsuit in New York State Court, accusing Chainalysis of defamation and tortious interference

---

[1] Release of this video on YouTube may also constitute an independent violation of Local Criminal Rule 57.7(b) and the Court's August 29, 2023 Order, if defense counsel authorized it.  *See* LCrR 57.7(b)(3) (prohibiting attorneys from, *inter alia*, "authoriz[ing] the release" of an out-of-court statement in violation of the Rule "which a reasonable person would expect to be disseminated by means of public communication").

with business relationships.  *See* Compl., *Exceptional Media Ltd. v. Chainalysis, Inc., et al.* (N.Y. Sup. Ct. Jan. 19, 2024), attached as Ex. A.  The lawsuit seeks compensatory and punitive damages from Chainalysis, claiming damages of "at least" $650,000,000—as well as payment for the two attorneys' "costs of suit."  *Id.* at 12.

## ARGUMENT

### A.  Legal Framework

Criminal defendants are entitled to conflict-free defense counsel.  *See Strickland v. Washington*, 466 U.S. 668, 692 (1984).  A criminal defendant has a right to choose his counsel of choice, but that right is not absolute and "'is circumscribed in several important respects.'"  *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006) (quoting *Wheat v. United States*, 486 U.S. 153, 159 (1988)).  Although a trial court "must recognize a presumption in favor of [the defendant's] counsel of choice, . . . that presumption may be overcome not only by a demonstration of actual conflict [of interest], but by a showing of a serious potential for conflict."  *Wheat*, 486 U.S. at 164.

This Court has an independent duty to inquire into potential conflicts of interest.  "A court confronted with and alerted to a possible conflict of interest must take adequate steps to ascertain whether the conflicts warrant separate counsel."  *Wheat*, 486 U.S. at 160.  As the D.C. Circuit has recognized, "[t]here is no more important area" for the supervision of attorneys "than guaranteeing that the professional advocates give their causes 'warm zeal' unfettered by conflicting loyalties or interests."  *Polydoroff v. I.C.C.*, 773 F.2d 372, 375 (D.C. Cir. 1985).

In *United States v. Lopesierra-Gutierrez*, 708 F.3d 193 (D.C. Cir. 2013), the D.C. Circuit affirmed the twin procedural safeguards of a conflict inquiry hearing and the assistance of conflict-free counsel in order to address a potential conflict of interest by defense counsel.  The defendant

in *Lopesierra-Gutierrez* waived a potential conflict on the part of his trial counsel.  His trial counsel

had received laundered money from a government cooperator, raising potential criminal exposure

for the lawyer under 18 U.S.C. § 1957.  The district court held two status conferences in the matter.

At the second status conference, the defendant was represented by an outside conflicts counsel

who along with defendant's counsel and the government agreed that the defendant could waive

any conflict of interest.  The Court allowed the defendant to proceed with his counsel of choice.

*See id.* at 198-99.  The D.C. Circuit held that these safeguards ensured that the defendant's waiver

of the potential conflict was knowing and voluntary.  *Id.* at 202.

> The D.C. Circuit's decision in *Lopesierra-Gutierrez* also reiterated the district court's

independent duty to prevent conflicts that might affect the integrity of the proceedings:

> Also implicated are the court's own institutional interests, as guaranteeing conflict-free counsel protects not just defendants' rights, but also the federal courts' independent interest in ensuring that criminal trials are conducted within the ethical standards of the legal profession and that legal proceedings appear fair to all who observe them. . . .  Specifically, a court may decline to accept a waiver if the conflict of interest jeopardizes the integrity of the proceedings.  In making this determination, a court balances the defendant's right to choose his representative against both the defendant's countervailing right to conflict-free representation and the court's independent interest in the integrity of criminal proceedings.  The outcome of that balance turns on the nature and extent of the conflict.

*Id.* at 200 (cleaned up).

## B. Defense Counsel's Lawsuit Against Chainalysis Raises Potential Conflicts

Here, defense counsel's simultaneous representation of Roman Sterlingov in this criminal

trial and the plaintiff in the New York lawsuit against Chainalysis raises issues of divided loyalty

and the potential for compromised judgment in the defendant's criminal defense.  The D.C. Rules

of Professional Conduct provide that:

> (b) Except as permitted by paragraph (c) below, a lawyer shall not represent a client with respect to a matter if:

* * *

4

(2) Such representation will be or is likely to be adversely affected by representation of another client;

(3) Representation of another client will be or is likely to be adversely affected by such representation;

(4) The lawyer's professional judgment on behalf of the client will be or reasonably may be adversely affected by the lawyer's responsibilities to or interests in a third party or the lawyer's own financial, business, property, or personal interests.

D.C. R. Prof. Conduct 1.7(b)(2)-(4).  Paragraph 1.7(c) refers to the procedures to obtain informed consent from the lawyer's clients, and to certify the lawyer's ability to provide competent and diligent representation notwithstanding the conflict.

Courts have recognized conflicts where lawyers have competing interests that might affect tactical decisions during the course of a criminal representation.  For example, in *United States v. Hearst*, 638 F.2d 1190, 1193 (9th Cir. 1980), the Ninth Circuit found that a defense attorney securing a book contract about a widely publicized criminal trial gave rise to a potential conflict of interest, and the Ninth Circuit remanded for a conflict hearing.  *Id.* at 1195.  Although the book contract undoubtedly provided an incentive for the defense attorney to seek an acquittal, the Ninth Circuit also found that it could have affected the attorney's "tactical decisions"—including decisions about whether to seek a continuance, whether to seek a change of venue to minimize pretrial publicity, and whether to "put her on the witness stand, so her story would go on the public record and he would not be constrained by the attorney-client confidentiality rules."  *Id.* at 1193. Under these circumstances, "the district court erred" in denying a conflict hearing.  *Id.*; *see also United States v. Hurt*, 543 F.2d 162 (D.C. Cir. 1976) (remanding for appointment of conflict-free counsel where defendant's appellate counsel was being sued for defamation by his former trial counsel, explaining that "[t]he pressure under which appellate counsel labored may well have resulted in subtle restraints which not even he could pinpoint or define").

In much the same way, defense counsel's tactical decisions in this criminal proceeding may be affected by their simultaneous representation of YieldNodes in its lawsuit against Chainalysis. For example, as in the *Hearst* case, defense counsel's decision to advise the defendant whether or not to testify at trial may be affected by considerations of publicity or getting certain statements into the public record. *See* 638 F.2d at 1193. Their simultaneous representation may have the effect of "locking-in" a specific defense strategy focused on Chainalysis, even if that strategy is not (or is no longer) in the defendant's best interest. Defense counsel may be reluctant to shift focus to alternative defenses, or to seek an advantageous plea or cooperation deal for his client. As noted above, when Mr. Hassard described defense counsel's consultations with their client about a pending plea offer (to a public audience), he explicitly linked those consultations to the attorneys' desire to use the defendant's case as a vehicle to "take down Chainalysis." Moreover, prompted by defense counsel's recent inquiry that defendant "would be interested in a plea deal," the government recently re-opened its prior plea offer, underscoring the need for the defendant to be advised by conflict-free counsel.

The YieldNodes lawsuit also gives defense counsel a financial stake in "tak[ing] down Chainalysis," because the defendant's counsel are seeking payment of attorney's fees and costs from Chainalysis. It is a bedrock principle, codified in the D.C. Rules of Professional Conduct among others, that "[a] lawyer shall not enter into an arrangement for, charge, or collect a contingent fee for representing a defendant in a criminal case." D.C. R. Prof. Conduct 1.5(d); *see Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 633 n.10 (1989) ("[C]ontingent fees in criminal cases are generally considered unethical."). Given defense counsel's possible efforts to use material from this prosecution to support their lawsuit against Chainalysis—in which they are seeking $650 million in damages as well as their "costs of suit"—they have effectively given

themselves a financial interest in the outcome of this criminal case, or at minimum a financial interest in the success of one particular defense strategy here: "tak[ing] down" a particular government witness.

In short, defense counsel now have competing interests that may compromise their ability to give their client "detached advice" related to the criminal case. *See* D.C. R. Prof. Conduct 1.7, Cmt. [10].

**C. Defense Counsel's Lawsuit Risks Violation of Protective Order, Creating Further Risk of Conflict**

The Protective Order is clear that "[a]ll materials provided by the United States . . . may be used by the defendant and defense counsel … <u>solely</u> in connection with the defense of this case, and for no other purpose, and in connection with no other proceeding, without further order of this Court." ECF No. 18 at para 1. And the Court has made it clear that the Protective Order in this case "applies to each and every individual who has viewed or will view" discovery produced in this case, including "information provided by Chainalysis," and that any person who has viewed such material in this case "may not use that information for any purpose other than in connection with this case." Minute Order (Sept. 21, 2023).

The government is aware that the defense filed *ex parte* Protective Order acknowledgment forms reflecting disclosure of protected discovery material that "do not include an individual's full name, but instead include what appear to be monikers or nicknames." Minute Order (Nov. 13, 2023). The Court's Minute Order also referred to "page 106" of the *ex parte* defense filing— raising concerns that the defense has disclosed protected discovery material to a substantial number of persons whose identity remains secret from the government, Chainalysis, and the public. *See id.*

Defense counsel's newly-filed lawsuit against Chainalysis may involve some of these same outside persons, including undisclosed consulting experts or anonymous Internet commentators who go by "monikers or nicknames," who have reviewed the discovery in this case.  If so, defense counsel and others may be at risk of breaching the Protective Order which specifically prohibits use of discovery "in connection with" any "other proceeding."  It will be particularly difficult for this Court to supervise compliance with the Protective Order in a separate New York State court proceeding after this trial is concluded.[2]

### D. Defense Counsel's Lawsuit Constitutes Harassment and Attempted Intimidation of Government's Expert

During the September 13, 2023 Pretrial Conference in this case, the Court expressed concern about defense counsel's threats to sue Chainalysis, and questioned whether the defendant's unsupported discovery demands were "intended to dissuade Chainalysis from participating in this case in particular, but perhaps other cases more generally, and at least, arguably, constitute a form of harassment."  9/13/23 Tr. at 115.  The uncanny timing of defense counsel's lawsuit against Chainalysis, filed just weeks before trial, appears intended to further impose costs and dissuade Chainalysis from participating in this case.[3]

---

[2] If a breach of the Protective Order were to occur, that would compound the danger of a defense counsel conflict and could lead to a future claim of ineffective assistance of counsel.  *See United States v. Prakazrel Michel*, D.D.C. Case No. 1:19-cr-148-CKK, ECF No. 310 at 43-48 (motion for new trial recounting "conflict of interest" created by protective order breach).

[3] The timing and substance of the lawsuit against Chainalysis may also fit the profile of a Strategic Lawsuit Against Public Participation (SLAPP), further raising the stakes for defense counsel by exposing them to liability under Anti-SLAPP laws for fees and costs as well as compensatory and punitive damages.  *See* D.C. Code §§ 16-5501, *et seq.*; N.Y. Civil Rights Law §§ 70-a, 76-a; *see United States v. Hurt*, 543 F.2d 162 (D.C. Cir. 1976) (finding potential conflict based on defense counsel's exposure to legal liability in pending defamation suit).

**E.  Defense Counsel's Lawsuit May Be Intended To Circumvent Local Criminal Rule 57.7(b)**

Finally, the government is concerned that defense counsel's lawsuit against Chainalysis may be intended to provide a means of circumventing Local Criminal Rule 57.7(b), by providing a fig leaf for defense counsel to continue making inflammatory out-of-court statements about the "identity, testimony, or credibility" of one of the government's witnesses.  *See* LCrR 57.7(b)(3)(iv).

**F.  The Court Should Appoint Conflict-Free Counsel and Hold a Conflict Inquiry Hearing**

The defendant may waive an apparent conflict of interest subject to full disclosure and the defendant's informed consent.  *See* D.C. R. Prof. Conduct 1.7(c)(1)-(2) (conflict is waivable if client "provides informed consent . . . after full disclosure of the existence and nature of the potential conflict and the possible adverse consequences of such representation" and counsel "reasonably believes" he will be able to provide "competent and diligent representation" despite such conflict).  As the Rules explain, "[t]he underlying premise is that disclosure and informed consent are required before assuming a representation if there is any reason to doubt the lawyer's ability to provide wholehearted and zealous representation of a client . . . ."  *Id.* R. 1.7, Cmt. [7].

Under the circumstances, the government moves that the Court follow the procedure approved in *Lopesierra-Gutierrez* and appoint a conflict-free counsel to independently advise the defendant of the risks of proceeding with his current counsel of choice.  The government further moves that the Court hold a conflict inquiry hearing to ensure the defendant is aware of the potential conflicts arising out of his defense counsel's simultaneous representation of YieldNodes in the New York lawsuit against Chainalysis, and satisfy itself that the defendant has made a knowing and voluntary waiver of the potential conflict.

Given the imminency of the February 12, 2024 trial date—which has already been continued twice, over the government's objections—the government urges the Court to act on an expedited basis.

## CONCLUSION

For the foregoing reasons, the Court should appoint conflict-free counsel to advise the defendant and hold a conflict inquiry hearing.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

BY:     */s/ Christopher B. Brown*
Christopher B. Brown, D.C. Bar No. 1008763
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-7153
Christopher.Brown6@usdoj.gov

*/s/ C. Alden Pelker*
*/s/ Jeffrey Pearlman*
C. Alden Pelker, Maryland Bar
Jeff Pearlman, D.C. Bar No. 466901
Trial Attorneys, U.S. Department of Justice
Computer Crime & Intellectual Property Section
1301 New York Ave., N.W., Suite 600
Washington, D.C. 20005
(202) 616-5007 (Pelker)
(202) 579-6543 (Pearlman)
Catherine.Pelker@usdoj.gov
Jeffrey.Pearlman2@usdoj.gov