# Exhibit A

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)   INDEX NO. UNASSIGNED
NYSCEF DOC. NO. 2                                                                          RECEIVED NYSCEF: 01/19/2024

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| EXCEPTIONAL MEDIA LTD., <br><br> Plaintiff, <br><br> -against- <br><br> CHAINALYSIS, INC., KIM GRAUER, ERIC JARDINE, ERIN LEOSZ, and HENRY UPDEGRAVE, <br><br> Defendants. | **CIVIL COMPLAINT DEMAND FOR JURY TRIAL** <br><br> Index No.: _____ |

Plaintiff, Exceptional Media Ltd. ("Exceptional Media"), by and through their undersigned attorneys, file this Civil Complaint against Chainalysis, Inc., Kim Grauer, Eric Jardine, Erin Leosz, and Henry Updegrave, and allege as follows:

**NATURE OF THE ACTION**

1. This suit arises out of Chainalysis's defamatory statements against Plaintiff Exceptional Media Ltd. As described below, Plaintiff suffered substantial reputational and economic loss totaling over $650,000,000 as a direct result of the defamatory false statements published globally by Defendants.

2. Specifically, Chainalysis defamed Exceptional Media by falsely flagging Exceptional Media's Yieldnodes project (hereinafter referred to as "Yieldnodes") as a scam in its Reactor blockchain tracing software sometime in 2022, and falsely identifying Yieldnodes as the second largest crypto scam in the world in the year 2022 to a global audience in February 2023.

3. On page 87 of Chainalysis globally-distributed document titled *The 2023 Crypto Crime Report* ("2023 Crypto Crime Report"), in a chapter titled "Scams," and a section titled "2022 crypto scam activity summarized," Defendants publish a bar graph titled "Top 10 crypto

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Case 1:21-cr-00399-RDM   Document 221-1   Filed 01/22/24   Page 3 of 13

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)                    INDEX NO. UNASSIGNED
NYSCEF DOC. NO. 2                                                                                     RECEIVED NYSCEF: 01/19/2024

scams by revenue, 2022" in which Defendants defame Plaintiff by identifying YieldNodes as the second largest cryptocurrency scam of 2022.

4. At all relevant times, Defendants acted maliciously, intentionally, recklessly and negligently, consistently prioritizing financial gain over the accuracy of their public statements.

5. As a direct result of the globally distributed, inaccurate, and defamatory statements published by Defendants, cryptocurrency exchanges around the world froze cryptocurrency accounts and wallets linked to Yieldnodes and its clients.

6. As a direct result of Chainalysis' globally publicized statements falsely labelling Exceptional Media as a multi-million-dollar crypto scam, Exceptional Media suffered significant damage to their business and reputation and suffered irreparable harm to business relationships.

**PARTIES**

7. Plaintiff Exceptional Media is a cryptocurrency company located in Hong Kong with a principal place of business located at Suite 1905, 19/F, Tower Two Lippo Centre, 89 Queensway, Admiralty, Hong Kong.

8. Yieldnodes is a service operated and controlled by Exceptional Media that offers masternoding services to its clients.

9. Defendant Chainalysis Inc. is a Delaware corporation registered as a foreign corporation in New York State, with its primary place of business located at 114 Fifth Avenue, 18th Floor, New York, NY 10011.

10. Kim Grauer is the Director of Research at Chainalysis and a named author of the defamatory 2023 Crypto Crime Report.

11. Eric Jardine is the Cybercrimes Research Lead at Chainalysis and a named author of the defamatory 2023 Crypto Crime Report.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

2 of 12

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)   INDEX NO. UNASSIGNED
NYSCEF DOC. NO. 2                                                                       RECEIVED NYSCEF: 01/19/2024

12.  Erin Leosz is the Content Marketing Manager at Chainalysis and a named author of the defamatory 2023 Crypto Crime Report.

13.  Henry Updegrave is the Senior Content Marketing Manager at Chainalysis and a named author of the defamatory 2023 Crypto Crime Report.

## JURISDICTION AND VENUE

14.  This Court has personal jurisdiction over the Defendants under NY CPLR § 302 (a)(i) (ii) & (ii) because Defendants:

   A.   Conduct business and committed their tortious acts within New York County;

   B.   Contract for services within New York County;

   C.   Committed their tortious acts within New York County while regularly doing and soliciting business, and engaging in a persistent course of conduct, in New York County;

   D.   Derived substantial revenue from services rendered in New York County;

   E.   Should have reasonably expected their actions to have consequences in New York County; or

   F.   Derived substantial revenue in New York County from interstate and international commerce.

15.  Venue is proper in New York County under NY CPLR § 503(a) and (c) because;

   A.   One or more of the Defendants reside and work in New York County;

   B.   Defendant Chainalysis Inc. is a foreign corporation registered in the State of New York with its principal place of business in New York County; or

   C.   A substantial part of the events and omissions alleged in this Complaint

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Case 1:21-cr-00399-RDM   Document 221-1   Filed 01/22/24   Page 5 of 13

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)   INDEX NO. UNASSIGNED
NYSCEF DOC. NO. 2   RECEIVED NYSCEF: 01/19/2024

occurred in New York County.

16. Venue is proper in New York County under NY CPLR § 509 because Plaintiff designates venue in this county.

## BACKGROUND

17. For almost three years, starting in or around 2020, Plaintiff Exceptional Media's Yieldnodes service successfully provided masternoding services for its client base.[1]

18. A masternode is a key component in certain blockchain networks, designed to enhance the functionality and performance of the network. It plays a crucial role in facilitating specific features, such as faster transaction processing, increased privacy, and decentralized governance.

19. To become a masternode operator, an individual must typically fulfill certain requirements, such as holding a minimum amount of the native cryptocurrency of the blockchain network. This ensures a level of commitment and stake in the network.

20. Masternodes require an amount of cryptocurrency to be locked up to help prevent malicious behavior, as the masternode operator then has a financial interest in the network's stability. This also serves as a way to prioritize serious participants over those with malicious intentions.

21. Masternodes perform essential functions in the network, including validating and authenticating transactions. Unlike regular nodes, masternodes have additional responsibilities beyond basic transaction verification, such as enabling features like instant or private

---

[1] *See* https://www.investopedia.com/terms/m/master-node-cryptocurrency.asp ("Master nodes are part of the infrastructure that sustains cryptocurrencies such as Bitcoin, Ethereum, and Dash. Unlike regular nodes, master nodes do not add new blocks of transactions to the blockchain. Instead, they verify new blocks and perform special roles in governing the blockchain.")

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

4

4 of 12

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)　　INDEX NO. UNASSIGNED
NYSCEF DOC. NO. 2　　RECEIVED NYSCEF: 01/19/2024

transactions.

22. Many blockchain networks use a consensus mechanism, such as Proof-of-Stake (PoS) or a variation of it, to select masternodes to create new blocks and validate transactions. The likelihood of being selected is often proportional to the amount of cryptocurrency held as collateral by the masternode.

23. Masternodes often play a role in the governance of the blockchain network. This may involve voting on proposals for protocol upgrades, changes in parameters, or other decisions that impact the network. Masternode operators typically have voting power based on the amount of cryptocurrency they've staked.

24. In return for their services they provide, masternode operators receive payments in the form of the native cryptocurrency. These payments can include transaction fees, block rewards, or a combination of both. The incentive structure encourages operators to act in the best interest of the network.

25. To maintain masternode status and continue receiving rewards, operators must keep their nodes online and operational. This ensures the reliability and availability of masternodes in the network.

26. In summary, a masternode serves as a specialized and incentivized node in a blockchain network, contributing to enhanced functionality, governance, and security. It plays a crucial role in the consensus mechanism, transaction validation, and decision-making processes within the network.

27. Yieldnodes is a masternoding service with activity across a network of

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Case 1:21-cr-00399-RDM   Document 221-1   Filed 01/22/24   Page 7 of 13

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)   INDEX NO. UNASSIGNED
NYSCEF DOC. NO. 2                                                                      RECEIVED NYSCEF: 01/19/2024

decentralized blockchains.[2] The largest cryptocurrency project Yieldnodes provided masternoding services for is Sapphire ("SAPP"), which had at its peak a market capitalization of about $900 million USD.[3]

28. Defendant Chainalysis describes itself as:

> [T]he blockchain data platform. We provide data, software, services, and research to government agencies, exchanges, financial institutions, and insurance and cybersecurity companies in over 70 countries. Our data powers investigation, compliance, and market intelligence software that has been used to solve some of the world's most high-profile criminal cases and grow consumer access to cryptocurrency safely. Backed by Accel, Addition, Benchmark, Coatue, GIC, Paradigm, Ribbit, and other leading firms in venture capital, Chainalysis builds trust in blockchains to promote more financial freedom with less risk. For more information, visit www.chainalysis.com.[4]

29. In June 2023, TIME Magazine proclaimed Defendant Chainalysis as one of the 100 most influential companies in the world stating "Chainalysis has become the go-to sleuthing firm for tracking crypto crimes …."[5]

30. Upon information and belief, sometime in 2022, Chainalysis decided Yieldnodes was a scam, and flagged blockchain wallets associated with Yieldnodes in its proprietary softwares that it markets globally to law enforcement and government regulatory agencies. Chainalysis did so without ever contacting Plaintiff, something Defendants could have easily done simply by going to the Yieldnodes website.

31. In late 2022, Plaintiff's customers started informing them that their bitcoin

---

[2] *See* https://mitsloan.mit.edu/ideas-made-to-matter/blockchain-explained ("[b]lockchain technology allows a network of computers to agree at regular intervals on the true state of a distributed ledger.")
[3] *See* https://claim-sales.YieldNodes.com/#media-and-press.
[4] *See* https://go.chainalysis.com/2023-crypto-crime-report.html.
[5] *See* https://time.com/collection/time100-companies-2023/6285206/chainalysis/.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Case 1:21-cr-00399-RDM   Document 221-1   Filed 01/22/24   Page 8 of 13

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)                                INDEX NO. UNASSIGNED
NYSCEF DOC. NO. 2                                                                                          RECEIVED NYSCEF: 01/19/2024

withdrawals and deposits were being frozen by multiple cryptocurrency exchanges.

32. In or around December 2022, Plaintiff Exceptional Media attempted multiple times to reach a representative from Chainalysis and was repeatedly channeled to Chainalysis' sales representatives.

33. In or around January 2023, Plaintiff Exceptional Media attempted to acquire a Chainalysis Reactor software license.[6]

34. On or about January 16, 2023, Plaintiff Exceptional Media met with a Chainalysis sales representative and explained the difficulties customers of Yieldnodes were having with their deposits and withdrawals from multiple exchanges.

35. On or about January 17, 2023, a Chainalysis salesperson emailed Plaintiff a sales document. This four-page sales document states, among other things, that a limited review of 160,000 transactions per month through Chainalysis's Know-Your-Transaction ("KYT") surveillance system and Chainalysis Reactor software would cost an estimated $326,400 annually.

36. Plaintiff never agreed to purchase Chainalysis' services.

37. In or around the third week of January 2023, Plaintiff received a phone call from someone at Chainalysis, informing Plaintiff that Chainalysis had categorized Yieldnodes as a scam.

38. The Chainalysis representative informed Plaintiff that Yieldnodes' categorization could be lifted, or changed to "high-risk", but such a possibility should be viewed as an "opportunity" that may take a couple of months.

39. On or about January 23, 2023, Plaintiff emailed the Chainalysis sales

---

[6] Chainalysis Reactor is Chainalysis' proprietary blockchain surveillance, tracing, and compliance software.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

7

7 of 12

Case 1:21-cr-00399-RDM   Document 221-1   Filed 01/22/24   Page 9 of 13

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)    INDEX NO. UNASSIGNED
NYSCEF DOC. NO. 2                                                                      RECEIVED NYSCEF: 01/19/2024

representative, complaining about Chainalysis' designation of Yieldnodes' as a scam. Plaintiff explained Yieldnodes' business, and the significant damage done to that business by Chainalysis' labelling of Yieldnodes as a scam.

40.  Chainalysis never replied directly to Plaintiff's email. A sales representative did call after the email was forwarded to them. When Plaintiff asked about their January 23, 2023, email, the sales representative told Plaintiff that the matter was being resolved internally. Plaintiff asked if the matter could be resolved faster, and the Chainalysis sales representative informed Plaintiff that pushing Chainalysis could be seen as blackmailing.

41.  Since at least 2020, Defendant Chainalysis has been publishing and distributing globally a crypto crime report.

42.  In February 2023, Chainalysis published "The 2023 Crypto Crime Report – Everything you need to know about cryptocurrency-based crime", clocking in at 107-pages.

43.  The 2023 Crypto Crime Report lists Defendants Kim Grauer, Eric Jardine, Erin Leosz and Henry Updegrave as its primary authors.[7]

44.  Chainalysis's 2023 Crypto Crime Report contains sections on sanctions, ransomware, money laundering, stolen funds, Oracle manipulation attacks, and darknet markets, all before its sections on scams and pump and dump tokens.[8]

45.  On page 87 of The Crypto Crime Report, in its chapter titled Scams, in a section titled "2022 crypto scam activity summarized," Chainalysis publishes a bar graph titled "Top 10 crypto scams by revenue, 2022" in which Chainalysis prominently displays YieldNodes.com as the second largest cryptocurrency scam of 2022.

---

[7] *See* THE 2023 CRYPTO CRIME REPORT, p. 106, (attached as Ex. A.)
[8] *See* Ex. A.

8

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

8 of 12

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)                INDEX NO. UNASSIGNED
NYSCEF DOC. NO. 2                                                                                   RECEIVED NYSCEF: 01/19/2024



[9]

46. This is the only place that Yieldnodes appears in the Crime Report, and there is no discussion as to the basis for Chainalysis's accusation.

47. The Crime Report nowhere defines what constitutes a scam.

48. On or about March 4, 2023, Plaintiff became aware of Chainalysis' defamatory statements in the globally-published Crypto Crime Report where Defendants accused Plaintiff of committing fraud.

49. On or about March 4, 2023, Plaintiff emailed the Chainalysis salesperson, as well as multiple other email addresses tied to Chainalysis, including the CEO and its legal department. In the email, Plaintiff informed Chainalysis of the inaccuracy of their defamatory

---

[9] *Id.* at 87 (Feb. 2023).

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)   INDEX NO. UNASSIGNED
NYSCEF DOC. NO. 2                                                                RECEIVED NYSCEF: 01/19/2024

statements and advised Chainalysis that their false accusations were causing hundreds of millions of dollars worth of damage to Plaintiff.

50. On or about June 1, 2023, Hauzen LLP, Plaintiff's Hong Kong-based law firm, sent a cease-and-desist letter to Defendant Chainalysis Inc.

51. On or about June 29, 2023, counsel for Chainalysis, from Kelley Drye & Warren LLP, responded to Hauzen LLP's cease-and-desist letter with a general denial.

### CLAIMS FOR RELIEF

### Count I: Defamation Per Se

52. Plaintiff Exceptional Media re-alleges paragraphs 1-51 as if the same were fully set forth herein.

53. Defendants made false statements when they:

    A. Flagged Plaintiff as a fraudulent enterprise in their software distributed globally to law enforcement, government regulatory agencies, and third parties blockchain for investigatory and compliance purposes; and

    B. Globally published the 2023 Crypto Crime Report in which Defendants labelled Plaintiff as having committed the felony of financial fraud.

54. Defendants made their false statements intentionally with actual malice, or negligently.

55. Defendants' false statements comprised defamation per se, as they charge Plaintiff with the serious crime of fraud amounting to over $341,000,000.

56. Defendants' false statements compromise defamation per se as they impugn the basic integrity or creditworthiness of Plaintiff.

57. Defendants' false statements have damaged and continue to damage Plaintiff's

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)   INDEX NO. UNASSIGNED
NYSCEF DOC. NO. 2   RECEIVED NYSCEF: 01/19/2024

business and have significantly damaged the reputation of its business.

58. Defendants' false statements were published and spoken without any privilege or authorization to a third party.

59. Defendants' false statements were presented as fact and are not protected opinion.

### Count II: Tortious Interference with Business Relationships

60. Plaintiff Exceptional Media re-alleges paragraphs 1-59 as if the same were fully set forth herein.

61. At all times pertinent to these claims, Plaintiff had ongoing business relationships as part of its masternoding services with numerous third parties, including cryptocurrency clients and cryptocurrency exchanges.

62. At all times pertinent to these claims, Defendants knew or had reason to know that Plaintiff had ongoing business relationships with cryptocurrency clients and exchanges that would be impacted by Defendants' false statements.

63. Defendants interfered with Plaintiff's ongoing business relationships with cryptocurrency clients and exchanges; and did so through improper means: by publicizing false statements about Plaintiff.

64. Defendants did so with full and complete knowledge that cryptocurrency exchanges would likely freeze Plaintiff's clients' funds.

65. Defendants interfered with Plaintiffs' business relationships for improper means, profiting from their falsehoods.

66. As a result of Defendants' interference, Plaintiff suffered substantial damages to its relationships with third parties.

67. As a direct result of Defendants' tortious interference with Plaintiff's business

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

11 of 12

Case 1:21-cr-00399-RDM   Document 221-1   Filed 01/22/24   Page 13 of 13

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)    INDEX NO. UNASSIGNED
NYSCEF DOC. NO. 2    RECEIVED NYSCEF: 01/19/2024

relationships, Plaintiff has suffered, and continues to suffer, substantial damages amounting to at least $650,000,000.

## REQUESTED RELIEF

WHEREFORE, Exceptional Media Ltd. requests judgment against Defendants as follows:

(i) With respect to all counts, Plaintiff seeks a public apology, retraction of the defamatory statements, compensatory and punitive damages to be determined by a jury at trial.

(ii) For costs of suit and such further relief that the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand trial by jury.

DATED: January 19, 2023
Brooklyn, New York

Submitted,
/s/ Tor Ekeland
Tor Ekeland (NYS Bar No. 4493631)
Tor Ekeland Law, PLLC
30 Wall Street, 8th Floor
New York, NY
t (718) 737 – 7264
f (718) 504-5417
tor@torekeland.com

/s/ Michael Hassard
Michael Hassard (NYS Bar No. 5824768)
Tor Ekeland Law, PLLC
30 Wall Street, 8th Floor
New York, NY
t (718) 737 – 7264
f (718) 504-5417
michael@torekeland.com

*Counsel for Plaintiff*

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

12 of 12