UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>ROMAN STERLINGOV<br><br>Defendant. | No. 21-cr-399 (RDM) |

**DEFENDANT'S OPPOSITION TO GOVERNMENT'S
MOTION TO EXCLUDE EXPERT PROFESSOR J.W. VERRET'S DEMONSTRATIVE
SLIDES**

Defendant Roman Sterlingov, by and through undersigned counsel, submits this Opposition to the Government's latest motion in *limine* to exclude testimony from the Defendant's previously proffered demonstrative slides for financial forensics expert Professor J.W. Verret.[1]

On August 7, 2023, the Defense filed a Supplemental Expert Disclosure for Professor J.W. Verret, which included a PowerPoint slide deck.[2] The Government made no objection to this supplemental filing. The Government's current objection is to the revised version of this slide deck sent via email to the Government on February 23, 2024[3], which attempts to

---

[1] Dkt. 256.
[2] *See* Dkt. 158-1 (attached as Ex. A).
[3] *Bitcoin & Crypto Financial Forensics*, Prof. J.W. Verret (Feb. 23, 2024) (attached as Ex. B).

1

incorporate this Court's comments from the *Daubert* hearings and pretrial proceedings relating to Professor Verret, as well as his opinions based on his jailhouse financial forensic interviews with Defendant Roman Sterlingov that occurred after the *Daubert* hearings. The revised slide deck, and particularly the cited forensic interviews contain rebuttal material to the Government's case-in-chief. This includes a slide related to the Government's Aurum Xchange testimony and evidence. Some of the other slides have been slimmed down for clarity and efficiency sake. Nothing in the revised slide deck should come as a surprise to the Government. In fact, the slide deck parses down much of the information previously provided by the Defense in an attempt streamline Professor Verret's testimony. The revised slide deck merely copies the original filed name from the August 7, 2023, filing which was "Verret Supplemental Report – FINAL". The only difference between the two file names is the date. For these reasons and those argued below, this Court should dismiss the Government's motion with prejudice.

**FACTS**

On July 7, 2023, the Defense filed a Defendant's Notice of Intent to Present Expert Testimony of Professor J.W. Verret.[4]

On July 19 and 20, 2023, Professor Verret testified at the pretrial *Daubert* proceedings. At the *Daubert* hearings, AUSA Chris Brown cross-examined Professor Verret. At that time, Professor Verret had been unable to interview Mr. Sterlingov in jail. Mr. Sterlingov was being held at the Northern Neck Regional Jail in Warsaw, Virginia, and the Defense had significant access issues leading to this Court ordering Mr. Sterlingov's transfer to another jail in Alexandria, Virginia. Professor Verret attempted to interview Mr. Sterlingov in Alexandria but

---

[4] *See* Dkt. 145, Ex. E.

could not gain access. Mr. Sterlingov was subsequently transferred to the D.C. Correctional Facility, where Professor Verret was finally able to gain access to Mr. Sterlingov.

On August 7, 2023, the Defense filed Professor Verret's Supplemental Expert's Slide Summary on the docket.[5] The Government did not object.

On December 21, 2023, the McAfee Institute credentialed Professor Verret as a Certified Cryptocurrency Forensic Investigator (CCFI).

On February 11, 2024, prior to trial, the Defense filed on the docket Professor Verret's CCFI credentials.

Last Friday, February 23, 2023, the Defense provided the Government with the slimmed down August 7, 2023, demonstrative slides it intends to use during Professor Verret's upcoming expert witness testimony.[6]

## ARGUMENT

1. **There is no Untimely Disclosure**

The current slide deck is merely a revised version of the previous slide deck provided to the Government on August 7, 2023, to which the Government did not object to. The current version has been edited to make it more concise. In addition, it includes Professor Verret's opinions based on the results of financial forensic interviews that Professor Verret was previously unable to accomplish because Mr. Sterlingov was not easily accessible in jail. Finally, the handful of new slides of Professor Verret's rebuttal testimony based on these financial forensic interviews are in reaction to the Government's testimony and evidence presented at trial.

---

[5] *See* Dkt 158-1 (Ex. A)
[6] *Bitcoin & Crypto Financial Forensics*, Prof. J.W. Verret (Feb. 23, 2024) (Ex. B).

Under Federal Rule of Criminal Procedure 16(c), the Defense has a continuing obligation to disclose additional evidence or material before or during trial. The revised slide deck is in fulfillment of this obligation. This Court has broad powers under Federal Rule of Criminal Procedure 16(d) to govern disclosures by the parties. The Government's choice to incarcerate Mr. Sterlingov pretrial created conditions that the record reflects made it difficult for the Defense to access him. The Government should not be allowed, as a matter of due process, to reap the benefits of jailing Mr. Sterlingov pretrial and limiting counsel's access to him to deny him his right to put on a complete defense. Finally, Professor Verret was noticed as a rebuttal expert on top of his regular expert disclosure, and the revised slide deck should come as no surprise to the Government. Courts routinely allow for rebuttal expert testimony without notice.[7]

2. **Professor Verret had Difficulty Accessing Mr. Sterlingov**

At the time of Professor Verret's *Daubert* hearings, the Court was aware of the restrictive conditions of Mr. Sterlingov's pretrial detention.

> MR. EKELAND: … Part of the issue here is, like, Mr. Verret needs to go see him. We need to have our tracing people come talk to him. And even when we try to set up video calls with the jail, they're not returning our calls, they're saying we can only do it at certain times. It's really hampered the defense, and we do not have full and fulsome access that we need to our client to prepare this defense. So we ask the Court -- I don't know what the solution is, but can we get him to a facility in D.C. or what? Because at this point, as the Court knows, it's game time, and we need full access to him, and we're not getting it.
>
> …

---

[7] *U.S. v. Rudolph*, No. CR-00-S-422-S, at *3 (N.D. Ala. Jan. 25, 2005) ("Our case law establishes that, consistent with the plain language of the Rule, the government's presentation of *rebuttal* testimony without prior notice does not violate Rule 16, since the Rule's notice requirements apply only to the government's case-in-chief."); *see also See United States v. Windham*, 489 F.2d 1389, 1392 (5th Cir. 1974) ("Rebuttal witnesses are a recognized exception to all witness disclosure requirements.")

>THE COURT: Well, I will check into what's going on there. If
>there's anything that I can do, I will. As I said, it is, ultimately, up
>to the Marshals Service to figure out where someone gets housed.
>
>MR. EKELAND: Thank you, Your Honor.[8]

Following this hearing Mr. Sterlingov was moved to the Alexandria Detention facility, where Professor Verret had difficulty accessing Mr. Sterlingov. Because of the difficulties involved in accessing Mr. Sterlingov at Alexandria, Virginia, this Court transferred Mr. Sterlingov to the D.C. Municipal Jail where currently is housed. It was only after this transfer that Professor Verret had sufficient access to Mr. Sterlingov to conduct the necessary financial forensic interviews. In the following months, Professor Verret visited Mr. Sterlingov several times to question him on his finances for a total of roughly 20 hours.

### 3. The Parties Agreed Not to Introduce New Experts

The Defense is not proffering a new expert. The Government confuses the issue when it argues that the parties agreed not to supplement expert testimony. The record is clear in this regard, the parties merely agreed not to introduce any new experts.[9] Indeed, the Government has repeatedly introduced supplemental expert reports in relation to Chainalysis Reactor and the testimony of Elizabeth Bisbee, as well as doing multiple last minute document dumps on the eve

---

[8] *See* 7/20/23 Pretrial Conf. Morning Tr. at 233:1-234:15.
[9] *See* 9/21/23 Pretrial Conf. Morning Tr. at 40:1-7 (Mr. Ekeland: "I would just ask the same of the government, that they don't—we'd just ask for the record the same of the government, that there's no new experts coming." The Court: "I'm happy to have a rule. If you all are in agreement on this, I'm happy to categorically say no new experts." Mr. Ekeland: "Yes, Your Honor." The Court: "Okay. That's adopted then. No new experts with the consent of the parties at the request of the parties."); 9/21/23 Pretrial Conf. Afternoon Tr. at 44:9-13 (The Court: "I want you to make sure that you understand that the government has represented to the Court and Mr. Ekeland has represented to the Court, no new experts at this point. So this time is not going to be used looking for new experts or seeking to offer any new experts in the case."); Sept. 22, 2023 Minute Order (confirming that neither the Government nor the Defense would "seek leave to designate any additional expert witnesses at this late date (which is long past the date for identifying experts)").

of trial. The Government also recently sent a revised exhibit for their noticed financial expert, Sarah Glave.[10]

### 4. The Financial Forensic Testimony of Luke Scholl and Sarah Glave Requires Rebuttal

The Defense objected at the *Daubert* hearings to Mr. Scholl's competence to testify as a forensic financial expert. The Court did not rule on the Defense's *Daubert* motions pretrial. At trial, over the Defense's objection, this Court allowed Mr. Scholl to testify to his financial forensic conclusions based on slide decks and Excel spreadsheets only recently produced to the Defense.[11] This is even though Mr. Scholl lacks the requisite accounting and financial forensic certifications and experience to offer opinions on valuation, as the trial record reflects. Professor Verret's revised slide deck incorporates his rebuttal testimony to Mr. Scholl's new financial exhibits and testimony. Particularly, Mr. Scholl's valuation of the Bitcoin Fog service fees is nowhere disclosed in his expert report, nor in his expert testimony or pretrial *Daubert* testimony, nor in his expert disclosure. If the Court is going to exclude Professor Verret's revised slide deck as untimely, it should strike Mr. Scholl's financial forensic testimony for the same reasons.

### 5. Courts routinely allow Experts to Rely on Forensic Interviews

Courts have repeatedly allowed forensic accountants to rely on forensic interviews in their testimony. This is particularly true in circumstances where there's an opportunity to cross-examine the interviewed party, as likely will be the case in this trial.[12]

---

[10] Produced Feb. 10, 2024, additional production on Feb. 22, 2024 (Gov. Ex. 305(a)).
[11] *See e.g.* Gov't Exs. 325, 356.
[12] *See e.g. United States v. Affleck*, 776 F.2d 1451, 1457 (10th Cir. 1985); *Trustees of Bos. Univ. v. Everlight Elecs. Co.*, 141 F. Supp. 3d 147, 148–49 (D. Mass. 2015).

### 6. The Field of Financial Forensics is Well-Established

Unlike blockchain forensics, the field of financial forensics is well-established. Over 80 years ago IRS investigators investigating Al Capone first began using what became the well-recognized, credentialed, and established field of financial forensics.[13] Whereas blockchain forensics lacks any governing standards body, financial forensics has national and international recognized standards bodies like the AICPA and the American Society of Certified Fraud Examiners. Additionally, accounting is a well-recognized academic discipline, and numerous universities and colleges across the globe offer undergraduate and graduate degrees in this well-recognized field. The same cannot be said for the Government's standardless blockchain forensics.

## CONCLUSION

This Court has yet to offer a final *Daubert* ruling as to the scope of Professor Verret's testimony. As such, the Government's request to limit Professor Verret's testimony to the Court's statements at pretrial hearings should not be indulged. There is nothing so new or surprising in Professor Verret's revised slide deck that prevents the Government from cross-examining Professor Verret on its subject matter. The slide deck was sent to the Government over a week in advance of Professor Verret's testimony leaving the Government with ample time to make any necessary revisions to its planned cross-examination. The updated slide deck further implicates Mr. Sterlingov's due process rights to put on a complete defense, which have been hampered throughout these proceedings by his pretrial detention, and the problems it has created for him in

---

[13] Gotcha! Forensic Accounting and the downfall of Al Capone, Lawrence R. Beebe ( Sept. 21, 2009) (available at: https://www.withum.com/resources/gotcha-how-forensic-accounting-brought-about-the-downfall-of-al-capone/).

having full access his defense counsel. For the foregoing reasons, this Court should deny the Government's Motion to Exclude.

Dated: February 27, 2024
Brooklyn, New York

        Respectfully submitted,

        /s/ Michael Hassard
        Michael Hassard (NYS Bar No. 5824768)
        *Pro Hac Vice*
        Tor Ekeland Law, PLLC
        30 Wall Street, 8th Floor
        New York, NY
        t:  (718) 737 - 7264
        f:  (718) 504 - 5417
        michael@torekeland.com

        /s/ Tor Ekeland
        Tor Ekeland (NYS Bar No. 4493631)
        *Pro Hac Vice*
        Tor Ekeland Law, PLLC
        30 Wall Street, 8th Floor
        New York, NY
        t:  (718) 737 - 7264
        f:  (718) 504 - 5417
        tor@torekeland.com

        *Counsel for Defendant Roman Sterlingov*

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of February 2024, the forgoing document was filed with the Clerk of Court using the CM/ECF System, and sent by email to the attorneys for the Government listed below:

s/ Michael Hassard

U.S. Department of Justice
District of Columbia
555 Fourth St. N.W.
Washington, D.C. 20530

Catherine Pelker
Catherine.Pelker@usdoj.gov

Christopher Brown
Christopher.Brown6@usdoj.gov

Jeffrey Pearlman
Jeffrey.Pearlman@usdoj.gov