IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

Plaintiff,

vs.

ROMAN STERLINGOV,

Defendant.
_____________________________/

Criminal Action No. 1: 21-399

Washington, DC
March 11, 2024

3:27 p.m.

TRANSCRIPT OF JURY TRIAL
BEFORE THE HONORABLE RANDOLPH D. MOSS
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:

CATHERINE PELKER
U.S. DEPARTMENT OF JUSTICE
950 Pennsylvania Ave NW
Washington, DC 20530

CHRISTOPHER BRODIE BROWN
DOJ-USAO
601 D Street, N.W.
Suite 5.1527
Washington, DC 20530

JEFFREY PEARLMAN
DOJ-CRM
Ccips
US Dept of Justice
1301 New York Ave NW
Washington, DC 20005

APPEARANCES CONTINUED ON NEXT PAGE

APPEARANCES CONTINUED

For the Defendant:

TOR EKELAND
MICHAEL HASSARD
TOR EKELAND LAW PLLC
30 Wall Street
8th Floor
Brooklyn, NY 10005

Court Reporter:

SHERRY LINDSAY
Official Court Reporter
U.S. District & Bankruptcy Courts
333 Constitution Avenue, NW
Room 6710
Washington, DC 20001

P R O C E E D I N G S

THE COURTROOM DEPUTY: Criminal case, 21-399, *United States versus Roman Sterlingov*.

Would counsel please state their names for the record starting with government counsel.

MR. BROWN: Good afternoon, Your Honor. AUSA Chris Brown for the government. And with me at counsel table are C Alden Pelker and Jeffrey Pearlman.

THE COURT: Good afternoon.

MR. EKELAND: Good afternoon, Your Honor. Tor Ekeland for Defendant Roman Sterlingov, who is present in court. And joining me at counsel table is Michael Hassard.

THE COURT: All right. Good afternoon to you as well.

So we have a note from the jury, which has been provided to all of you. And the note reads as follows: "For Count 4, the first element recites: 'The defendant knowingly engaged in the business of money transmission in the District of Columbia.' Does the knowledge requirement apply to both engaging in the business and in the District of Columbia that is, is knowledge of the location required?"

And I think, unless I am missing something, the answer to this is yes. But I will hear what the parties have to say.

MR. BROWN: Your Honor. Based on our initial reading

of this and our quick research, the answer should be no. And I would start out with the plain text of the statute, which is D.C. Code section 26-1001 and 1023. 23 defines -- 23(c) defines the criminal offense. It says nothing about any sort of knowledge, let alone knowledge that the money transmitting business is within the District of Columbia. 26-1001, subsection 10, defines money transmission. And, similarly, money transmission itself is defined very, very broadly. It includes the transmission of money within the United States, or to locations abroad by any and all means. Again, there is no reference limiting the geographic scope of this to the District of Columbia, either in sweep or in certainly the defendant's knowledge.

As we have looked at this, the statute, it appears obvious to us that the statute should be read as a general intent crime. There is no specific mens rea spelled out at all here. But there is a presumption in favor of reading criminal statutes as general intent crimes.

However, that presumption in favor of this being a general intent crime doesn't mean that the knowledge requirement travels to every element of the offense. And let me just reiterate, being in DC or having a business located in DC, that is not actually spelled out in any of the statutory elements of the offense. If there is a geographic limitation to DC, that is a limitation on the District's regulatory power,

but that is not an element of the offense that the DC lawmakers enacted here.

And in terms of scienter, we would liken this to a jurisdictional element, that if the Court is going to read in a jurisdictional element, which makes sense, that the conduct occur in DC, the Supreme Court in *Rehaif versus United States*, and that is one 39 S. Ct. 2191, emphasized that the presumption in favor of scienter generally does not apply to jurisdictional elements. Because that is -- the jurisdictional element goes to the limits of the legislative power. It doesn't go to "The evil that Congress seeks to prevent." And so based on the plain text of the statute, based on the structure of the statute and based on Supreme Court case law, there are a couple other cites I can give the Court: *United States versus Campa*, 529 F.3d 980. That is an Eleventh Circuit case holding that intent that a murder occur within the special maritime and territorial jurisdiction of the United States is not an element of a 18 U.S.C. 111 --

THE COURT: Although you are dealing there with a crime that is -- I am going to blank on the Latin phrase for it. Is one that is on its face a --

MR. BROWN: Malum in se.

THE COURT: Thank you very much.

Malum in se versus malum prohibitum. And this statute here is more in the category malum prohibitum.

MR. BROWN: Yes, Your Honor. And, therefore, we agree that it is appropriate to read this as a general intent crime. But the approach with this statute with -- I think this statute should be read, number one, similar to the way that -- so what should be informative to the Court is the way that courts construe 18 U.S.C. 1960, which also similarly deals with malum prohibitum. And 1960 was explicitly based on 18 U.S.C. 1955, the prohibition on operation of unlicensed gambling businesses.

And courts have been quite uniform in construing 18 U.S.C. 1955 as requiring scienter only to the factual elements of the offense, only to the element that you are operating a business that sort of fits these factual predicates, not that it was required to be -- not that there is any sort of state -- there is no heightened willfulness requirement.

THE COURT: The deputy clerk lined the jurors up. And I think this may take longer than that, so why don't you tell them they can go back to the jury room so they are not just standing there.

THE COURTROOM DEPUTY: Okay.

MR. BROWN: Your Honor, I think this -- and this -- let me back up a second. I think that the approach for 1955, 1960 and -- should also inform this Court's approach to the D.C. Code offense in this case. Which is that the scienter requirements really only apply to the factual predicates. They

don't apply to, in this case what is on atextual jurisdictional element. It is not an element of the offense that the legislature wrote down into the elements of the offense. It is something that -- and it is --

THE COURT: Okay.

MR. BROWN: I would just add, it is important to distinguish in terms of understanding that the wrongfulness of the defendant's conduct -- the wrongfulness just has to do with operating the business. And I think it is fair to look at either the willfulness requirement or knowledge as to jurisdiction as both falling in the same general category of, these are additional sort of scienter requirements that are not based in the text of the statute. And it is appropriate for the Court not to require additional proof on those -- on either of those two elements or either of those two -- they are not even elements. They are just sort of parts of the offense.

THE COURT: So when you say the wrongfulness is just in operating the business, I get that, for example, with respect to the subsection of the federal registering requirement, subpart C, that you are engaged in or that the money laundering is furthering unlawful conduct for example. But it is a little hard to know how the failure to comply with registration or a licensing requirement that the wrongful conduct is operating the business. The wrongful conduct is operating the business without getting the license or

registering. And I realize, it is not an expressed term in the statute itself, but it does seem at least plausible. And I want to hear from Mr. Ekeland on this. And it does seem plausible to infer that actually as an element of the offense under the theory that I don't think that the DC Council thought to itself, our goal here is to require registration of anyone who is engaged in running a money transferring business or whatever the language was -- money transmission business anywhere in the world. That is our goal. That is what we are doing. You have got to go to DC and you have to register. But we realize we only have so much jurisdiction and we realize there will be a jurisdictional element that will limit the reach of what we are doing. But what we are saying is if you are running this business, come to DC and register. That seems implausible to me.

MR. BROWN: Your Honor, I think the intent -- the legislative intent behind the Money Transmitters Act -- it is a consumer protection statute. So I think the intent is to capture any conduct that affects the citizens of the District of Columbia. But that is not the same as saying the intent is to capture the conduct of somebody who knowingly affect -- you know, does business with District of Columbia citizens. I think that the whole legislative scheme for any sort of money transmitter is regulation, is it is an action-enforcing mechanism. If you are running a business, especially these

days, if are running a business online, it is incumbent upon you -- I mean, this is why there is no heightened willfulness requirement, which I think this is almost a backdoor way of having a heightened willfulness requirement. It is incumbent on the business to either make sure they have an appropriate license or to make sure they are not doing business in a jurisdiction that requires a license.

And the one other point I'd point out to the Court is that we briefed this is in ECF 176. And one of the -- we briefed the Court's question on ECF 176, which was a little bit different, which was about a brick and mortar physical location requirement under the DC --

THE COURT: I remember this.

MR. BROWN: And in what we attached as Exhibit 1 was a bulletin from the Commissioner of DISB, which basically said that they are not requiring a brick and mortar location because their intent is to capture money transmitting activity, even if it is conducted by -- this is -- actually, I think it is Exhibit 2, where they said that in light of the *Harmon* decision by Chief Judge Howell, they are no longer -- they want to clarify that the Money Transmitters Act applies to mobile applications and/or online transactions. Those also count as engaging in the business of money transmission.

I think it would be a little bit inconsistent with the evident intent of the commissioner of DISB to capture any

sort of online conduct that affects District residents by requiring that -- well, qualifying that and saying that, well, because Helix, for example, Larry Harmon's mixer, maybe Larry Harmon didn't know the particular fact that he was doing business with a resident of the District of Columbia, there is nothing in the DC -- the DISB commissioner's advisory that suggests that is what they were thinking.

To the contrary, they are thinking we need to capture online activity as a whole. And, again, this is an action enforcing mechanism. It is a consumer protection mechanism. So if you are out there doing business online, it is up to you to figure out if you need a license, not to, you know, wait until you know, you have knowledge that you are doing business in a given jurisdiction.

THE COURT: I can't remember which of you argued the issue, but wasn't one of the theories that the government presented as to why a willful blindness instruction was appropriate because there was evidence or reason to think that Mr. Sterlingov was willfully blind with respect to the location where the money laundering was occurring?

MR. BROWN: Yes. Yes, Your Honor. And, I mean, that is a separate argument. That maybe -- you know, maybe there is knowledge as to, you know, doing business in the District of Columbia.

THE COURT: But wasn't that the premise of that

argument is that knowledge was required?

MR. BROWN: I don't think -- I don't think that was the premise of our -- the government's argument. I think that to the extent that there is a knowledge requirement, certainly that the willful blindness of definition of knowledge would apply there. But again, Your Honor, I think that this is a jurisdictional element akin to an interstate commerce nexus, maybe something that is little less malum in se-ish is the transportation of counterfeit securities under the National Stolen Property Act, *United States versus Squires*, 581 F.2d 408, Fourth Circuit case saying that under the National Stolen Properties Act, the government isn't required to prove knowledge of the interstate nature of the transportation. And I think that this is similar. And, if anything, it is even having to prove an interstate commerce nexus, at least there is a textual basis for that in Federal criminal statutes. There is no textual basis for reading a knowing in the District of Columbia element into the DC Money Transmitters Act.

THE COURT: All right. Let me hear from Mr. Ekeland.

MR. EKELAND: I agree with the Court in that the -- I think that the government is taking an incredibly broad reading of this DC municipal statute in trying to read out the requirement of scienter as to knowledge of the money transmission occurring in DC. I think, if anything, the rule of lenity requires here where we have a question --

interpretation of the statute, one which is incredibly broad and the other which is more specific and narrow, I think the rule of lenity requires that we find that there is a scienter requirement in relation to Mr. Sterlingov having to know that money transmission was occurring in DC. And I also think that accords with just the plain textual reading of the statute. I think to take out, you know, knowing that the money transmission was occurring in DC, you have to sort of take a few interpretative jumps that I think take you outside the plain text.

THE COURT: Although that seems to me where the government's argument is the strongest, the statute doesn't say anything about in DC.

MR. EKELAND: Well, it is a DC municipal statute. And I would argue that the interpretative background of the statute as it is being promulgated, I don't think they need to say, oh, look, we are in DC and promulgating a DC statute. I think just looking at it against its interpretive background, which is quite plain, I think the plain textual reading and the rule of lenity just requires knowing -- it is not, as the Court says, just a general statute against money transmission anywhere in the world. And I think that combined with the rule of lenity requires the Court read a scienter requirement that Mr. Sterlingov knew that the money transmission was occurring in DC.

THE COURT: Anything else?

MR. EKELAND: No, Your Honor.

THE COURT: All right. Anything else, Mr. Brown?

MR. BROWN: Just on the rule of lenity, the rule of lenity requires there to be a statutory provision that can be read in a more or less lenient way. Here, the rule on lenity doesn't require the Court to invent atextual elements in criminal statutes and then impose those. There is no grievous ambiguity that requires the Court to construe a specific textual provision of the DC Money Transmitters Act in favor of the defendant, because there is no textual provision of the DC Money Transmitters Act that requires knowledge or conduct within the District of Columbia.

THE COURT: So in your view then, if there was a money transmission business that was located in Sweden, all of the websites and materials are in Swedish in that -- for that money transmission system. It is advertised only in Sweden. And somebody sitting in the District of Columbia perhaps in a sting operation sends a request for a transmission in Swedish to that site and says, I am in Stockholm and I'd like you to make the following transmission or transaction for me as I am sitting here in Stockholm. The person engages in that transaction and the jurisdictional element is satisfied because the person who sent that sting email was sitting in DC at the time. That person has committed a DC crime by responding to

that.

MR. BROWN: Your Honor, I think potentially. The focus of the DC Money Transmitters Act is on the consumer. It is on the DC consumer who is being protected by the regulation of money transmitting businesses. And I think this does point out the fact that most global or national level money transmitting businesses do some sort of screening. If they don't want to do business in the United States, they will screen out US customers through IP blocking or other ways. I think in that case, what you would have is almost a mistake of fact defense, if anything. But I don't think that would be a situation where the Court would be required to read in an atextual jurisdictional, not just a jurisdictional element, but a knowledge -- a scienter element as to a jurisdictional element that doesn't exist in the statute.

THE COURT: All right. Well, give me a couple of minutes. I want to take a look at a couple of things. If you want to all wait here, I will come back and let you know when I am done reading.

MR. BROWN: Yes.

(Recess taken at 3:47 p.m.)

THE COURT: All right. So I am going to answer this question in the affirmative and indicate that both are required. And I realize this is a difficult question. This is a variant of the question I raised with the parties early on in

the case. But I am going to answer yes for a number of reasons.

First of all, I think that was our understanding when I crafted the instructions the way I did. And I think this is literally what the instruction actually requires. It is not only that sentence of the instruction, but later in the instruction, I say you are not required to find that the defendant knew that he was required to register under DC law, but you are required to know that he engaged in the business in the District of Columbia. And so I say it twice in that same instruction. And I think that was my understanding at the time we gave the instruction. And when we crafted the instructions, that is how I understood it. And that is how I thought the parties understood it and the parties closed on based on that understanding of the instruction.

And I raised this issue as well during the charging conference with respect to the willful blindness. And I am not saying that the government conceded the point. I think that Mr. Brown in response to my question was careful, but did concede at least that if the knowledge requirement applied, the willful blindness instruction would be justified for that reason as well, although that wasn't the principle reason.

But the other reason that I reached this conclusion is that the law is not particularly receptive to strict liability crimes, particularly felonies. They are permissible

and there is actually some D.C. Circuit precedent that suggests that the D.C. Code provision that we are talking about here is a strict liability provision. But I think it is strict liability in the way that I gave the instruction and that you don't have to know that you had to register. But you had to know that you were at least engaging in the underlying conduct.

And the Supreme Court in the *Staples* case notes that even when you are dealing with a strict liability crime -- and this may or not be one -- I think the government is indicating in their view a general scienter crime. But in any event, even if it were a strict liability crime, under Supreme Court precedent, the government would still have the burden of proving the person knew they were engaged in the relevant underlying conduct. And this is not a malum in se crime, it is a malum prohibitum crime. And I think that then drives me back to this question that was framed by our discussion a little while ago about whether the nexus to DC purely jurisdictional nexus or whether it is an element of the statute itself.

And although I disagree with Mr. Ekeland that the statute or the text includes a nexus to DC requirement, it is hard for me to imagine that the District of Columbia when it passed this law actually intended for people to register where they were not engaged in any conduct in the District of Columbia. And that it was simply viewed as a jurisdictional nexus in that DC just wouldn't have the power to reach beyond

the District of Columbia. And I can't imagine that the District of Columbia would want people engaged in money transmission businesses across the world to start registering in DC, saying, you know, I know we are not engaged in any business in DC, but we are registering here because it is just a jurisdictional element of the crime.

I realize that this is a close question though. But I think this was, at least as I understood the instructions at the time I gave them and at the time the parties closed. And I also do think that it would be a very harsh rule and one that I think courts would do their best to avoid to conclude that someone who has no knowledge whatsoever or even reason to know that they are engaged in money transmitting in the District of Columbia, nonetheless can commit a felony if they don't obtain a license in the District of Columbia if by chance there is a transaction or two that hit upon the District of Columbia unbeknownst to that person for some reason. So that is what I will do.

And I am happy to do it however the parties want. I can -- we can bring the jury in and I can say the answer to your question is yes or if you prefer I can just write on the jury note that the answer to your question is yes.

MR. BROWN: Your Honor, the government doesn't have a preference.

THE COURT: Mr. Ekeland.

```
1                MR. EKELAND:  You can bring the jury in.
2                THE COURT:  That is your preference?
3                MR. EKELAND:  Yes, Your Honor.
4                THE COURT:  All right.  Just to clarify something, I
5     may have said D.C. Circuit statute is strict liability, I meant
6     the DC Court of Appeals.
7                But I will tell the jury they should consider my
8     instructions as a whole in making that determination.
9                (Jury in at 4:05 p.m.)
10               THE COURT:  Well, good to see all of you.  I have a
11    note from you.  And the note says "For Count 4, the first
12    element recites the defendant knowingly engaged in the business
13    of money transmission in the District of Columbia.  Does the
14    knowledge requirement apply to both, engaged in the business
15    and in the District of Columbia?  That is, is knowledge of the
16    location required?"
17               And the answer to that question is, yes, it applies
18    to both.  And in answering that question, you should consider
19    my instructions as a whole.  Okay.  So thank you.
20               (Jury out at 4:06 p.m.)
21               THE COURTROOM DEPUTY:  You may be seated.
22               THE COURT:  All right.  Anything else before we
23    switch up again here?
24               MR. BROWN:  No, Your Honor.
25               MR. EKELAND:  No, Your Honor.
```

THE COURT: All right. I will keep you posted if we here anything else.

(Proceedings concluded at 4:07 p.m.)

C E R T I F I C A T E

I, SHERRY LINDSAY, Official Court Reporter, certify that the foregoing constitutes a true and correct transcript of the record of proceedings in the above-entitled matter.

Dated this 18th day of April, 2024.

Sherry Lindsay, RPR
Official Court Reporter