UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ROMAN STERLINGOV,<br><br>*Defendant.* | Criminal Action No. 21-399 (RDM) |

**MEMORANDUM OPINION AND ORDER**

Now before the Court is Defendant Roman Sterlingov's Motion to Permit Defense to Speak with Jurors, Dkt. 300; *see also* Dkt. 295; Dkt. 299; Dkt. 304, which the Government opposes, Dkt. 302; *see also* Dkt. 296. For the following reasons, the motion is **DENIED**.

Because the background of this case is described in prior opinions and orders, the Court here provides procedural and factual history only as necessary to resolve the pending motion. On March 12, 2024, the jury returned a unanimous verdict of guilty on all counts. Min. Entry (Mar. 12, 2024). Because Defendant requested that the jury be retained to determine forfeiture pursuant to Federal Rule of Criminal Procedure 32.2(b)(5)(B), the jury proceeded to determine forfeiture, returning a unanimous verdict with respect to those proceedings later in the day on March 12, 2024. *See* Dkt. 293 at 42–46 (Mar. 12, 2024 Trial Tr.). After the jury returned its forfeiture verdict, the Court inquired: "Anything else before I excuse the jury?" *Id.* at 46. To which both parties responded: "No, Your Honor." *Id.* The Court then discharged the jury. *Id.*

No party requested to speak with jurors "before discharge of the jury," and, thus, under the governing local rule, the parties and counsel were forbidden from "speak[ing] with a[ny]

juror concerning the case except when permitted by the Court for good cause shown in writing." LCrR 24.2(b).  Local Criminal Rule 24.2(b) provides in full:

> After a verdict is rendered or a mistrial is declared but before the jury is discharged, an attorney or party may request leave of court to speak with members of the jury after their discharge.  Upon receiving such a request, the Court shall inform the jury that no juror is required to speak to anyone but that a juror may do so if the juror wishes.  If no request to speak with jurors is made before discharge of the jury, no party or attorney shall speak with a juror concerning the case except when permitted by the Court for good cause shown in writing.  The Court may grant permission to speak with a juror upon such conditions as it deems appropriate, including but not limited to a requirement that the juror be examined only in the presence of the Court.

*Id.*

In contravention of that rule, Defense expert witness and consultant Jeffrey Fischbach avers that he waited for and spoke with jurors as they exited the jury room on March 12, 2024. Dkt. 304-1 at 1–2 (Fischbach Decl. ¶¶ 4–12).  According to the Government, Defense counsel Tor Ekeland has also publicly described his own conversations with jurors.  Dkt. 296 at 1–2; *see also* Dkt. 304-1 at 2 (Fischbach Decl. ¶ 12) (averring that "[s]hortly after" he "began speaking" to members of the jury, "[c]ounsel arrived").

Over two months after the jury was discharged on March 12, 2024, Defense counsel filed a letter "requesting confirmation from [the Court] regarding [their] ability to engage in discussions with jurors who served during the trial."  Dkt. 295 at 1.  That letter misstates Local Criminal Rule 24.2(b), asserting that "parties are permitted to communicate with jurors, upon request, following an instruction from the court 'inform[ing] the jury that no juror is required to speak to anyone but that a juror may do so if the juror wishes.'"  Dkt. 295 at 1.  The letter also incorrectly contends that, because the Court instructed the *jurors* that they were "free to discuss the case or not discuss the case with anyone as [they] s[aw] fit," *counsel* was, on that basis, free

2

to speak to jurors about the case without prior Court approval. *Id.* (quoting Dkt. 293 at 46 (Mar. 12, 2024 Trial Tr.)).

That is, quite plainly, not what the rule provides. The text of the rule speaks for itself, and, as those who sat through the month-long trial (including Defense counsel and Mr. Fischbach) must have understood, the Court's final instruction to the jurors merely released them—that is, the *jurors*—from the Court's oft-repeated admonition that *they* should not discuss the case with anyone (family, friends, co-workers) until their service was complete. Defense counsel's misreading of the rule and implausible understanding of the Court's instruction to the jury is, at the very least, a stretch. Nor does it explain why, *after* having already questioned the jurors, counsel sought "confirmation from [the Court] regarding [their] ability to engage in discussions with [the] jurors who served during the trial." *Id.* Lawyers appearing *pro hac vice* in this Court (and their agents) have an obligation to familiarize themselves with this Court's local rules and to abide by those rules. *Cf.* LCrR 44.1; LCrR 57.23.

Putting that history aside, the Court nonetheless treated the Defense's letter as a motion pursuant to Local Criminal Rule 24.2(b) and directed that the Government respond. Min. Order (May 27, 2024). *But see* LCrR 49(f)(4) (form and filing of documents). The Government did so four days later, noting—among other things—that the Defense had failed to offer *any* basis for its request to communicate with jurors. Dkt. 296 at 4. Apparently recognizing that its request for "confirmation" was wholly unsupported, the Defense did not file a reply brief, and, instead, let the matter sit for almost two weeks. Then, on June 11, 2024, the Defense moved pursuant to Local Criminal Rule 24.2(b) for permission to speak with jurors. Dkt. 300; *see also* Dkt. 299. "Once a jury has been discharged, [Local Criminal Rule 24.2(b)] authorizes—but does not require—the district court to grant such a request 'for good cause shown.'" *United States v.*

3

*Shmuckler*, 792 F.3d 158, 165 (D.C. Cir. 2015). Thus, the sole question before the Court is whether the Defense has shown "good cause" to speak with the jurors. The answer is no.

"When a defendant moves to interview jurors after a conviction, a court should grant the motion only if 'there [are] reasonable grounds for investigation.'" *United States v. Taylor*, 2022 WL 17820341, at *1 (D.D.C. Dec. 20, 2022) (alteration in original) (quoting *United States v. Davis*, 402 F. Supp. 2d 252, 265 (D.D.C. 2005)). The Defense points (Dkt. 300 at 3) to a decision from the Second Circuit holding that "[r]easonable grounds are present when there is clear, strong, substantial and incontrovertible evidence that a specific, nonspeculative impropriety has occurred which could have prejudiced the trial of a defendant." *United States v. Moon*, 718 F.2d 1210, 1234 (2d Cir. 1983) (internal citations omitted). The Fourth Circuit has similarly held that to show good cause, "a party should give a trial court sound reason to believe that [juror] interviews would uncover" evidence of impropriety. *United States v. Birchette*, 908 F.3d 50, 58 (4th Cir. 2018). Or, as this Court has held, "good cause" exists when a motion for leave to speak to discharged jurors is "grounded in something concrete, and not when a party seeks to conduct a 'fishing expedition.'" *Taylor*, 2022 WL 17820341, at *1 (quoting *Birchette*, 908 F.3d at 58).

Here, the Defense offers several arguments that, it says, support good cause: (1) when Mr. Fischbach (improperly) spoke with jurors, one "gentleman opine[d] that they weighed the evidence based on a 'preponderance;'" (2) in response, the jury foreperson "answer[ed] that particular testimony was 'not material,' and the other jurors agreed;" (3) when Mr. Fischbach asked "if one of the group was a lawyer" the jury foreperson "answered in the affirmative;" and (4) Mr. Fishbach perceived "that some jurors may have felt intimidated by other members"

4

because they "appeared nervous, looking back at the doors." Dkt. 304-1 at 2 (Fischbach Decl. ¶¶ 14–20).

Even under the most permissive understanding of the test, none of these assertions establishes good cause. The Defense's first argument—that Mr. Fischbach "believes" that he heard a juror state that the jury "weighed the evidence based on a 'preponderance'" standard—is bewildering. *Id.* at 2 (Fischbach Decl. ¶ 14). To start, the Defense ignores the fact that the jury was required, under the Court's instructions, to apply a preponderance-of-the-evidence standard to the question of venue, Dkt. 268 at 64 (final jury instructions), and to the question of forfeiture, Dkt. 273 at 5 (forfeiture jury instructions). Nor does the Defense question the Court's jury instructions, which referred to the beyond-a-reasonable-doubt standard some three dozen times. *See generally* Dkt. 268 (final jury instructions).

But, more importantly for present purposes, the Defense aptly concedes that it "is not seeking to introduce any statements prohibited by Fed. R. Evid. 606(b) or to have any 'judicial inquiry' into 'intra-jury influences.'" Dkt. 304 at 2 (quoting Dkt. 302 at 3). Jury deliberations are confidential, and, as the Supreme Court has observed, "[c]ourts wisely have treated allegations of a juror's inability to hear or comprehend [the judge's instructions] at trial as an internal matter." *Tanner v. United States*, 483 U.S. 107, 118 (1987) (collecting cases); *accord United States v. Logan*, 250 F.3d 350, 380 (6th Cir. 2001) (jurors have an inherent right to be free from interrogation concerning internal influences on their decision-making process, including "juror misunderstanding of court instructions" (citing *United States v. D'Angelo*, 598 F.2d 1002 (5th Cir. 1979)); *Davis*, 402 F. Supp. 2d at 264 ("Whether the jury followed the court's instructions is not subject to inquiry by the defendant." (citing *Logan*, 250 F.3d at 380)).

5

So how does the "preponderance" statement that Mr. Fischbach "believes" he heard establish "good cause" for purposes of Rule 24.2(b)? As far as the Court can discern, the Defense believes that that statement raises the specter—or at least invites further investigation as to whether—that juror (or any other juror) was "inappropriately influenced by extraneous and outside information." Dkt. 304 at 2 (quoting Dkt. 300 at 2). But the Defense offers no evidence or other reason—whatsoever—to believe that any juror was subjected to any outside influence. However defined, "good cause" requires more than an unsupported hope that further inquiry might uncover some extraneous influence.

The Defense's second theory—that the jury foreperson indicated that certain testimony was "not material" and that "other jurors agreed," Dkt 304-1 at 2 (Fischbach Decl. ¶ 15)—does nothing to advance the ball. Even assuming that the foreperson was referring to the same "evidence" addressed in Mr. Fischbach's first point, the Court fails to see how such comments have any bearing on anything, other than perhaps the jury's confidential, internal deliberations. That some of the jurors may have disagreed (or agreed) about the materiality of certain testimony is of no moment. To borrow a passage from Judge Louis Oberdorfer: "If jurors are to participate in energetic deliberations and profit from their collective wisdom, they must at once hold convictions strongly yet at the same time be open to persuasion. The tendency of jurors to disagree and compromise is merely the product of the vigorous give-and-take within this microcosm of the community." *United States v. Dobson*, 1990 WL 109025, at *2 (D.D.C. July 20, 1990) (internal quotation marks and citation omitted). In any event, the Defense fails to explain how the foreperson's statement, or the agreement of other jurors, establishes "good cause." Nor does the Defense provide any hint as to how further inquiry might lead, directly or

6

circuitously, to "future statements [that] would be admissible under Fed. R. Evid. 606(b)." Dkt. 304 at 2.

The Defense's third observation—that the foreperson is a lawyer—is unremarkable. To start, the foreperson disclosed that he is a lawyer during *voir dire*, depriving the Defense's motion of any claim of wrongdoing or unfair prejudice. It is exceedingly common, moreover, for lawyers to serve on juries in the District of Columbia. Jury duty is a civic obligation, and lawyers, like everyone else, should be encouraged to fulfill that duty. Nothing about the foreperson's service invites further inquiry.

Finally, Mr. Fischbach's "concern that some jurors may have felt intimidated," Dkt. 304-1 at 2 (Fischbach Decl. ¶ 20), because they "appeared nervous, looking back at the doors," *id.* (Fischbach Decl. ¶ 19), has it exactly backwards. The Court does not doubt that some of the jurors may have seemed nervous, but the Court has no reason to believe that any juror was subject to "outside influence" or intimidation, *see* Fed. R. Evid. 606(b)(2)(B), or, indeed, any internal harassment or intimidation. To the contrary, accepting the Defense's invitation to speculate, it seems far more likely that jurors were nervous (if, indeed, they were) because they were confronted by a member of the Defense team, who sat at counsel table during the entirety of the trial, who had testified as an expert witness in the case, and who, "immediately" after the jurors' discharge, was "wait[ing] for the[m] to exit the door where [he] observed them entering and exiting . . . each day." Dkt. 304-1 at 1 (Fischbach Decl. ¶ 4). Because Defense counsel did not ask for permission to speak to the jurors, the jurors were not forewarned, and they had no reason to anticipate that they would be confronted by a Defense witness with questions about their service or deliberations. It is no wonder that many jurors "appeared to rush to the elevator." *Id.* (Fischbach Decl. ¶¶ 7–8).

7

Local Criminal Rule 24.2(b), along with Federal Rule of Evidence 606(b), is designed to prevent precisely that type of unwelcome confrontation. Both rules further the longstanding premium placed on shielding jury deliberations, lest jurors

> be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict. If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation; to the destruction of all frankness and freedom of discussion and conference.

*McDonald v. Pless*, 238 U.S. 264, 267–68 (1915); *see also, e.g.*, *Tanner*, 483 U.S. at 119–20; *Pena-Rodriguez v. Colorado*, 580 U.S. 206, 226 (2017) (observing that "rules of professional ethics and local court rules" "limit counsel's post-trial contact with jurors" and "seek to provide jurors some protection when they return to their daily affairs after the verdict has been entered")

In short, the Defense has failed to identify any discernible reason—much less "good cause"—to speak with the jurors who served in this matter.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Permit Defense to Speak with Jurors, Dkt. 300, is hereby **DENIED**.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: June 24, 2024