UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ROMAN STERLINGOV,<br><br>*Defendant*. | Criminal Action No. 21-399 (RDM) |

### ORDER

Now before the Court is the government's motion for a preliminary order of forfeiture, Dkt. 297, Defendant Roman Sterlingov's opposition, Dkt. 305, and the government's reply, Dkt. 310. The government submitted a proposed order of forfeiture. *See* Dkt. 297-1. Sterlingov did not file a counter proposed order. For the reasons explained below, the Court concludes that many of the arguments raised in Sterlingov's opposition are unpersuasive.

Two of his arguments, however, raise substantial issues that the Court cannot decide based on the current briefing and record: First, whether the amount of any forfeiture judgment should be reduced by amounts, if any, that the government has already received (or will receive) from (1) seized darknet marketplaces that allegedly laundered the same funds (or bitcoin) at issue through Bitcoin Fog, and (2) accounts maintained by other criminal defendants who allegedly laundered the same funds (bitcoin) at issue through Bitcoin Fog. Second, whether the amount of the proposed forfeiture is excessive in violation of the Eighth Amendment prohibition on "excessive fines," U.S. Const., amend. VIII, in light of (1) the vastly lower amount that Sterlingov allegedly earned on the transactions at issue, (2) the fact that a large portion of those transactions involved licit funds (even if those licit transactions were used to hide illicit ones),

(3) the seeming impossibility that Sterlingov will ever be able to pay a money forfeiture judgment that even approaches the amount sought, (4) that fact the Sterlingov arguably never had an ownership interest in the vast majority of the bitcoin at issue, (5) the possibility that the government has recovered or may recover some of the same bitcoin or related funds from other sources, (6) the maximum fine that can be imposed, and (7) the fact that the amount sought exceeds what is necessary to punish Sterlingov for his criminal conduct or to deter others from engaging in similar criminal conduct in the future.

Because the Court needs to resolve these issues before imposing a sentence, the Court will convert the sentencing hearing currently scheduled for August 21, 2024, to a hearing on the government's motion for entry of order of forfeiture. At the hearing, the parties should be prepared to address these questions and to point the Court to relevant authority and record materials.

## A.

The Court has previously set forth the factual and procedural history of the case, *see, e.g.*, Dkts. 116, 259, 307, and the parties are familiar with the evidence adduced at trial. After that month-long trial, the jury returned a unanimous verdict of guilty on all counts: money laundering conspiracy, in violation of 18 U.S.C. § 1956(h) (Count One); money laundering, in violation of 18 U.S.C. § 1956(a)(3)(A) (Count Two); operating an unlicensed money transmitting business, in violation of 18 U.S.C. §§ 1960(a) & 2 (Count Three); and operating an unlicensed money transmitting business, in violation of D.C. Code § 26-1023(c) (Count Four). Min. Entry (Mar. 12, 2024). In addition to these substantive counts, the superseding indictment included a "Forfeiture Allegation," which included three parts. *First*, the indictment sought a "forfeiture money judgment for a sum of money equal to the value of any property, real or person, involved

in Courts One, Two and Three, and any property traceable thereto." Dkt. 43 at 5. *Second*, it sought forfeiture of six "specific propert[ies] upon conviction of the offenses alleged in Counts One, Two, and Three." *Id.* at 5-6. The Court, at Sterlingov's request, submitted that question to the jury, and the jury unanimously found, by a preponderance of the evidence, that each of the six specific properties—cryptocurrency maintained in specified accounts or held in a specified "Bitcoin Fog wallet"— was subject to forfeiture. Dkt. 274. *Third*, the indictment requested that, if any of this property "cannot be located upon the exercise of due diligence," "has been transferred [to] a third party," or "has been placed beyond the jurisdiction of the Court," Sterlingov be required to forfeit substitute property "up to the value of th[at] property." Dkt. 43 at 6. The government now seeks entry of an order of forfeiture.

1.

Starting with the government's request for a money judgment under 18 U.S.C. § 982(a)(1), the government contends that Sterlingov should be required to forfeit any property "involved in" Counts One, Two, and Three of the indictment, Dkt. 297 at 2, and it argues that this includes "the total value of Bitcoin deposited into Bitcoin Fog" over the course of its operation—a sum that, on the government's telling, amounts to $395,563,025.39, *id.* at 6. This amount exceeds the amount of illicit funds deposited into Bitcoin Fog and any profits that the government maintains that Sterlingov earned for operating Bitcoin Fog. But the government argues that it is nonetheless subject to forfeiture under § 982(a)(1), because that provision reaches all property "involved in" money-laundering offenses and is not limited to illicit funds and the defendant's proceeds. It also includes untainted money that is used to conceal tainted funds and to facilitate the money-laundering scheme. *Id.* at 3.

3

Tuning to the six properties that the jury found were subject to forfeiture, the government simply notes that jury's special verdict is binding. Dkt. 297 at 7.

Finally, the government argues that the statutory conditions for obtaining substitute property are satisfied because the Bitcoin Fog deposits "ha[ve] been transferred or sold to, or deposited with, a third party," and "the specific properties subject to forfeiture will not come close" to satisfying the $395 million money judgment. Dkt. 297 at 9–10; 21 U.S.C. § 853(p). Pursuant to this authority, it seeks forfeiture of 10.25623378 bitcoin "seized from the defendant's Mycelium wallets located on one of his Samsung mobile phones." Dkt. 297 at 9.

**2.**

Sterlingov raises a host of arguments in response, many of which the Court has previously rejected. He contends that the government's request for entry of a money judgment is unfounded because "most of the funds" mixed through Bitcoin Fog "were [not] illicit." Dkt. 305 at 3. But, as the Court has previously explained, the forfeiture statute "sweeps broadly" to include licit funds used to "conceal the nature and source" of illicit funds. Dkt. 116 at 11 (quoting *United States v. Bikundi*, 926 F.3d 761, 793 (D.C. Cir. 2019)) (alterations omitted). Thus, even if "most of the funds" that passed through Bitcoin Fog were licit, they are nevertheless subject to forfeiture to the extent they were used to facilitate Sterlingov's money-laundering scheme. If this view of the statute is mistaken, Sterlingov needs to explain why.

Sterlingov also argues that "the majority" of illicit funds are unavailable for forfeiture because they were "sent through Bitcoin Fog outside the statute of limitations." Dkt. 305 at 15. But, again, the Court has already rejected a related argument. As the Court explained in the final jury instructions, the money-laundering conspiracy and unlicensed money transmitting business offenses are "continuing offenses" and, thus, the statute of limitations did not begin to run until

4

the last day of the continuing offenses.  Dkt. 268 at 66.  Again, if this conclusion is incorrect, Sterlingov needs to explain why.

Next, Sterlingov argues that 1,354 bitcoin held in the Bitcoin Fog wallet identified as 1YZJKaAx2HRWvcbCXDBtQbBZcRU46WJqw is not forfeitable because "a simple blockchain explorer search of this address shows that there is 0 [bitcoin] in this address and that the last transaction for th[e] address occurred on March 25, 2012."  Dkt. 305 at 10.  But, as the government explains, "the jury has already rendered its forfeiture verdict—at the defendant's request—and [it] found this specific property was 'involved in' the defendant's crimes and is subject to forfeiture."  Dkt. 310 at 15; *see also* Dkt. 274 (special verdict).  Even if Sterlingov is correct, and that wallet is now empty and funds cannot be traced to another address, the government would be entitled to recover substitute property (to the extent such an order would not duplicate other relief the government seeks).

Similarly, although Sterlingov asserts that the statutory conditions for substitute property forfeiture under 21 U.S.C. § 853(p) have not been met, Dkt. 305 at 14, he does not dispute that the deposits into Bitcoin Fog have been "transferred or sold to, or deposited with, a third party" and otherwise "cannot be located upon the exercise of due diligence," 21 U.S.C. § 853(p)(1)(A)–(B); *see also* 18 U.S.C. § 982(b) (adopting most provisions of 21 U.S.C. § 853 for purposes of forfeiture under 18 U.S.C. § 982).  Sterlingov asserts that imposing "joint and several liability is improper," *id.* at 13, but fails to note that the government's proposed order applies only to him and does not impose obligations—whether joint and several or not—on anyone else.  "[J]oint and several liability 'applies when there has been a judgment against multiple defendants,'" *Honeycutt v. United States*, 581 U.S. 443, 447 (2017) (quoting *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 220–21 (1994)), and thus has no bearing on this case.

**B.**

Two of the arguments that Sterlingov raises, however, are more substantial.

*First*, Sterlingov argues that the government's proposed forfeiture order constitutes impermissible "double counting." Dkt. 305 at 11. The government seeks a money judgment against Sterlingov equal to all the funds ever deposited into Bitcoin Fog, but according to Sterlingov, the government "has already recovered" many, "if not all," of those deposits from the Bitcoin Fog users who made them. *Id.* at 11–12. As an example, Sterlingov points to Ilya Lichenstein, who admitted to "using Bitcoin Fog to launder illicit funds," and "forfeited $72,618,825.60 to the Government" as part of his plea agreement. *Id.* at 13. Similarly, "[m]any of the darknet markets" that, according to the government, "sent funds through Bitcoin Fog . . . had their assets seized" by the government. *Id.* at 12. Thus, on Sterlingov's view, the government's forfeiture order is flawed because it seeks to recover *all* deposits from Sterlingov, while "fail[ing] to subtract the amounts already forfeited" in other cases brought against the individuals or actors who made those deposits. *Id.*

In response, the government asserts that Sterlingov "cites no case in which any court has adopted this rationale." Dkt. 310 at 13. That is true. But, by the same token, the cases that the government cites also fail to address the precise situation here: when the government seeks forfeiture of the same money from different individuals, must it credit the proceeds already collected from one defendant towards the money judgment sought against the other? *See id.* at 13–14. And in such a case, what role, if any, does each defendants' possessory interest in the money play?

Accordingly, the parties should be prepared to address whether the money judgment against Sterlingov should be offset by forfeitures of funds that were laundered through Bitcoin

6

Fog before being seized in the course of other, criminal investigations.  In addition, the government should be prepared to address whether it has, in fact, recovered funds that it knows were deposited into Bitcoin Fog, as well as whether it expects to recover such funds pursuant to other forfeiture orders.

*Second*, Sterlingov argues that the proposed forfeiture order violates the Eight Amendment as an "excessive fine."  Dkt. 305 at 5.  The Eight Amendment's Excessive Fines Clause prohibits fines (including criminal forfeitures under § 982(a)(1)) that are "grossly disproportional to the gravity of the crime."  *Id.* at 4; *see United States v. Bajakajian*, 524 U.S. 321, 328 (1998).  Sterlingov asserts that a money judgment of $395 million is "grossly disproportional" to the gravity of his offenses.  Sterlingov did not launder all $395 million, was never in possession of $395 million, and retained only a small fraction of that sum from charging a service fee.  *See id.* at 6.  Sterlingov argues that this "astronomical" forfeiture order would "perpetually punish [him]" by affecting his "future earnings for the remainder of his life."  *Id.* at 12.  If anything, that seems to understate the magnitude of the forfeiture that the government seeks; it is difficult to imagine that Sterlingov would be able to pay even half or a quarter of that amount over the course of his lifetime.

The government responds that under the four factors set forth in *Bajakajian*, the $395 million money judgment is not grossly disproportional to Sterlingov's crimes.  Dkt. 310 at 2–7.  Yet the government does not address the considerations that the Court set forth above.  *See supra* at 1–2.  Nor does it offer a limiting principle for instances where the total amount of commingled funds is "astronomical," Dkt. 305 at 12, a forfeiture order would therefore "deprive a wrongdoer of his livelihood," *Bajakajian*, 524 U.S. at 335, and most of the funds at issue belonged to third parties and were not the proceeds of any illegal activity.

With these considerations in mind, the parties should be prepared to address whether the proposed $395 million money judgment is "grossly disproportional" to Sterlingov's offenses. *Bajakajian*, 524 U.S. at 335.

**SO ORDERED**.

/s/ Randolph D. Moss<br>
RANDOLPH D. MOSS<br>
United States District Judge

Date:  August 14, 2024