```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA


    * * * * * * * * * * * * * * *    )
    UNITED STATES OF AMERICA,        )   Criminal Action
                                     )    No. 21-00399
              Plaintiff,             )
                                     )
      vs.                            )   AFTERNOON SESSION
                                     )
    ROMAN STERLINGOV,                )   Washington, D.C.
                                     )   March 1, 2024
              Defendant.             )   4:24 p.m.
                                     )
    * * * * * * * * * * * * * * *    )



                    TRANSCRIPT OF JURY TRIAL
            BEFORE THE HONORABLE RANDOLPH D. MOSS
                 UNITED STATES DISTRICT JUDGE


    APPEARANCES:

    FOR THE PLAINTIFF:      CHRISTOPHER BROWN, ESQ.
                            UNITED STATES ATTORNEY'S OFFICE FOR
                              THE DISTRICT OF COLUMBIA
                            601 D Street, Northwest
                            Suite 5.1527
                            Washington, D.C. 20530

                            CATHERINE PELKER, ESQ.
                            U.S. DEPARTMENT OF JUSTICE
                            950 Pennsylvania Avenue, Northwest
                            Washington, D.C. 20530


    FOR THE DEFENDANT:      TOR EKELAND, ESQ.
                            MICHAEL HASSARD, ESQ.
                            TOR EKELAND LAW, PLLC
                            30 Wall Street
                            Eighth Floor
                            Brooklyn, New York 10005
```

```
REPORTED BY:           LISA EDWARDS, RDR, CRR
                       Official Court Reporter
                       United States District Court for the
                         District of Columbia
                       333 Constitution Avenue, Northwest
                       Room 6706
                       Washington, D.C. 20001
                       (202) 354-3269
```

1       THE COURTROOM DEPUTY: Crime Case No. 21-399, the
2  United States of America versus Roman Sterlingov.
3       Would counsel please approach the podium and state
4  their name for the record, starting with Government counsel.
5       MR. BROWN: Good afternoon. AUSA Christopher
6  Brown for the Government. With me at counsel table is
7  C. Alden Pelker. Our co-counsel Jeffrey Pearlman had to
8  leave this afternoon.
9       THE COURT: That's fine. Good afternoon.
10       MR. EKELAND: Tor Ekeland for Defendant Roman
11  Sterlingov, who is present in court. And joining me at
12  counsel table is Michael Hassard.
13       THE COURT: Good afternoon.
14       I have some modestly good news to kick things off.
15  The one juror who we had talked about canceled or postponed
16  her appointment for Monday.
17       Another juror, however, indicated that he needs to
18  leave by 3:30 because of a family member who has outpatient
19  surgery and needs to pick that person up. We can sit until
20  3:30 on Monday. So that's helpful, I guess.
21       And I'm happy to take suggestions on how we should
22  proceed.
23       I will say that the court reporter that is present
24  has been going the entire day today and I think it would be
25  cruel and unusual punishment to try and make the court

1    reporter go until 5:00.  So I think we probably should at
2    least kick things off.  But not only has she been going, but
3    she's been going with people talking at the same time all
4    afternoon.
5              So any suggestions, Mr. Ekeland?
6              MR. EKELAND:  This is a proposed solution rather
7    than so much an argument.
8              So what we suggest is -- so there was the
9    supplemental expert disclosure on August 7, 2023, at Docket
10   158 that attached the proposed slide deck demonstrative
11   summary for Mr. Verret.
12             And the latest slide deck that I think we produced
13   about a week ago or so to the government via email is mainly
14   a streamlined version of it.  If I'm understanding the
15   objections correctly, which I think I am, it's that the new
16   slide deck also includes forensic interviews Professor
17   Verret conducted.
18             What we propose is just simply removing the slides
19   in the new slide deck, which I have as Slide No. 9, with the
20   title that says Forensic Interviews, which is obviously a
21   specific reference to forensic interviews; and Slide No. 10,
22   which says Assets, which is information that Professor
23   Verret got in those forensic interviews.
24             And I would just add that I don't think -- the
25   forensic interviews didn't change his opinion.  It just

1  confirmed it.  So -- and also, this testimony, should
2  Mr. Sterlingov choose to testify, will just come in through
3  him, and that can't be stopped.  It's just a matter of when,
4  assuming Mr. Sterlingov does choose to testify.
5          THE COURT:  All right.
6          MR. EKELAND:  And then there's Slide No. 11, which
7  is entitled Assessing Credibility, because my understanding
8  is that that slide is about assessing the credibility of,
9  you know, the person you forensically are interviewing.
10         And that -- unless the Government's got something
11 else to point out, say, you know, involving the forensic
12 interviews, I think it embodies the incorporation of the
13 forensic interviews in the deck; and then we limit -- we
14 just keep the forensic interview testimony out from his
15 expert testimony and just proceed on the basis of his
16 opinions before, which it's the defense's contention is the
17 same as what's been disclosed.
18         That's our proposed solution.
19         THE COURT:  All right.  Mr. Brown or Ms. Pelker?
20         MR. BROWN:  Your Honor, I'm afraid I don't think
21 that that will fully address the Government's concerns,
22 because there's sort of two things going on with this
23 supplemental slide deck.
24         Number one is that -- is this sort of forensic
25 interview issue.  First of all, I'm not sure that those

1    three slides are the full extent of the sort of additional
2    fact testimony that Professor Verret would seek to
3    introduce.
4            But more to the point, I think that throughout
5    this new slide deck, it reads as if it was written by
6    somebody who has never been familiarized with the Court's
7    *Daubert* rulings on September 8th and 15th.  I mean, from the
8    very first slide to the very last slide, there are --
9    there's slides that appear in some cases just in diametric
10   opposition to points that the Court made.
11           I mean, the last slide, you know, just for
12   example, "No financial forensic evidence that Mr. Sterlingov
13   operated Bitcoin Fog."
14           I think the Court was very clear again and again
15   and again that Mr. Verret -- not only was he not competent
16   to testify as to the sufficiency of the evidence in the
17   case, but that this would be a 702 and a 403 problem if you
18   had an expert purporting to instruct the jury about the
19   sufficiency of the evidence.
20           And I mean, I could walk through slide by slide.
21   But I think our concerns are just it does not appear that
22   Professor Verret was, you know, mindful of the Court's
23   *Daubert* rulings when he prepared these slides.
24           We have no objection to proceeding under the
25   Court's rulings on September 8th and September 15th.  It

1    just doesn't appear that this is at all consistent with the
2    Court's rulings.
3              THE COURT:  Mr. Ekeland?
4              I did -- my clerk printed out those two
5    transcripts, which I intend to read over the weekend again.
6    And I need to go back through my notes from the prior
7    *Daubert* hearings.
8              Mr. Ekeland?
9              MR. EKELAND:  It was our understanding that the
10   rulings from what we read in the transcript -- and Professor
11   Verret did go through the transcript and, you know, I
12   specifically asked him to revise based on your comments.
13   Also, that the Court was going to issue a written ruling on
14   the *Daubert*; and I understand the Court's been very, very
15   busy.
16             So I --
17             THE COURT:  I think what I said -- I'm not --
18   perhaps, but I think with respect to Professor Verret in
19   particular, I went through line by line there and said,
20   "Yes, no, yes, no" in a very clear fashion on the record
21   with respect to those.  And there was not -- there may have
22   been like one thing possibly in there or two possibly where
23   there was some further consideration.  But I was pretty
24   clear, I think, on the record of exactly what my rulings
25   were on that.

1          MR. EKELAND: And it's -- and he read that.
2          But like it's -- what we're proposing is very
3  concrete slides. And I'm not getting a specific slide
4  objection from the Government. I have a revised version of
5  what was sent to them in August. It's just less words.
6          As for the conclusion to the slide deck, it's our
7  understanding that that's -- it's just in accordance with
8  Federal Rule of Evidence 704. If the Court rules otherwise,
9  that's fine. We'll pull it out. But, you know, the 704
10 does say that experts can opine as to, you know, the
11 ultimate conclusions as long as it doesn't go to the mental
12 state -- you know, elements of the mental state for a
13 criminal defendant.
14         So, you know, that's my understanding -- our
15 understanding of Federal Rule of Evidence 704, is it
16 abrogates the ultimate conclusion rule.
17         THE COURT: I think what it does, actually, is it
18 says -- I think it leaves that within the discretion of the
19 Court, as I understand the rule.
20         MR. EKELAND: And again, if the Court says to take
21 that slide out, we'll take that slide out. You know, we're
22 not so much interested in getting into a war with respect to
23 the slide deck.
24         What the understanding was is we're trying to
25 streamline it so it wasn't so wordy. We're willing to take

1   out the reference to the forensic interview and limit the
2   scope.  And if there's anything in particular objectionable,
3   let's have that conversation and just get this going so
4   you -- well, you understand, your Honor.
5               THE COURT:  I think that's a fair point.
6               What I would just say is that, Mr. Brown, if there
7   are particular slides that you can flag that you can raise
8   these concerns, if you can bring that to Mr. Ekeland's
9   attention, it will help expedite things on Monday in this
10  regard.
11              And I think this is implicit in what Mr. Ekeland
12  is doing in proposing to drop the slides that refer to the
13  forensic interviews.
14              But that is a thing that was causing me great
15  concern, because -- both because of its untimeliness, but
16  also because you had asked at least one witness and maybe
17  more than one witness whether they had interviewed
18  Mr. Sterlingov.  And it does, I think, put the Government in
19  a really unfair position where they haven't been able to
20  interview him and it may be suggesting in some way that your
21  forensic analysis is better than theirs because they
22  interviewed -- Mr. Sterlingov was interviewed.  And that is
23  problematic, I think, and misleading to the jury.
24              MR. EKELAND:  Understood, your Honor.
25              At this moment, I'm looking for a solution so we

1    can streamline this and move it ahead.  And I think what the
2    Court is suggesting is an excellent idea.
3             THE COURT:  Okay.  Mr. Brown?
4             MR. BROWN:  Your Honor, I think that this may be a
5    workable solution.  Either tonight or early tomorrow, I can
6    send to the defense on a slide-by-slide basis what the
7    specific objections are.
8             But I think underlying all of this is that we have
9    prepared our case for trial on the basis of the Court's
10   pretrial rulings.  And so, you know, to the extent these
11   slides are rather cryptic in what they say, simply because
12   if there's no objection to a particular slide that doesn't
13   mean that we won't be objecting, you know, if the defense
14   elicits certain areas of testimony that we think the Court
15   has already ruled on.  And we'll have those cites ready.
16   But for the slides, the demonstratives themselves, I think
17   that we can certainly work with the defense.  And if there's
18   any remaining area for disagreement, we can have that teed
19   up for the Court on Monday.
20            THE COURT:  That's fine.  I think that's a good
21   way to proceed.
22            As I said, I'm going to reread over the weekend my
23   actual rulings and I'll have a summary in hand, and I'll
24   also have the piece of paper or the report where it was in
25   front of me as I was ruling where I was writing yes or no in

1    the margins of it.  So I think I will be well-positioned if
2    there are objections that come up as the evidence is coming
3    in.
4              Mr. Ekeland, anything else?
5              MR. EKELAND:  Only a final comment.  We were not
6    trying to be cryptic with the PowerPoint.  It's just merely
7    talking points.  We weren't trying to write a legal brief
8    for actually some of the reasons that are being raised.  So
9    that's all on that.
10             THE COURT:  Yes.  I did agree with the Government
11   that maybe this is all coming out as -- I'm not sure whether
12   it was a question of a witness -- an expert witness opining
13   on the final -- the ultimate question for the jury or just
14   that they were very argumentative in nature.
15             I realize that Professor Verret is a lawyer as
16   well.  But it looked more like sort of the slides -- or some
17   of them -- that you might use in giving your closing than
18   what a witness would address.  It felt like a lawyer's
19   argument in some of them.  That was causing some concern as
20   well.
21             MR. EKELAND:  Understood.
22             THE COURT:  All right.  Anything else before we
23   adjourn for the weekend?
24             MR. EKELAND:  No, your Honor.
25             THE COURT:  Did you want to raise the question

1     about access to the devices?
2             MR. BROWN:  Yes, your Honor.
3             So we have devices that we are prepared to make
4     available to the defense for inspection.
5             We tried to do this while we were -- while our
6     case was in recess down in the basement.  The marshals
7     informed us when we tried to walk in that they don't allow
8     these electronics in that space.  And they said it would
9     have to be, if anywhere, in the holding cell behind the
10    courtroom.
11            And so we have them here.  But -- so we've tried
12    to make that work, your Honor.
13            THE COURT:  Well, it's 20 minutes of 5:00.  Are
14    the marshals okay with keeping you here until 5:00?  Is that
15    acceptable?
16            MR. EKELAND:  Your Honor, we need Mr. Fischbach
17    for that, and he's not here.  Maybe it's possible to do it
18    after we end the day, at 3:30 on Monday.
19            THE COURT:  Monday.  Assuming it's okay with the
20    Marshals Service, it's fine with me.
21            MR. EKELAND:  Okay.  Is that okay with the
22    Government?
23            MS. PELKER:  I think the only issue is just going
24    to be that if Mr. Fischbach is mid-testimony, it may be
25    difficult for him to participate in the review.  But that's

1     fine with the Government.
2            MR. EKELAND: Oh, yeah. I think we'll still be --
3     well, that would mean that we're through with Professor
4     Verret, which would mean we're going at a good clip. And,
5     you know, maybe we just could pause before he goes and
6     testifies. I think we would still be on pace to finish this
7     trial Wednesday or Thursday.
8            THE COURT: We're also going to need some time for
9     a charging conference, too, where there's going to be some
10    downtime for the jury for the charging conference also. So
11    sometime next week I'm going to need to tell the jury to
12    come in a little later or go home early so we can have a
13    charging conference.
14           MS. PELKER: We would just like to put on the
15    record -- and we're happy to make the devices available and
16    we understand that different members of the defense team are
17    located in different places. The Government did send
18    viewing letters, that these devices have been available for
19    the defense to review. But we are trying to accommodate
20    Mr. Fischbach's desire to review them now here with the
21    Defendant.
22           THE COURT: I appreciate that in all respects.
23           Anything before we adjourn for the weekend?
24           MR. BROWN: No, your Honor.
25           MS. PELKER: No, your Honor.

```
 1                    THE COURT:  Well, thank you all.  Have a good
 2     weekend.
 3                    (Proceedings concluded.)
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

**CERTIFICATE**

I, LISA EDWARDS, RDR, CRR, do hereby certify that the foregoing constitutes a true and accurate transcript of my stenographic notes, and is a full, true, and complete transcript of the proceedings produced to the best of my ability.

Dated this 1st day of March, 2024.

/s/ Lisa Edwards, RDR, CRR
Official Court Reporter
United States District Court for the
  District of Columbia
333 Constitution Avenue, Northwest
Washington, D.C. 20001
(202) 354-3269